## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GmbH and BOEHRINGER INGELHEIM PHARMACEUTICAL, INC., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> BARR LABORATORIES, INC. and MYLAN PHARMACEUTICALS INC., <br><br> Defendants and Counterclaim Plaintiffs. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Civil Action No.: 05-700 (KAJ) <br> CONSOLIDATED |

## DEFENDANT MYLAN PHARMACEUTICALS INC.'S
## MOTION FOR REARGUMENT AND/OR RECONSIDERATION

Defendant Mylan Pharmaceuticals Inc. ("Mylan") hereby respectfully moves for reargument pursuant to Local Rule 7.1.5 and/or reconsideration of the Court's January 31, 2006 Order denying Mylan's Motion to Strike Plaintiffs' Allegations Concerning Willful Infringement and to Bar All Discovery Relating Thereto ("Mylan's Motion to Strike"). Reargument and/or reconsideration should be granted because "[t]he Court should not hesitate to grant the motion when compelled to prevent manifest injustice or to correct clear error." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990) (citations omitted). In support of this motion, Mylan states as follows:

1.    Mylan's Motion to Strike was timely made and based on the Federal Circuit's decision in *Glaxo v. Apotex*, 376 F.3d 1339 (Fed. Cir. 2004). During the Rule 16 scheduling and

planning conference with the parties, the day after Mylan filed its Reply brief, the Court orally denied Mylan's Motion to Strike without prejudice.

2.     The Court's January 31 Order allows Plaintiffs to pursue discovery in search of support for its allegation of willful infringement. However, no amount of discovery will cure the defect in Plaintiffs' Complaint – as a matter of law, Mylan has not committed any act of infringement that can be considered willful.

3.     Mylan's procedural, technical act of infringement – "the mere filing of an ANDA" pursuant to the Hatch-Waxman Act – is the exact conduct that the Federal Circuit in *Glaxo* held could not support an allegation of willful infringement. *Glaxo*, 351 F.3d at 1350-51.

4.     Yet, the Court's denial of Mylan's Motion to Strike ensures that Mylan will expend significant money and resources to defend against Plaintiffs' invasive attempts to discover information protected by the attorney-client privilege and work product doctrine. In fact, a significant part of Plaintiffs' First Set of Requests for Production of Documents and Things to Mylan are directed toward such discovery. *See, e.g.*, Exh. A to Bloodworth Decl.[1], Requests for Production Nos. 32 ("All documents constituting, or referring or relating to, any opinion of counsel, written or oral, concerning Mylan's Proposed Pramipexole Dihydrochloride Product or the '812 patent."), 9, 11, 21, 23, 25, 26, 30 and 31. Because Mylan's Paragraph IV certification is at issue, Mylan may have little choice but to rely on its attorneys' opinions and

---

[1] "Bloodworth Decl." refers to the attached Declaration of Shannon M. Bloodworth, Esq. in Support of Defendant Mylan Pharmaceuticals Inc.'s Motion for Reargument and/or Reconsideration.

work product to defend against such allegations.[2]  Once this discovery is allowed, it is akin to letting the proverbial cat out of the bag.

      5.      Two recent district court decisions that were not before this Court when it denied Mylan's Motion to Strike, one from the District of New Jersey and the other from the Eastern District of Virginia, both hold, on the basis of *Glaxo*, that the filing of a Paragraph IV certification cannot support a finding of willfulness.  *See Celgene Corp. v. Teva Pharms. USA, Inc.*, 2006 WL 267163, at *6 (D.N.J. Feb. 6, 2006) (Exh. B to Bloodworth Decl.) (granting Teva's motion for judgment on the pleadings with respect to Celgene's allegation of willful infringement and holding that "the artificial and highly technical nature of Teva's 'infringement' does not rise to the level of a literal act of patent infringement that could give rise to a finding of 'willful infringement,' as the phrase has been applied under Section 285."); *Aventis Pharma Deutschland GmbH v. Lupin Ltd.*, 2006 WL 141670, at * 9 (E.D. Va. January 18, 2006) (Exh. C to Bloodworth Decl.) ("Defendants are absolutely correct that *Glaxo*, the latest case on the subject by the Federal Circuit, squarely holds that a willful infringement claim may not be based solely on the filing of a baseless ANDA application. And that is all Plaintiffs have alleged.")[3]

      6.      Mylan is informed that this Court has scheduled oral argument in *In re '318 Patent Infringement Litigation*, Civil Action No. 05-356-KAJ, on the precise issue raised by Mylan in this case:  whether the filing of a Paragraph IV certification can support a claim of

---

[2] Plaintiffs' willfulness allegations are based solely on Paragraph 17 of their Complaint which states, "Mylan's ANDA and Paragraph IV certification are premised upon a baseless assertion that the claims of the '812 patent are invalid under 35 U.S.C. § 103.  Mylan disregarded its duty to exercise due care and committed an act of infringement premised on this baseless assertion of invalidity, rendering Mylan's infringement of the '812 patent willful."

[3] The *Celgene* decision was issued on February 6, 2006, approximately one week after the Court's denial of Mylan's Motion to Strike.  The *Aventis* decision issued on January 18, 2006.

willfulness.    Mylan respectfully suggests that this Court's ruling in *In re '318 Patent Infringement Litigation* will apply equally to this case.

7.    Because the Court's denial of Mylan's Motion to Strike will result in a manifest injustice to Mylan, an injustice that cannot be rectified even if the Court later changes its ruling, Mylan respectfully requests the Court to grant Mylan's Motion for Reargument of its January 31, 2006 Order denying Mylan's Motion to Strike and for leave to present oral argument in support thereof.

Mary B. Matterer (#2696)
**MORRIS, JAMES, HITCHENS
& WILLIAMS LLP**
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6960
mmatterer@morrisjames.com

OF COUNSEL:
David J. Harth
David L. Anstaett
Melody K. Glazer
**HELLER EHRMAN LLP**
One East Main Street, Suite 201
Madison, Wisconsin 53703
(608) 663-7460

Shannon M. Bloodworth
**HELLER EHRMAN LLP**
1717 Rhode Island Ave., NW
Washington, DC 20036
(202) 912-2000

*Attorneys for Defendant and Counterclaim Plaintiff Mylan Pharmaceuticals Inc.*

Dated: February 14, 2006

## **RULE 7.1.1 CERTIFICATE**

The undersigned certifies that movants have made reasonable efforts to reach an agreement with opposing counsel on the matters set forth in this Motion.

Mary B. Matterer (#2696)

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of February, 2006, I electronically filed the

foregoing document, **DEFENDANT MYLAN PHARMACEUTICALS INC.'S**

**MOTION FOR REARGUMENT AND/OR RECONSIDERATION**, with the Clerk of

the Court using CM/ECF which will send notification of such filing to the following:

Jack B. Blumenfeld, Esq.                     Josy W. Ingersoll, Esq.
Maryellen Noreika, Esq.                      Adam W. Poff, Esq.
Morris, Nichols, Arsht & Tunnell             Young Conaway Stargatt & Taylor
1201 N. Market Street                        1000 West Street, 17th Floor
Wilmington, DE  19801                        Wilmington, DE  19801


Additionally, I hereby certify that on the 14th day of February, 2006, the foregoing

document was served via email on the following non-registered participants:

Steven C. Cherny, Esq.                       Glenn J. Pfadenhauer, Esq.
Latham & Watkins LLP                         Jessamyn S. Berniker, Esq.
885 Third Avenue, Suite 1000                 Williams & Connolly LLP
New York, NY  10022-4834                     725 Twelfth Street, NW
212.906.1200                                 Washington, DC  20005
                                             202.434.5000

Kenneth G. Schuler, Esq.
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL  60606
312.876.7700

Mary B. Matterer (#2696)
**MORRIS, JAMES, HITCHENS & WILLIAMS LLP**
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6960
*Attorneys for Defendant and Counterclaim Plaintiff*
*Mylan Pharmaceuticals Inc.*

# BLOODWORTH
# DECLARATION

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GmbH and BOEHRINGER INGELHEIM PHARMACEUTICAL, INC., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> MYLAN PHARMACEUTICALS INC., <br><br> Defendant and Counterclaim Plaintiff. | Civil Action No.: 05-0854 (KAJ) |

**DECLARATION OF SHANNON M. BLOODWORTH, ESQ.
IN SUPPORT OF MYLAN PHARMACEUTICALS INC.'S MOTION FOR
REARGUMENT AND/OR CONSIDERATION**

I, Shannon M. Bloodworth, declare as follows:

1.    I am an associate with the law firm of Heller Ehrman LLP, 1717 Rhode Island Avenue, N.W., Washington, D.C. 20036, attorneys for Defendant and Counterclaim Plaintiff, Mylan Pharmaceuticals Inc. ("Mylan"). I make this declaration based on my personal knowledge and in support of Mylan's Motion for Reargument and/or Consideration.

2.    Attached as Exhibit A is a true and correct copy of excerpts from Plaintiffs' First Set of Requests for Production of Documents and Things to Mylan.

3.    Attached as Exhibit B is a true and correct copy of *Celgene Corp. v. Teva Pharms. USA, Inc.*, 2006 WL 267163 (D.N.J. Feb. 6, 2000).

3.    Attached as Exhibit C is a true and correct copy of the decision *Aventis Pharma Deutschland GmbH v. Lupin Ltd.*, 2006 WL 141670 (E.D. Va. Jan. 18, 2000).

I declare under penalty that the foregoing is true and correct.


Executed within the United States on February 14, 2006.

Shannon M. Bloodworth

# EXHIBIT   A

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,   )<br>)<br>)<br>)<br>Plaintiffs,   )<br>)<br>v.   )<br>)<br>MYLAN PHARMACEUTICALS INC.,   )<br>)<br>Defendant.   ) | C.A. No. 05-854-KAJ |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF
## DOCUMENTS AND THINGS TO MYLAN

Pursuant to Rules 26 and 34 of the FEDERAL RULES OF CIVIL PROCEDURE, Plaintiffs Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharmaceuticals, Inc. ("Plaintiffs" or "Boehringer") hereby request that Mylan Pharmaceuticals Inc. ("Mylan") produce and permit Boehringer to inspect and copy each of the documents and things requested below on or within thirty (30) days at the offices of Latham & Watkins LLP, 233 S. Wacker Dr. Suite 5800, Chicago, IL 60606. These requests are continuing and impose upon Mylan the obligations stated in FEDERAL RULE OF CIVIL PROCEDURE 26.

### DEFINITIONS AND INSTRUCTIONS

The Definitions and Instructions included in Plaintiffs' First Set of Interrogatories to Defendant are hereby incorporated by reference.

### REQUESTS

### REQUEST NO. 1

A full and complete copy of Mylan's ANDA No. 77-854.

**REQUEST NO. 8**

Documents sufficient to identify any actual, expected, or potential vendor or supplier to Mylan of pramipexole, pramipexole dihydrochloride, or Mylan's Proposed Pramipexole Dihydrochloride Product.

**REQUEST NO. 9**

All documents referring or relating to Mylan's decision to file an ANDA for Mylan's Proposed Pramipexole Dihydrochloride Product.

**REQUEST NO. 10**

All documents referring or relating to the timing, schedule, likelihood, or projection of approval of ANDA No. 77-854.

**REQUEST NO. 11**

All documents referring or relating to your decision to develop a generic version of MIRAPEX®.

**REQUEST NO. 12**

All documents referring or relating to Mylan's Proposed Pramipexole Dihydrochloride Product.

**REQUEST NO. 13**

All documents referring or relating to your actual or contemplated research and development with respect to the development of a product containing pramipexole and/or the processes to make a product containing pramipexole, including but not limited to laboratory notebooks, raw data, development reports, and testing protocols.

**REQUEST NO. 20**

        All documents referring or relating to the substitution or proposed substitution of Mylan's Proposed Pramipexole Dihydrochloride Product for indications identified for MIRAPEX® or any other formulation of pramipexole.

**REQUEST NO. 21**

        All documents referring or relating to your letter to Boehringer dated October 26, 2005, including but not limited to drafts, notes, work papers, and communications relating thereto.

**REQUEST NO. 22**

        All documents referring or relating to the use, sale, offer for sale, purchase, preparation, manufacture, or the importation into the United States of Mylan's Proposed Pramipexole Dihydrochloride Product.

**REQUEST NO. 23**

        All documents referring or relating to any certification made under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) concerning Mylan's Proposed Pramipexole Dihydrochloride Product or any component therein.

**REQUEST NO. 24**

        All documents referring or relating to the '812 patent.

**REQUEST NO. 25**

        All documents referring or relating to Mylan's first awareness of the '812 patent, including the circumstances surrounding Mylan's first awareness of the '812 patent.

**REQUEST NO. 26**

All documents referring or relating to any communication between Mylan and any third party concerning the '812 patent.

**REQUEST NO. 27**

All documents referring or relating to any communication between Mylan and any third party concerning pramipexole, products containing pramipexole or pramipexole dihydrochloride, MIRAPEX®, Mylan's Proposed Pramipexole Dihydrochloride Product, or the structure or composition of any formulation containing pramipexole.

**REQUEST NO. 28**

All documents referring or relating to any consideration by you to seek a license under the '812 patent.

**REQUEST NO. 29**

All documents referring or relating to any proposed, contemplated, or actual advertisement, publication, promotion, or description of Mylan's Proposed Pramipexole Dihydrochloride Product, including without limitation any proposed, contemplated, or actual marketing materials, patient information, promotional material, sales literature, brochure, catalog, product release, or flyer.

**REQUEST NO. 30**

All documents referring or relating to the infringement, non-infringement, validity, invalidity, patentability, unpatentability, enforceability, and/or unenforceability of the '812 patent.

**REQUEST NO. 31**

All documents constituting, or referring or relating to, prior art to the '812 patent.

**REQUEST NO. 32**

All documents constituting, or referring or relating to, any opinion of counsel, written or oral, concerning Mylan's Proposed Pramipexole Dihydrochloride Product or the '812 patent.

**REQUEST NO. 33**

All documents referring or relating to any of Mylan's responses to Boehringer's First Set of Interrogatories, or the identification of which is sought by those Interrogatories.

**REQUEST NO. 34**

All documents referring or relating to projected sales, costs, pricing, profits, marketing, market share, sales volumes, market projections or analysis, or consumer or customer profiles concerning MIRAPEX® or Mylan's Proposed Product.

**REQUEST NO. 35**

All documents referring or relating to any meeting of Mylan's Board of Directors at which Mylan's Proposed Pramipexole Dihydrochloride Product and/or ANDA No. 77-854 were discussed, including, without limitation, minutes of such meetings.

**REQUEST NO. 36**

Documents sufficient to show all document retention policies of Mylan for the last five years.

**REQUEST NO. 37**

All documents referring or relating to MIRAPEX®.

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
 Attorneys for Plaintiffs
 Boehringer Ingelheim International GmbH and
 Boehringer Ingelheim Pharmaceuticals, Inc.

Of Counsel:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4834
(212) 906-1200

Kenneth G. Schuler
Amanda J. Hollis
Joel Neckers
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL  60606
(312) 876-7700

January 10, 2006

9

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MYLAN PHARMACEUTICALS, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) |

C.A. No. 05-854-KAJ

## NOTICE OF SERVICE

I, Maryellen Noreika, hereby certify that copies of Plaintiff's First Set of Interrogatories to Mylan and Plaintiff's First Set of Requests for the Production of Documents and Things to Mylan were caused to be served on January 10, 2006, upon the following in the manner indicated

### BY HAND

Mary B. Matterer
Morris, James, Hitchens & Williams
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE  19899

### BY FEDERAL EXPRESS

Shannon M. Bloodworth
Heller Ehrman LLP
1717 Rhode Island Avenue, NW
Washington, DC  20036

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/  Maryellen Noreika (#3208)*

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mnoreika@mnat.com
  Attorneys for Plaintiffs
  Boehringer Ingelheim International GmbH and
  Boehringer Ingelheim Pharmaceuticals, Inc.

Of Counsel:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4834
(212) 906-1200

Kenneth G. Schuler
Amanda J. Hollis
Joel Neckers
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL  60606
(312) 876-7700

January 10, 2006

# EXHIBIT   B

Westlaw.

--- F.Supp.2d ----                                                      Page 1

--- F.Supp.2d ----, 2006 WL 267163 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. New Jersey.
CELGENE CORP., et al., plaintiffs,
v.
TEVA PHARMS. USA, INC, defendant.
**Civil Action No. 04-4030.**

Feb. 6, 2006.

**Background:** Owner of patent for drug to treat attention deficit disorders sued proposed manufacturer of generic version for infringement. Proposed manufacturer moved for judgment on pleadings.

3**Holding:** The District Court, Chesler, J., held that mere fact of filing abbreviated new drug application (ANDA) or paragraph IV certification cannot support finding of willful infringement.

Motion granted.

**[1] Patents 291 ⟐325.11(2.1)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k325 Costs
                291k325.11 Disbursements in General
                    291k325.11(2) Attorney Fees
                        291k325.11(2.1) k.  In General.
Most Cited Cases
In determining whether patent case is "exceptional" for purpose of awarding attorney fees, court looks at totality of circumstances. 35 U.S.C.A. § 285.

**[2] Federal Civil Procedure 170A ⟐1041**

170A Federal Civil Procedure

170AVII Pleadings and Motions
    170AVII(L) Judgment on the Pleadings
        170AVII(L)1 In General
            170Ak1041 k.  In General. Most Cited Cases
Standard for deciding motion for judgment on pleadings is identical to that for deciding motion to dismiss for failure to state claim. Fed.Rules Civ.Proc.Rule 12(b)(6), (c), 28 U.S.C.A.

**[3] Patents 291 ⟐325.11(3)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k325 Costs
                291k325.11 Disbursements in General
                    291k325.11(2) Attorney Fees
                        291k325.11(3) k.  Award to Plaintiff. Most Cited Cases
Mere fact that generic drug company has filed abbreviated new drug application (ANDA) or paragraph IV certification cannot support finding of willful patent infringement, for purpose of awarding attorney fees. Food, Drug, and Cosmetic Act, § 505(j)(2)(A)(vii)(IV), 21 U.S.C.A. § 355(j)(2)(A)(vii)(IV); 35 U.S.C.A. §§ 271(e)(4), 285.

**Patents 291 ⟐328(2)**

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k.  Original Utility. Most Cited Cases
5,908,850. Cited.

Charles M. Lizza, Esq., Kevin R.J. Schroth, Esq., William C. Baton, Esq., LeBoeuf, Lamb, Greene & Macrae, LLP, Newark, NJ, for plaintiffs Celgene Corporation, Novartis Pharmaceuticals Corporation,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                    Page 2

--- F.Supp.2d ----, 2006 WL 267163 (D.N.J.)
(Cite as: --- F.Supp.2d ----)

and Novartis Pharma AG.
Brian P. Sullivan, Esq., Bradley L. Mitchell, Esq.,
Stevens & Lee, Princeton, NJ, for defendant Teva
Pharmaceuticals USA, Inc.

## OPINION

CHESLER, District Judge.

### I. INTRODUCTION

*1 In this Hatch-Waxman Act patent infringement
case, defendant Teva Pharmaceuticals USA, Inc. ("
Teva") moves pursuant to Federal Rule of Civil
Procedure 12(c) for judgement on the pleadings
with respect to plaintiffs Celgene Corporation,
Novartis Pharmaceuticals Corporation, and
Novartis Pharma AG's (collectively "plaintiffs")
allegation of willful infringement. For the reasons
that follow, Teva's motion is GRANTED.

### II. BACKGROUND

#### A. The Hatch-Waxman Act

The Food, Drug, and Cosmetic Act, 21 U.S.C. §§
301-99, ("FDCA") provides that a company seeking
to market a new brand-name drug must submit a
New Drug Application ("NDA"). *See id.* § 355(b)(1)
. NDAs are generally lengthy applications that
include information about the drug such as evidence
of its safety and effectiveness, and information
about the patents that cover or might cover it. *Id.*
Before Congress passed the Hatch-Waxman Act, a
generic drug manufacturer's use of a patented drug
was considered patent infringement. This was so
even if such use of the patented drug was limited to
testing for Food and Drug Administration ("FDA")
approval to market its generic equivalent upon
expiration of the relevant patents. Accordingly,
companies seeking to market generic drugs upon
the expiration of patents that covered them were
impeded by the cost of filing lengthy NDAs, which
they could begin to prepare only upon the
expiration of the brand-name drug company's
patents. The time it took generic companies to
prepare the NDA and obtain FDA approval caused

a *de facto* extension of the patent covering the
brand-name drug.

Recognizing the benefit in reducing delays in FDA
approval of generic drugs, and as a means to
eliminate the *de facto* extension of the end of a
patent term, Congress enacted the Hatch-Waxman
Act amendments to the FDCA. The Hatch-Waxman
Act conferred two main benefits upon generic drug
manufacturers. First, it allowed them to avoid the
costly NDA process by filing an Abbreviated New
Drug Application ("ANDA") which, in effect, " '
piggyback[ed]' on the safety-and-effectiveness
information that the brand-name manufacturers
submitted in their NDAs." *Purepac Pharm. Co. v.
Thompson,* 354 F.3d 877, 879 (D.C.Cir.2004)
(citing 21 U.S.C. § 355(j)(2)(A) and 21 C.F.R. §
314.94(a)(3)). Thus, among other things, an ANDA
must show the proposed generic drug is chemically
bioequivalent to a drug that was previously
approved by the FDA. 21 U.S.C. § 355(j)(4)(F).

ANDAs must also address patents that cover the
drug for which approval is sought. 21 U.S.C. §
355(j)(2)(A)(vii) allows an applicant to satisfy this
requirement by including in its ANDA one of
several types of "certifications" explaining why the
FDA should approve the application despite the
patent's claim on the drug. The certification at issue
here is a "Paragraph IV Certification" (named for
its statutory sub-paragraph), which states "that such
patent is invalid or will not be infringed by the
manufacture, use, or sale of the new drug." *Id.*
355(j)(2)(A)(vii)(IV). Applicants use Paragraph IV
Certifications to essentially challenge the validity of
the brand-name drug manufacturers' patents. An
applicant that includes a Paragraph IV Certification
in its ANDA must inform both the patent holder and
the company that submitted the NDA on which the
ANDA "piggybacks." *Id.* § 355(j)(2)(B)(i). Once
notice is served, the FDA must wait forty-five days
before approving the ANDA, giving the patent
holder the opportunity to file suit. *Id.* §
355(j)(5)(B)(iii); 21 C.F.R. § 314.107(f)(2). When
a Paragraph IV Certification is filed, therefore, the
brand-name drug manufacturer is forced to litigate
to protect its rights.

*2 If the patent holder sues, the FDA cannot

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                          Page 3

--- F.Supp.2d ----, 2006 WL 267163 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

approve the ANDA until the earlier of (A) thirty months from the notice date, (B) the applicant wins the suit, or (C) a date to which the court hearing the suit shortens the thirty month period. 21 U.S.C. § 355(j)(5)(B)(iii). If successful in its challenge, the FDA may approve the ANDA and allow the applicant to market the generic version of the brand-name drug before the expiration of patents covering it. The Act rewards the first generic drug applicant that successfully challenges the patent of an approved drug with a 180-day period in which it may exclusively market the generic version. *Id.* § 355(j)(5)(B)(iv).

The second benefit of the Hatch-Waxman Act to generic drug manufacturers was a limitation on the potential patent infringement liability to companies that seek FDA approval to market a generic version of the brand-name drug. *See* 35 U.S.C. § 271(e)(1). While the Act immunizes generic drug manufacturers from patent infringement liability for preparing an ANDA, Section 271(e)(2)(A) provides a jurisdictional basis for an infringement action against the applicant where it seeks approval to market a patented product before the expiration of the patent. The purpose of this provision is "to define a new (and somewhat artificial) act of infringement for a very limited and technical purpose that relates only to certain drug applications." *Eli Lilly & Co. v. Medtronic, Inc.,* 496 U.S. 661, 676, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990). Thus, if the patent holder sues the applicant within 45 days from the notice, its remedies are limited to the following:
(A) the court shall order the effective date of any approval of the drug or veterinary biological product involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed,
(B) injunctive relief may be granted against an infringer to prevent the commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug or veterinary biological product, and
(C) damages or other monetary relief may be awarded against an infringer only if there has been commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug or veterinary

biological product.
The remedies prescribed by subparagraphs (A), (B), and (C) are the only remedies which may be granted by a court for an act of infringement described in paragraph (2), except that a court may award attorney fees under section 285.

35 U.S.C. § 271(e)(4).

[1] Section 285, which applies generally to patent infringement cases, provides "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In determining whether or not a case is "exceptional" under Section 285, courts "look at the totality of the circumstances." *Yamanouchi Pharm. Co. Ltd. v. Danbury Pharmacal, Inc.,* 231 F.3d 1339, 1347 (Fed.Cir.2000). In typical patent infringement cases, the United States Court of Appeals for the Federal Circuit has found "exceptional cases" in cases of " inequitable conduct before the PTO, litigation misconduct such as vexatious or unjustified litigation or frivolous filings, and willful infringement." *Glaxo Group Ltd. v. Apotex, Inc.,* 376 F.3d 1339, 1350 (Fed.Cir.2004) (citing *Hoffman-La Roche Inc. v. Invamed Inc.,* 213 F.3d 1359, 1365 (Fed.Cir.2000); *Rosemount, Inc. v. Beckman Instruments, Inc.,* 727 F.2d 1540, 1548 (Fed.Cir.1984)). The Federal Circuit has not held that attorney's fees under Section 285 are recoverable based on a finding of willful infringement in a Hatch-Waxman Act case.

**\*3** It is against this backdrop that the Court considers the allegations of the plaintiffs' complaint and defendant's 12(c) motion.

**B. Plaintiffs' Allegations**

This case presents patent infringement claims under the Hatch-Waxman Act by the plaintiffs, who hold rights in United States Patent No. 5,908,850 ("the 850 patent"), against Teva, a generic drug manufacturer. Plaintiffs market FOCALIN™, a drug that practices the 850 patent. They allege that Teva infringed the 850 patent by filing an ANDA and an amended ANDA with the FDA, which seek approval to market a generic version of FOCALIN™

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                        Page 4

--- F.Supp.2d ----, 2006 WL 267163 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

. (Complt. at ¶ 12-14.) The ANDA contains a Paragraph IV Certification stating that Teva believes the 850 patent to be invalid. (*Id.* at ¶ 15.) Plaintiffs claim the products for which Teva seeks approval are bioequivalent to the patented FOCALIN™ products, have the same ingredients as the patented FOCALIN™ products, have the same route of administration, dosage form and strength as the patented FOCALIN™ products, have the same, or substantially the same, proposed labeling, and the same indication and usage as the patented FOCALIN™ products. (*Id.* at ¶ 19.) Plaintiffs allege "Teva had notice of the 850 patent beginning prior to undertaking its act of infringement. Teva's infringement has been, and continues to be, willful and deliberate." (*Id.* at ¶ 22.) They seek damages, including "[a]ttorney's fees in this action pursuant to 35 U.S.C. § 285." (*Id.,* Prayer For Relief at subpara. (G), p. 6.)

### C. The Instant Motion

Teva's motion for judgment on the pleadings is directed at paragraph 22 of the Complaint, which alleges "Teva had notice of the 850 patent beginning prior to undertaking its act of infringement. Teva's infringement has been, and continues to be, willful and deliberate." Teva argues this allegation should be stricken because (1) a declaration of willful infringement is not within the limited remedies provided for by 35 U.S.C. § 271(e)(4) (Defendant's Moving Brief at 5-6); (2) plaintiffs' allegations cannot support a finding of willful infringement as a matter of law under the *Glaxo* and *Yamanouchi* cases (*id.* at 6-9); and (3) willful infringement is part of a damages calculation under 35 U .S.C. § 284, not a remedy in Hatch-Waxman litigation (*id.* at 9-11). For these reasons, Teva asks that the Court strike plaintiffs' allegation of willful infringement.

In opposition, plaintiffs argue, first, that Magistrate Judge Hughes previously denied Teva's *Glaxo* motion and allowed discovery on the issue of willfulness. (Opposition Brief at 5-6.) Second, they argue that *Glaxo* does not bar a finding of willful infringement to support an award of attorneys fees in a Hatch-Waxman Act case. (*Id.* at 7-9.) Third,

they argue the factual record reveals extreme willfulness on Teva's part. (*Id.* at 9-10.) Namely, plaintiffs argue Teva obtained the idea for the accused product in violation of a confidential disclosure agreement, its Paragraph IV Certification is baseless, and it had not come forward with any better prior art. (*Id.* at 9-10.) For these reasons, plaintiffs argue they should be permitted to develop the record on the willfulness issue. (*Id.* at 10.)

*4 In its reply, Teva argues plaintiffs' argument that they should be permitted to develop the record is misplaced because this is a Rule 12(c) motion, which examines the pleadings, not the proof. (Reply at 1.) Moreover, they argue Judge Hughes' ruling allowing discovery on willfulness, which has been stayed, was not the equivalent of a ruling on the 12(c) motion. (*Id.* at 3.) Teva further argues that plaintiffs do not allege violations of the confidential disclosure agreement and cannot use this as a basis for a finding of willfulness. (*Id.* at 4.) Teva notes that this Court has held in the case of *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.,* 04-1689 (D.N.J.2005), that there can be no willful infringement based solely on an allegedly baseless Paragraph IV Certification. (*Id.* at 4.) Teva then recites the basis for its Paragraph IV Certification to refute plaintiffs' contention that it is baseless. (*Id.* at 4-14.)

### III. DISCUSSION

#### A. Judgment on the Pleadings Standard

[2] The standard for deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is identical to that under Rule 12(b)(6). All allegations in the Complaint must be taken as true and viewed in the light most favorable to the plaintiff. *Gomez v. Toledo,* 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Robb v. Philadelphia,* 733 F.2d 274, 277 (3d Cir.1984). If, after viewing the allegations in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations, a court shall dismiss for failure to state

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                Page 5

--- F.Supp.2d ----, 2006 WL 267163 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

a claim. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Zynn v. O'Donnell,* 688 F.2d 940, 941 (3d Cir.1982). The narrow issue before the Court, therefore, is whether or not defendant can be found to have engaged in an act of "willful infringement" in this Hatch-Waxman Act case.

**B. Willful Infringement**

The Court of Appeals for the Federal Circuit has held that the prevailing plaintiff in a Hatch Waxman case may recover attorney's fees under Section 285 in "exceptional cases." In *Yamanouchi Pharmaceuticals Company v. Danbury Pharmacal, Inc.,* the owners of a patent that covered an anti-ulcer drug brought a Hatch-Waxman Act suit against a generic drug manufacturer that filed an ANDA and Paragraph IV Certification, which argued their patent was invalid for obviousness. 21 F.Supp.2d 366 (S.D.N.Y.1998). After a bench trial, the United States District Court for the Southern District of New York held the patent was valid, *id.* at 374-75, and awarded plaintiffs attorney's fees, *id.* at 378. In awarding attorney's fees, the court found that the generic drug company's filing of a baseless Paragraph IV Certification constituted willful patent infringement. *Id.* at 377 n. 18. Defendants appealed to the Court of Appeals for Federal Circuit.

The appellate court did not agree with the district court that the generic company had engaged in willful infringement. 231 F.3d at 1347 (stating that the trial court "need not have elevated the ANDA certification into a finding of willful infringement"). Rather, it held that the generic drug company's numerous baseless filings in support of meritless arguments presented "exceptional circumstances" under Section 285. *Id.* at 1347-48. The *Yamanouchi* court, therefore, did not award legal fees for willful infringement.

*\*5 The Federal Circuit clarified *Yamanouchi* with its holding in *Glaxo Group Ltd. v. Apotex, Inc.,* 376 F.3d 1339 (Fed.Cir.2004). In *Glaxo,* defendant filed an ANDA for permission to market a generic version of an antibiotic drug covered by the plaintiffs' patents. Reversing the district court, the

Federal Circuit held that "the mere fact that a company has filed an ANDA application or certification cannot support a finding of willful infringement for purposes of awarding attorney's fees pursuant to 35 U.S.C. § 271(e)(4)." 376 F.3d at 1350-51. The court reasoned as follows:

The Supreme Court has emphasized that 35 U.S.C. § 271(e)(2) and 35 U.S.C. § 271(e)(4) create an "artificial" act of infringement only for a "very limited and technical purpose that relates only to certain drug applications.".... This purpose, as the Supreme Court explains, is to permit patent holders to bring suit against generic companies despite the fact that the generic companies have not yet infringed the patents at issue.... In evaluating 35 U.S.C. § 271(e)(2), we have in our past decisions considered this provision to be primarily a jurisdictional-conferring statute that establishes a case or controversy in a declaratory judgment action.

*Id.* at 1351 (citations omitted). Thus, the *Glaxo* Court held that the district court "erred in hanging a finding of willfulness on such a special purpose peg." *Id.*

District courts that have addressed the issue have disagreed as to whether or not there can be a finding of willful infringement based upon the filing of an ANDA and Paragraph IV Certification. *Compare Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.,* Civ. A. No. 05-1887 (D.N.J. Dec. 30, 2005) (holding it is possible that Novartis may be able to show activity in addition to the ANDA filing to support its claim of willfulness); *Wyeth v. Teva Pharms. USA, Inc.,* Civ. A. No. 03-1293 (D.N.J. Aug. 5, 2004) (finding there could be activity to support willfulness on top of the filing of an ANDA and permitting discovery on the issue); *Eisai Co., Ltd., v. Dr. Reddy's Labs., Ltd.,* Civ. A. No. 03-9053 (S.D.N.Y. Oct. 12, 2004) (denying motion to strike allegations of willfulness and holding the Federal Circuit did not "say there can be no willful infringement in an ANDA case"); *AstraZeneca AB. v. Andrx Pharm., LLC,* Civ. A. No. 04-80 (D.Del. Aug. 11, 2004) (holding that a Paragraph IV Certification could be considered in determining willfulness) *with Aventis Pharma Deutschland GMBH v. Lupin Ltd.,* --- F.Supp.2d ----, 2006 WL 141670, at *7 (E.D.Va. Jan.18, 2006) (holding "

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                          Page 6

--- F.Supp.2d ----, 2006 WL 267163 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**

even a baseless ANDA filing could not constitute an act of willful infringement, though [it] could constitute an exceptional circumstance."); *Aventis Pharma Deutschland GMBH v. Cobalt Pharms ., Inc.,* 355 F.Supp.2d 586, 593 (D.Mass.2005) (holding allegations that defendant filed a baselss ANDA and Paragraph IV Certification are " artificial act[s] of infringement" and "cannot be considered willful [infringement]"). For the reasons that follow, this Court agrees with those district courts that have held there can be no "willful infringement" where, in cases such as this, the allegedly infringing conduct is limited to the highly technical act of infringement sufficient to confer jurisdiction under the Hatch-Waxman Act.

### C. Analysis

**\*6** [3] The Court finds that plaintiff could not recover under the theory that Teva willfully infringed the 805 patent. The *Glaxo* case makes clear that the Hatch-Waxman Act exists for the very limited purpose of creating a technical infringement so that United States district courts can decide whether or not a proposed generic drug, if manufactured, would infringe. Its purpose is to permit the matter to be decided before the drug goes to market and an actual, rather than artificial, act of infringement occurs. *See Glaxo,* 376 F.3d at 1351; *Lupin,* 2006 WL 141670, at \*7 ("[T]he fact that the appellate court in *Glaxo* emphasizes that the purpose of the ANDA process is to create an ' artificial' act of infringement for jurisdictional purposes strongly supports this Court's conclusion that even a baseless ANDA filing may never constitute willful infringement."). Thus, the artificial and highly technical nature of Teva's " infringement" does not rise to the level of a literal act of patent infringement that could give rise to a finding of "willful infringement," as the phrase has been applied under Section 285. While plaintiffs argue Teva's breach of the confidential disclosure agreement supports a finding of willfulness, they have not pled such conduct. Moreover, such conduct perhaps could state a claim for breach of contract but it does not further the plaintiffs' cause with regard to their claim of willful patent infringement. Accordingly, this Court will grant

Teva's motion.

This holding does not prohibit plaintiffs from applying for attorney's fees under the "exceptional cases" provision of Section 285 if they prevail. Willful infringement, however, cannot be among the exceptional circumstances unless and until actual infringement occurs. *See, e.g., Glaxo,* 376 F.3d at 1351 (stating that the purpose of the ANDA filing " is to permit patent holders to bring suit against generic companies despite the facts that the generic companies have not yet infringed the patents at issue."); *Cobalt,* 355 F.Supp.2d at 593 ("[T]he prevailing party may seek to prove that this is an exceptional case, like *Yamanouchi,* involving serious and persistent litigation misconduct."). The Court simply holds that plaintiffs cannot prove willful infringement based upon Teva's alleged conduct to date.

### IV. CONCLUSION

For all of the foregoing reasons, plaintiff's motion is **GRANTED** and paragraph 22 of the Complaint is stricken. The Court will issue an appropriate Order.

D.N.J.,2006.
Celgene Corp. v. Teva Pharms, USA, Inc.
--- F.Supp.2d ----, 2006 WL 267163 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3172280 (Trial Motion, Memorandum and Affidavit) Teva's Memorandum in Support of its Rule 12(c) Motion for Judgment on the Pleadings (Oct. 01, 2005)
• 2005 WL 2899177 (Trial Motion, Memorandum and Affidavit) Teva's Reply Memorandum in Support of its Motion for Issuance of Letters of Request (Sep. 26, 2005)
• 2005 WL 2899174 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Opposition to Defendant's Motion for Issuance of Letters of Request (Sep. 19, 2005)
• 2005 WL 2899172 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment That United States Patent no. 5,908,850 is Invalid (Sep.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                        Page 7

--- F.Supp.2d ----, 2006 WL 267163 (D.N.J.)
**(Cite as: --- F.Supp.2d ----)**


02, 2005)
• 2005 WL 2099100 (Trial Motion, Memorandum
and Affidavit) Brief of Defendant Teva
Pharmaceuticals Usa, Inc. in Support of Its Motion
for Summary Judgment That U.S. Patent No.
5,908,850 is Invalid (Jul. 22, 2005)
• 2004 WL 2481258 (Trial Pleading) Complaint
(Aug. 19, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  C

Westlaw.

--- F.Supp.2d ----                                                                                          Page 1

--- F.Supp.2d ----, 2006 WL 141670 (E.D.Va.)
**(Cite as: --- F.Supp.2d ----)**

**H**
Only the Westlaw citation is currently available.
United States District Court,E.D. Virginia.
AVENTIS PHARMA DEUTSCHLAND GMBH
and King Pharmaceuticals, Inc., Plaintiffs
v.
LUPIN LTD. and Lupin Pharmaceuticals, Inc.
Defendants.
**No. Civ.A. 2:05CV421.**

Jan. 18, 2006.

**Background:** Owner of patent for high blood
pressure drug "ramipril" sued proposed
manufacturer of generic version for infringement.
Proposed manufacturer moved to dismiss claim for
willful infringement.

**2Holding:** The District Court, Doumar, J., held that
filing of allegedly baseless abbreviated new drug
application (ANDA) with Food and Drug
Administration (FDA) does not constitute "willful"
patent infringement.

Motion granted.

See also 403 F.Supp.2d 484.

**[1] Federal Civil Procedure 170A ⊂═1044**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(L) Judgment on the Pleadings
            170AVII(L)1 In General
                170Ak1044 k. Clear Right to
Judgment. Most Cited Cases
To warrant grant of motion for judgment on
pleadings, plaintiff must be precluded from
recovering on his claim as matter of law even if

pleadings are taken as true and construed in light
most favorable to plaintiff. Fed.Rules Civ.Proc.Rule
12(c), 28 U.S.C.A.

**[2] Patents 291 ⊂═325.11(3)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k325 Costs
                291k325.11 Disbursements in General
                    291k325.11(2) Attorney Fees
                        291k325.11(3) k. Award to
Plaintiff. Most Cited Cases
Generic drug manufacturer's filing of allegedly
baseless abbreviated new drug application (ANDA)
with Food and Drug Administration (FDA) does not
constitute "willful" patent infringement, for purpose
of awarding attorney fees, though it can constitute
circumstance that, when combined with others,
justifies exceptional case finding. Federal Food,
Drug, and Cosmetic Act, § 505(b)(2)(A)(iv), 21
U.S.C.A. § 355(b)(2)(A)(iv); 35 U.S.C.A. § 285.

**Patents 291 ⊂═328(2)**

291 Patents
    291XIII Decisions on the Validity, Construction,
and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original Utility. Most Cited
Cases
5,061,722. Cited.

Benjamin Chia-Ho Hsing, Steven James Glassman,
Kaye Scholer LLP, Daniel Lawrence Malone,
Francis Dominic Cerrito, Jonathan Andrew Muenkel
, Jones Day, New York, NY, Dana Johannes Finberg
, Leclair Ryan PC, Richmond, VA, Douglas Allen
Tucker, Kaye Scholer LLP, Sheila Ladan Shadmand
, Jones Day, Washington, DC, for Plaintiffs.
Alice L. Riechers, Deanne M. Mazzochi, Paul J.
Molino, William A. Rakoczy, Rakoczy Molino

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                Page 2

--- F.Supp.2d ----, 2006 WL 141670 (E.D.Va.)
**(Cite as: --- F.Supp.2d ----)**

Mazzochi Siwik LLP, Chicago, IL, Conrad Moss
Shumadine, Willcox & Savage PC, Alan Dale Albert
, Leclair Ryan PC, Norfolk, VA, Dana Johannes
Finberg, Leclair Ryan PC, Richmond, VA, for
Defendants.

*MEMORANDUM OPINION AND ORDER*

DOUMAR, J.
*1 In this case, Plaintiffs Aventis Pharma
Deutschland GMBH ("Aventis") and King
Pharmaceuticals, Inc. ("King") have brought a
two-count suit against Defendants Lupin Ltd. and
Lupin Pharmaceuticals, Inc. for patent infringement
and inducement of infringement. Presently before
the Court is Defendants' motion for judgment on the
pleadings under Fed.R.Civ.P. 12(c), asking this
Court to dismiss Plaintiffs' willful infringement
claim. For the reasons stated herein, Defendants'
motion is GRANTED and the Court DISMISSES
Plaintiffs' willful infringement claim WITHOUT
PREJUDICE to the Court's ability to consider the "
totality of circumstances" should the Court
determine this is an "exceptional case" and fees are
merited pursuant to 35 U.S.C. § 285 at the
conclusion of this litigation.

### I. Background

Plaintiff Aventis owns U.S. Patent No. 5,061,722,
known as the " '722 patent." The '722 patent
involves a pharmaceutical compound known as "
ramipril" that is used to treat high blood pressure.
Co-plaintiff King, the exclusive licensee of the '722
patent, markets ramipril under the trade name "
ALTACE."

On March 18, 2005, Lupin Ltd., a generic drug
company, submitted an "Abbreviated New Drug
Application" ("ANDA") to the Food and Drug
Administration (FDA) seeking approval to market
generic versions of the ramipril capsules developed
by Aventis. Pursuant to the ANDA content
requirements established in 21 U.S.C. § 355(b)
relating to the status of the "pioneer" patent, Lupin
Ltd. certified that Plaintiffs' patent "is invalid or
will not be infringed by the manufacture, use, or
sale of the new drug for which the application is

submitted" under paragraph IV of the provision,
which is commonly known as "paragraph IV
certification." *See* § 355(b)(2)(A)(iv);
*Warner-Lambert Co. v. Apotex Corp.,* 316 F.3d
1348, 1352 (Fed.Cir.2003). As required by 21
U.S.C. § 355(j)(2)(B), Lupin Ltd. also sent a
notification letter to Plaintiffs about its ANDA
application on June 8, 2005.

After receiving the notification letter from Lupin
Ltd., Plaintiffs subsequently filed suit in this Court
on July 19, 2005. On August 29, 2005, Plaintiffs
then filed an Amended Complaint containing two
counts. With respect to Count 1, their patent
infringement claim, Plaintiffs allege:
• Lupin's submission of its ANDA to obtain
approval to engage in the commercial manufacture,
use and sale of Lupin's Ramipril Capsules, prior to
the expiration of the '722 patent, constitutes
infringement of one or more of the claims of that
patent under 35 U.S.C. § 271(e)(2). Pl.'s Am.
Compl. ¶ 20.
• Unless enjoined by this Court, Lupin, upon FDA
approval of Lupin's ANDA, will infringe the '722
patent by making, using, offering to sell, importing,
and selling Lupin's Ramipril Capsules in the United
States. *Id.* ¶ 21.
• Lupin had notice of the '722 patent at the time of
its infringement. Lupin's infringement has been, and
continues to be, willful and deliberate. *Id.* ¶ 23.
*2 • Lupin's Paragraph IV Certification that, in
Lupin's opinion, the '722 patent is invalid,
unenforceable, or will not be infringed by the
commercial manufacture, use or sale of Lupin's
Ramipril Capsules is baseless. *Id.* ¶ 24.
• This case is an exceptional one, and King and
Aventis are entitled to an award of their reasonable
attorney's fees under 35 U.S.C. § 285. *Id.* ¶ 25.
• Plaintiffs will be substantially and irreparably
damaged and harmed if Lupin's infringement is not
enjoined. Plaintiffs do not have an adequate remedy
at law. *Id.* ¶ 26.

With respect to Count 2, their inducing
infringement claim, Plaintiffs allege "[u]pon
information and belief, Lupin Pharmaceuticals, Inc.
has infringed the '722 patent under 35 U.S.C. §
271(b) by actively inducing Lupin Ltd. to infringe
the '722 patent." *Id.* ¶ 28. Plaintiffs conclude their

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                    Page 3

--- F.Supp.2d ----, 2006 WL 141670 (E.D.Va.)
(Cite as: — F.Supp.2d ----)

complaint by requesting the following relief:1. A
judgment declaring that Lupin has infringed, and
that Lupin's making, using, selling, offering to sell
or importing Lupin's Ramipril Capsules and/or its
active ramipril ingredient will infringe the '722
patent;

2. A judgment ordering that the effective date of
any FDA approval for Lupin to sell, use or sell
Lupin's Ramipril Capsules be no earlier than the
date on which the '722 patent expires, and
expiration of any FDA exclusivities relating to
King's ALTACE® drug products;

3. A judgment permanently enjoining Lupin from
making, using, selling, offering to sell, or importing
Lupin's Ramipril Capsules and/or its active ramipril
ingredient until after the expiration of the '722 patent
and any FDA exclusivities relating to King's
ALTACE® drug products;

4. If Lupin engages in the commercial manufacture,
use, offer to sell, or sale of Lupin's Ramipril
Capsules and/or its active ramipril ingredient prior
to the expiration of the '722 patent, a judgment
awarding [P]laintiffs damages resulting from such
infringement, increased to treble the amount found
assessed, together with interest;

5. Attorney's fees in this action pursuant to 35
U.S.C. § 285;

6. Costs and expenses in this action; and

7. Such further and other relief as this Court may
deem just and proper.

*Id.* ¶¶ (A)-(G).

On December 13, 2005, Defendants filed the
present Rule 12(c) motion for judgment on the
pleadings dismissing Plaintiffs' willful infringement
claim. Plaintiffs filed their Memorandum in
Opposition on December 27, 2005. Plaintiffs
replied on December 30, 2005. The motion is
therefore ripe for judicial determination.

II. Discussion

A. Standard of Review

[1] Judgment on the pleadings, as provided by
Fed.R.Civ.P. 12(c), [FN1] "authorizes resolution of a
matter where no genuine issues of material fact
remain and the moving party is entitled to judgment
as a matter of law." *Zeran v. America Online, Inc.,*
958 F.Supp. 1124, 1128 (E.D.Va.1997). When
reviewing a Rule 12(c) dismissal, "the allegations in
the complaint are construed favorably to the
plaintiff." *Bruce v. Riddle,* 631 F.2d 272, 273-74
(4th Cir.1980). "All reasonable inferences" are thus
drawn in favor of the plaintiff, *Zeran,* 958 F.Supp.
at 1128, and a court must "find beyond a doubt that
the plaintiff could prove no set of facts in support of
his claim which would entitle him to relief." *Bruce,*
631 F.2d at 274. Because a Rule 12(c) motion tests
the sufficiency of a claim, it "does not resolve
contests surrounding the facts, the merits of a claim,
or the applicability of defenses." *United States v.
328 Pounds More or Less, of Wild American
Ginseng,* 347 F.Supp.2d 241, 244 (W.D.N.C.2004)
(quoting *Republican Party of North Carolina v.
Martin,* 980 F.2d 943, 952 (4th Cir.1992) (internal
brackets omitted)). Accordingly, in order for a
defendant's Rule 12(c) motion to succeed, the
plaintiff must be precluded from recovering on his
claim as a matter of law even if the pleadings were
taken as true and construed in a light most favorable
to the plaintiff. *Zeran,* 958 F.Supp. at 1128.

B. Analysis

1. The Parties' Arguments

*3 In this case, Defendants argue that Plaintiffs'
allegations cannot support a claim for willful
infringement as a matter of law. Def.'s Mem. in
Supp. of its Rule 12(c) Motion at 4. Citing
paragraphs 20 and 23 of Plaintiff's Amended
Complaint, Defendants maintain "Plaintiffs allege
that Lupin Ltd. willfully infringes the '722 patent
based solely on the filing of Lupin Ltd.'s ANDA
and paragraph IV certification with the FDA" even
though "the Federal Circuit ... has specifically ruled
that such allegations cannot support a finding of
willful infringement." *Id.* at 4. In Defendants' view, "
the Amended Complaint simply contains no
allegations that could support a finding of willful
infringement." *Id.* at 5.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                          Page 4

--- F.Supp.2d ----, 2006 WL 141670 (E.D.Va.)
(Cite as: --- F.Supp.2d ----)

Plaintiffs respond by noting that their Amended Complaint alleges that Defendants' infringement was "willful and deliberate" in paragraph 23, that their paragraph IV certification is "baseless" in paragraph 24, and that the case is "an exceptional one" in paragraph 25. Pl.'s Mem. in Opp. to Def.'s Rule 12(c) Motion at 3. Contending that Defendants misapply *Glaxo Group, Ltd. v. Apotex, Inc.*, 376 F.3d 1339 (Fed.Cir.2004) and *Yamanouchi Pharm. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339 (Fed.Cir.2000), Plaintiffs urge that, because they have alleged more than willful infringement by alleging that the paragraph IV certification is "baseless" and that Defendants have acted deliberately and in bad faith, they are entitled to develop and prove these allegations at trial.

### 2. The Hatch-Waxman Act, Willful Infringement, and Exceptional Cases

The ANDA application procedure was created by Congress in 1984, under what is commonly known as the "Hatch-Waxman Act." *See* 21 U.S.C. § 355; *Warner-Lambert Co.*, 316 F.3d at 1352. The Act was a "compromise between two competing sets of interests:  those of innovative drug manufacturers, who had seen their effective patent terms shortened by the testing and regulatory process; and those of generic drug manufacturers, whose entry into the market upon expiration of the innovator's patents had been delayed by similar regulatory requirements." *Id.* at 1358. The Act, and the ANDA application process it created, is thus designed to accomplish the following: 1) exempt generic drug manufacturers from infringement actions when researching and developing a generic version of a patented drug before the patent has expired, and 2) provide the innovative drug manufacturer the opportunity to protect its patent by allowing it to bring an infringement action pursuant to the generic company's ANDA filing to determine whether the generic drug, *if* marketed, would infringe the patent. *Id.*

To accomplish these goals, one primary purpose of the ANDA filing is to create a "highly artificial" act of infringement to allow for subject matter jurisdiction in a district court to resolve any disputes about infringement *before* the generic drug is sold. *Eli Lily and Co. v. Medtronic, Inc.*, 496 U.S. 661, 679, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990). The purpose "is to permit patent holders to bring suit against generic companies despite the fact that the generic companies have not yet infringed the patents at issue." *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1351 (Fed.Cir.2004). Indeed, the "paragraph IV" certification at issue here, one of four possible required certifications under the statute, demonstrates the anticipatory nature of the dispute, as generic companies must certify in their ANDA application the patent "is invalid or *will not be infringed* by the manufacture, use, or sale of the new drug for which the application is submitted." *See* § 355(b)(2)(A)(iv) (emphasis added); *see also Warner-Lambert*, 316 F.3d at 1352. Accordingly, filing an ANDA application is not a willful act of infringement in and of itself precisely because the ultimate finding of infringement involves an analysis of whether the patent *will be infringed* if the drug is made or marketed-"the inquiries are hypothetical." *Id.* at 1365. The hypothetical nature of the suit is also why "[t]his highly artificial act of infringement gives rise to only a limited set of statutorily-defined consequences set forth in 35 U.S.C. § 271(e)(4)" if actual infringement is shown. *Id.*

**\*4** Under 35 U.S.C. § 271(e)(4), the remedies available to a plaintiff that successfully protects its patent in ANDA cases are:
(A) the court shall order the effective date of any approval of the drug or veterinary biological product involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed,
(B) injunctive relief may be granted against an infringer to prevent the commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug or veterinary biological product, and
(C) damages or other monetary relief may be awarded against an infringer only if there has been commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug or veterinary biological product.
The remedies prescribed by subparagraphs (A), (B),

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                    Page 5

--- F.Supp.2d ----, 2006 WL 141670 (E.D.Va.)
**(Cite as: --- F.Supp.2d ----)**

and (C) are the only remedies which may be granted by a court for an act of infringement described in paragraph (2), except that a court may award attorney fees under section 285.

Section 285, which applies to all patent infringement cases generally, provides that "[t]he court in *exceptional* cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (emphasis added). When assessing whether a case is "exceptional," courts "must look at the totality of the circumstances." *Yamanouchi*, 231 F.3d at 1347. An ordinary case is certainly not " exceptional." Examples of "exceptional cases" for which the United States Court of Appeals for the Federal Circuit has awarded fees in typical patent infringement claims include "inequitable conduct before the PTO, litigation misconduct such as vexatious or unjustified litigation or frivolous filings, and willful infringement." *Glaxo*, 376 F.3d at 1350 (citing *Hoffman-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365 (Fed.Cir.2000); *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1548 (Fed.Cir.1984)).

At this point, when and how a court may award attorney's fees in exceptional cases involving a willful infringement allegation may seem straightforward. It is not. Both parties cite *Glaxo* and *Yamanouchi*, but, of course, interpret and apply them differently. Because *Glaxo* explains *Yamanouchi*, the Court will examine *Glaxo* and its analysis of *Yamanouchi* in detail.

### a. The *Glaxo* Opinions

In *Glaxo*, the Court of Appeals for the Federal Circuit reversed the district court's finding that the generic company's ANDA filing constituted willful infringement because the "mere filing of an ANDA cannot constitute grounds for a willful infringement determination." *Id.* at 1342. Unfortunately, to understand the scope of the appellate court's opinion and what "mere filing" might mean, one must look at the district court's opinion in the case in order to appreciate the case's specific facts.

### i) The District Court's Glaxo *Opinion*

*5 The district court in *Glaxo* concluded that Apotex, the generic company, had willfully infringed because "Apotex's ANDA filing [was] permeated by a lack of due care" and the " non-credible trial testimony of Apotex's witnesses are classic examples of conduct that clearly and convincingly demonstrates willfulness." *Glaxo Group Ltd. v. Apotex, Inc.*, 268 F.Supp.2d 1013, 1033, 1034 (N.D.Ill.2003). The district court first found that the CEO of Apotex, a Dr. Sherman, " never obtained an opinion of independent patent counsel on either non-infringement or invalidity in this case" and relied only on the "hearsay declaration of a hired expert witness" to justify the ANDA filing. *Id.* The district court found that filing an ANDA "without any legal analysis of [drug's] patent rights" to demonstrate a lack of due care. *Id.* at 1034.

The district court also observed that, "[f]aced with [the] admission of infringement in the application he drafted, Dr. Sherman labeled his statement a ' typographical error.' " *Id.* The district court went on to point out that "[t]his attempt to evade as ' errors' or 'mistakes' ... was also the centerpiece of the testimony of another Apotex witness." Moreover, the person actually responsible for the statements, a Dr. Cappuccino, "disavowed any responsibility for the statements and characterized them as unauthorized," which the district court found to be not credible. *Id.* Finally, the district court described yet another witness, a Dr. Siegel, who "found the 'typographical error' to be a convenient explanation." *Id.* In the district court's view, these instances of non-credible testimony exemplified conduct that demonstrates willfulness. *Id.*

In addition, the district court was not persuaded by Apotex's argument that it did not act willfully because it did not provide a written certification when its ANDA was filed. The district court concluded its discussion by finding "the filing of the ANDA by Apotex triggered GlaxoSmithKline's infringement claim and constituted willful infringement in view of the circumstances described above." *Id.* at 1035 (emphasis added).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 141670 (E.D.Va.)
(Cite as: --- F.Supp.2d ----)

Page 6

*ii) The Court of Appeals for the Federal Circuit's*
Glaxo *Opinion*

The Court of Appeals for the Federal Circuit disagreed with the lower court's finding of willful infringement in *Glaxo. Glaxo,* 376 F.3d at 1349. It began its analysis by observing that filing an ANDA "constitutes a 'highly artificial' act of infringement. " *Id.* It then explained the remedies available when a patent owner successfully shows infringement in the ANDA context, noting that attorney's fees may be awarded in exceptional cases. *Id.* at 1350. The appellate court went on to give willful infringement as an example of conduct constituting an " exceptional case" for the purposes of attorney's fees.

In addition to providing this example, however, the Court of Appeals for the Federal Circuit went on to explain it has "limited what types of conduct may give rise to an award of attorney's fees for the purposes [of the ANDA remedies in Section 271(e)(4) ]." *Id.* It then discussed *Yamanouchi,* where it "determined that a baseless and 'wholly unjustified' paragraph IV certification in an ANDA filing, which combined with litigation misconduct, warranted an exceptional case finding" but *not* a " willful infringement finding." *Id.* (emphasis added). While baseless ANDA filings, meritless arguments, and litigation misconduct may constitute an exceptional case finding for the purposes of attorney's fees, the Court of Appeals for the Federal Circuit squarely held that "the mere fact that a company has filed an ANDA application or certification cannot support a finding of willful infringement for the purposes of awarding attorney's fees pursuant to 35 U.S.C. § 271(e)(4)." *Id.*

**\*6** While the *Glaxo* holding is straightforward, the extent of its application is not, because the facts surrounding Apotex's conduct are not included in the appellate opinion. Reading the text alone, the fact that the *Glaxo* court used the word "mere" to describe the act of filing an ANDA application suggests that any action beyond "mere filing" is not included in its standard. Something more than "mere " is usually something different. Thus the following question inevitably arises: could conduct *beyond* the "mere fact of filing an ANDA" support a finding of willful infringement for the purposes of attorney's

fees?

As part of its rationale, the Court of Appeals for the Federal Circuit in *Glaxo* observed that the district court "did not find that Apotex engaged in any litigation misconduct, and Apotex did not file of paragraph IV certification of any kind, let alone one that made baseless accusations of invalidity such as that filed in *Yamanouchi."* [FN2] *Id.* With respect to *Yamanouchi,* the *Glaxo* Court then observed that " the generic had filed numerous baseless filings supporting its fruitless and meritless arguments, both in its case at trial and in its ANDA certification. " *Id.* Accordingly, the *Glaxo* court explained, they determined in *Yamanouchi* that "a baseless and ' wholly unjustified' paragraph IV certification in an ANDA filing, when combined with litigation misconduct, warranted an exceptional case finding." *Id.* at 1350. In this way, while the *Glaxo* court disagreed with the district court's "elevat[ion] of the ANDA certification into a finding of willful infringement," it also observed that the generic company's baseless ANDA certification accompanied by litigation misconduct appropriately resulted in an award of attorney's fees. *Id.* Consequently, after *Glaxo,* it appears to this Court that a district court may not "elevate" an ANDA certification, *even if it is "baseless,"* into a finding of willful infringement for the purposes of attorney's fees; rather, a baseless ANDA certification accompanied by litigation misconduct may result in an award of attorney's fees because such conduct constitutes an "exceptional case." *Aventis Pharma Deutschland GMBH v. Cobalt Pharm.,* 355 F.Supp.2d 586, 591 (D.Mass.2005).

Because *Glaxo* limited *Yamanouchi,* this Court suspects that the *Glaxo* court had the same concerns this Court had with the *Yamanouchi* decision. In *Yamanouchi,* the Court of Appeals for the Federal Circuit affirmed the lower court's decision to award attorneys fees as part of the "totality of circumstances" analysis for exceptional cases. It noted that the Defendants relied on a "legal opinion contain[ing] an acknowledged error in chemistry" and thus found that Defendants' ANDA filing lacked adequate foundation. *Yamanouchi,* 231 F.3d at 1347. The appellate court, unfortunately, did not include facts found in the lower court that mitigates

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                    Page 7

--- F.Supp.2d ----, 2006 WL 141670 (E.D.Va.)
**(Cite as: --- F.Supp.2d ----)**

what seems at first blush, to this Court at any rate, a harsh conclusion, as generally parties may rely on their lawyers' opinion as long as that reliance is reasonable and they adhere to the analysis in good faith. *See Central Soya Co., Inc. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1577 (Fed.Cir.1983). The lower court's opinion in *Yamanouchi,* however, reveals that the lawyer who issued the opinion had a financial interest in the success of the ANDA application, as he would receive as a fee for his opinion "fifty percent of the 'Marginal Gross Profit' of any of the drugs' sales if its corresponding patent challenge was successful." [FN3] *Yamanouchi Pharmaceutical Co. v. Danbury Pharmacal, Inc.,* 21 F.Supp.2d 366, 375 (S.D.N.Y.1998). Given this lawyer's lack of objectivity and obvious bias, which the client was indeed very much involved, the appellate court's affirmation of the exceptional case finding becomes more clear. [FN4]

*7 With these egregious facts in mind, and given that the appellate court in *Glaxo* clarified *Yamanouchi* to emphasize that an ANDA certification should not be "elevated" into a finding of willful infringement, looking at the facts found by the lower court in *Glaxo* only confirms this Court's view that even a baseless ANDA filing could not constitute an act of willful infringement, although a baseless ANDA filing could constitute an exceptional case. As described *supra,* the district court found that the generic company filed what turned out to be a baseless ANDA "without any legal analysis of [drug's] patent rights." *Glaxo,* 268 F.Supp.2d at 1034. The district court also found the generic company's witnesses to not be credible. *Id.* at 1035. Yet the Court of Appeals for the Federal Circuit reversed the willful infringement finding. This strongly suggests that the "mere" filing standard protects a lot of willful conduct indeed surrounding the filing of an ANDA and therefore excludes willful infringement allegations in connection with the ANDA.

[2] Moreover, the fact that the appellate court in *Glaxo* emphasizes that the purpose of the ANDA process is to create an "artificial" act of infringement for jurisdictional purposes strongly supports this Court's conclusion that even a baseless ANDA filing may never constitute willful

infringement. This is so because, as *Glaxo* explains, the purpose of the ANDA filing "is to permit patent holders to bring suit against generic companies *despite the fact that the generic companies have not yet infringed the patents at issue.*" *Glaxo,* 376 F.3d at 1351 (emphasis added). If a generic company has not yet infringed the patent at issue because its infringement in filing an ANDA is only "technical" and "artificial" infringement for jurisdictional purposes, and if the resulting suit is a "hypothetical" one to determine *if* there would be infringement *if* the drug was marketed, *Warner-Lambert,* 316 F.3d at 1365, how could a patent holder accuse the generic company of willful infringement at all in the ANDA context if they can't allege a baseless ANDA filing? The Court is not sure how one could do it. [FN5] Indeed, as discussed *infra,* Plaintiffs' own facts demonstrate they are unable to bring a willful infringement claim unconnected to Defendants' filing of a baseless ANDA.

Finally, the Court is compelled to observe that, given its understanding of the ANDA scheme, excluding allegations of willful infringement based solely on the filing of a baseless ANDA application serves the purposes of the scheme itself, which is clearly to encourage generic companies to participate in the ANDA process so that consumers may benefit from the faster availability of generic drugs. Ultimately, any generic company who loses its patent infringement suit after filing a paragraph IV certification has filed a "baseless" ANDA application. Indeed, it appears to this Court that its entire inquiry in this case will be grounded on the ANDA and whether or not Defendants are correct that the patent is invalid and/or will not be infringed. Thus it comes as no surprise to this Court that *Glaxo* restricts willful infringement claims supported solely by allegations of baseless ANDA applications. While this is so, generic companies may not file baseless ANDA applications with impunity. The *Glaxo* court is at pains to point out that particularly egregious conduct surrounding the filing of the ANDA and in the litigation itself could warrant attorneys fees as an exceptional case, and it uses *Yamanouchi* as an example. *Glaxo,* 376 F.3d at 1350-51. Should the Court find such conduct in this case, it will accordingly utilize the exceptional case analysis provided for by the statute and discussed in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                          Page 8

--- F.Supp.2d ----, 2006 WL 141670 (E.D.Va.)
**(Cite as: --- F.Supp.2d ----)**

*Glaxo.*

#### b. Plaintiffs' Facts

**\*8** While the Court has doubts that a patent holder
may allege willful infringement at all in ANDA
cases given the nature of the ANDA scheme,
Plaintiffs' own pleading defeats the claim because
all they allege is that Defendants willfully and
deliberately filed a baseless ANDA. Plaintiffs allege
Defendants infringed the '722 by filing an ANDA
application. Am. Compl. ¶ 20. Plaintiffs then
allege Defendants "had notice of the '722 patent at
the time of its infringement. [Defendants']
infringement has been, and continues to be, willful
and deliberate." *Id.* ¶ 23. Plaintiffs go on to assert
that Defendants' "Paragraph IV Certification, that in
[its] opinion, the '722 patent is invalid,
unenforceable, or will not be infringed by the
commercial manufacture, use or sale of
[Defendants;] Ramipril Capsules is baseless." *Id.* ¶
24. In this way, Plaintiffs' willful infringement
claim rests, just as Defendants' contend, on the
allegation that Defendants' willfully and deliberately
filed a baseless ANDA application. This is exactly
what *Glaxo* prohibits.

In *Aventis Pharma Deutschland GMBH v. Cobalt
Pharm,* 355 F.Supp.2d 586 (D.Mass.2005), a
district court reached this same conclusion under
facts identical to facts before the Court here. In
*Cobalt Pharm,* Plaintiffs alleged that the generic
company willfully infringed the patent by "filing an
'utterly baseless' paragraph IV certification with the
FDA." 355 F.Supp.2d 586 (D.Mass.2005) (quoting
plaintiff's amended complaint). Cobalt, like
Defendants here, filed a Rule 12(c) Motion asking
that the willful infringement claim be dismissed.
Relying on *Glaxo,* the district court granted Cobalt's
motion, noting that "the only act of infringement
alleged in Plaintiffs' amended complaint is Cobalt's
filing of an ANDA and a paragraph IV certification
with the FDA." *Id.* at 592. "Because this artificial
act of infringement cannot be considered willful,"
the district court went on to explain, "Plaintiffs have
averred no facts that can support a finding of willful
patent infringement." *Id.* The same situation exists
in this case. Defendants' Rule 12(c) motion to

dismiss Plaintiffs' willful infringement claim is
therefore GRANTED without prejudice to the Court
later determining if this is a case is an exceptional
one warranting a willful infringement determination
based on the "totality of circumstances" and
awarding attorney's fees.

#### c. Exceptional Cases

While it is clear from *Glaxo* that a willful
infringement claim may not rest entirely on the "
mere filing" of an ANDA application, even if that
application is baseless, it is also clear that willfully
filing a baseless ANDA application may be
considered "misconduct" as part of the "totality of
the circumstances" should attorney's fees be
awarded as an "exceptional case." *Glaxo,* 376 F.3d
at 1350; *Yamanouchi,* 231 F.3d at 1346-47;
*AstraZeneca Pharm. L.P.,* 2005 WL 2864666 at \*28
. Under *Glaxo,* district courts may consider
willfulness, as long as the allegation does not rest
on the mere filing of an ANDA application, as part
of the "totality of circumstances" analysis for the
purposes of attorney's fees. *Glaxo,* 376 F.3d at 1350
. Even though the Court has dismissed Plaintiffs'
willful infringement claim, the bottom line is that,
should attorney's fees be merited in this case, the
Court ADVISES the parties that this dismissal will
not limit its ability to weigh the "totality of
circumstances" should it find this case to be an "
exceptional" one and attorney's fees merited. *See
Yamanouchi,* 231 F.3d at 1347.

#### III. Conclusion

**\*9** The Court concludes by observing that, in many
respects, both parties make reasonable arguments
based on their interpretations and applications of
*Glaxo* and *Yamanouchi.* The opinions are difficult
to reconcile but not impossible. [FN6] As pointed out
*supra,* in *Yamanouchi,* the relied-on attorney's
opinion was anything but disinterested. Even so, the
*Glaxo* court emphasized that *Yamanouchi'* s
situation was an "exceptional case" and the district
court should not have elevated the conduct
surrounding the baseless ANDA application, which
was based on the very interested and involved

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                  Page 9

--- F.Supp.2d ----, 2006 WL 141670 (E.D.Va.)
(Cite as: --- F.Supp.2d ----)

attorney's opinion, into a finding of willful infringement, but rather "... baseless filings supporting its fruitless and meritless arguments both in its case at trial an in its ANDA certification" merited exceptional circumstances. *Glaxo,* 376 F.3d at 1350. It is obvious that *Glaxo* intended to limit *Yamanouchi* because otherwise the expansion of *Yamanouchi* would eviscerate the ANDA process outlined in the statute. Unfortunately for Plaintiffs, Defendants are absolutely correct that *Glaxo,* the latest case on the subject by the Federal Circuit, squarely holds that a willful infringement claim may not be based solely on the filing of a baseless ANDA application. And that is all Plaintiffs have alleged. This Court will follow the latest case of the Federal Circuit. Accordingly, Defendants' Rule 12(c) motion to dismiss Plaintiffs' willful infringement claim is GRANTED WITHOUT PREJUDICE to its ability to consider whether or not this is an exceptional case and attorney's fees are merited pursuant to 35 U.S.C. § 285 and what may be the "totality of circumstances."

The Clerk is DIRECTED to send a copy of this Memorandum Opinion and Order to all counsel of record by mail and facsimile.

IT IS SO ORDERED.

FN1. Fed.R.Civ.P. Rule 12(c), Motion for Judgment on the Pleadings, provides:
After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FN2. Isn't every failed ANDA filing essentially baseless? As discussed *infra,* the Court is inclined to think so, which is why the *Glaxo* court appears to have been

so concerned about limiting attorneys fees to only exceptional cases where a "wholly unjustified" and baseless ANDA filing is also accompanied by litigation misconduct. *Glaxo Group Ltd. v. Apotex, Inc.,* 376 F.3d 1339, 1350 (Fed.Cir.2004).

FN3. The old adage "look for the money" is often a useful way to understand such conduct.

FN4. This Court has already seen similar types of problems of this nature with some lawyers. *See X-It Products, LLC v. Walter Kidde Portable Equipment, Inc.,* 227 F.Supp.2d 494, 547 (E.D.Va.2002).

FN5. *Glaxo* certainly suggests it is possible, as it gives willful infringement as one of its examples of instances where attorney's fees have properly been awarded. *Id.* at 1350. *Glaxo* appears, however, to be describing exceptional cases in patent law generally when it provides that example, and the lion's share of the opinion consists of a discussion of why the exceptional case analysis as opposed to willful infringement claims are appropriate in ANDA claims. In any event, as discussed *infra,* even if such an allegation is possible, Plaintiffs' have not alleged facts beyond the filing of a baseless ANDA, which *Glaxo* prohibits.

FN6. By utilizing the district courts' opinions in both *Glaxo* and *Yamanouchi,* we can begin to reconcile the two decisions. Because the opinions failed to fully set out the facts in relation to the imposition of attorney's fees in both cases, reviewing the district courts' opinions in those cases makes the appellate court's results at least understandable.
E.D.Va.,2006.
Aventis Pharma Deutschland GMBH v. Lupin Ltd.
--- F.Supp.2d ----, 2006 WL 141670 (E.D.Va.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.