# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. Box 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JACK B. BLUMENFELD
302 351 9291
302 425 3012 Fax
jblumenfeld@mnat.com

November 21, 2006

BY ELECTRONIC FILING

The Honorable Kent A. Jordan
United States District Court
844 King Street
Wilmington, DE 19801

Re:   Boehringer Ingelheim v. Barr and Mylan; C.A. No. 05-700 (Consolidated) (KAJ)

Dear Judge Jordan:

I write on behalf of plaintiffs ("Boehringer") in response to Barr's letter seeking a second day of deposition with Boehringer attorney Alan Stempel. Barr's letter creates the impression that there are two patents in this lawsuit, that Mr. Stempel was solely involved with the prosecution of the patents, that Mr. Stempel wrote the applications for the patent-in-suit and related patents, and that nobody else knows anything about them. Barr also asserts that it was diligent in taking that deposition, but got shortchanged by an evasive witness.

None of those things is correct. As set forth in more detail below, there is one patent in suit. It was based upon German applications written by German patent attorneys, and Barr has taken the deposition of one of the responsible German lawyers for two days and has scheduled the deposition of the other for January. Barr's deposition of Mr. Stempel on October 11 went until 7:30 p.m. and resulted in a transcript of more than 300 pages. Boehringer did nothing to block Barr's examination. Barr, however, chose not to ask a single question about any patent or file wrapper until after lunch, well over 100 pages into the deposition. Barr has not met its burden of showing "good cause" to justify its request that the Court deviate from the deposition limit of the Federal Rules or for making Mr. Stempel endure another seven hours of deposition.

**The '812 Patent**

This case involves the '812 patent. The other two patents referred to in Barr's letter have expired. The '812 patent issued in 1989 based upon 1984 and 1985 German priority applications. The file wrapper of the '812 patent is small. The application was filed in October 1988 and, after one rejection and response, a Notice of Allowability was issued in June 1989. Aside from the applications themselves, the file wrappers for the parent '374 and '086 patents also are quite small.

Mr. Stempel was responsible for the U.S. prosecution of the applications between 1985 and 1989. He did not, however, write those applications. Mr. Stempel had nothing whatsoever to do with most of the "850 pages" to which Barr refers.[1] Boehringer identified Mr. Stempel as knowledgeable

---

[1]   For example, 110 pages of the '374 file history are copies of the German priority applications, written in German.

The Honorable Kent A. Jordan
November 21, 2006
Page 2

about "conception" because conception for United States purposes turned on when the inventions – which were made overseas – were brought into the United States. Mr. Stempel has no knowledge of the making of the inventions overseas and he testified that he did not recall having any communications with the inventors (Ex. A., Tr. 134).

Dr. Rolf Fleischer and Dr. Roger Milnes were responsible for the German priority applications. Neither of them currently works for Boehringer but both have agreed to appear voluntarily for their depositions. Barr has taken Dr. Fleischer's deposition for two days and is scheduled to take Dr. Milnes' deposition in January. Maryellen Devlin was another U.S. attorney listed on the '812 patent. Barr also has taken Ms. Devlin's deposition.

**The Stempel Deposition**

Notwithstanding the one-day, seven-hour limit of Fed. R. Civ. P. 30(d)(2), *before Barr's counsel asked a single question of Mr. Stempel*, Barr insisted on two full days with him. In letters dated September 12, 18 and 21, *without providing any reasons*, Barr sought two days with Mr. Stempel (Ex. B). At the October 11 deposition, Barr did what it could to make sure it would not complete the deposition that day.

Barr claims that it made "diligent efforts" to complete Mr. Stempel's deposition in seven hours. The transcript shows otherwise. Barr's counsel spent the first two and one-half hours asking Mr. Stempel questions relating to background issues and his general practices between 1985 and 1990. (Ex. A, Tr. 6-119). It was not until approximately 2:00 in the afternoon that Barr's counsel asked a single question about any Boehringer patent. Barr then spent until 7:30 p.m., and nearly 200 more transcript pages, questioning Mr. Stempel.

Barr also asserts "continued unwillingness" on Mr. Stempel's part in answering the questions, pointing to two examples, at pages 39 and 69 of the transcript. Neither of those questions had anything to with any patent – they were directed at Mr. Stempel's general practices. Moreover, Mr. Stempel's answers were not at all evasive. A review of the follow-up questions and answers (that Barr failed to provide to the Court) show that Mr. Stempel was endeavoring to respond accurately to the questions. On page 39, once Barr's counsel clarified that by "draft" the patent application, he meant to "write the text of the application," Mr. Stempel then stated that "in some instances," he wrote the text and in other instances, he did not. On page 69, Barr's counsel asked Mr. Stempel whether there were instances in which he filed U.S. counterparts of foreign applications "without having first read the entire application." In answering the question, Mr. Stempel simply explained that "one can read an application word by word, one can skim it. One can focus on certain parts of the application." Those two answers – *the only ones to which Barr points* – certainly provide no basis for taking another day with Mr. Stempel. They were not evasive and they did not lengthen the deposition.

In fact, the deposition transcript shows that it was Barr that was "drawing out the examination." For example, Barr's counsel spent several pages asking Mr. Stempel about his awareness of differences between best mode, written description and other requirements under U.S. and German patent law between 1985 and 1990. (Ex. A, Tr. 74-82.) Barr's counsel also asked whether Mr. Stempel was aware of any instances between 1985 and 1990 where he filed an application as a divisional, but ultimately claims issued that were not directed to nonelected subject matter. Mr. Stempel said that he did not have any specific recollection. Barr's counsel, however, persisted in asking the same question at least four times, and getting the same answer each time. (Ex. A., Tr. 144-49.) He could have spent that time asking about the file wrappers that Barr says he never got to.

**Argument**

The seven-hour limit of Fed. R. Civ. P. 30(d)(2) was instituted for a good reason. The 2000 Advisory Committee Notes refer to "undue costs and delays." Notwithstanding that provision, Barr argues that "[p]reoccupation with timing is to be avoided." Although that may be true, what is not to be avoided is wasting the time and resources of the parties and being unfair to witnesses.[2]

The Advisory Committee Notes provide that "[t]he party seeking a court order to extend the examination . . . is expected to show good cause to justify such an order." Barr has never – either before, during or after Mr. Stempel's deposition – provided any reason that the seven-hour limit should not apply to Mr. Stempel, let alone made a showing of "good cause." All Barr has done is provide conclusory assertions that a prosecuting attorney's testimony is critical and identified *two* questions that it contends (incorrectly) that Mr. Stempel answered evasively. If that were sufficient to show "good cause," then every prosecuting attorney would be subject to 14 hours of deposition. Here, where Mr. Stempel did not even write the words of the application, there is even less reason to deviate from the limit of the Federal Rules.

For whatever unspoken reason, Barr decided at the outset that it wanted to have two days with Mr. Stempel, and it dragged out its seven hours with him in an effort to accomplish that goal. That is confirmed by a review of the transcript. Barr decided to use many of its seven hours asking Mr. Stempel about background, general practices, and differences between U.S. and German law, and at times merely to read documents into the record, when it could have been asking about the things that it now says are "critical." Even now, however, Barr points to nothing specific that it says it needs to ask Mr. Stempel.

Respectfully,

*/s/ Jack B. Blumenfeld (#1014)*

Jack B. Blumenfeld

cc:   Peter T. Dalleo, Clerk (By Hand)
      Mary B. Matterer, Esquire (By Hand and Email)
      Adam Poff, Esquire (By Hand and Email)
      Glenn J. Pfadenhauer, Esquire (By Email)
      David J. Harth, Esquire (By Email)
      Shannon M. Bloodworth, Esquire (By Email)
      Steven C. Cherny, Esquire (By Email)
      Kenneth G. Schuler, Esquire (By Email)

---

[2] Barr also refers to the provision in the scheduling order for "200 hours of depositions." That has nothing to do with this issue. Moreover, that 200 hours in this consolidated action was for Barr and Mylan. Mylan has now opted not to take discovery. Barr's suggestion that it is therefore entitled to use the entire 200 hours allotted to both defendants is unreasonable and unfair. It is questionable whether Barr is even entitled to the entire amount that it and Mylan bargained for based on their representations that they wanted to examine different witnesses.