**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GmbH and BOEHRINGER INGELHEIM PHARMACEUTICAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> MYLAN PHARMACEUTICALS INC., <br><br> Defendant and Counterclaim Plaintiff. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 05-700 *** <br> ) (Consolidated) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MOTION FOR LEAVE TO FILE AMENDED ANSWER, SEPARATE DEFENSES
AND COUNTERCLAIMS OF MYLAN PHARMACEUTICALS INC.**

Pursuant to Fed. R. Civ. P. 15(a) and D. Del. L. R. 15.1, defendant Mylan Pharmaceuticals Inc. ("Mylan") respectfully submits and hereby files a Motion for Leave to File Amended Answer, Separate Defenses and Counterclaims (the "Motion").[1]  Mylan seeks to amend its Answer to include an additional affirmative defense of inequitable conduct and a counterclaim for declaratory judgment of inequitable conduct.  Mylan also seeks to amend its Answer to request that the Court find this case to be an exceptional case within the meaning of 35 U.S.C. § 285.

This  Motion  substantially  and  substantively  mirrors  co-defendant  Barr Laboratories, Inc. and Barr Pharmaceuticals, Inc.'s ("Barr") Unopposed Motion For

---

[1]  Attached  hereto  as  Exhibit A  is  the  Amended  Answer,  Separate  Defenses  and Counterclaims of Mylan Pharmaceuticals with an additional copy, and attached hereto as Exhibit B is a copy of the Amended Complaint, Separate Defenses and Counterclaims marked to show changes from the initial Answer, Separate Defenses and Counterclaims.

Leave To File First Amended Answer And Counterclaims (D.I. 105) ("Barr's Motion"), which was granted on November 13, 2006 (D.I. 106). Plaintiffs Boehringer Ingelheim International GMBH and Boehringer Ingelheim Pharmaceuticals, Inc. (together, "Boehringer") did not oppose Barr's Motion. Counsel for Mylan conferred with counsel for Boehringer, pursuant to D.Del. L.R. 7.1.1. At this time, Boehringer neither consents to nor opposes the granting of this Motion.

This consolidated patent infringement case arises from Mylan's filing of an Abbreviated New Drug Application ("ANDA"), seeking approval to market a generic version of Boehringer's MIRAPEX® tablets in 0.125, 0.25, 0.5, 1.5 and 1 mg dosage forms. Boehringer also filed an action for patent infringement against Barr. The two cases, Civil Action Nos. 05-700 and 05-854 respectively, were consolidated on January 31, 2006 (D.I. 33). By agreement of the parties, fact discovery ends today, January 23, 2007.

For the reasons stated with specificity in the proposed amended complaint, attached hereto, Mylan's inequitable conduct defense is based upon knowledge of one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty of disclosure to the United States Patent and Trademark Office ("USPTO") during the prosecution of the application that matured into the patent-in-suit, United States Patent No. 4,886,812 ("the '812 patent"), which was material to the claimed invention and deliberately withheld with an intent to deceive. Accordingly, the '812 patent is unenforceable for inequitable conduct. The addition of a defense and counterclaim of unenforceability is appropriate because Mylan now has sufficient information to satisfy the heightened pleading requirement for such claims. *See France*

*Telecom S.A. v. Novell, Inc.*, 65 U.S.P.Q.2d (BNA) 1055, 1057 (D. Del. 2002) (holding that allegations of inequitable conduct like other allegations of fraud are subject to the particularity requirements of Fed. R. Civ. P. 9(b)).

Rule 15(a) of the Federal Rules of Civil procedure provides that leave to amend a pleading "shall be freely given when justice so requires." *See also Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp.2d 726, 732 (D. Del. 2002) (quoting Rule 15(a)); *United States for B&R, Inc. v. Donald Lane Constr.*, 19 F. Supp.2d 217, 221 (D. Del. 1998) (same).  Unusual circumstances such as undue delay, bad faith or dilatory motive, prejudice to opposing party, or futility of amendment may justify a denial of leave to amend.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, no such circumstances are present here.  This is the first time Mylan has sought to amend its Answer, Separate Defenses and Counterclaims, and the Motion is brought before the close of fact discovery, is not brought in bad faith or with a dilatory motive, and will not result in any prejudice or undue delay to Boehringer.

Mylan's Motion will not prejudice Boehringer or cause any delay to this action.  First, Mylan's Motion will not place any additional discovery burdens on Boehringer since this Court has already allowed amendments substantively identical to those now proposed by Mylan with respect to Barr, amendments which Boehringer did not oppose.  Second, Boehringer cannot claim that it is prejudiced by Mylan's Motion since it relies on substantively identical facts as those that supported Barr's motion, a motion allowed by the Court and unopposed by Boehringer.  Third, Mylan's proposed amendment will also not delay trial in this action, which is currently scheduled for November 2007.  However, if Mylan's motion were to be denied, Mylan would be severely prejudiced

because it would not be able to proffer a significant defense against Boehringer's allegations of patent infringement – a defense which would be available to its co-defendant and competitor, Barr.

Mylan's request for a finding that this is an exceptional case under 35 U.S.C. § 285 stems from the same facts as those which support Mylan's defense of inequitable conduct. Therefore, no additional fact discovery is necessitated by the additional exceptional case relief nor is there any prejudice to Boehringer in so amending the Answer.

For the reasons set forth above, the granting of Mylan's Motion would serve the interests of justice, and accordingly, this court should permit Mylan to file its proposed amended pleading. (Attached hereto as Exhibit C is a proposed form of order.)

**MORRIS JAMES LLP**
Attorneys for Defendant and
Counterclaim Plaintiff

Mary B. Matterer (#2696)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
(302) 888-6960
mmatterer@morrisjames.com

Of Counsel:

David J. Harth

**HELLER EHRMAN LLP**

One East Main Street, Suite 201

Madison, Wisconsin  53703

(608) 663-7460

Shannon M. Bloodworth

**HELLER EHRMAN LLP**

1717 Rhode Island Avenue, NW

Washington, D.C.  20036

(202) 912-2000

Dated: January 23, 2007

## RULE 7.1.1 CERTIFICATE

The undersigned certifies that movants have made reasonable efforts to reach an agreement with opposing counsel on the matters set forth in this Motion and Boehringer takes the position, as of the time of the filing of this Motion, that it neither consents to nor opposes this Motion.

Mary B. Matterer (#2696)

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GmbH and BOEHRINGER INGELHEIM PHARMACEUTICAL, INC., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> MYLAN PHARMACEUTICALS INC., <br><br> Defendant and Counterclaim Plaintiff. | C.A. No. 05-700 *** (Consolidated) |

**AMENDED ANSWER, SEPARATE DEFENSES AND COUNTERCLAIMS
OF MYLAN PHARMACEUTICALS INC.**

Mylan Pharmaceuticals Inc. ("Mylan"), by its undersigned attorneys, answers and responds to the Complaint of Boehringer Ingelheim International GmbH ("BII") and Boehringer Ingelheim Pharmaceutical, Inc. ("BIPI"), collectively referred to as "Plaintiffs", as follows:

<u>Parties</u>

1.      Mylan admits the allegations of paragraph 1.

2.      Mylan admits the allegations of paragraph 2.

3.      Mylan admits that Mylan is incorporated under the laws of the State of West Virginia and that it has a principal place of business in Morgantown, West Virginia at the address set forth in paragraph 3. Mylan further admits that the quoted statements set forth in paragraph 3 are excerpts from Mylan's website (www.mylanpharms.com) that states, "Last year, pharmacists filled more than 197 million prescriptions with products

from Mylan, making it the #1 US-based manufacturer of generic pharmaceutical products." Mylan is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations set out in paragraph 3 and, therefore, denies those allegations.

4.    Mylan admits the allegations of paragraph 4.

### Jurisdiction and Venue

5.    Mylan admits that Plaintiffs purport to allege an action for patent infringement and that this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.    Mylan admits the allegations of paragraph 6 for purposes of this litigation.

7.    Mylan admits the allegations of paragraph 7.

### Background

8.    Mylan admits that United States Patent No. 4,886,812 ("the '812 patent"), entitled "Tetrahydro-Benzthiazoles, The Preparation thereof and Their Use as Intermediate Products or as Pharmaceuticals" states on its face that it was issued on December 12, 1989 to inventors Gerhart Griss, Claus Schneider, Rudolf Hurnaus, Walter Kobinger, Ludwig Pichler, Rudolf Bauer, Joachim Mierau, Dieter Hinzen and Gunter Schingnitz and assigned to Dr. Karl Thomae GmbH. Mylan denies that the '812 patent was duly and legally issued. Mylan is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations set out in paragraph 8 and, therefore, denies those allegations.

9.    Mylan admits the allegations of paragraph 9.

10.    Mylan admits that the publication *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") is published by the Food and

Drug Administration ("FDA"), as was established by the Federal Food, Drug, and Cosmetic Act. Mylan admits that the '812 patent is listed in the Orange Book. Mylan is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations set out in paragraph 10 and, therefore, denies those allegations.

     11.     Mylan admits the allegations of paragraph 11.

     12.     Mylan admits the allegations of paragraph 12.

     13.     Mylan admits that its letter dated October 26, 2005 stated that the products described in Mylan's Abbreviated New Drug Application ("ANDA") would not infringe any valid claim of the '812 patent. Mylan further admits that its ANDA included a certification pursuant to 21 U.S.C. § 355(j)(2)(vii)(IV). Mylan denies the remaining allegations of paragraph 13.

### Claim for Relief

     14.     Mylan incorporates its foregoing responses to paragraphs 1-13 as if fully set forth herein.

     15.     Mylan denies each and every allegation of paragraph 15.

     16.     Mylan denies each and every allegation of paragraph 16.

     17.     The willfulness allegations contained in Paragraph 17 of the Complaint have been stricken by the Court's Order dated July 6, 2006 (D.I. 71) and remaining allegations, if any, are denied.

     18.     Mylan denies each and every allegation of paragraph 18.

## AMENDED SEPARATE DEFENSES

### First Defense – Non-Infringement

Mylan has not infringed and is not infringing, directly or indirectly, any valid claim of the '812 patent.

### Second Defense – Invalidity

The claims of the '812 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35 of the United States Code.

### Third Defense – Failure to State a Claim

The Complaint fails to state a claim upon which relief can be granted.

### Fourth Defense – Inequitable Conduct

1.      The claims of the '812 patent are unenforceable by reason of inequitable conduct.

2.      The '812 patent matured from U.S. Application Serial No. 256,671, which was filed on October 12, 1988 ("the '671 application").

3.      The '671 application disclosed a general formula that described tetrahydrobenzothiazoles (hereinafter referred to as "'671 General Formula I") and claimed tetrahydrobenzothiazoles of that general formula. In '671 General Formula I, the substituent R1 was defined to include, inter alia, "a phenyl alkyl or phenyl alkanoyl group having 1 to 3 carbon atoms in the alkyl part, whilst the above mentioned phenyl nuclei may be substituted by 1 or 2 halogen atoms" (emphasis added).

4.      While the '671 application was filed, the applicants claimed priority to two German applications, DE 3447075 and DE 3508947, which were filed on December 22, 1984 and March 13, 1985, respectively. The two German applications disclosed a

general formula that described tetrahydrobenzothiazoles (hereinafter referred to as "German General Formula I") and claimed tetrahydrobenzothiazoles of that general formula. In German General Formula I, the substituent R1 was defined to include, inter alia, "a phenyl alkyl or phenyl alkanoyl group having 1 to 3 carbon atoms in the alkyl part." German General Formula I did not include in its definition of R1 the substitution of the phenyl nuclei with 1 or 2 halogen atoms.

5.     In other words, claims in the '671 application were broader than the disclosure of German General Formula I and included new matter that was not supported by the two original German applications.

6.     As a result of the addition of new matter to the '671 application, the priority date or effective filing date of the claims arising out of that application which included halogenated phenyl alkyl groups at the R1 position was December 19, 1985 (the date the first United States application including a disclosure of the new matter was filed) and not December 22, 1984 (the date the first German application was filed). Indeed, at least claims 1, 2, 3, 4 and 8 of the '812 patent cannot claim a priority date any earlier than December 19, 1985.

7.     Upon information and belief, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty of disclosure to the United States Patent and Trademark Office ("USPTO") including Dr. Dieter Laudien, Dr. Roger Milnes, and Dr. Rolf Fleischer, became aware by at least February 2, 1987 that Eli Lilly & Company had filed U.S. Application Serial No. 747,748 ("the Lilly application") with the USPTO on June 24, 1985. Upon information and belief, those individuals, including

Drs. Laudien, Milnes, and Fleischer, also became aware in early 1987 that the Lilly application contained overlapping subject matter with the '671 application.

8.     Upon information and belief, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty of disclosure to the USPTO, including Drs. Laudien, Milnes, and Fleischer, spent nearly two years trying to decide how to proceed given that the Lilly application was filed earlier in the United States and contained overlapping subject matter with the '671 application.    These deliberations included making preparations for possible interference proceedings in the USPTO.

9.     In the course of disclosing the Lilly application to the USPTO during prosecution of the '671 application, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty of disclosure to the USPTO, including Drs. Laudien, Milnes, and Fleischer, caused or knowingly permitted material misstatements of fact to be made concerning the priority date of the '671 application. Specifically, the representations to the USPTO were, <u>inter alia</u>, that the Lilly application "is not available as prior art because its filing date is later than the effective filing date of the above-captioned application.    (The effective filing date of the above-captioned application is 22 December 1984, the date on which the German application for which Convention priority is claimed was filed)."    Those statements were false at the time they were made to the USPTO.

10.     The statements referenced in paragraph 40 were highly material to the prosecution of the '671 application.    Upon information and belief, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty

6

of disclosure to the USPTO, including Drs. Laudien, Milnes, and Fleischer, had knowledge that the representations to the USPTO concerning the priority date of the '671 application were false, and those statements were made and maintained with the intent to deceive the USPTO.

11.     The statements referenced in paragraph 40 were made because, inter alia, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty of disclosure to the USPTO, including Drs. Laudien, Milnes, and Fleischer, knew that if they did not misrepresent the priority date to the USPTO in order to overcome the Lilly application, they would not be able to obtain claims covering some of their particularly preferred compounds.

## AMENDED COUNTERCLAIMS

For their counterclaims against Boehringer Ingelheim International GmbH ("BII") and Boehringer Ingelheim Pharmaceutical, Inc. ("BIPI"), collectively referred to as "Plaintiffs," Mylan Pharmaceuticals Inc. ("Mylan") states as follows:

### Parties

1.     Mylan Pharmaceuticals Inc. is a corporation organized and existing under the laws of the State of West Virginia, having its principal place of business at 781 Chestnut Ridge, Morgantown, West Virginia 26505.

2.     Upon information and belief, Boehringer Ingelheim International GmbH ("BII") is a corporation organized and existing under the laws of Germany, having an office and place of business at Binger Strasse 173, 55216 Ingelheim, Germany.  Upon information and belief, BII or its corporate predecessors have been the owner of the entire right, title and interest in and to U.S. Patent No. 4,886,812 ("the '812 patent").

7

3.     Upon information and belief, Boehringer Ingelheim Pharmaceutical, Inc. ("BIPI") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 900 Ridgebury Road, Ridgefield, Connecticut 06877.  Upon information and belief, BIPI is engaged in the business of marketing prescription pharmaceutical products in the United States.

## Jurisdiction and Venue

4.     The Court has jurisdiction over the subject matter of these counterclaims under 28 U.S.C. §§ 1331, 1338(a) and 2201.

5.     Venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1400 (b).

6.     Plaintiffs are subject to personal jurisdiction in this District.

## First Counterclaim - Declaratory Judgment of Non-Infringement

7.     Paragraphs 1-6 of the Counterclaim are incorporated as if fully set forth herein.

8.     Mylan has not infringed and is not infringing, directly or indirectly, any valid claim of the '812 patent.

9.     Unless Plaintiffs are enjoined, Mylan believes Plaintiffs will continue to assert that Mylan is infringing valid claims of the '812 patent and will continue to interfere with Mylan's business with respect to its ANDA for pramipexole dihydrochloride tablets and those products it proposes to manufacture, use, offer for sale and sell.

10.     Mylan will be irreparably harmed if Plaintiffs are not enjoined from continuing to assert the '812 patent and from interfering with Mylan's business.

11.    Mylan is entitled to a declaratory judgment that Mylan has not infringed, directly or indirectly, any valid claim of the '006 patent.

### Second Counterclaim - Declaratory Judgment of Invalidity

12.    Paragraphs 1-11 of the Counterclaim are incorporated as if fully set forth herein.

13.    The claims of the '812 patent are invalid and unenforceable for failure to meet one or more of the conditions for patentability specified in Title 35 of the United States Code.

14.    Unless Plaintiffs are enjoined, Mylan believes Plaintiffs will continue to assert that Mylan is infringing valid claims of the '812 patent and will continue to interfere with Mylan's business with respect to its ANDA for pramipexole dihydrochloride tablets and those products it proposes to manufacture, use, offer for sale and sell.

15.    Mylan will be irreparably harmed if Plaintiffs are not enjoined from continuing to assert the '812 patent and from interfering with Mylan's business.

16.    Mylan is entitled to a declaratory judgment that the claims of the '812 patent are invalid and unenforceable.

### Third Counterclaim – Declaratory Judgment of Inequitable Conduct

17.    Paragraphs 1-16 of the Counterclaim are incorporated as if fully set forth herein.

18.    The claims of the '812 patent are unenforceable by reason of inequitable conduct, as set forth in greater detail above in Mylan's Fourth Defense which is incorporated herein by reference.

## REQUEST FOR RELIEF

**WHEREFORE**, Mylan respectfully requests that this Court enter judgment:

      a.    dismissing the Complaint with prejudice and denying each and every prayer for relief contained therein;

      b.    declaring that Mylan has not infringed, directly or indirectly, any valid claim of the '812 patent and/or that the '812 patent is invalid;

      c.    declaring the '812 patent to be unenforceable;

      d.    enjoining Plaintiffs, their respective officers, employees, agents, representatives, attorneys and others acting on its behalf, from representing to anyone, either directly or indirectly, that Mylan has infringed or is infringing, directly or indirectly, the '812 patent;

      e.    awarding Mylan its costs in this action;

      f.    awarding Mylan its attorneys' fees pursuant to 35 U.S.C. § 285; and

      g.    awarding to Mylan any such further relief as this Court may deem necessary, just and proper.

**MORRIS JAMES LLP**
Attorneys for Defendant and
Counterclaim Plaintiff


Mary B. Matterer (#2696)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899-2306
(302) 888-6960

<u>Of Counsel</u>:
David J. Harth
**HELLER EHRMAN LLP**
One East Main Street, Suite 201
Madison, Wisconsin 53703
(608) 663-7460

Shannon M. Bloodworth
**HELLER EHRMAN LLP**
1717 Rhode Island Avenue, NW
Washington, D.C. 20036
(202) 912-2000

Dated: January 23, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GmbH and BOEHRINGER INGELHEIM PHARMACEUTICAL, INC., <br><br> Plaintiffs and <br> Counterclaim Defendants, <br><br> v. <br><br> MYLAN PHARMACEUTICALS INC., <br><br> Defendant and <br> Counterclaim Plaintiff. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    C.A. No. 05-700 *** <br> )    (Consolidated) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**AMENDED ANSWER, SEPARATE DEFENSES AND COUNTERCLAIMS
OF MYLAN PHARMACEUTICALS INC.**

Mylan Pharmaceuticals Inc. ("Mylan"), by its undersigned attorneys, answers and responds to the Complaint of Boehringer Ingelheim International GmbH ("BII") and Boehringer Ingelheim Pharmaceutical, Inc. ("BIPI"), collectively referred to as "Plaintiffs", as follows:

<u>Parties</u>

1.      Mylan admits the allegations of paragraph 1.

2.      Mylan admits the allegations of paragraph 2.

3.      Mylan admits that Mylan is incorporated under the laws of the State of West Virginia and that it has a principal place of business in Morgantown, West Virginia at the address set forth in paragraph 3. Mylan further admits that the quoted statements set forth in paragraph 3 are excerpts from Mylan's website (www.mylanpharms.com) that states, "Last year, pharmacists filled more than 197 million prescriptions with products

from Mylan, making it the #1 US-based manufacturer of generic pharmaceutical products." Mylan is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations set out in paragraph 3 and, therefore, denies those allegations.

4.      Mylan admits the allegations of paragraph 4.

### Jurisdiction and Venue

5.      Mylan admits that Plaintiffs purport to allege an action for patent infringement and that this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.      Mylan admits the allegations of paragraph 6 for purposes of this litigation.

7.      Mylan admits the allegations of paragraph 7.

### Background

8.      Mylan admits that United States Patent No. 4,886,812 ("the '812 patent"), entitled "Tetrahydro-Benzthiazoles, The Preparation thereof and Their Use as Intermediate Products or as Pharmaceuticals" states on its face that it was issued on December 12, 1989 to inventors Gerhart Griss, Claus Schneider, Rudolf Hurnaus, Walter Kobinger, Ludwig Pichler, Rudolf Bauer, Joachim Mierau, Dieter Hinzen and Gunter Schingnitz and assigned to Dr. Karl Thomae GmbH. Mylan denies that the '812 patent was duly and legally issued. Mylan is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations set out in paragraph 8 and, therefore, denies those allegations.

9.      Mylan admits the allegations of paragraph 9.

10.      Mylan admits that the publication *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") is published by the Food and

Drug Administration ("FDA"), as was established by the Federal Food, Drug, and Cosmetic Act. Mylan admits that the '812 patent is listed in the Orange Book. Mylan is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations set out in paragraph 10 and, therefore, denies those allegations.

11.     Mylan admits the allegations of paragraph 11.

12.     Mylan admits the allegations of paragraph 12.

13.     Mylan admits that its letter dated October 26, 2005 stated that the products described in Mylan's Abbreviated New Drug Application ("ANDA") would not infringe any valid claim of the '812 patent. Mylan further admits that its ANDA included a certification pursuant to 21 U.S.C. § 355(j)(2)(vii)(IV). Mylan denies the remaining allegations of paragraph 13.

### Claim for Relief

14.     Mylan incorporates its foregoing responses to paragraphs 1-13 as if fully set forth herein.

15.     Mylan denies each and every allegation of paragraph 15.

16.     Mylan denies each and every allegation of paragraph 16.

17.     The willfulness allegations contained in Paragraph 17 of the Complaint have been stricken by the Court's Order dated July 6, 2006 (D.I. 71) and remaining allegations, if any, are denied.

18.     Mylan denies each and every allegation of paragraph 18.

## AMENDED SEPARATE DEFENSES

### First Defense – Non-Infringement

Mylan has not infringed and is not infringing, directly or indirectly, any valid claim of the '812 patent.

### Second Defense – Invalidity

The claims of the '812 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35 of the United States Code.

### Third Defense – Failure to State a Claim

The Complaint fails to state a claim upon which relief can be granted.

### Fourth Defense – Inequitable Conduct

1.    The claims of the '812 patent are unenforceable by reason of inequitable conduct.

2.    The '812 patent matured from U.S. Application Serial No. 256,671, which was filed on October 12, 1988 ("the '671 application").

3.    The '671 application disclosed a general formula that described tetrahydrobenzothiazoles (hereinafter referred to as "'671 General Formula I") and claimed tetrahydrobenzothiazoles of that general formula. In '671 General Formula I, the substituent R1 was defined to include, inter alia, "a phenyl alkyl or phenyl alkanoyl group having 1 to 3 carbon atoms in the alkyl part, whilst the above mentioned phenyl nuclei may be substituted by 1 or 2 halogen atoms" (emphasis added).

4.    While the '671 application was filed, the applicants claimed priority to two German applications, DE 3447075 and DE 3508947, which were filed on December 22, 1984 and March 13, 1985, respectively. The two German applications disclosed a

4

general formula that described tetrahydrobenzothiazoles (hereinafter referred to as "German General Formula I") and claimed tetrahydrobenzothiazoles of that general formula. In German General Formula I, the substituent R1 was defined to include, <u>inter alia</u>, "a phenyl alkyl or phenyl alkanoyl group having 1 to 3 carbon atoms in the alkyl part." German General Formula I did not include in its definition of R1 the substitution of the phenyl nuclei with 1 or 2 halogen atoms.

5.    In other words, claims in the '671 application were broader than the disclosure of German General Formula I and included new matter that was not supported by the two original German applications.

6.    As a result of the addition of new matter to the '671 application, the priority date or effective filing date of the claims arising out of that application which included halogenated phenyl alkyl groups at the R1 position was December 19, 1985 (the date the first United States application including a disclosure of the new matter was filed) and not December 22, 1984 (the date the first German application was filed). Indeed, at least claims 1, 2, 3, 4 and 8 of the '812 patent cannot claim a priority date any earlier than December 19, 1985.

7.    Upon information and belief, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty of disclosure to the United States Patent and Trademark Office ("USPTO") including Dr. Dieter Laudien, Dr. Roger Milnes, and Dr. Rolf Fleischer, became aware by at least February 2, 1987 that Eli Lilly & Company had filed U.S. Application Serial No. 747,748 ("the Lilly application") with the USPTO on June 24, 1985. Upon information and belief, those individuals, including

Drs. Laudien, Milnes, and Fleischer, also became aware in early 1987 that the Lilly application contained overlapping subject matter with the '671 application.

8.     Upon information and belief, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty of disclosure to the USPTO, including Drs. Laudien, Milnes, and Fleischer, spent nearly two years trying to decide how to proceed given that the Lilly application was filed earlier in the United States and contained overlapping subject matter with the '671 application.    These deliberations included making preparations for possible interference proceedings in the USPTO.

9.     In the course of disclosing the Lilly application to the USPTO during prosecution of the '671 application, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty of disclosure to the USPTO, including Drs. Laudien, Milnes, and Fleischer, caused or knowingly permitted material misstatements of fact to be made concerning the priority date of the '671 application. Specifically, the representations to the USPTO were, inter alia, that the Lilly application "is not available as prior art because its filing date is later than the effective filing date of the above-captioned application.    (The effective filing date of the above-captioned application is 22 December 1984, the date on which the German application for which Convention priority is claimed was filed)."  Those statements were false at the time they were made to the USPTO.

10.    The statements referenced in paragraph 40 were highly material to the prosecution of the '671 application.  Upon information and belief, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty

of disclosure to the USPTO, including Drs. Laudien, Milnes, and Fleischer, had knowledge that the representations to the USPTO concerning the priority date of the '671 application were false, and those statements were made and maintained with the intent to deceive the USPTO.

11.    The statements referenced in paragraph 40 were made because, inter alia, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty of disclosure to the USPTO, including Drs. Laudien, Milnes, and Fleischer, knew that if they did not misrepresent the priority date to the USPTO in order to overcome the Lilly application, they would not be able to obtain claims covering some of their particularly preferred compounds.

## AMENDED COUNTERCLAIMS

For their counterclaims against Boehringer Ingelheim International GmbH ("BII") and Boehringer Ingelheim Pharmaceutical, Inc. ("BIPI"), collectively referred to as "Plaintiffs," Mylan Pharmaceuticals Inc. ("Mylan") states as follows:

### Parties

1.    Mylan Pharmaceuticals Inc. is a corporation organized and existing under the laws of the State of West Virginia, having its principal place of business at 781 Chestnut Ridge, Morgantown, West Virginia 26505.

2.    Upon information and belief, Boehringer Ingelheim International GmbH ("BII") is a corporation organized and existing under the laws of Germany, having an office and place of business at Binger Strasse 173, 55216 Ingelheim, Germany.  Upon information and belief, BII or its corporate predecessors have been the owner of the entire right, title and interest in and to U.S. Patent No. 4,886,812 ("the '812 patent").

3.      Upon information and belief, Boehringer Ingelheim Pharmaceutical, Inc. ("BIPI") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 900 Ridgebury Road, Ridgefield, Connecticut 06877.   Upon information and belief, BIPI is engaged in the business of marketing prescription pharmaceutical products in the United States.

### Jurisdiction and Venue

4.      The Court has jurisdiction over the subject matter of these counterclaims under 28 U.S.C. §§ 1331, 1338(a) and 2201.

5.      Venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1400 (b).

6.      Plaintiffs are subject to personal jurisdiction in this District.

### First Counterclaim - Declaratory Judgment of Non-Infringement

7.      Paragraphs 1-6 of the Counterclaim are incorporated as if fully set forth herein.

8.      Mylan has not infringed and is not infringing, directly or indirectly, any valid claim of the '812 patent.

9.      Unless Plaintiffs are enjoined, Mylan believes Plaintiffs will continue to assert that Mylan is infringing valid claims of the '812 patent and will continue to interfere with Mylan's business with respect to its ANDA for pramipexole dihydrochloride tablets and those products it proposes to manufacture, use, offer for sale and sell.

10.     Mylan will be irreparably harmed if Plaintiffs are not enjoined from continuing to assert the '812 patent and from interfering with Mylan's business.

8

11.    Mylan is entitled to a declaratory judgment that Mylan has not infringed, directly or indirectly, any valid claim of the '006 patent.

### Second Counterclaim - Declaratory Judgment of Invalidity

12.    Paragraphs 1-11 of the Counterclaim are incorporated as if fully set forth herein.

13.    The claims of the '812 patent are invalid and unenforceable for failure to meet one or more of the conditions for patentability specified in Title 35 of the United States Code.

14.    Unless Plaintiffs are enjoined, Mylan believes Plaintiffs will continue to assert that Mylan is infringing valid claims of the '812 patent and will continue to interfere with Mylan's business with respect to its ANDA for pramipexole dihydrochloride tablets and those products it proposes to manufacture, use, offer for sale and sell.

15.    Mylan will be irreparably harmed if Plaintiffs are not enjoined from continuing to assert the '812 patent and from interfering with Mylan's business.

16.    Mylan is entitled to a declaratory judgment that the claims of the '812 patent are invalid and unenforceable.

### Third Counterclaim – Declaratory Judgment of Inequitable Conduct

17.    Paragraphs 1-16 of the Counterclaim are incorporated as if fully set forth herein.

18.    The claims of the '812 patent are unenforceable by reason of inequitable conduct, as set forth in greater detail above in Mylan's Fourth Defense which is incorporated herein by reference.

## REQUEST FOR RELIEF

**WHEREFORE**, Mylan respectfully requests that this Court enter judgment:

      a.     dismissing the Complaint with prejudice and denying each and every prayer for relief contained therein;

      b.     declaring that Mylan has not infringed, directly or indirectly, any valid claim of the '812 patent and/or that the '812 patent is invalid;

      c.     declaring the '812 patent to be unenforceable;

      d.     enjoining Plaintiffs, their respective officers, employees, agents, representatives, attorneys and others acting on its behalf, from representing to anyone, either directly or indirectly, that Mylan has infringed or is infringing, directly or indirectly, the '812 patent;

      e.     awarding Mylan its costs in this action;

      f.     awarding Mylan its attorneys' fees pursuant to 35 U.S.C. § 285; and

      g.     awarding to Mylan any such further relief as this Court may deem necessary, just and proper.

**MORRIS JAMES LLP**
Attorneys for Defendant and
Counterclaim Plaintiff

Mary B. Matterer (#2696)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899-2306
(302) 888-6960

10

<u>Of Counsel</u>:
David J. Harth
**HELLER EHRMAN LLP**
One East Main Street, Suite 201
Madison, Wisconsin  53703
(608) 663-7460

Shannon M. Bloodworth
**HELLER EHRMAN LLP**
1717 Rhode Island Avenue, NW
Washington, D.C.  20036
(202) 912-2000

Dated: January 23, 2007

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GmbH and BOEHRINGER INGELHEIM PHARMACEUTICAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> MYLAN PHARMACEUTICALS INC., <br><br> Defendant and Counterclaim Plaintiff. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br> C.A. No. 05-700 *** <br> (Consolidated) |

## <u>AMENDED</u> ANSWER, SEPARATE DEFENSES AND COUNTERCLAIMS OF MYLAN PHARMACEUTICALS INC.

Mylan Pharmaceuticals Inc. ("Mylan"), by its undersigned attorneys, answers and responds to the Complaint of Boehringer Ingelheim International GmbH ("BII") and Boehringer Ingelheim Pharmaceutical, Inc. ("BIPI"), collectively referred to as "Plaintiffs", as follows:

### Parties

1.    Mylan admits the allegations of paragraph 1.

2.    Mylan admits the allegations of paragraph 2.

3.    Mylan admits that Mylan is incorporated under the laws of the State of West Virginia and that it has a principal place of business in Morgantown, West Virginia at the address set forth in paragraph 3. Mylan further admits that the quoted statements set forth in paragraph 3 are excerpts from Mylan's website (www.mylanpharms.com) that

states, "Last year, pharmacists filled more than 197 million prescriptions with products from Mylan, making it the #1 US-based manufacturer of generic pharmaceutical products." Mylan is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations set out in paragraph 3 and, therefore, denies those allegations.

     4.     Mylan admits the allegations of paragraph 4.

## Jurisdiction and Venue

     5.     Mylan admits that Plaintiffs purport to allege an action for patent infringement and that this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

     6.     Mylan admits the allegations of paragraph 6 for purposes of this litigation.

     7.     Mylan admits the allegations of paragraph 7.

## Background

     8.     Mylan admits that United States Patent No. 4,886,812 ("the '812 patent"), entitled "Tetrahydro-Benzthiazoles, The Preparation thereof and Their Use as Intermediate Products or as Pharmaceuticals" states on its face that it was issued on December 12, 1989 to inventors Gerhart Griss, Claus Schneider, Rudolf Hurnaus, Walter Kobinger, Ludwig Pichler, Rudolf Bauer, Joachim Mierau, Dieter Hinzen and Gunter Schingnitz and assigned to Dr. Karl Thomae GmbH. Mylan denies that the '812 patent was duly and legally issued. Mylan is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations set out in paragraph 8 and, therefore, denies those allegations.

     9.     Mylan admits the allegations of paragraph 9.

10.    Mylan admits that the publication *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") is published by the Food and Drug Administration ("FDA"), as was established by the Federal Food, Drug, and Cosmetic Act. Mylan admits that the '812 patent is listed in the Orange Book. Mylan is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations set out in paragraph 10 and, therefore, denies those allegations.

11.    Mylan admits the allegations of paragraph 11.

12.    Mylan admits the allegations of paragraph 12.

13.    Mylan admits that its letter dated October 26, 2005 stated that the products described in Mylan's Abbreviated New Drug Application ("ANDA") would not infringe any valid claim of the '812 patent. Mylan further admits that its ANDA included a certification pursuant to 21 U.S.C. § 355(j)(2)(vii)(IV). Mylan denies the remaining allegations of paragraph 13.

### Claim for Relief

14.    Mylan incorporates its foregoing responses to paragraphs 1-13 as if fully set forth herein.

15.    Mylan denies each and every allegation of paragraph 15.

16.    Mylan denies each and every allegation of paragraph 16.

17.    [Mylan denies each and every allegation of paragraph 17.] <u>The willfulness allegations contained in Paragraph 17 of the Complaint have been stricken by the Court's Order dated July 6, 2006 (D.I. 71) and remaining allegations, if any, are denied.</u>

18.    Mylan denies each and every allegation of paragraph 18.

3

<u>**AMENDED SEPARATE DEFENSES**</u>

<u>**First Defense – Non-Infringement**</u>

Mylan has not infringed and is not infringing, directly or indirectly, any valid claim of the '812 patent.

<u>**Second Defense – Invalidity**</u>

The claims of the '812 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35 of the United States Code.

<u>**Third Defense – Failure to State a Claim**</u>

The Complaint fails to state a claim upon which relief can be granted.

<u>**Fourth Defense – Inequitable Conduct**</u>

1.    The claims of the '812 patent are unenforceable by reason of inequitable conduct.

2.    The '812 patent matured from U.S. Application Serial No. 256,671, which was filed on October 12, 1988 ("the '671 application").

3.    The '671 application disclosed a general formula that described tetrahydrobenzothiazoles (hereinafter referred to as "'671 General Formula I") and claimed tetrahydrobenzothiazoles of that general formula. In '671 General Formula I, the substituent R1 was defined to include, inter alia, "a phenyl alkyl or phenyl alkanoyl group having 1 to 3 carbon atoms in the alkyl part, whilst the above mentioned phenyl nuclei may be substituted by 1 or 2 halogen atoms" (emphasis added).

4.    While the '671 application was filed, the applicants claimed priority to two German applications, DE 3447075 and DE 3508947, which were filed on December 22, 1984 and March 13, 1985, respectively. The two German applications disclosed a

general formula that described tetrahydrobenzothiazoles (hereinafter referred to as "German General Formula I") and claimed tetrahydrobenzothiazoles of that general formula. In German General Formula I, the substituent R1 was defined to include, inter alia, "a phenyl alkyl or phenyl alkanoyl group having 1 to 3 carbon atoms in the alkyl part." German General Formula I did not include in its definition of R1 the substitution of the phenyl nuclei with 1 or 2 halogen atoms.

5.    In other words, claims in the '671 application were broader than the disclosure of German General Formula I and included new matter that was not supported by the two original German applications.

6.    As a result of the addition of new matter to the '671 application, the priority date or effective filing date of the claims arising out of that application which included halogenated phenyl alkyl groups at the R1 position was December 19, 1985 (the date the first United States application including a disclosure of the new matter was filed) and not December 22, 1984 (the date the first German application was filed). Indeed, at least claims 1, 2, 3, 4 and 8 of the '812 patent cannot claim a priority date any earlier than December 19, 1985.

7.    Upon information and belief, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty of disclosure to the United States Patent and Trademark Office ("USPTO") including Dr. Dieter Laudien, Dr. Roger Milnes, and Dr. Rolf Fleischer, became aware by at least February 2, 1987 that Eli Lilly & Company had filed U.S. Application Serial No. 747,748 ("the Lilly application") with the USPTO on June 24, 1985. Upon information and belief, those individuals, including

Drs. Laudien, Milnes, and Fleischer, also became aware in early 1987 that the Lilly application contained overlapping subject matter with the '671 application.

8.     Upon information and belief, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty of disclosure to the USPTO, including Drs. Laudien, Milnes, and Fleischer, spent nearly two years trying to decide how to proceed given that the Lilly application was filed earlier in the United States and contained overlapping subject matter with the '671 application.  These deliberations included making preparations for possible interference proceedings in the USPTO.

9.     In the course of disclosing the Lilly application to the USPTO during prosecution of the '671 application, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty of disclosure to the USPTO, including Drs. Laudien, Milnes, and Fleischer, caused or knowingly permitted material misstatements of fact to be made concerning the priority date of the '671 application. Specifically, the representations to the USPTO were, inter alia, that the Lilly application "is not available as prior art because its filing date is later than the effective filing date of the above-captioned application.  (The effective filing date of the above-captioned application is 22 December 1984, the date on which the German application for which Convention priority is claimed was filed)."  Those statements were false at the time they were made to the USPTO.

10.     The statements referenced in paragraph 40 were highly material to the prosecution of the '671 application.  Upon information and belief, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty

6

of disclosure to the USPTO, including Drs. Laudien, Milnes, and Fleischer, had knowledge that the representations to the USPTO concerning the priority date of the '671 application were false, and those statements were made and maintained with the intent to deceive the USPTO.

11.    The statements referenced in paragraph 40 were made because, inter alia, one or more of the inventors' representatives and others working at Boehringer and its affiliates with a duty of disclosure to the USPTO, including Drs. Laudien, Milnes, and Fleischer, knew that if they did not misrepresent the priority date to the USPTO in order to overcome the Lilly application, they would not be able to obtain claims covering some of their particularly preferred compounds.

## AMENDED COUNTERCLAIMS

For their counterclaims against Boehringer Ingelheim International GmbH ("BII") and Boehringer Ingelheim Pharmaceutical, Inc. ("BIPI"), collectively referred to as "Plaintiffs," Mylan Pharmaceuticals Inc. ("Mylan") states as follows:

### Parties

1.    Mylan Pharmaceuticals Inc. is a corporation organized and existing under the laws of the State of West Virginia, having its principal place of business at 781 Chestnut Ridge, Morgantown, West Virginia 26505.

2.    Upon information and belief, Boehringer Ingelheim International GmbH ("BII") is a corporation organized and existing under the laws of Germany, having an office and place of business at Binger Strasse 173, 55216 Ingelheim, Germany.  Upon

information and belief, BII or its corporate predecessors have been the owner of the entire right, title and interest in and to U.S. Patent No. 4,886,812 ("the '812 patent").

3.    Upon information and belief, Boehringer Ingelheim Pharmaceutical, Inc. ("BIPI") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 900 Ridgebury Road, Ridgefield, Connecticut 06877.    Upon information and belief, BIPI is engaged in the business of marketing prescription pharmaceutical products in the United States.

<b><u>Jurisdiction and Venue</u></b>

4.    The Court has jurisdiction over the subject matter of these counterclaims under 28 U.S.C. §§ 1331, 1338(a) and 2201.

5.    Venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1400 (b).

6.    Plaintiffs are subject to personal jurisdiction in this District.

<b><u>First Counterclaim - Declaratory Judgment of Non-Infringement</u></b>

7.    Paragraphs 1-6 of the Counterclaim are incorporated as if fully set forth herein.

8.    Mylan has not infringed and is not infringing, directly or indirectly, any valid claim of the '812 patent.

9.    Unless Plaintiffs are enjoined, Mylan believes Plaintiffs will continue to assert that Mylan is infringing valid claims of the '812 patent and will continue to interfere with Mylan's business with respect to its ANDA for pramipexole dihydrochloride tablets and those products it proposes to manufacture, use, offer for sale and sell.

10.     Mylan will be irreparably harmed if Plaintiffs are not enjoined from continuing to assert the '812 patent and from interfering with Mylan's business.

11.     Mylan is entitled to a declaratory judgment that Mylan has not infringed, directly or indirectly, any valid claim of the '006 patent.

**Second Counterclaim - Declaratory Judgment of Invalidity**

12.     Paragraphs 1-11 of the Counterclaim are incorporated as if fully set forth herein.

13.     The claims of the '812 patent are invalid and unenforceable for failure to meet one or more of the conditions for patentability specified in Title 35 of the United States Code.

14.     Unless Plaintiffs are enjoined, Mylan believes Plaintiffs will continue to assert that Mylan is infringing valid claims of the '812 patent and will continue to interfere with Mylan's business with respect to its ANDA for pramipexole dihydrochloride tablets and those products it proposes to manufacture, use, offer for sale and sell.

15.     Mylan will be irreparably harmed if Plaintiffs are not enjoined from continuing to assert the '812 patent and from interfering with Mylan's business.

16.     Mylan is entitled to a declaratory judgment that the claims of the '812 patent are invalid.

**Third Counterclaim – Declaratory Judgment of Inequitable Conduct**

17.     Paragraphs 1-16 of the Counterclaim are incorporated as if fully set forth herein.

18.     The claims of the '812 patent are unenforceable by reason of inequitable conduct, as set forth in greater detail above in Mylan's Fourth Defense which is incorporated herein by reference.

## REQUEST FOR RELIEF

**WHEREFORE**, Mylan respectfully requests that this Court enter judgment:

a.     dismissing the Complaint with prejudice and denying each and every prayer for relief contained therein;

b.     declaring that Mylan has not infringed, directly or indirectly, any valid claim of the '812 patent and/or that the '812 patent is invalid;

c.     declaring the '812 patent to be unenforceable;

d.     enjoining Plaintiffs, their respective officers, employees, agents, representatives, attorneys and others acting on its behalf, from representing to anyone, either directly or indirectly, that Mylan has infringed or is infringing, directly or indirectly, the '812 patent; and

e.     awarding Mylan its costs in this action;

f.     awarding Mylan its attorneys' fees pursuant to 35 U.S.C. § 285; and

g.     awarding to Mylan any such further relief as this Court may deem necessary, just and proper.

10

[MORRIS, JAMES, HITCHENS
& WILLIAMS LLP]
MORRIS JAMES LLP
Attorneys for Defendant and
Counterclaim Plaintiff


_____

Mary B. Matterer (#2696)
[222 Delaware Avenue, 10th Floor]
500 Delaware Ave., Suite 1500
Wilmington, DE [19801]
                  19899-2306
(302) 888-6960


Of Counsel:
David J. Harth
[David L. Anstaett]
[Melody K. Glazer]
HELLER EHRMAN LLP
One East Main Street, Suite 201
Madison, Wisconsin  53703
(608) 663-7460

Shannon M. Bloodworth
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, D.C.  20036
(202) 912-2000

Dated: [January 4, 2006] January 23, 2007

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GmbH and BOEHRINGER INGELHEIM PHARMACEUTICAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> MYLAN PHARMACEUTICALS INC., <br><br> Defendant and <br> Counterclaim Plaintiff. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 05-700 *** <br> ) (Consolidated) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER

Defendant Mylan Pharmaceuticals Inc. ("Mylan"), having moved the Court for leave to amend its Answer, Separate Defenses and Counterclaims;

Upon consideration of the Motion

IT IS HEREBY ORDERED this _____ day of _____, 2007, that:

Mylan's Motion For Leave to File Amended Answer, Separate Defenses and Counterclaims is granted.  The amended pleading shall be deemed filed and served as of the date of this Order.

_____
U.S.D.J.

## CERTIFICATE OF SERVICE

I, Mary B. Matterer, hereby certify that on January 23, 2007, I caused to be

electronically filed a Motion For Leave To File Amended Answer, Separate Defenses and

Counterclaims of Mylan Pharmaceuticals Inc. with the Clerk of the Court using CM/ECF,

which will send notification of such filings to the following:

> Jack B. Blumenfeld, Esquire
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899

and that I caused copies to be served upon the following in the manner indicated:

### VIA EMAIL AND HAND DELIVERY (both on 1/23/2007)

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

Josy W. Ingersoll, Esq.
Adam W. Poff, Esq.
Young Conaway Stargatt & Taylor
1000 West Street, 17th Floor
Wilmington, DE 19801

### VIA EMAIL (on 1/23/2007) AND FEDERAL EXPRESS (on 1/24/2007)

Steven C. Cherny, Esquire
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834

Kenneth G. Schuler, Esquire
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL 60606

Glenn J. Pfadenhauer, Esq.
Jessamyn S. Berniker, Esq.
Williams & Connolly LLP
725 Twelfth Street, NW
Washington, DC 20005

**MORRIS JAMES LLP**

*Mary B. Matterer*

Mary B. Matterer (#2696)
500 Delaware Ave., Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
(302) 888-6960
mmatterer@morrisjames.com
Attorneys for Defendant and Counterclaim Plaintiff
Mylan Pharmaceuticals Inc.