## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 05-700-(***) CONSOLIDATED |
| BARR LABORATORIES, INC., | ) ) | |
| Defendant. | ) ) | |
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 05-854-(***) |
| MYLAN PHARMACEUTICALS, INC., | ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT BARR LABORATORIES, INC.'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORT OF DALE H. HOSCHEIT, ESQ.

OF COUNSEL:
Glenn J. Pfadenhauer
Jessamyn S. Berniker
Dov P. Grossman
Brett R. Tobin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Adam W. Poff (#3990)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
apoff@ycst.com

*Attorneys for Defendant*
*Barr Laboratories, Inc.*

Dated: June 13, 2007

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 4

I.     MR. HOSCHEIT'S OPINIONS ARE ADMISSIBLE ................................................. 4

    A.    Courts Have Wide Discretion To Admit Expert Testimony................................ 5

    B.    Courts Routinely Allow Patent Practice Experts To Testify at Trial .................... 5

    C.    Mr. Hoscheit's Report Will Assist the Trier of Fact ........................................... 7

    D.    Mr. Hoscheit Does Not Opine on Legal Issues .................................................. 7

    E.    Mr. Hoscheit Does Not Need to Be Skilled In the Underlying Technology to Offer An Opinion. .......................................................... 9

II.    BOEHRINGER'S MOTION IS PREMATURE ........................................................ 10

CONCLUSION .................................................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Abbott Laboratories v. Syntron Bioresearch, Inc.*, No. 98-CV-2359 H (POR), 2001 WL 34082555 (S.D. Cal. Aug. 24, 2001) ............................................................................ 9

*Armament Systems & Procedures, Inc. v. IQ Hong Kong Ltd.*, No. 00-C-1257, 2007 U.S. Dist. LEXIS 31306 (E.D. Wis. Apr. 27, 2007) ....................................................... 5, 8-9

*Berg Electronics, Inc. v. Molex, Inc.*, No. 94-470-RRM (D. Del. Sept. 26, 1995) ....................... 6

*Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316 (3d Cir. 2003) ...................................... 5

*Edward Lowe Industries, Inc. v. Oil-Dri Corp. of America*, No. 94 C 7568, 1995 WL 683769 (N.D. Ill. Nov. 16, 1995) ..................................................................................... 6

*Linkstrom v. Golden T. Farms*, 883 F.2d 269 (3d Cir. 1989) ........................................................ 5

*Lucas Aerospace, Ltd. v. Unison Industrial, L.P.*, No. 93-525-MMS (D. Del. Mar. 9, 1995) ...................................................................................................................................... 5

*Neupak, Inc. v. Ideal Manufacturing & Sales Corp.*, 168 F. Supp. 2d 1012 (D. Minn. 2001) ...................................................................................................................................... 9

*Oetiker v. Juird Werke GmbH*, No. 74-1670, 1981 WL 2025 (D.D.C. Feb. 17, 1981) ............... 6

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, No. 96-5541 (MLC), 2004 WL 1398227 (D.N.J. June 17, 2004), *aff'd*, 411 F.3d 1332 (Fed. Cir. 2005) ...................... 5-6

*Proctor & Gamble Co. v. Teva Pharmaceuticals. USA, Inc.*, No. Civ. A. 04-940-JJF, 2006 WL 2241018 (D. Del. Aug. 4, 2006) ................................................................... 5, 8

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359 (Fed. Cir. 2001) .............. 8

*Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132 (N.D. Cal. 2003) .................................... 6, 10

*Revlon Consumer Products Corp. v. L'Oreal S.A.*, No. 96-192-MMS, 1997 U.S. Dist. LEXIS 4117 (D. Del. Mar. 26, 1997) ................................................................... 5, 8

*Seaboard Lumber Co. v. United States*, 308 F.3d 1283 (Fed. Cir. 2002) .................................... 5

*Thorn EMI N. America Inc. v. Micron Tech., Inc.*, No. 92-673-RRM (D. Del. Nov. 23, 1993) ................................................................................................................................ 6, 7

*Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991) ..................................................... 8

*Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268 (Fed. Cir. 1985)....................................... 6

*Zollinger v. Qualitex, Inc.*, No. 84-1630, 1989 WL 3473 (E.D. Pa. Jan. 17, 1989)....................... 6

**FEDERAL STATUTES**

35 U.S.C. § 102(g) (2000) ........................................................................................................... 2

35 U.S.C. § 112 (2000)................................................................................................................. 8

35 U.S.C. § 121 (2000)................................................................................................................. 3

Fed. R. Evid. 702......................................................................................................................... 5

## INTRODUCTION

Brushing aside the countless cases where courts have admitted the testimony of patent practice experts—including the very decisions relied on in their Motion—Plaintiffs ask this Court to preclude all testimony by Defendant's expert, Dale Hoscheit, Esq., including testimony that will walk through three lengthy and interrelated prosecution histories that are central to Barr's defenses in this action.  Although the extent to which testimony by patent practice experts should be admitted in a bench trial is a discretionary one for the trial judge, most judges, including judges of this Court, have generally allowed at least some limited testimony including the type of testimony contained in Mr. Hoscheit's expert report.  Accordingly, Plaintiffs' Motion to Strike Mr. Hoscheit's entire report should be denied.

Even if Plaintiffs' Motion had any substantive merit, which it does not, the Court should decline to entertain it at this time because:  (1) it would be inappropriate to make a determination as to the scope of trial testimony in a case that will likely be tried by a judge whose views on this issue are not presently known to the Court; and (2) it is premature in light of the Scheduling Order's prohibition against filing motions *in limine* separately from the pretrial order.[1]

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharmaceutical, Inc. (collectively "Boehringer" or "Plaintiffs") have asserted that Defendant Barr Laboratories, Inc. ("Barr") literally infringes claims 3–5 and 7–10 of U.S. Patent No. 4,886,812 ("the '812 patent") based on Barr's filing of an Abbreviated New Drug Application

---

[1] References to Plaintiffs' Motion will have the format "Mot. at __"; exhibits thereto will be cited as "Mot. at Ex. ___."  References to Mr. Hoscheit's expert report, which was Exhibit A to Plaintiffs' Motion, will hereinafter be cited as "Hoscheit ¶ ___."

for generic pramipexole dihydrochloride tablets.   In defending this action, Barr has disputed, *inter alia*, the validity and enforceability of the '812 patent.  Specifically, Barr contends that the asserted claims of the '812 patent are invalid for non-statutory double patenting, that the patent is unenforceable because of misstatements Boehringer made during prosecution regarding its foreign priority date, and that the invention is anticipated under 35 U.S.C. § 102(g) by work performed by individuals at Eli Lilly & Company.

        The parties are currently engaged in expert discovery.  Mr. Hoscheit's report was served by Barr on March 28, 2007 (the date opening expert reports were due), along with two other expert reports that relate to factual bases for Barr's double patenting, inequitable conduct, and § 102(g) defenses.  Responsive expert reports were served on May 18, 2007, but none of Boehringer's five experts (including two chemists) challenged the opinions expressed in Barr's expert reports with respect to the double patenting issue.  Boehringer did not proffer an expert to respond to Mr. Hoscheit's report, nor does it dispute that Mr. Hoscheit is an expert in the field of patent practice.

## BACKGROUND

        The prosecution history of the '812 patent, as well as the prosecution histories for the two other patents from within the same patent family (U.S. Patent Nos. 4,731,374 ("the '374 patent") and 4,843,086 ("the '086 patent")), constitute an important part of Barr's double patenting and inequitable conduct defenses.  Barr asserts that the claims of the '812 patent are invalid for non-statutory double patenting over the claims of the '086 patent.  In response, Plaintiffs allege that a restriction requirement imposed during prosecution of the grandparent '374 patent somehow shields the '812 patent from double patenting.  Opp. Ex. 1[2] (Pls' Resp. to

_____

[2] The exhibits attached to Barr's Answering Brief in Opposition are numbered and cited hereinafter as "Opp. Ex. __."

Interrog. No. 8). While Barr believes that Plaintiffs' argument is meritless in light of the provisions of 35 U.S.C. § 121, a response to Boehringer's attempt to confuse the issue will necessitate a thorough review by the Court of the file histories of the '374, '086 and '812 patents.

Barr's inequitable conduct theory likewise necessitates a review of, *inter alia*, the file history of the '812 patent. During the prosecution of that patent, Boehringer made intentional misstatements regarding its "effective filing date" by misrepresenting that it was entitled to claim priority back to foreign applications. Plaintiffs did so while knowing that the U.S. application disclosed and claimed new matter, and therefore was not entitled to that early date. The prosecution history not only contains those misstatements, but it also sheds light on Boehringer's motive behind its misrepresentations—to avoid an interference with an admittedly overlapping U.S. patent application filed by Eli Lilly.

No fact witness with knowledge about the prosecution histories at issue will be available at trial to assist the Court in walking through the lengthy files. The in-house Boehringer attorney in the United States who prosecuted these patents has no memory of the prosecutions independent of the documents. *See, e.g.*, Opp. Ex. 2 (Stempel Tr.) at 565:3–9. The inventors and others involved in the prosecution all reside overseas. Therefore, in order to facilitate the presentation of its case and to assist the Court, Barr has offered Mr. Hoscheit to provide a discussion of these prosecution histories and to elaborate on their contents in view of practices and procedures of the United States Patent and Trademark Office ("USPTO"). The Court's review of the file histories will undoubtedly be aided by an expert on patent office practice such as Mr. Hoscheit.

In addition, Mr. Hoscheit applies his knowledge and experience to opine on specific aspects of the prosecution histories as they relate to factual issues in this case. For

example, Mr. Hoscheit explains how certain statements made by Boehringer during the

prosecution of the patent-in-suit would be viewed based on USPTO policies governing

interferences, as well as how those statements would impact decisions by an examiner in light of

applicable USPTO procedures.  Contrary to Boehringer's assertion, Mr. Hoscheit does not opine

on any legal issues:  he does <u>not</u> opine on whether the asserted claims are invalid for double

patenting or whether the '812 patent is unenforceable for inequitable conduct.

       Generally, Mr. Hoscheit's report contains the following categories of opinions:

- Paragraphs 1–5 provide background information about Mr. Hoscheit's qualifications as a patent practice expert.

- Paragraphs 6–29 provide a discussion of the three prosecution histories at issue, including a review of office actions, the restriction requirement, claim amendments, information disclosure statements, and related documents.

- In addition, in paragraphs 11, 18, 19, and 26, Mr. Hoscheit uses his knowledge of USPTO practice and procedure to elaborate on the details of the restriction requirement imposed during prosecution of the '374 patent, as well as the interrelationship between claims of the three patent applications and that restriction requirement.

- Paragraphs 30–35 discuss both rules (e.g., the Manual of Practice Examining Procedure ("M.P.E.P.") and the Code of Federal Regulations) and practices (e.g., how long files are maintained in the examining group) applicable to the USPTO.  They also contain a discussion of representations in the prosecution history regarding Boehringer's effective filing date, as well as how those statements would be viewed by an examiner in light of USPTO practice and procedures.

## ARGUMENT

## I.    MR. HOSCHEIT'S OPINIONS ARE ADMISSIBLE

       In Part A of their Motion, Plaintiffs suggest that some of Mr. Hoscheit's opinions

are inadmissible because they are "Unnecessary and Unhelpful to the Court."  Mot. at 4–5.  In

Part B of the Motion, Plaintiffs argue that other of Mr. Hoscheit's opinions constitute

inadmissible legal conclusions.  Plaintiffs wholly fail to identify which paragraphs are allegedly

"Unnecessary and Unhelpful," and which ones allegedly contain legal conclusions.  Nonetheless, Plaintiffs are wrong on both counts.

### A.    Courts Have Wide Discretion To Admit Expert Testimony

The admission of expert testimony at trial lies within the discretion of the trial court.  *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 320–21 (3d Cir. 2003); *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1292 (Fed. Cir. 2002).  Patent practice experts may testify pursuant to Federal Rule of Evidence 702 as persons with "specialized knowledge" that "will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.

The Third Circuit has "indicated that it will interpret possible helpfulness to the trier of fact <u>broadly</u> and will <u>favor admissibility in doubtful cases</u>."  *Linkstrom v. Golden T. Farms*, 883 F.2d 269, 270 (3d Cir. 1989) (emphases added).  Furthermore, it is well-settled that district courts conducting bench trials have even greater flexibility in the reception of expert evidence.  *See, e.g., Seaboard Lumber Co.*, 308 F.3d at 1301–02 (noting that concerns regarding confusing and unreliable expert testimony "are of lesser import in a bench trial").

### B.    Courts Routinely Allow Patent Practice Experts To Testify at Trial

Contrary to Plaintiffs' suggestion, courts, including this one, routinely admit the testimony of patent practice experts in both bench and jury trials.[3]  As demonstrated by the very

---

[3] *See, e.g., Proctor & Gamble Co. v. Teva Pharm. USA, Inc.*, No. Civ. A. 04-940-JJF, 2006 WL 2241018, at *1 (D. Del. Aug. 4, 2006) (Opp. Ex. 4) (allowing expert testimony on "PTO practice and procedures"); *Revlon Consumer Prods. Corp. v. L'Oreal S.A.,* No. 96-192-MMS, 1997 U.S. Dist. LEXIS 4417, at *5-6 (D. Del. Mar. 26, 1997) (same) (Mot. at Ex. E); Order, *Lucas Aerospace, Ltd. v. Unison Indus., L.P.*, No. 93-525-MMS, at 2 (D. Del. Mar. 9, 1995) (same) (Mot. at Ex. G).

*See also Armament Sys. & Procedures, Inc. v. IQ Hong Kong Ltd.*, No. 00-C-1257, 2007 U.S. Dist. LEXIS 31306, at *6–7 (E.D. Wis. Apr. 27, 2007) (Opp. Ex. 5) (allowing patent practice expert to testify on what a reasonable examiner would have considered important); *Princeton*

materials Plaintiffs rely on in their Motion, this Court has expressly held that parties <u>can</u> proffer

such experts to "walk the jury through the file to explain to them what has happened in the patent

office and what the context is for what's happening."  Hearing Tr., *Thorn EMI N. Am. Inc. v.*

*Micron Tech., Inc.*, No. 92-673-RRM, at 33 (D. Del. Nov. 23, 1993) (Mot. at Ex. H).  Another

opinion cited by Plaintiffs explains, "we let people put facts in front of the jury as factual

background, as to what went on in the Patent Office, because you can't depose the examiner."

Trial Tr., *Berg Elecs., Inc. v. Molex, Inc.*, No. 94-470-RRM, at 881 (D. Del. Sept. 26, 1995)

(Mot. at Ex. F).  Indeed, the Federal Circuit has sanctioned the use of patent practice experts to

walk courts through the file wrapper.  *Cf. Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268,

274  (Fed. Cir. 1985) (describing testimony on, *inter alia*, "the nature of the file wrapper and the

limitations added to make the claims patentable over the prior art.").

   Similarly, Plaintiffs wrongly suggest that it is a universally held belief that the

presentation of evidence from file histories should be "the subject of briefing and attorney

argument—not expert opinion."  Mot. at 5.  Again, Plaintiffs' cited materials undermine that

very proposition, clarifying that expert testimony from a patent practitioner can be an

---

*Biochemicals, Inc. v. Beckman Coulter, Inc.*, No. 96-5541 (MLC), 2004 WL 1398227, at *17
(D.N.J. June 17, 2004) (Opp. Ex. 6) (allowing patent practice expert to provide a "review of the
[relevant] patent file history and an explanation of relevant patent laws and Patent Office
procedures"), *aff'd*, 411 F.3d 1332 (Fed. Cir. 2005); *Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d
1132, 1146 (N.D. Cal. 2003) (allowing patent practice expert "to opine on the reasonableness of
plaintiff's prosecution under the circumstances of the prosecution"); *Edward Lowe Indus., Inc. v.
Oil-Dri Corp. of Am.*, No. 94 C 7568, 1995 WL 683769, at *3 (N.D. Ill. Nov. 16, 1995) (Opp.
Ex. 7) (allowing patent practice expert to testify as to, among other things, "the application of
[patent] laws to the testimony and issues in this case") (alteration in original) (quotation
omitted); *Zollinger v. Qualitex, Inc.*, No. 84-1630, 1989 WL 3473, at *2–3 (E.D. Pa. Jan. 17,
1989) (Opp. Ex. 8) (allowing testimony of patent practice experts); *Oetiker v. Juird Werke
GmbH*, No. 74-1670, 1981 WL 2025 (D.D.C. Feb. 17, 1981) (Opp. Ex. 9) (allowing testimony
by patent practice experts in an inequitable conduct case).

"evidentiary aid" when the trier of fact "may not understand [the file histories] other than through argument by counsel."  Hearing Tr., *Thorn*, at 33 (Mot. at Ex. H).

### C.    Mr. Hoscheit's Report Will Assist the Trier of Fact

Mr. Hoscheit's testimony is admissible in this case as an "evidentiary aid" for the Court.  There are <u>three</u> prosecution histories at issue here that contain, *inter alia*, multiple office actions, a ten-way restriction requirement, lengthy information disclosure statements, and dozens upon dozens of claims.  Plaintiffs' own arguments have put this content centrally at issue to the defenses in this case.  As such, it will be useful for the Court to have a witness review those documents, as well as to provide testimony on, for example, the interrelationship between the restriction requirement in the '374 patent and the more than 50 claims submitted in subsequent applications, all within the context of USPTO procedures and practice.  That is precisely what Mr. Hoscheit does in his report.  Indeed, in 25 of the first 29 paragraphs of his report, Mr. Hoscheit recites his credentials and walks through the prosecution histories.  In the remaining four of those paragraphs (11, 18, 19 and 26), Mr. Hoscheit describes the actions taken by Boehringer and the examiner and explains their connection to the restriction requirement in the '374 patent.  Concluding his report, paragraphs 30–35 contain a factual analysis in the context of USPTO practice and procedure, including a discussion of a relevant M.P.E.P. provision (Hoscheit ¶ 34) and how long files are maintained in the examining group (Hoscheit ¶ 35).  These areas of testimony are all squarely within "walk[ing] the [trier of fact] through the file to explain to them what has happened in the patent office and what the context is for what's happening."  Hearing Tr., *Thorn*, at 33 (Mot. at Ex. H).

### D.    Mr. Hoscheit Does Not Opine on Legal Issues

Plaintiffs contend that Mr. Hoscheit opines on "ultimate legal issues" such as "the accuracy and supposed materiality of representations made to the PTO."  Mot. at 3.  That

misstates the law, as neither of those questions is a <u>legal</u> issue.  Materiality is a question of fact.
*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1366 (Fed. Cir. 2001).  So
too is the question of whether a claim is adequately supported by a written disclosure under 35
U.S.C. § 112, *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1562 (Fed. Cir. 1991), which is the
issue underlying Mr. Hoscheit's discussion of Boehringer's misrepresentations to the UPSTO.
The mere fact that such opinions may relate to legal questions in the case does not, in and of
itself, transform them into opinions on ultimate legal issues.  In *Armament Systems &
Procedures, Inc. v. IQ Hong Kong Ltd.*, the court rejected the argument that testimony regarding
materiality was testimony on the ultimate issue of inequitable conduct and allowed a patent
practice expert to testify regarding "what a reasonable examiner would have considered
important," explaining that "it seems likely that, as an undoubted expert not only in patent law
but in the workings of the Patent and Trademark Office, [the expert] would be able to provide
some <u>factual</u> context for <u>why</u> Parsons' behavior would have been inequitable, especially
regarding the issue of materiality."  No. 00-C-1257, 2007 U.S. LEXIS 31306, at *6–7 (E.D. Wis.
Apr. 27, 2007) (Opp. Ex. 5).

 Similarly, case law from this judicial district (including cases cited by
Boehringer) demonstrates that the prohibition against testimony on "legal issues" applies where
experts testify on ultimate legal issues for the Court, such as the ultimate conclusion regarding
"inequitable conduct," *Revlon Consumer Prods. Corp. v. L'Oreal S.A.*, 1997 U.S. LEXIS 4117,
at *7 (D. Del. Mar. 26, 1997) (Mot. at Ex. E), the scope of the duty of candor, *id.*, or the relevant
legal test for double patenting, *Proctor & Gamble Co. v. Teva Pharm. USA, Inc.*, 2006 WL
2241018 at *1 (D. Del. Aug. 4, 2006) (Opp. Ex. 4).  Mr. Hoscheit does not opine on any of those
issues.  And, given that this case will be tried to the Court, "to the extent his testimony might

stray into matters that are the exclusive purview of the court . . . the testimony can be properly curtailed during the trial [such] that no prejudice will result." *Armament*, 2007 U.S. Dist. LEXIS 31306, at *6–7 (Opp. Ex. 5); *see also Neupak, Inc. v. Ideal Mfg. & Sales Corp.*, 168 F. Supp. 2d 1012, 1015 (D. Minn. 2001) ("This matter will be tried to the Court. Therefore, should [the expert] offer testimony on an issue that is reserved for the Court to determine, the Court can discount that testimony.").[4]

### E.    Mr. Hoscheit Does Not Need to Be Skilled In the Underlying Technology to Offer An Opinion.

Plaintiffs mistakenly rely on *Abbott Labs. v. Syntron Bioresearch, Inc.* No. 98-CV-2359, 2001 WL 34082555, at *6 (S.D. Cal. Aug. 24, 2001) (Opp. Ex. 10), to suggest that Mr. Hoscheit cannot testify about materiality because he "is not skilled in the art of the patent-in-suit." Mot. at 6. That is incorrect. First, Mr. Hoscheit does not offer opinions on the materiality of a prior art reference. Here, the inequitable conduct allegation is based on a misstatement that Boehringer made to the USPTO regarding whether its application was entitled to an earlier effective filing date. The importance of a representation about entitlement to priority is a matter of patent practice, not chemistry, and is squarely within the expertise of Mr. Hoscheit. Second, *Abbott* does not stand for the proposition for which Plaintiffs cite it. *Abbott*, which was in the context of withheld prior art, simply states that, in proving materiality "an expert is needed to voice the understanding of a hypothetical person of ordinary skill in the art." *Abbott*, 2001 WL 34082555, at *6 (Opp. Ex. 10). The court in *Abbott*, rather than excluding Mr. Hoscheit's testimony, actually <u>relied</u> on it, stating that "the testimony of [another expert] and Mr. Hoscheit

---

[4] Boehringer points to the published guidelines of Judges Robinson and Jordan regarding the admissibility of patent expert testimony regarding patent practice and procedure. Mot. at 4–5. Those guidelines, however, are for jury trials, not bench trials, and therefore are not dispositive here. They also will not be binding on the newly appointed judge who will preside over the trial in this case.

establishes the materiality of most of these references relevant to Syntron's inequitable conduct defense." *Id.* In that case Mr. Hoscheit had "opined that the patentee had breached its duty of candor to the Patent Office by failing to submit [two references] to the Patent Office." *Id.*[5]

In any event, Barr has also submitted a report from an expert chemist, Dr. Eric V. Anslyn, regarding a chemist's understanding of various aspects of the '812 patent and the foreign applications to which it claims priority. Thus, Mr. Hoscheit's opinions, to the extent they are premised on basic scientific principles, are supported by the testimony of a person of skill in the art.

Finally, Mr. Hoscheit's alleged lack of sufficient scientific expertise[6] is not a basis for striking Mr. Hoscheit's testimony because "[e]xpert testimony of a patent attorney may be admitted, even if the attorney does not have specific expertise regarding the technical field involved in the litigation before the court, because the attorney's familiarity (or lack of familiarity) with that technical field bears on the weight to be accorded the evidence, not the threshold question of admissibility." *Reiffin v. Microsoft Corp.,* 270 F. Supp. 2d 1132, 1145 (N.D. Cal. 2003).

For all of the forgoing reasons, the motion to strike should be denied.

## II.    BOEHRINGER'S MOTION IS PREMATURE

While Barr contends that Plaintiffs' Motion should be denied on the merits, the Motion should also be denied as premature.

---

[5] Contrary to Plaintiffs' suggestion, in *Abbott* the Court actually denied a motion to strike Mr. Hoscheit's testimony on the ground that he "lacks scientific credentials." *See* Opp. Ex. 3, Order Denying Abbott's Mot. to Bar Testimony of Syntron's Expert, Dale Hoscheit.

[6] Mr. Hoscheit does have a degree in chemical engineering and approximately 40 years of experience prosecuting patents (including pharmaceutical patents).

While Boehringer baldly asserts that Mr. Hoscheit's testimony will not be helpful to the trier of fact, it fails to mention that there currently is no trier of fact due to Boehringer's refusal to consent to the jurisdiction of the Magistrate Judge to adjudicate this matter.  When a new judge is appointed, that individual will be in the best position to assess whether Mr. Hoscheit's report will assist the Court.  That new judge—who will not be bound by the decision of any district court judge, including those in this judicial district—may not be as familiar with prosecution histories as other judges, and may appreciate the assistance of an expert on patent practice and procedure to walk through the file histories and provide his insight on prosecution of the patent-in-suit.  Given the numerous courts that have found patent practice experts to be helpful and admissible, it would be presumptuous to exclude Mr. Hoscheit's testimony at this time.

In addition, given that the thrust of Boehringer's argument is that Mr. Hoscheit's opinions are "inadmissible at trial," Mot. at 4, Plaintiffs' Motion is properly categorized as a motion *in limine*.[7]  It should therefore be denied as premature, as the Court's January 31, 2006 Scheduling Order prohibits filing such motions separate from the Pretrial Order.  D.I. 30.

To avoid any potential delay to the case, the parties should proceed with Mr. Hoscheit's deposition in accordance with the schedule for expert discovery, and then allow the trier of fact to decide the extent to which his testimony will be admissible at trial.

## CONCLUSION

For the foregoing reasons, Barr respectfully requests that this Court deny Plaintiffs' Motion to Strike.

---

[7]  Plaintiffs' Motion is clearly not a *Daubert* motion as neither Mr. Hoscheit's credentials nor his methodology are questioned.

Respectfully submitted,

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP


OF COUNSEL:                                    /s/ *Adam W. Poff*
Glenn J. Pfadenhauer                           Josy W. Ingersoll (#1088)
Jessamyn S. Berniker                           John W. Shaw (#3362)
Dov P. Grossman                                Adam W. Poff (#3990)
Brett R. Tobin                                 The Brandywine Building
WILLIAMS & CONNOLLY LLP                        1000 West Street, 17th Floor
725 Twelfth Street, N.W.                       P.O. Box 391
Washington, DC 20005                           Wilmington, DE 19899-0391
(202) 434-5000                                 (302) 571-6600
                                               apoff@ycst.com

                                               *Attorneys for Defendant*
                                               *Barr Laboratories, Inc.*


Dated: June 13, 2007

## <u>CERTIFICATE OF SERVICE</u>

I, Adam W. Poff, Esquire hereby certify that on June 13, 2007, I caused a copy of the foregoing document to be served by CM/ECF, e-mail, and hand-delivery on the following counsel of record:

Jack B. Blumenfeld, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
PO Box 1347
Wilmington, DE 19899-1347

Mary B. Matterer, Esquire
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

I further certify that on June 13, 2007, I caused a copy of the foregoing document to be served on the following non-registered participants in the manner indicated:

### <u>BY E-MAIL</u>

Steven C. Cherny, Esquire
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834

Kenneth G. Schuler, Esquire
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL 60606

Shannon M. Bloodworth, Esquire
Heller Ehrman LLP
1717 Rhode Island Ave., N.W.
Washington, DC 20036

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Adam W. Poff
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
apoff@ycst.com

*Attorneys for Barr Laboratories, Inc.*