# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BARR LABORATORIES, INC., <br><br> Defendant. | C.A. No. 05-0700 (KAJ) <br><br> CONSOLIDATED |
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MYLAN PHARMACEUTICALS INC., <br><br> Defendant. | C.A. No. 05-0854 (KAJ) |

**OBJECTIONS AND RESPONSES OF PLAINTIFFS BOEHRINGER INGELHEIM INTERNATIONAL GMBH AND BOEHRINGER INGELHEIM PHARMACEUTICALS, INC. TO DEFENDANT BARR LABORATORIES, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-9)**

Plaintiffs Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharmaceuticals, Inc. ("Plaintiffs" or "Boehringer") respond and object as follows to the First Set of Interrogatories propounded by Defendant Barr Laboratories, Inc. ("Barr Labs"):

**GENERAL OBJECTIONS**

1.      Boehringer generally objects to each Interrogatory to the extent it seeks information protected from disclosure by the attorney-client or work product privileges. Boehringer further objects to each Interrogatory to the extent that it seeks information prepared in anticipation of litigation or for trial of this or any matter and/or that is subject to protection under FEDERAL RULE OF CIVIL PROCEDURE 26(b)(4)(B). Boehringer will provide information

which it believes is nonprivileged and is otherwise properly discoverable. By providing such information, Boehringer does not waive any privileges. To the extent that an Interrogatory may be construed as seeking such privileged or protected information or documents, Boehringer hereby claims such privilege and invokes such protection. The fact that Boehringer does not specifically object to an individual request on the ground that it seeks such privileged or protected information or documents shall not be deemed a waiver of the protection afforded by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege or protection.

2.    Boehringer generally objects to each Interrogatory to the extent it seeks information or documents containing or constituting trade secrets, confidential business or other proprietary information or information protected from disclosure by law, court order, or agreement respecting confidentiality or non-disclosure.

3.    To the extent that Barr Labs' Interrogatories seek information from, or the identification of documents from, the internal work-product files of attorneys representing or advising Boehringer, Boehringer objects generally to the production of such information and the identification of such documents.

4.    Boehringer objects to each and every Interrogatory to the extent that it purports to oblige Boehringer to perform a legal or other analysis to determine whether a document supports or refutes any defense or claim asserted by Barr Labs.

5.    Boehringer objects to each and every Interrogatory to the extent that Barr Labs seeks to require Boehringer to provide any information beyond what is available to Boehringer at present from a reasonable search or its own files at its principal offices and facilities, and from a reasonable inquiry of its present employees, on the grounds that such discovery would be unreasonably cumulative and unduly burdensome.

6.    Boehringer generally objects to each Interrogatory to the extent it is overly broad, unduly burdensome, oppressive, and/or would entail undue expense.

7.    Boehringer generally objects to each Interrogatory to the extent that it is vague and/or ambiguous. Where possible, however, Boehringer will make reasonable assumptions as

to Barr Labs' intended meaning and will respond accordingly, while preserving its objections as to vagueness, ambiguity, and uncertainty.

8.    Boehringer objects to each and every Interrogatory to the extent that it seeks information neither relevant to the claim or defense of any party to this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

9.    Nothing in these responses shall be construed to waive rights or objections which otherwise might be available to Boehringer, nor shall Boehringer's answering of any of the Interrogatories be deemed an admission of relevancy, materiality, or admissibility in evidence of the Interrogatory or of the responses thereto.

10.    Since discovery is only beginning in this case, Boehringer's responses should not be deemed exhaustive.    The following responses reflect Boehringer's present knowledge, information, and belief and may be subject to change or modification based on Boehringer's further discovery, or on facts or circumstances that may come to Boehringer's knowledge or attention in the future.    Boehringer reserves the right to update, amend, or supplement these responses to include additional information that is obtained during yet to be conducted discovery or investigation.    In addition, these responses are made without prejudice to Boehringer's right to present additional evidence or contentions at trial based upon information hereafter obtained or developed.

11.    Boehringer objects to the definitions and instructions set forth in Barr Labs' Interrogatories to the extent that they purport to impose requirements other than or in addition to the requirements of the FEDERAL RULES OF CIVIL PROCEDURE and the Local Rules of this Court.

12.    Boehringer objects to each Interrogatory to the extent it seeks information already in Barr Labs' possession, custody or control, or available to Barr from public sources.

13.    Boehringer's responses are made without waiving, in any way: (1) the right to object on any basis permitted by law to the use of any such information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (2) the right to object on any basis permitted by law to any other discovery request or proceeding involving or relating to the subject matter of these responses.

14.     Boehringer objects to each and every Interrogatory to the extent it seeks information or documents that are not in Boehringer's possession, custody, or control and to the extent such Interrogatory purports to require Boehringer to search for information not within its possession custody or control.

15.     Boehringer objects to Barr Labs' definitions of the terms "you," "yours," "Plaintiffs," and "Boehringer" because they are vague and overly broad.

16.     Boehringer objects to Barr Labs' definition of the term "identify" because it is vague, overly broad, and unduly burdensome.

17.     Boehringer objects to Barr Labs' definitions of the terms "person" and "entity" because they are vague, overly broad, and unduly burdensome.

18.     Boehringer objects to Barr Labs' definition of the term "relating to" because it is vague, overly broad, and unduly burdensome.

19.     Boehringer objects to Barr Labs' definition of the terms "test" and "testing" because they are vague, overly broad, and unduly burdensome.

20.     Boehringer objects to Barr Labs' use of the phrase "state with particularity" because it is vague, overly broad, and unduly burdensome.

21.     Boehringer objects to Instruction No. 2 as overbroad and seeking to impose obligations beyond those required by the FEDERAL RULES OF CIVIL PROCEDURE.

22.     Boehringer incorporates by reference all of its General Objections into each specific response below.

## SPECIFIC OBJECTIONS AND RESPONSES

## INTERROGATORY NO. 1:

Identify each person with knowledge of the conception, reduction to practice, testing, and commercialization of the alleged invention(s) claimed in the '086 and '812 patents and state with particularity what each person's role was.

## RESPONSE:

Boehringer incorporates its General Objections as if set forth fully herein. Boehringer further objects to this Interrogatory on the grounds it is overly broad, unduly burdensome, oppressive, and/or would entail undue expense to the extent it purports to require Boehringer to identify with particularity the role of every person who participated, however remotely, in the development of the inventions of the '086 and '812 patent (the "patents-in-suit").

Subject to and without waiving these objections, Boehringer states that at least the following persons have knowledge of the conception, reduction to practice, testing, and commercialization of the invention(s) claimed in the '086 and '812 patents:

| Name | Employer/Address | Subject |
| --- | --- | --- |
| Claus Schneider | Head of Industrial Business Roche Diagnostics GmbH Roche Applied Science Sandhofer Strasse 116 68305 Mannheim Germany<br><br>Dr. Schneider may be contacted through counsel for Boehringer | Co-inventor, involved with the development of the inventions of the patents-in-suit |
| Rudolf Hurnaus | Retired<br><br>Resides in or near Bieberach, Germany<br><br>Dr. Hurnhaus may be contacted through counsel for Boehringer | Co-inventor, involved with the development of the inventions of the patents-in-suit |
| Walter Kobinger | Retired<br><br>Resides in or near Vienna, Austria<br><br>Dr. Kobinger may be contacted through counsel for Boehringer | Co–inventor, involved with the development of the inventions of the patents-in-suit |

| Ludwig Pichler | Retired<br><br>Resides in or near Vienna, Austria<br><br>Dr. Pichler may be contacted through counsel for Boehringer | Co-inventor, involved with the development of the inventions of the patents-in-suit |
|---|---|---|
| Joachim Mierau | Retired<br><br>Resides in Mainz, Germany<br><br>Dr. Mierau may be contacted through counsel for Boehringer | Co-inventor, involved with the development of the inventions of the patents-in-suit |
| Dieter Hinzen | Via Corafora 12<br>Ch-6622 Ronco sopra Ascona Switzerland<br><br>Prof. Dr. Hinzen may be contacted through counsel for Boehringer | Co-inventor, involved with the development of the inventions of the patents-in-suit |
| Gunter Schingnitz | Boehringer Ingelheim GmbH Corporate Headquarters Binger Str. 173 55216 Ingelheim Germany<br><br>Dr. Schingnitz may be contacted through counsel for Boehringer | Co-inventor, involved with the development of the inventions of the patents-in-suit |
| Alan R. Stempel | Boehringer Ingelheim Corporation 900 Ridgebury Road, Ridgefield, CT 06877-0368<br><br>Mr. Stempel may be contacted through counsel for Boehringer | Conception of the inventions of the patents-in-suit |

Plaintiffs further state that, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 33(d), they will produce documents from which the identity of any additional persons who may have participated in the reduction to practice, testing, and commercialization of the invention(s) claimed in the '086 and '812 patents may be derived or ascertained.

## INTERROGATORY NO. 2:

Identify each person involved with or responsible for the drafting, preparation and/or prosecution of German Priority Applications DE 34470751 and/or DE 3508947 and state with particularity each person's role was.

## RESPONSE:

Boehringer incorporates its General Objections as if set forth fully herein. Boehringer further objects to this Interrogatory on the grounds it is vague and ambiguous. Boehringer further objects to Interrogatory No. 2 on the grounds that it is overly broad, unduly burdensome, and/or would entail undue expense to answer.   Boehringer further objects to Interrogatory No. 2 to the extent that it seeks the discovery of information not relevant to the claim or defense of any party.

Subject to and without waiving these objections, Boehringer states that the following persons were involved with the drafting, preparation and/or prosecution of German Priority Applications DE 34470751 and/or DE 3508947:  Dr. Claus Schneider, Dr. Rudolf Hurnaus, Dr. Gunter Schingnitz, and Dr. Rolf Fleischer (who may be contacted through counsel for Boehringer).

## INTERROGATORY NO. 3:

Identify each person involved with or responsible for the drafting, preparation and/or prosecution of the application(s) that led to the issuance of the '374 patent, the '086 patent, and/or the '812 patent and state with particularity what each person's role was.

## RESPONSE:

Boehringer incorporates its General Objections as if set forth fully herein. Boehringer further objects to this Interrogatory to the extent that it is overly broad, unduly burdensome, oppressive, and/or would entail undue expense to answer.   Boehringer also objects to this Interrogatory to the extent it seeks the discovery of any information protected by the attorney-client privilege or attorney work product doctrine.

Subject to and without waiving these objections, Boehringer hereby incorporates

its response to Interrogatory No. 2 as and for part of its response to Interrogatory No. 3, and further states that Alan R. Stempel, Boehringer Ingelheim Corporation, 900 Ridgebury Road, Ridgefield, CT 06877-0368, participated in the drafting, preparation, and prosecution of the applications that led to the issuance of the '374, '086, and '812 patents.

## INTERROGATORY NO. 4:

Identify each person involved with or responsible for the drafting, preparation, and/or prosecution of any patent application(s) filed outside of the United States that claims priority to German Priority Applications DE 34470751 and/or DE 3508947 and state with particularity what each person's role was.

## RESPONSE:

Boehringer incorporates its General Objections as if set forth fully herein. Boehringer further objects to this Interrogatory to the extent that it is overly broad, unduly burdensome, oppressive, and/or would entail undue expense to answer. Boehringer further objects to Interrogatory No. 4 on the grounds that it seeks the discovery of information not relevant to the claim or defense of any party. Subject to and without waiving its these objections, Boehringer states that, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 33(d), it will produce documents from which the answer to Interrogatory No. 4 can be derived or ascertained.

## INTERROGATORY NO. 5:

Identify which claims in the '086 and '812 patents plaintiffs contend are or will be infringed by the filing of Barr Labs' ANDA or the sale or use of Barr Labs' ANDA products. For each claim you identify, state with particularity all of the facts on which you rely for your contention, including the page(s) and line(s) in the specification where each element of the claim(s) is described, and identify the persons most knowledgeable about, and all documents and things relating to, such contention.

## RESPONSE:

Boehringer incorporates its General Objections as if set forth fully herein. Boehringer specifically objects to this Interrogatory as compound, as it seeks information regarding Plaintiffs' infringement contentions as well as information about the written description for the claims in the specification. Boehringer further objects to this Interrogatory on

the grounds that it is premature, and expressly reserves the right to amend or supplement this response as it deems appropriate. Boehringer also objects to this Interrogatory to the extent it seeks the discovery of information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving these objections, Plaintiffs state that, by filing its ANDA, Barr Labs has infringed at least claims 3, 4, 5, 7, 8, 9 and 10 of the '812 patent and at least claims 23, 26, 27, 28 and 29 of the '086 patent. In letters dated August 10, 2005 and September 12, 2005 (the "Barr Letters"), Barr Labs advised Boehringer that Barr had filed an Abbreviated New Drug Application ("ANDA") for pramipexole dihydrochloride tablets. With the ANDA, Barr Labs has sought "approval to engage in the commercial manufacture, use and/or sale of (S)-2-Amino-6-n-propylamino-4,5,6,7-tetrahydrobezthiaozle dihydrochloride monohydrate drug product....[T]he established name of Barr's Product is pramipexole dihydrochloride tablets, 0.125 mg, 0.25 mg, 0.5 mg, 1.0 mg, and 1.5 mg strengths...[T]he active ingredient of Barr's Product is (S)-2-Amino-6-n-propylamino-4,5,6,7-tetrahydrobenzthiazole dihydrochloride monohydrate; the strengths are 0.125 mg, 0.25 mg, 0.5 mg, 1.0 mg, and 1.5 mg; and the dosage form is a tablet." *Barr Letters at p. 2.* In the Detailed Factual and Legal Basis attached to these letters, Barr also acknowledged that its ANDA sought approval for the use of pramipexole dihydrochloride tablets for the treatment of Parkinson's Disease and/or Parkinsonism. *See Barr's Detailed Factual and Legal Basis at 1.* ("The Barr Product and its use for treating Parkinson's Disease..."); *id.* ("The Barr Product is [] for treatment of Parkinson's disease."). Without limitation, an identification of each element of the asserted claims of the '812 and '086 patents met by Barr Labs' accused product is set forth in the tables found in Appendix A and Appendix B, respectively.

The specifications of the '812 and '086 patents as a whole support each of the asserted claims of the '812 and '086, respectively. Without limitation, a description of each of the elements of the now-asserted claims of the '812 and '086 patents can be found at least in the locations as set forth in the tables found in Appendix A and Appendix B, respectively.

At least the following documents relate to the assertion of these claims: the '086

and '812 patents, applications and file wrappers; and Barr Labs' ANDA and Paragraph IV Patent Certifications (original and amended) for pramipexole dihydrochloride tablets. Boehringer identifies at least the following person with knowledge of these allegations

- Steve Szczepanski
  Kelley, Drye & Warren LLP
  333 W. Wacker Dr.
  Chicago, IL 60606

## INTERROGATORY NO. 6:

For each claim of the '086 and '812 patent that you contend is infringed by Barr Labs' ANDA product, state whether you contend that such claim is entitled to the benefit of the filing date of German Priority Application DE 34470751 pursuant to 35 U.S.C. §§ 119 and/or 120. If you do so contend, with respect to each such claim state with particularity all of the facts on which you rely for your contention, including an identification of the page(s) and particular sentence(s) in German Priority Application DE 34470751 where each element of the claim(s) is described, and identify the persons most knowledgeable about, and all document and things relating to, such contention.

## RESPONSE:

Boehringer incorporates its General Objections as if set forth fully herein. Boehringer specifically objects to this Interrogatory as compound. Boehringer further objects to this Interrogatory on the grounds that it is premature, and expressly reserves the right to amend or supplement this response as it deems appropriate. Boehringer objects to this Interrogatory to the extent it calls for legal conclusions. Boehringer also objects to this Interrogatory to the extent it seeks the discovery of information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiving these objections, Plaintiffs state that they contend that each of the asserted claims of the patents-in-suit is entitled to the benefit of the filing date of the German Priority Application DE 34470751 ("German '751 application"). The specification of the German '751 application as a whole supports each of the asserted claims of the '812 and '086 patents. Without limitation, a description of each of the elements of the now-asserted claims of the '812 and '086 patents can be found at least in the locations as set forth in the tables found in Appendix A and Appendix B, respectively.

**INTERROGATORY NO. 7:**

If your answer for any of the claims referenced in Interrogatory No. 6 is that you do not contend, state whether you contend that those claims are entitled to the benefit of the filing date of German Priority Application DE 3508947 pursuant to 35 U.S.C. §§ 119 and/or 120. If you do contend that claims are entitled to a filing date of German Priority Application DE 3508947, with respect to each such claim state with particularity all of the facts on which you rely for your contention, including an identification of the page(s) and particular sentence(s) in German Priority Application DE 3508947 where each element of the claim(s) is described, and identify the persons most knowledgeable about, and all documents and things relating to, such contention.

**RESPONSE:**

Boehringer incorporates its General Objections as if set forth fully herein. Boehringer specifically objects to the Interrogatory as vague and ambiguous. Boehringer further objects to this Interrogatory to the extent it calls for legal conclusions. Boehringer also objects to this Interrogatory on the grounds that it is premature, and expressly reserves the right to amend or supplement this response as it deems appropriate.

Subject to and without waiving these objections, Boehringer states that all presently asserted claims of the patents-in-suit are entitled to the benefit of the filing date of the '751 German patent application.

**INTERROGATORY NO. 8:**

State whether you contend that the application that matured into the '812 patent is entitled to the benefit of the third sentence of 35 U.S.C. § 121 with respect to the application that matured into the '086 patent. If you do so contend, please state with particularity how the application that matured into the '812 patent was filed as a result of a restriction requirement and is consonant with that restriction requirement.

**RESPONSE:**

Boehringer incorporates its General Objections as if set forth fully herein. Boehringer further objects to this Interrogatory on the grounds that it is premature, and expressly reserves the right to amend or supplement this response as it deems appropriate. Boehringer objects to this Interrogatory to the extent it calls for a legal conclusion. Boehringer also objects to this Interrogatory to the extent it seeks the discovery of information protected by the attorney-client privilege and/or work product doctrine. Boehringer objects to this Interrogatory on the

grounds that it is vague, ambiguous, and/or misstates the language or meaning of 35 U.S.C. § 121.

Subject to and without waiving these objections, Boehringer states that it contends that the application that matured into the '812 patent is entitled to the benefit of the third sentence of 35 U.S.C. § 121 with regard to the application that matured into the '086 patent. During the prosecution of the patent application that matured into the '374 patent ("the '374 application"), the Examiner imposed a restriction requiring patentee to elect the inventions of the original claims, which included claims directed to five classes of compounds and compositions as well as three method claims for treatment based on the type of compound used. *See* '374 patent 9/11/1986 Office Action at 2-7 (classifying different compounds classes as inventions I to V and different method claims as inventions VIII to X, and requiring patentee to elect one of the compound groups from I to V and one of the utility group VIII to X). The PTO recognized that these different groups constitute separate inventions. In response, the patentee elected without traverse to pursue only those claims directed toward one of the composition classes (II) and one of the utility classes (X) in the '374 application (pyrrolidinyl-substituted benzthiazole compounds and a method for treating Parkinsonism or Parkinson's Disease). This restriction ultimately lead to the '812 patent application, which was directed toward the composition class of group I, and the '086 patent application, which was directed toward utility groups VII to X.

As a divisional application consonant with the restriction requirement, the '812 claims are thus entitled to the benefit of 35 USC §121. The Examiner permitted the '812 patent claims over the '374 and '086 claims.

### INTERROGATORY NO. 9:

Identify on a claim by claim basis, the date, location, and circumstances of the first public disclosure, public use, sale, offer for sale, or use or testing by persons not employed by Plaintiffs at the time, of any of the subject matter that Plaintiffs assert is covered by each the claims of the '086 and '812 patents. For each such public disclosure, public use, sale, offer for sale, or use or testing by persons not employed by Plaintiffs at the time, identify the compound or composition that was its subject, the persons most knowledgeable about it, and all documents and things relating to it.

**RESPONSE:**

Boehringer incorporates its General Objections as if set forth fully herein. Boehringer further objects to Interrogatory No. 9 on the grounds that it is vague and ambiguous. Boehringer further objects to Interrogatory No. 9 on the grounds that it is premature, and expressly reserves the right to amend or supplement this response as it deems appropriate. Boehringer also objects to this Interrogatory to the extent that it seeks information not relevant to the claim or defense of any party.

Subject to and without waiving these objections, Boehringer, after a reasonable inquiry, believes that the date of the first public disclosure, public use, offer for use or testing by persons not employed or contracted by Boehringer for any claim of the '086 or '812 patents was July 3, 1986. On this date, the patentee's related '751 German patent application, which discloses every element of each of the presently asserted claims, as described in Boehringer's response to Interrogatory No. 6, was published by the German Patent and Trademark Office.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
  Attorneys for Plaintiffs
  Boehringer Ingelheim International GmbH and
  Boehringer Ingelheim Pharmaceuticals, Inc.

Of Counsel:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
(212) 906-1200

Kenneth G. Schuler
Amanda J. Hollis
Joel Neckers
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
(312) 876-7700

Sandy Choi
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-2562
(415) 395-8095

Carisa S. Yee
LATHAM & WATKINS LLP
135 Commonwealth Drive
Menlo Park, California 94025-3656
(650) 328-4600

Date: March 2, 2006

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL, GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., | ) ) ) ) | **ORIGINAL** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | C.A. No. 05-700 |
| BARR LABORATORIES, INC., | ) ) | (KAJ) |
| Defendant. | ) | |

------------------------------------)

| | | |
|---|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL, GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | C.A. No. 05-854 |
| MYLAN PHARMACEUTICALS, INC., | ) ) | (KAJ) |
| Defendant. | ) | |

------------------------------------)

CONTINUED VIDEOTAPED DEPOSITION OF ALAN STEMPEL
Danbury, Connecticut
Friday, January 19, 2007

Reported by:
ERICA L. RUGGIERI, RPR
Job No: 11505



**David Feldman**
W o r l d w i d e

From File to Trial.

805 Third Avenue, 8th Floor
New York, NY 10022
(800) 642-1099

600 Anton Boulevard, 11th Floor
Costa Mesa, CA 92626
(866) DFW-1380

564

1                    STEMPEL

2    BARR674.

3        A.    674.  Okay.  Wait -- okay.

4        Q.    You see that?

5        A.    Yeah.

6        Q.    And that -- what is that, the

7    document that begins at BARR674?

8        A.    It's a request to file a divisional

9    patent application, a division of the 197.

10       Q.    And this is a document that you

11   signed and submitted to the United States patent

12   office, right?

13       A.    Correct.

14       Q.    Why did you designate this as a

15   divisional patent application?

16       A.    Because I regarded it as being -- if

17   you are asking me if I have a recollection, I

18   have no recollection.  But if you are asking me,

19   you know, logically, because it presumably

20   contained a piece of 197, which in turn

21   contained a piece of its parent, which was

22   subject to a restriction requirement.

23       Q.    And do you believe that under those

24   circumstances, it's proper to designate

25   something as a divisional application?

565

STEMPEL

1

2      A.    I think it can be proper, yes.

3      Q.    Sitting here today, you don't

4   remember one way or the other why you called

5   this a divisional application; is that right?

6           MR. CHERNEY:   Objection.

7      Q.    You don't have a memory about that?

8      A.    I have really no memory of the filing

9   and prosecution of this application, right.

10     Q.    So just to understand, though, it's

11  your understanding that if there is a

12  restriction requirement in an original

13  application, then there is a divisional from

14  that and then another divisional, then it's

15  proper to call a subsequent application, a third

16  application, it's also proper to call that a

17  divisional?

18     A.    It can be.

19     Q.    In what circumstances can it be?

20     A.    The other thing that I'd like to say

21  is that -- we have a situation here, but I think

22  that it is at least arguable that an applicant

23  can call an application a division, a child a

24  division.  And I'm not sure that it's ever

25  really improper.

# EXHIBIT 3

















CAG    8/24/01    13:37

3:98-CV-02359    ABBOTT LABORATORIES V. SYNTRON BIORESEARCH

*309*

*O.*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

ABBOTT LABORATORIES, an Illinois
corporation,

                            Plaintiff,

    vs.

SYNTRON BIORESEARCH, INC., a
California corporation,

                          Defendant.

AND RELATED CROSS-ACTIONS.

CASE NO. 98-CV-2359 H (POR)

**Order Denying Abbott's Motion to
Bar Testimony of Syntron's Expert,
Dale Hoscheit**

Abbott seeks to exclude the testimony of Syntron's patent law expert, Dale Hoscheit, Esq.
Abbott argues that Mr. Hoscheit lacks the scientific credentials to serve as an expert in this case
because he cannot testify to the understanding of a person having ordinary skill in the art of
immunoassay technology. Abbott suggests that Syntron will improperly rely on Mr. Hoscheit to
testify on infringement and validity, topics on which he is not qualified to render an expert opinion.

Syntron argues that Mr. Hoscheit's testimony is relevant and admissible to assist the jury with
patent prosecution procedures and inequitable conduct. Syntron indicates that it "never stated that it
intends to offer Mr. Hoscheit as a technical expert skilled in the art."

/ / / /



1        Mr. Hoscheit filed an expert report in a timely fashion indicating that he is prepared to testify

2    about the patent application process, the PTO and the duty of candor, and inequitable conduct issue.

3    While Mr. Hoscheit's report also indicates that he is prepared to testify about infringement and validity

4    issues, Syntron makes clear in its Objections to Abbott's Motion in Limine that Mr. Hoscheit will not

5    testify as a technical expert skilled in the relevant art and his testimony will not overlap with that of

6    Syntron's technical expert, Dr. David.

7        Syntron can choose to present technical or specialized information about the patent process to

8    the jury through an expert witness. FED. R. EVID. 702. At this time, the Court DENIES Abbott's

9    request to bar the testimony of Mr. Hoscheit. However, the Court reserves the right to limit Mr.

10   Hoscheit's testimony in accordance with the Federal Rules of Evidence in the course of trial.

11   IT IS SO ORDERED.

12   DATED: __8/23/01__

13                                                     MARILYN L. HUFF, Chief Judge

14                                                     UNITED STATES DISTRICT COURT

22   Copies to:

23   David C. Doyle

24   Morrison & Foerster
     3811 Valley Centre Drive, Suite 500

25   San Diego, CA 92130

26

27   Lee Carl Bromberg
     Bromberg & Sunstein, LLP
     125 Summer Street

28   Boston, MA 02110-1618

EXHIBIT 4

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2006 WL 2241018 (D.Del.)
**(Cite as: Slip Copy)**

# H

Proctor & Gamble Co. v. Teva Pharmaceuticals
USA, Inc.
D.Del.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
THE PROCTOR & GAMBLE COMPANY, Plaintiff,
v.
TEVA PHARMACEUTICALS USA, INC.,
Defendant.
**No. Civ.A. 04-940-JJF.**

Aug. 4, 2006.

Frederick L. Cottrell, III, Steven J. Fineman,
Richards, Layton & Finger, Wilmington, DE, for
Plaintiff.
Adam Wyatt Poff, Josy W. Ingersoll, Young,
Conaway, Stargatt & Taylor, Wilmington, DE, for
Defendant.

*MEMORANDUM ORDER*
FARNAN, J.
*1 Pending before the Court is Defendant Teva
Pharmaceuticals USA, Inc.'s Motion To Preclude The
Testimony Of Plaintiff's Patent Law Expert (D.I.69).
For the reasons discussed, the Motion will be granted
in part and denied in part.

# I. BACKGROUND

In this patent infringement case, Defendant argues
that Plaintiff's patent, U.S. Patent No. 5,583,122 ("the
'122 patent") is invalid because of obviousness-type
double patenting. Plaintiff submitted the Rebuttal
Expert Report of Jerry D. Voight in response to
Defendant's Expert Report of George R. Lenz, Ph.D.,
to address patent interference practices and whether
the one-way or two-way test should be used for
determining obviousness-type double patenting in
this case. (D.I. 70 Ex. A). On July 6, 2006, Defendant
filed the instant Motion to preclude Plaintiff from
proffering Mr. Voight's testimony on any of the
opinions set forth in his expert report. (D.I.69).
Defendant contends that Mr. Voight's testimony
would exceed the scope permitted by the Court
because it will include legal conclusions and goes
beyond the practices and procedures of the U.S.
Patent and Trademark Office (PTO). (D.I. 69 at 3). In

Response, Plaintiff contends that Mr. Voight's expert
testimony is within the parameters permitted by the
Court because it includes the workings of the PTO
and the prosecution history in this case. (D.I.74).
Plaintiff's answering brief included an Amended
Rebuttal Expert Report of Jerry D. Voight, removing
certain legal conclusions, and now contends that
Defendant's concerns are moot. [FN1] (D.I. 74 Ex. A).

> FN1. For the purposes of its review of this
> Motion, the Court considers only the
> Amended Rebuttal Expert Report of Jerry D.
> Voight (D.I. 74 Ex. A).

# II. DISCUSSION

A court has broad discretion to admit or exclude
evidence under the Federal Rules of Evidence.
*Gumbs v. Int'l Harvester, Inc.,* 718 F.2d 88, 97 (3d
Cir.1983). Federal Rule of Evidence 702 states that
If scientific, technical, or other specialized
knowledge will assist the trier of fact to understand
the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill,
experience, training, or education, may testify thereto
in the form of an opinion or otherwise, if (1) the
testimony is based upon sufficient facts or data, (2)
the testimony is the product of reliable principles and
methods, and (3) the witness has applied the
principles and methods reliably to the facts of the
case.

*Fed.R.Evid.* 702. The Rules of Evidence do not
permit expert testimony as to legal conclusions. *Salas
by Salas v. Wang,* 846 F.2d 897, 905 n. 5 (3d
Cir.1988); *see Fed.R.Evid.* 704.

This Court excludes testimony by patent law experts
on substantive issues of patent law. (D.I. 70 Ex. C,
D); *Revlon Consumer Prods. Corp. v. L'Oreal S.A.,*
1997 U.S. Dist. LEXIS 4117, at *9-10 (D.Del. March
26, 1997). Testimony by Mr. Voight must therefore
be restricted to PTO practice and procedures and may
not include legal conclusions or substantive issues of
patent law.

In response to Defendant's Motion, Plaintiff's expert
removed his legal opinions on two-way testing in the
Amended Rebuttal Expert Report. (D.I. 74 Ex. A).
Plaintiff agrees to refrain from soliciting Mr. Voight's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2241018 (D.Del.)
**(Cite as: Slip Copy)**

opinion about which test for obviousness-type double-patenting should apply in this case. (D.I. 74 at 7). Despite Plaintiff's assurances, the Court concludes that section "V. Opinions and Basis Therefor," subsection "A. Legal Background for Opinions" of Mr. Voight's report must be stricken because it contains inadmissible legal conclusions. (D.I. 74, Ex. A at 10-11).

### ORDER

**\*2** NOW THEREFORE IT IS HEREBY ORDERED that Defendant Teva Pharmaceuticals USA, Inc.'s Motion To Preclude The Testimony Of Plaintiff's Patent Law Expert (D.I.69) is *GRANTED* and section V ., sub-section A., of Mr. Voight's "Amended Rebuttal Expert Report" (D.I. 74 Ex. A at 10-11), is stricken.

D.Del.,2006.
Proctor & Gamble Co. v. Teva Pharmaceuticals USA, Inc.
Slip Copy, 2006 WL 2241018 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 5

LEXSEE 2007 U.S. DIST. LEXIS 31306



Analysis
As of: Jun 04, 2007

**ARMAMENT SYSTEMS AND PROCEDURES, INC., Plaintiff, v. IQ HONG KONG LIMITED, et al., Defendants.**

**Case No. 00-C-1257**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN**

*2007 U.S. Dist. LEXIS 31306*

**April 27, 2007, Decided**
**April 27, 2007, Filed**

**PRIOR HISTORY:** *Armament Sys. & Procedures, Inc. v. IQ H.K. Ltd., 2007 U.S. Dist. LEXIS 21512 (E.D. Wis., Mar. 22, 2007)*

**COUNSEL:** [*1] For Armament Systems and Procedures Inc, Plaintiff: Richard W McLaren, Jr, LEAD ATTORNEY, A Sidney Katz, Steven E Feldman, Welsh & Katz Ltd, Chicago, IL; Bruce C O'Neill, Diane Slomowitz, Fox O'Neill & Shannon SC, Milwaukee, WI; Michael J Hanrahan, Fox O'Neill & Shannon, Milwaukee, WI.

For IQ Hong Kong Limited, Defendant: Jonathan H Margolies, LEAD ATTORNEY, Michael Best & Friedrich LLP, Milwaukee, WI; Mark A Cantor, LEAD ATTORNEY, Thomas W Cunningham, Brooks Kushman PC, Southfield, MI; Wayne E Babler, Jr, Quarles & Brady LLP, Milwaukee, WI.

For Zen Design Group Limited, Defendant: Mark A Cantor, LEAD ATTORNEY, Thomas W Cunningham, Brooks Kushman PC, Southfield, MI; Jonathan H Margolies, Michael Best & Friedrich LLP, Milwaukee, WI; Wayne E Babler, Jr, Quarles & Brady LLP, Milwaukee, WI.

For Sun Yu, Defendant: Mark A Cantor, LEAD ATTORNEY, Thomas W Cunningham, Brooks Kushman PC, Southfield, MI; Wayne E Babler, Jr, Quarles & Brady LLP, Milwaukee, WI.

For Gadget Universe, Defendant: Patrick L Wells, LEAD ATTORNEY, von Briesen & Roper SC, Milwaukee, WI.

For JSA Inc, doing business as Excell Marketing LLC, Consolidated Defendant: John R Petitjean, LEAD ATTORNEY, [*2] Hinkfuss Sickel Petitjean & Wieting, Green Bay, WI.

For Emissive Energy Corp, Consolidated Defendant: Christine K Bush, LEAD ATTORNEY, Craig M Scott, LEAD ATTORNEY, Duffy Sweeney & Scott Ltd, Providence, RI; Jonathan H Margolies, LEAD ATTORNEY, Katherine W Schill, Michael Best & Friedrich LLP, Milwaukee, WI.

For Harriet Carter Gifts Incorporated, Bandwagon Incorporated, Consolidated Defendants: Maurice E Gauthier, LEAD ATTORNEY, William E Hilton, Samuels Gauthier & Stevens, Boston, MA; George H Solveson, Andrus Sceales Starke & Sawall, Milwaukee, WI.

For Vector Products Inc, doing business as Vector Manufacturing Ltd, Mills Fleet Farm Inc, Consolidated Defendants: Campbell Killefer, LEAD ATTORNEY, Jamieson A Smith, Peter J Curtin, Venable LLP, Washington, DC; Amy V Kossoris, Jonathan H Margolies, Katherine W Schill, Michael Best & Friedrich LLP, Milwaukee, WI.

For General Parts Inc, doing business as Carquest Auto Parts of West Allis Wisconsin, Carquest Management Services Inc, Consolidated Defendants: Jeffer Ali, LEAD ATTORNEY, Thomas J Leach, Merchant & Gould PC,

2007 U.S. Dist. LEXIS 31306, *

Minneapolis, MN; Dana Berce Serrano, Jonathan H Margolies, Katherine W Schill, Michael Best & Friedrich [*3] LLP, Milwaukee, WI.

For Northland Fishing Tackle Inc, Consolidated Defendant: Campbell Killefer, LEAD ATTORNEY, Jamieson A Smith, Peter J Curtin, Venable LLP, Washington, DC; Jennifer Lynn-Soon Haluptzok, LEAD ATTORNEY, Amy V Kossoris, Jonathan H Margolies, Katherine W Schill, Michael Best & Friedrich LLP, Milwaukee, WI; Jeffer Ali, Thomas J Leach, Merchant & Gould PC, Minneapolis, MN.

For C Crane Company Inc, Consolidated Defendant: Mark R Kramer, LEAD ATTORNEY, Anderson & Kramer SC, Delafield, WI.

For Target Corporation, Consolidated Defendant: Jonathan H Margolies, LEAD ATTORNEY, Katherine W Schill, Michael Best & Friedrich LLP, Milwaukee, WI.

For Team Products International Inc, Consolidated Defendant: Jonathan H Margolies, LEAD ATTORNEY, Katherine W Schill, LEAD ATTORNEY, Michael Best & Friedrich LLP, Milwaukee, WI.

For Walgreen Co, an Illinois corporation, Consolidated Defendant: Brent A Hawkins, LEAD ATTORNEY, Jeffrey R Gargano, LEAD ATTORNEY, McDermott Will & Emery LLP, Chicago, IL; Josephine K Benkers, Quarles & Brady LLP, Madison, WI.

For P&D Services Inc, Consolidated Intervenor Defendant: Anthony A Tomaselli, LEAD ATTORNEY, Matthew J Duchemin, [*4] LEAD ATTORNEY, Josephine K Benkers, Quarles & Brady LLP, Madison, WI.

JUDGES: William C. Griesbach, United States District Judge.

OPINION BY: William C. Griesbach

OPINION:

### ORDER

Three motions *in limine* have been filed in an effort to exclude expert testimony. In addition, Armament filed a motion for leave to supplement its expert reports and add 14 recently discovered blank graph pages to its exhibit list. Defendants have also moved to compel production of certain attorney-client communications relating to the invention. Although responses and / or replies have not yet been received in every matter, the trial begins on Monday and a decision will aid the parties in planning their presentation of the case.

## I. MOTIONS TO EXCLUDE EXPERTS

### A. Harry Manbeck, Esq.

Armament seeks to preclude Atty. Harry Manbeck, a former Commissioner of Patents and Trademarks, from testifying. Armament argues that he should be precluded from testifying because his testimony would overstep the proper role of an expert witness. In particular, Armament believes it is the proper and exclusive role of the attorneys and the court to sort out the legal issues, and to allow a legal expert to testify [*5] would offend that basic divide. It is true that a lawyer may not testify about American legal issues as if they were "facts" within his personal knowledge. "Domestic law is properly considered and determined by the court whose function it is to instruct the jury on the law; domestic law is not to be presented through testimony and argued to the jury as a question of fact." *United States v. Oliveros, 275 F.3d 1299, 1306-07 (11th Cir. 2001).* And, as the Federal Circuit has reiterated, "this court has on numerous occasions noted the impropriety of patent lawyers testifying as expert witnesses and giving their opinion regarding the proper interpretation of a claim as a matter of law, the ultimate issue for the court to decide." *Endress + Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd., 122 F.3d 1040, 1042 (Fed. Cir. 1997).*

Thus, to the extent Manbeck would attempt to testify about ultimate legal issues, I would exclude or disregard that testimony. If he were to testify, for example, that "in my expert opinion, Mr. Parsons committed inequitable conduct," I would disregard such testimony. But as the defendants note (and it is their witness), it is [*6] not as though Manbeck is being offered as an expert witness to testify on the ultimate issue of inequitable conduct. Instead it seems likely that, as an undoubted expert not only in patent law but in the workings of the Patent and Trademark Office, Manbeck would be able to provide some *factual* context for *why* Parsons' behavior would have been inequitable, especially regarding the issue of materiality. The fact that Manbeck is not an eyewitness is irrelevant because the question is an objective one: "Materiality is not limited to prior art but embraces *any* information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent." *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 326 F.3d 1226, 1234 (Fed. Cir. 2003)* (quoting *GFI v. Franklin Corp., 265 F.3d 1268, 1274* (emphasis in original)). If Manbeck can shed light on what a reasonable examiner would have considered important, I see no reason to exclude his testimony. Moreover, to the extent his testimony might stray into matters that are the exclusive purview of the court, I am confident that the testimony

2007 U.S. Dist. LEXIS 31306, *

[*7] can be properly curtailed during the trial and that no prejudice will result. Accordingly, the motion to exclude Harry Manbeck as an expert witness is **DENIED.**

## B. Erich Speckin

Armament also seeks to preclude Erich Speckin, defendants' document expert, from testifying. It first notes that Speckin's testimony has been criticized and / or barred in other cases. It argues that Speckin's testimony is unscientific because it *assumes* several premises without having any scientific basis for doing so. It also notes that Speckin lacks general expertise in the area and has not tested his theories about how paper is produced and cut. Thus, his testimony must be excluded because it does not meet the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).*

Defendants protest that Speckin should be allowed to testify, but they resolve the problem by stating that they will not offer him as a witness at trial. Instead, all defendants will rely on the expert testimony of Alan Robillard, whom Armament has not sought to exclude. Accordingly, the motion to exclude is **DENIED** as moot.

## C. Paul Berman

Finally, plaintiff [*8] seeks to exclude the testimony of Paul Berman, an expert in product design and CAD (computer-aided design). Although his expert report is largely devoted to issues of validity, the defendants wish to offer his testimony during the inequitable conduct trial. n1 At issue are certain CAD drawings dated January 15, 1998, which Armament puts forth as evidence that its conception of the Sapphire project commenced in June 1997. Based on his general experience with CAD, as well as his review of the drawings at issue, Berman's opinion is that these drawings were not all created on the same date, a fact which the defendants believe undercuts the drawings' reliability as a benchmark for the invention's timing.

> n1 His report is attached as an exhibit to Docket No. 339.

*Daubert* requires a trial judge to screen proposed expert testimony for reliability and relevance. "While these concerns are of lesser import in a bench trial, where no screening of the factfinder can take place, the *Daubert* standards of relevance and [*9] reliability for scientific evidence must nevertheless be met." *Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1302 (Fed. Cir. 2002).* I conclude that Berman should be allowed to testify. First, because this is a bench trial, the concerns of *Daubert* "are of lesser import" given that there is no jury

to shield. *Seaboard Lumber, 308 F.3d at 1302.* It should go without saying that irrelevant or unreliable expert evidence will not enter into the mix of the court's decision-making process. As with Manbeck, or any other witness, in the event Berman's testimony crosses the line, I may entertain objections and disregard testimony at that time.

Moreover, I cannot conclude at present that Berman's testimony would be irrelevant or unscientific. Armament argues that Berman has no first-hand knowledge about how Parsons actually developed inventions, which is the only thing that is relevant in the upcoming trial. Of course that is the ultimate issue, but it is possible that Berman's testimony would be useful in evaluating the plausibility of the design process Parson claims he used. For instance, if Berman is able to testify that the procedures Armament [*10] used were highly unusual in the industry, or that it would not have made sense to sketch an idea in June and then reduce the idea to CAD drawings the next January, that could call into question the timing sequence Armament proposes. Berman is certainly well-credentialed -- he is a mechanical engineer and president of a product design and prototyping firm -- and I conclude that his testimony might aid the court in evaluating the issues to be decided. Accordingly, the motion to exclude is **DENIED.**

## II. MOTION TO COMPEL

The motion to compel asserts that Armament waived its attorney-client privilege with respect to certain communications. The documents at issue are listed in Armament's privilege logs and involve Parsons' communications and meetings with McDonnell, Boehnen, Hulbert & Berghoff ("MBHB"), Armament's original patent counsel.

Defendants claim Armament intentionally waived its right to assert the attorney-client privilege because it produced a letter from its patent counsel, who wrote, "I believe Dr. Parsons discussed the Sapphire light with the MBHB team on December 4, 1997." (Docket No. 361, Ex. A.) That is, Armament is using some of its attorney-client communications [*11] as a defense to the inequitable conduct charge (as evidence of the conception date), and it should not be allowed to hide behind attorney-client privilege selectively. As the Federal Circuit has noted:

> The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter. The waiver extends beyond the document initially produced

out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not.

*Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed. Cir. 2005)* (citations omitted).

The question, then, is what is the "subject matter" as to which Armament has waived privilege? It seems the disclosure has been limited to the issue of timing -- i.e., the central issue in the upcoming trial. That is, the evidence is offered by Armament only to show that the idea *existed* as of a certain date; the disclosure does not, in other words, involve attorney-client communications as to validity or any other sort of legal advice. Accordingly, [*12] Armament is ordered to produce the documents sought in the motion, but it may redact any portions of such documents that reveal any of its attorney's thoughts, impressions, and the like, about legal issues such as validity.

## III. MOTION FOR LEAVE TO SUPPLEMENT

Finally, Armament seeks to introduce additional evidence of Parsons' practice of drawing on top of other documents. It asserts that last weekend Parsons found additional blank sheets of paper and that Armament's expert has been able to conclude from them that they contain latent impressions from indented writing. The expert opines, in a supplemental report: "The indenta-

tions listed are significant because they offer support for the proposition that blank backer sheets used for concept drawings and other writing are stored by Dr. Parsons, and could be used to produce concept drawings at a much later date." (Docket No. 366, Ex. A at 2.) In other words, the additional documents show another example of Parsons using (loose) backer sheets, which could explain how a given document has impressions on it from a *newer* drawing.

Defendants have not yet responded to the motion, but it is assumed that the motion is opposed. [*13] Armament has attempted to mitigate any prejudice by flying the documents to Alan Robillard, the defendants' expert, who is already examining them. In the event some indication of prejudice emerges, the defendants may raise that objection during the trial. However, for present purposes, the motion will be **GRANTED** and Armament will be allowed to rely on the additional sheets of graph paper.

## IV. CONCLUSION

For the reasons given above, the motions to exclude (Docket Nos. 338, 339, 340) are **DENIED.** The motion to compel (Docket No. 361) is **GRANTED,** in part. The motion for leave to supplement (Docket No. 366) is **GRANTED.**

**SO ORDERED** this 27th day of April, 2007.

s/ William C. Griesbach

United States District Judge