IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 05-700 (KAJ) |
| v. | ) ) | CONSOLIDATED |
| BARR LABORATORIES, INC., | ) ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 05-854 (KAJ) |
| v. | ) ) ) | |
| MYLAN PHARMACEUTICALS INC., | ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' ANSWERING BRIEF
## IN OPPOSITION TO BARR'S MOTION TO COMPEL

OF COUNSEL:
Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
(212) 906-1200

Kenneth G. Schuler
Amanda J. Hollis
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
(312) 876-7700

June 22, 2007

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*
*Boehringer Ingelheim International Gmb and*
*Boehringer Ingelheim Pharmaceuticals, Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................... ii

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................... 1

II.   SUMMARY OF ARGUMENT ........................................................... 1

III.  FACTS ............................................................................ 3

IV.   ARGUMENT ........................................................................ 8

      A.    Legal Standard ........................................................... 8

      B.    Barr Has Not Established Any Misrepresentation ........................... 9

      C.    Barr Has Made No Showing of Materiality ............................... 14

      D.    Barr Has Not Established a *Prima Facie* Case of Reliance ............... 14

      E.    Barr Has No Evidence of Deceptive Intent .............................. 17

            1.    Dr. Fleischer Did Not Make The Accused Statement ............... 17

            2.    Boehringer's Actions Are Inconsistent With Any Alleged Intent to
                  Deceive ...................................................... 18

            3.    Barr Has Submitted No Evidence Suggesting That Dr. Dr.
                  Fleischer Believed That Any Statement in the IDS Was Inaccurate,
                  Much Less False .............................................. 19

      F.    Barr Has Not Established That Any Document Was Created in
            Furtherance of the Purported Fraud .................................. 20

      G.    *In Camera* Review Is Inappropriate .................................. 21

V.    CONCLUSION ..................................................................... 22

TABLE OF AUTHORITIES

<u>Page</u>

<u>CASES</u>

*2M Asset Mgmt., LLC v. Netmass, Inc.*,
   2:06-CV-215, 2007 U.S. Dist. LEXIS 14098 (E. D. Tex. Feb. 28, 2007) ........................20

*American Optical Corp. v. United States*,
   179 U.S.P.Q. 682 (Ct. Cl. 1973)..................................................................................14

*Apotex Corp. v. Merck & Co.*,
   229 F.R.D. 142 (N.D. Ill. 2005) ..................................................................................20

*Danisco A/S v. Novozymes A/S*,
   427 F. Supp. 2d 443 (S.D.N.Y. 2006) .....................................................................19, 20

*In re Bankamerica Corp. Secs. Litig.*,
   270 F.3d 639 (8th Cir. 2001) .......................................................................................21

*In re Edwards*,
   568 F.2d 1349 (C.C.P.A. 1978) ...............................................................................11, 12

*In re ML-Lee Acquisition Fund II, L.P. Secs. Litig.*,
   848 F. Supp. 527 (D. Del. 1994) .................................................................................21

*In re Rambus Inc.*,
   7 Fed.Appx. 925 (Fed. Cir. 2001).................................................................................9

*In re Rogoff*,
   261 F.2d 601 (1958) ......................................................................................................16

*In re Spalding Sports Worldwide, Inc.*,
   203 F.3d 800 (Fed. Cir. 2000) ...............................................................................*passim*

*Lampi Corp. v. Am. Power Prods.*,
   228 F.3d 1365 (Fed. Cir. 2000) ....................................................................................11

*Mallinckrodt, Inc. v. Masimo Corp.*,
   147 Fed.Appx. 158 (Fed. Cir. 2005) ............................................................................14

*Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*,
   227 F.R.D. 382 (D. Pa. 2005)..........................................................................................8

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
   133 F.3d 1473 (Fed. Cir. 1998) ......................................................................................1

*Nedler* ex rel *Circle of Friends ADHC, Inc. v. Vaisberg*,
  2006 WL 2460892 (E.D. Pa. Aug. 22, 2006) ..................................................21

*Nintendo of America Inc. v. Magnavox Co.*,
  707 F. Supp. 717 (S.D.N.Y. 1989) .......................................................11, 14

*Nobelpharma AB v. Implant Innovations, Inc.*,
  141 F.3d 1059 (Fed. Cir. 1998) ...........................................................8, 16

*Orson, Inc. v. Miramax Film Corp.*,
  79 F.3d 1358 (3d Cir. 1996) .................................................................15

*Perkins v. Kwon*,
  886 F.2d 325 (Fed. Cir. 1989) ..............................................................15

*Softview Computer Products Corp. v. Haworth, Inc.*,
  58 U.S.P.Q.2d 1422 (S.D.N.Y. 2000) .....................................................15

*Standard Mfg. Co. v. United States*,
  25 Cl. Ct. 1, 94-95 (Ct. Cl. 1991) .........................................................11

*Syngenta Seeds, Inc. v. Monsanto Co.*,
  404 F. Supp. 2d 584 (D. Del. 2005) ......................................................18

*Therma-Tru Corp. v. Peachtree Doors Inc.*,
  44 F.3d 988 (Fed. Cir. 1995) ................................................................18

*Ulead Systems, Inc. v. Lex Computer & Management Corp.*,
  351 F.3d 1139 (Fed. Cir. 2003) (Newman, J. concurring) ...............................19

*Union Carbide Corp. v. Dow Chemical Co.*,
  619 F. Supp. 1306 (D. Del. 1985) .........................................................19

*Vas-Cath, Inc. v. Mahurkar*,
  935 F.2d 1555 (Fed. Cir. 1991) ............................................................11

*Woodland Trust v. Flowertree Nursery Inc.*,
  148 F.3d 1368 (Fed. Cir. 1998) ............................................................10

STATUTES

35 U.S.C. § 102(g) (1988) .....................................................................10

35 U.S.C. § 112 ..................................................................................2

37 C.F.R. § 1.601 ..........................................................................15, 16

37 C.F.R. § 1.603 (1988) ......................................................................15

iv.

MPEP § 901.03 ...........................................................................................10

MPEP § 2138 ...............................................................................................10

MPEP 2303 ............................................................................................16, 17

MPEP 2307.02 ..............................................................................................16

MPEP 2308.02 ..............................................................................................16

## I.    **NATURE AND STAGE OF THE PROCEEDINGS**

This is a patent infringement action brought by Plaintiffs Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharmaceuticals, Inc. (collectively "Plaintiffs" or "Boehringer") against defendant Barr Laboratories, Inc. ("Barr"). Barr has filed a Motion for *In Camera* Inspection and to Compel Production of Documents Pursuant to the Crime-Fraud Exception. This is Plaintiffs' opposition to that motion.

## II.    **SUMMARY OF ARGUMENT**

Barr's Motion to Compel is a textbook example of why the Federal Circuit has called inequitable conduct assertions a "plague" on the patent system. *See Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1482 (Fed. Cir. 1998) (citation omitted). The statement upon which Barr's motion is premised states, in relevant part, that an unpublished United States patent application filed by scientists affiliated with Eli Lilly ("the Lilly Application") was "not available as prior art." D.I. 145 at 7. As Barr well knows – because Boehringer emphasized the point in its interrogatory responses – that statement is literally and indisputably accurate. Because the Lilly Application was merely an unpublished application that never matured into a patent, it *was not* prior art regardless of the effective filing date of the '812 patent.

Barr's fraud allegation is nothing more than a restated version of its "new matter" argument. Barr struggles to explain why its new matter argument is relevant given that the abandoned Lilly Application never became prior art, regardless of the filing date of the Boehringer application. Adding charges that honorable lawyers deliberately deceived the PTO does not constitute proof that the statement at issue was inaccurate.

Regardless, Barr's "new matter" theory misleadingly focuses on "General Formula I" of the German Priority Application vis-à-vis "General Formula I" of the application that matured into the '812 patent, baldly asserting that a difference between them establishes that

Boehringer added "new matter" to that application. But the pertinent inquiry under 35 U.S.C. § 112 is whether the German Priority Application, *as a whole*, describes halogenated phenylalkyl groups at the $R_1$ position to one of ordinary skill in the art. The evidence of record discloses that it does – detailing at least two methods of making such compounds.

Barr's motion fails for a variety of other reasons. To establish a *prima facie* case justifying the application of the crime-fraud doctrine, Barr has to establish an affirmative misrepresentation to the PTO, with clear and independent evidence of deceptive intent, *and* make a clear showing of reliance – *i.e.,* that the patent would not have issued but for the misrepresentation or omission. Barr's motion utterly fails to do so, however. Its causation "theory" posits that the filing of the Amendment and Information Disclosure Statement ("IDS") caused the examiner to "not declare an interference," and that "had an interference been declared, the Eli Lilly inventors would have been able to demonstrate a corroborated conception and reduction to practice of compounds within the scope of the '671 U.S. application claims." *Id.* Barr, however, conveniently omits the fact that, in order to demonstrate that an interference could have been declared, Barr had to show that the Lilly Application (1) was pending at the time, (2) had been determined to contain allowable subject matter, and (3) claimed the same invention as the Boehringer application. Barr puts forth no evidence satisfying any aspect of its burden.

Indeed, the prosecution history of the Lilly Application reveals that it had been *abandoned* in 1986 – two years before the submission of the statement at issue. Given the circumstances, an interference *could not have been declared*.

Barr also has failed to proffer any evidence of deceptive intent. Notably, although Barr's argument centers on a statement contained in the IDS – a document drafted and signed by

Alan Stempel, a patent attorney for Boehringer Ingelheim Pharmaceuticals, Inc. – Barr does not

claim that Mr. Stempel made the statement with any deceptive intent.  Instead, Barr's assertion

of deceptive intent focuses on Dr. Rolf Fleischer, a German employee of a Boehringer affiliate.

Notably, Dr. Fleischer did not draft any portion of the IDS.  The most that Barr can say is that

Dr. Fleischer received a copy of the IDS *after* it was filed with the PTO.  Needless to say, Barr's

"evidence" falls far short of proving that Dr. Fleischer intended to deceive the PTO.

Indeed, Barr's fraud theory makes no sense at all.  Barr says that Dr. Fleischer

"allowed" the applicants to misrepresent the facts about its priority date in order to avoid an

interference involving the inventors listed on the Lilly Application.  But Boehringer not only

provided the Lilly Application to the Patent Office, it urged the examiner to consider carefully

whether an interference would be appropriate.  It is mind-boggling that Barr argues that

Boehringer was trying to avoid having an interference declared when it was actively encouraging

the examiner to "particularly consider" that possibility.  Given these circumstances, Barr's

assertion of inequitable conduct stands the doctrine on its head.

## III.    FACTS

This case concerns a chemical compound known as pramipexole, one of the most

often prescribed and best-selling anti-Parkinson's Disease drugs in the world.  Pramipexole was

indisputably first invented by Boehringer scientists in Germany in the early 1980s, along with

several other compounds that demonstrated utility as therapeutic agents for various conditions,

including Parkinson's Disease.  On December 22, 1984, one of Boehringer's German patent

agents, Dr. Rolf Fleischer, filed the first patent application directed to these novel compounds,

German Application No. DE 3447075A(1) ("the '075 application" or "German Priority

Application").  *See* Ex. 53 BARR 28270-71 (Translation) (Ex. A).  *See Dep. R. Fleischer* (Ex. B)

at 167:10-168:13.  A portion of this application describes a class of compounds that share the

same core structure but vary at certain positions, designated as "$R_1$, $R_2$, $R_3$, and $R_4$." $R_1$ through $R_4$ are each defined to be one of several possible chemical groups or "substituents." Ex. A at BARR28270-80. For example, for purposes of Formula I, $R_3$ is defined to be "a phenylalkyl ... group ... whilst the phenyl nucleus may be substituted by fluorine, chlorine, or bromine atoms." *Id.* at BARR28271. Recited examples for $R_3$ include halogenated phenyl groups such as "chlorobenzyl" groups. *See id.* at BARR28274.

Another portion of the '075 application describes several synthetic methods, enumerated as Methods A-E. *Id.* at 28274-80. Method E describes the preparation of "compounds of General Formula I wherein *at least one of the groups $R_1$, $R_2$, $R_3$, or $R_4$ represents one of the* alkyl, cycloalkyl, alkenyl, alkynyl, or *phenylalkyl groups mentioned hereinbefore.*" *Id.* at BARR28278. Among the phenylalkyl groups described previously in the application are those in which "the phenyl nucleus [may] be substituted by fluorine, chlorine, or bromine atoms." *Id.* at BARR28271.

Subsequent to the filing of the '075 application, scientists at Boehringer generated additional data demonstrating that pramipexole was effective in treating Parkinson's-like symptoms in monkeys. *Dep. R. Milnes* (Ex. C) at 84:16 – 87:17. This data was added into a second application filed in Germany on March 13, 1985. *See id.*; DE 3508947 ("the '947 application") (Ex. D). Later, as the twelve-month deadline for claiming priority to the '075 application approached, Dr. Fleischer prepared a "Foreign Filing Text" to be used in filing applications in several countries, including the United States. *See* Ex. B at 196:5-13. In creating the Foreign Filing Text, Dr. Fleischer copied the content of the original '075 application and the additional information included in the '947 application and also modified the definition of $R_1$ of "General Formula I" to expressly recite that $R_1$, like $R_3$, could be a halogenated phenyl group.

*See Dep. H. Klaes 30(b)(6)* (Ex. E) at 194-204.   In addition, since the first German priority application had been filed, Method D had been used synthesize several compounds in which $R_1$ was a chlorobenzyl group.   *Id.*   Data for those compounds was added to Example 10, which already described several compounds prepared according to Method D.   *Id.*; *compare* Ex. A at BARR28306-08, *with* Foreign Filing Text (Ex. F) at 39-41.

Dr. Fleischer's conduct was entirely consistent with European patent law practice and procedure.   *See* Expert Report W. Holzer (Ex. G) ¶ 30.   European countries, including Germany, follow a first-to-file system of granting patents, such that a patent is generally granted to the first applicant that discloses the relevant subject matter in a filed patent application.   *Id.*   It is therefore a common practice in Europe to file applications as soon as an effective disclosure can be made and then, to the extent additional embodiments of the invention are created, they are included in subsequent applications claiming priority to the first.   *Id.* at 13-14.

The Foreign Filing Text was then translated into English – not by Dr. Fleischer, whose native language was German, but by an outside translation firm.   *See* Ex. B at 47 & 125:11-126:13.   The translated text was then sent by the translation firm to Dr. Fleischer and his U.S. counterparts.   United States Patent Application Serial No. 810,947 subsequently was filed in the U.S. on December 19, 1985, by Mr. Stempel.   *See Dep. A. Stempel* (Ex. H) at 151.   In connection with that filing, Dr. Dieter Laudien, then the head of Boehringer's patent department in Ingelheim, sent an "order letter" indicating that priority for the foreign filings could be claimed to the '075 and '947 applications.   *See* Ex. 115 ("Order Letter") (Ex. I).   Mr. Stempel was responsible for all three U.S. applications that stem from December 19, 1985 filing.   *See* Ex. H at 346, 347, 466, 467 & 557; Ex. B at 235.

In 1987, two years after the '947 application was filed, Boehringer discovered a European patent application filed by scientists at Eli Lilly & Co. that described potentially overlapping subject matter. *See* EPO App. No. 86304754.4 (Ex. J). Lilly's European application was filed on June 20, 1986, later than Boehringer's U.S. filing date, but listed a U.S. priority application (Serial No. 747,748) that apparently was filed on June 24, 1985. *See id.* Mr. Stempel disclosed the Lilly Application to the PTO in connection with the application that matured into the '812 patent in an IDS filed before the examiner issued a first office action.

The IDS also expressly notes that the Lilly Application might lead to information which could result in an interference. Under the heading "**Possibly Interfering Application of Another,**" Mr. Stempel wrote:

> *Applicants particularly wish to bring to the attention of the Patent and Trademark Office the existence [of] U.S. Patent Application Serial No. 747,748, filed 24 June 1985, and its foreign equivalent, European Patent Application No. 207,696, published 1 July, 1987*....[T]he compounds of European '696 represent a subgenus of the compounds disclosed and originally claimed in the above-captioned application....U.S. Application Serial No. 747,748 contains the same disclosure as European '696...It is believed that Serial No. 747,748 is still pending. As filed, U.S. application Serial No. 747,748 contained claims directed to compounds of the above formula XX. *The Examiner is urged to consider carefully the relevance of Serial No. 747,748 before allowing the above-captioned application. The possibility of interfering subject matter should be particularly considered.* Copies of these two references and a Form PTO-1449 listing the same are enclosed herewith.

*See Dec. 8, 1988 Information Disclosure Statement* (Ex. K) at 2-4 (emphasis added).

In that same submission, Mr. Stempel stated that the Lilly Application was "not available as prior art because its filing date is later than the effective filing date of the above-captioned application. (The effective filing date of the above-captioned application is 22 December 1984, the date on which the German application for which Convention priority is

claimed was filed)." *Id.* at 3. The Lilly Application was abandoned, and an interference was never declared.

Alan Stempel testified that he drafted the IDS without any involvement from Dr. Fleischer. *See* Ex. H at 573-74. The testimony of record shows that patent attorneys from Boehringer Ingelheim Pharmaceuticals, Inc. in Ridgefield, Connecticut were responsible for the U.S. patent applications, and that Dr. Fleischer did not participate in the drafting or submission of any documents directed to the PTO, much less the IDS at issue. *See Dep. of T. Witkowski* (Ex. L) at 279-80; Ex. E at 223-24 & 283-84; Ex. H at 574. Dr. Fleischer was not responsible for handling any of the U.S. applications and does not remember discussing PTO filings with his U.S. colleagues before they were submitted. Ex. B at 341. As Dr. Fleischer put it, he simply "instructed [the U.S. colleagues] to prepare and file the patent applications in accordance with US law." *Id.* at 139:9-11.

Barr has filed an Abbreviated New Drug Application with the FDA seeking approval to market a generic copy of Boehringer's Mirapex® (pramipexole dihydrochloride) tablets. Barr does not contest infringement[1] and its primary remaining defense involves the assertion that the '812 patent is unenforceable as a result of inequitable conduct. As set forth herein, Barr lacks evidence to establish even a *prima facie* case of inequitable conduct, yet it now attempts to bootstrap its bald assertions of inequitable conduct into a basis for piercing the attorney-client privilege in hopes of discovering some evidence to support its allegations.

---

[1] Barr originally contested infringement of one claim, claim 7, but appears to have abandoned that position as it submitted no expert report on the subject.

## IV.    ARGUMENT

### A.    Legal Standard

"Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, because they relate to an issue of substantive patent law." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000) (citation omitted). "Similarly, in the present case, a determination of the applicability of the attorney-client privilege to [the documents sought by Barr's motion to compel] clearly implicates, at the very least, the substantive patent issue of inequitable conduct. [The Court] therefore appl[ies] Federal Circuit law in determining whether the attorney-client privilege applies." *Id.* at 803-04; *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 391 (D. Pa. 2005) (same).

Under Federal Circuit law, in order to invoke the crime-fraud exception, a party must establish common law or "*Walker Process*" fraud on the Patent Office. *See In re Spalding Sports Worldwide*, 203 F.3d 800, 807 (Fed. Cir. 2000). Accordingly, the attorney-client privilege may not be pierced pursuant to the crime-fraud exception "unless the following indispensable elements are found to be present:"

> (1) a representation of a material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation.

*Spalding*, 203 F.3d at 807 (*quoting Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069-70 (Fed. Cir. 1998)).

There are several pertinent differences between the proof that is necessary to show inequitable conduct and that which is required to pierce the privilege. **First**, "[a] finding of

[such] fraud requires higher threshold showings of both intent and materiality than does a finding of inequitable conduct." *Spalding*, 203 F.3d at 807. Thus, a crime-fraud finding "must be based on ***independent and clear evidence*** of deceptive intent ***together with a clear showing of reliance,*** *i.e.,* that the patent would not have issued but for the misrepresentation or omission." *Id.* **Second,** Barr also must show that the communications at issue were made ***in furtherance of*** the alleged fraud. *See Spalding,* 203 F.3d at 807; *In re Rambus Inc.,* 7 Fed.Appx. 925, 927 (Fed. Cir. 2001) ("To invoke the crime-fraud exception, a party challenging the attorney-client privilege must make a *prima facie* showing that the communication was made 'in furtherance of' a crime or fraud.") (internal citations omitted).

### B.   Barr Has Not Established Any Misrepresentation

The pertinent portion of the statement at issue recites that the Lilly Application "is not available as prior art." D.I. 145 at 14. Curiously, the "Argument" section of Barr's opening brief does not contain any section purporting to establish that the statement at issue was false. Instead, Barr's "argument" begins with a section devoted to materiality. *See id.* at 20. Barr's opening brief omits that requirement for the simple reason that Barr cannot establish that the statement at issue was false.

Indeed, as Barr is well aware from Boehringer's interrogatory responses, the Lilly Application was not, in fact, "available as prior art" and instead had been abandoned. *See* Boehringer's Resp. to Barr's Interrog. No. 16 (Ex. M); Boehringer's Resp. to Barr's Interrog. No. 25 (Ex. N). It is undisputed that the Lilly Application was abandoned and was never published or patented. Likewise, it was not publicly known, on sale, or publicly used. Therefore, ***regardless of the effective filing date of the '812 patent,*** the Lilly Application did not qualify as prior art under § 102(**a**) (barring a patent if "the invention was [publicly] known …

used, …patented, or described in a printed publication"),[2] **(b)** (barring a patent if "the invention was patented or described in a printed publication… or in public use or on sale"), **(c)** (barring a patent if the applicant "abandoned the invention") **(d)** (barring a patent if "the invention was first patented…or was the subject of an inventor's certificate, by the applicant"), **(e)** (barring a patent if "the invention was described in … a patent granted on an application for patent by another filed in the United States … or on an international application by another…"), or **(f)** (prohibiting patent if the applicant "did not himself invent the subject matter").

Although Barr's Motion makes a passing reference to § 102(g), it cites no authority to support the notion that the Lilly Application qualified as prior art under that subsection. It did not. At the time, Section 102(g) barred an invention if "before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it." 35 U.S.C. § 102(g) (1988). It is undisputed, however, that the unpublished Lilly Application could not have been cited as prior art by the examiner of the '671 application. That is because an unpublished U.S. patent application is "preserved in secrecy," and consequently is "not available as [a] reference." MPEP § 901.03 (5th ed., 1989) (Ex. O); *see also* MPEP § 2138 ("While the filing of an application for patent is a constructive reduction to practice, the filing of an application does not in itself provide the evidence necessary to show an actual reduction to practice of any of the subject matter disclosed in the application as is necessary to provide the basis for an ex parte rejection under 35 U.S.C. 102(g)"). In short, as the

---

[2]    It is well-established that knowledge or use must be public for purposes of § 102(a) even though the statute does not expressly state so. *See, e.g., Woodland Trust v. Flowertree Nursery Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998) ("in order to invalidate a patent based on prior knowledge or use, that knowledge or use must have been available to the public").

court noted in *Nintendo of America Inc. v. Magnavox Co.*, "[a]n Examiner cannot rely on a pending application as prior art." 707 F. Supp. 717, 730 (S.D.N.Y. 1989).

Implicitly conceding the truth of Mr. Stempel's statement, Barr myopically focuses on the parenthetical concerning the relative effective filing dates of the '671 application and the Lilly Application. *See* D.I. 145 at 20. But in so doing, Barr improperly divorces the statement from its context. As noted, the crux of the statement is that the Lilly Application is not available as prior art – a statement which was indisputably correct. *See* disc. *supra* at 9-10. Because the statement as a whole was true, Barr's claim of fraud fails. *See Standard Mfg. Co. v. United States*, 25 Cl. Ct. 1, 94-95 (Ct. Cl. 1991) ("The [accused] statement, however, is not taken in context of the paragraph in which it appears, or in the context of document as a whole.").

Moreover, Barr's argument – which is premised on its "new matter" theory – fails in any event. First, it is well-established that the subject matter of a later-filed claim does not need to be described literally, or "*in haec verba,*" in an earlier-filed priority application in order for the description requirement to be satisfied. *See In re Edwards*, 568 F.2d 1349, 1351-52 (C.C.P.A. 1978); *Lampi Corp. v. Am. Power Prods.*, 228 F.3d 1365, 1378 (Fed. Cir. 2000). Therefore, Barr's identification of certain textual differences between the German Priority Application and the '812 patent is insufficient to establish any violation of the written description requirement.

Second, the written description requirement is satisfied when a priority application, considered as a whole, conveys to one of ordinary skill in the art, either explicitly or inherently, that the inventor invented the subject matter claimed. *See Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991). With respect to patents in this field, a priority application may satisfy the written description requirement if it provides adequate direction to

those skilled in the art that reasonably leads them to the claimed compounds. *See Edwards*, 568 F.2d at 1354. Indeed, a priority application may adequately describe a claimed compound if it, "taken as a whole, reasonably leads persons skilled in the art to [a] reaction" for the synthesis of the claimed compound. *Id.*

Set against the legal framework, Barr's claim that there "can be no sincere dispute" about the scope of the German Priority Application, (D.I. 145 at 10) simply ignores the evidence of record. As set forth in the report of Boehringer expert Dr. Paul Bartlett, the German Priority Application discloses two methods enabling one of skill in the art to prepare compounds of the invention wherein $R_1$ is one of several halogenated phenyl groups.[3] The German Priority Application describes, in connection with $R_3$ of General Formula I, "a phenyl alkyl … group … whilst the phenyl nucleus may be substituted by fluorine, chlorine, or bromine atoms." Ex. A at BARR28271. Later, in describing Methods D and E, the applicants do not distinguish $R_1$ substituents from $R_3$ substituents, reciting that $R_1$ can be any of the phenylalkyl groups mentioned "hereinbefore." *See id.* at BARR28277 ("$R_1$" … represents one of the … phenylacyl group mentioned *hereinbefore*"); *id.* at BARR28278 ("$R_1$ … represents one of the … phenylalkyl groups mentioned *hereinbefore*"); *id.* at BARR28279 ("$R_5$ represents one of the .. phenylalkyl groups mentioned for $R_1$ to $R_4$ *hereinbefore*").

In other words, methods D and E teach that any phenylalkyl group "hereinbefore" described, including those halogenated phenylalkyl groups identified as possibilities for $R_3$, can be introduced at the $R_1$ position. Thus, the German Priority Application discloses to one of

---

[3] Notably, Barr has no expert opinion directed to the written description issue. Although Barr technical expert Dr. Eric Anslyn notes that there are textual differences between the German Priority Application and the '812 patent, he did not evaluate whether the German Priority Application, considered as a whole, conveys to one of ordinary skill in the art methods for synthesizing the claimed compounds with halogenated phenyl groups as the $R_1$ substituent. *See* Bartlett Rept. at ¶ 85.

ordinary skill in the art methods for synthesizing the claimed compounds with halogenated phenyl groups as the $R_1$ substituent. *See* Bartlett Report ¶¶ 48-50; 57-64 (Ex. P). Notably, although Boehringer outlined the facts in interrogatory responses served upon Barr months ago, *see* Boehringer's Resp. to Barr's Interrog. Nos. 19-20 (Ex. N), Barr pointedly ignores the substance of the issue, and merely offers conclusory attorney argument. *Compare* Ex. N to D.I. 145 at 9, n.7 (averring that "there can be little doubt" about its new matter theory). For this reason, even if the Court were to focus on the statement about priority divorced from its context, the parenthetical statement that "the effective filing date of the ['812 patent] is 22 December 1984, the date on which the German application for which Convention priority is claimed was filed," Ex. K, at 3, was entirely accurate.

At most, the existence of the Lilly Application might possibly have led to an interference between the applicants and the Lilly scientists. *See* D.I. 145 at 18. Barr ***concedes***, however, that the applicants disclosed ***that very possibility*** to the Patent Office. *See* D.I. 145. at 14 (conceding that the IDS "acknowledged the possibility of an interference"). Indeed, the accused statements are found in the IDS under the heading "**<u>Possibly Interfering Subject Matter of Another</u>**," in a section devoted to the discussion and disclosure of the Lilly Application, the existence of which the applicants said they "particularly wish[ed] to bring to the attention of the Patent and Trademark Office." Ex. K at 3-4. The applicants also "urged [the Examiner] to consider carefully [its] relevance...before allowing the above-captioned application." *Id.* They expressly noted that "***the possibility of interfering subject matter should be particularly considered***." *Id.* (emphasis added). Given the foregoing circumstances, Barr has made no showing that the statement at issue, viewed in context, is anything other than entirely accurate.

### C.    Barr Has Made No Showing of Materiality

Even if Barr could show that the statement in the IDS concerning the effective filing date of the '812 patent was inaccurate, Barr cannot establish materiality. In short, the Lilly Application did not constitute prior art to the pending '671 application *regardless* of whether applicants' effective filing date was December 22, 1984, or December 19, 1985. *See disc. supra* at 9-10. In other words, Barr points to no basis for the Court to conclude that the Lilly Application would have become "available as prior art" if Mr. Stempel had asserted priority only back to December 1985. *See, e.g., Mallinckrodt, Inc. v. Masimo Corp.*, 147 Fed.Appx. 158, 186 (Fed. Cir. 2005) (finding no inequitable conduct where information was not material).

In fact, Barr's comparison to the Federal Circuit's decision in *Li Second Family Ltd. Partnership* highlights why the supposed misrepresentation could not have been material. As Barr notes, the Federal Circuit's finding of materiality in that case stemmed from the fact that the representation about priority "eliminate[d] a reference specifically cited by the examiner." 231 F.3d 1373, 1380 (Fed. Cir. 2000). Here, by contrast, the Lilly Application was disclosed by the Boehringer applicants; it was not cited against them by the examiner. *See disc. supra* at 6. Nor did the applicants' alleged misstatement "eliminate" the Lilly Application as a reference – *it was never eligible to be cited as a reference*. *See Nintendo*, 707 F. Supp. at 730 ("An Examiner cannot rely on a pending application as prior art."). In addition, it is undisputed that the Lilly Application was abandoned. Thus, any alleged misstatement as to the effective filing date therefore could not have been material.

### D.    Barr Has Not Established a *Prima Facie* Case of Reliance

To pierce the privilege, Barr also has to make "clear showing" of reliance – that "but for" the alleged misrepresentation, the claims of the '812 patent would not have been allowed. *See American Optical Corp. v. United States*, 179 U.S.P.Q. 682, 684 (Ct. Cl. 1973);

disc. *supra* at 8. Barr has not proffered a single piece of evidence to attempt to satisfy that burden, instead offering mere attorney argument that "Boehringer's conduct prevented an interference." D.I. 145 at 18. But "legal memoranda and oral argument are not evidence." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1372 (3d Cir. 1996). Barr's motion is appropriately denied for this reason alone. *See Softview Computer Products Corp. v. Haworth, Inc.*, 58 U.S.P.Q.2d 1422, 1431 (S.D.N.Y. 2000) ("Softview, however, has not shown that Haworth's claim that its product enjoyed 'substantial and significant commercial success' induced the PTO to issue a patent which it would not otherwise have issued…. Thus, Softview's argument in this regard is also insufficient to pierce the privilege.").

Barr's unsupported assertion that "Boehringer's conduct prevented an interference" (D.I. 145 at 18) fails in any event. In order to show that an interference would have been declared absent the allegedly misleading statement, Barr must show that the Boehringer and Lilly applications were (1) pending and (2) deemed to claim the same patentable subject matter. As set forth in 37 C.F.R. § 1.601 (1988), an interference could only "be declared between two or more *pending* applications naming different inventions when, in the opinion of the examiner, the applications contain claims for the same *patentable* invention." Those twin prerequisites likewise are incorporated into 37 C.F.R. § 1.603 (1988), which at the pertinent time provided that "[b]efore an interference is declared between two or more applications, *the examiner must be of the opinion that there is interfering subject matter claimed in the applications which is patentable to each applicant* subject to a judgment in the interference." As the Federal Circuit explained in *Perkins v. Kwon*:

> "The question as to patentability of claims to an applicant *must be determined before any question of interference arises* and claims otherwise unpatentable to an applicant cannot be allowed merely in order to set up an interference. " (quoting *In re Rogoff*, 261 F.2d 601, 606

(1958)). No change in this practice was made in the 1984 enactment that consolidated the boards, and the implementing regulations and procedure *continue to require the presence of subject matter patentable to each applicant before an interference is declared*. 37 C.F.R. §§ 1.603 and 1.606 (1988); Manual of Patent Examining Procedure §§ 2307.02 and 2308.02 (5th ed. 1983 & 1988 rev. 9).

886 F.2d 325, 327 & n.2 (Fed. Cir. 1989).

Barr not only has failed even to acknowledge the foregoing requisites, it has failed to proffer any evidence addressing them. Thus, Barr has no proof whatsoever that the Lilly Application was still pending as of December 8, 1988. In fact, it was not. *See disc. supra* at 6. Because the Lilly Application had been abandoned, the statement at issue axiomatically could not have been the "but for" cause for the issuance of the '812 patent.

Nor has Barr proffered any evidence that the Lilly Application was ever in condition for allowance, much less at the same time that Boehringer's application was determined to be allowable. *See id.* Because there is no evidence that both of the conditions for an interference were present at the time of the filing of the IDS, Barr's causation theory fails. *See Nobelpharma*, 141 F.3d at 1071 (a finding of fraud "must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance, i.e., that the patent would not have issued but for the misrepresentation or omission.").[4]

---

[4]    Barr's citation to MPEP § 2303 is inapposite. First, the section does not replace the requirements of 37 C.F.R. § 1.601, and the presumption described in § 2303 therefore is irrelevant to the causation issue. Second, Barr's claim that, "[u]nder Section 2303 of the Manual of Patent Examining Procedure ('MPEP') in effect at that time, an examiner was directed that an interference will normally not be declared if the difference in effective filing dates between the two pending applications is more than six months," misses the point. Section § 2303 has an exception "where one application has the earliest effective filing date based on foreign priority and the other application has the earliest effective United States filing date." MPEP § 2303 (Ex. O to Barr Mem. in Supp.). Given that the '671 Application claimed foreign priority, while the Lilly Application's previous claim of priority was based on a U.S. filing date, the statement at issue would not have had any

### E.    Barr Has No Evidence of Deceptive Intent

In order to pierce the attorney-client privilege, Barr had to put forth "independent and clear evidence of deceptive intent." *Spalding*, 203 F.3d at 807. For the following reasons, Barr has failed to satisfy its heightened burden.

### 1.    Dr. Fleischer Did Not Make The Accused Statement

Barr's supposed evidence of "deceptive intent" consists of a series of bullet points concerning Dr. Fleischer's actions. *See* D.I. 145 at 22. They wholly ignore the fact that Dr. Fleischer did not make the statement accused of being false. Moreover, the bulk of the points are wholly innocuous. For example, the fact that Dr. Fleischer "drafted the First German application" and the Foreign Filing Text, "knew that the Foreign Filing Text . . . would be translated and filed in the United States," and allegedly "knew about the overlap between the Eli Lilly and Boehringer applications" (D.I. 145 at 21-22), is hardly evidence of deceptive intent -- let alone the clear evidence required to establish a fraud. In the same vein, the notion that Dr. Fleischer agreed, in the abstract, that the addition of new matter could hypothetically preclude a claim of priority, (*id.* at 22), is irrelevant -- the testimony cited by Barr is not related to the text of the '671 patent application vis-à-vis the German Priority Application. Indeed, there is no evidence that Dr. Fleischer ever considered whether the Foreign Filing Text associated with the '812 patent contained "new matter."[5] Furthermore, the fact that Dr. Fleischer "acknowledge[d]

---

bearing on a potential interference in light of § 2303 even had the Lilly Application been pending at the time.

[5]    Barr's claim that Dr. Fleischer "admitted [that] the German Applications did not disclose compounds with halogenated phenyl moieties at the $R_1$ position, while the pending '671 application claims did, vitiating any argument that the '671 U.S. application was entitled to the filing date of either German Application, much less the first one," (D.I. 145 at 20-21), misrepresents the facts. Notably, Barr does not provide any citation in support of this purported "admission." *Id.*

"[an] obligation to be truthful and candid with the PTO," *id.*, does nothing to support Barr's theory; if anything, it is evidence of good faith.

In the end, Barr's alleged "evidence" of deceptive intent consists of its allegations that "Dr. Fleischer was involved in substantive filings for Boehringer's '671 U.S. application," and "reviewed and initialed the IDS." D.I. 145 at 22. These assertions are highly misleading. Dr. Fleischer did not receive a copy of the IDS until *after* it was filed with the PTO. *See* Fleischer Exhibit 98 (Ex. Q) (document receipt stamp confirms Dr. Fleischer received the IDS on December 15, 1988, or a week after it was filed by Mr. Stempel). It goes without saying that the receipt of a document for purposes of maintaining a prosecution file, and the review of such a submission *after the fact*, cannot constitute evidence of deceptive intent. *See, e.g., Therma-Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 996 (Fed. Cir. 1995) ("[T]here can not have been culpable intent in withholding information that the inventor did not have."); *Syngenta Seeds, Inc. v. Monsanto Co.*, 404 F. Supp. 2d 584, 593 (D. Del. 2005) (finding there could be no intent to deceive the PTO where there was no clear and convincing evidence that the accused in-house patent attorney knew of a prior art reference at issue or that he was involved in the prosecution of the relevant applications).

### 2.     Boehringer's Actions Are Inconsistent With Any Alleged Intent to Deceive

Boehringer's actions in disclosing the Lilly Application are entirely inconsistent with any alleged intent to deceive the PTO. Far from hiding its contents, Boehringer cited the Lilly Application to the Examiner and made it clear that it should be thoroughly considered, as it ultimately could lead to an interference. Ex. K, at 3-4. The fact that the Lilly Application potentially could have led to an interference is the most Boehringer could have said about the Lilly Application, and that is exactly what the applicants "urged" the Examiner to consider

"carefully." *Id.* It is nonsensical to think that the applicants intended to conceal the very thing they not only disclosed, but ***highlighted***, in their submission to the Examiner. *See, e.g., Danisco A/S v. Novozymes A/S*, 427 F. Supp. 2d 443, 449 (S.D.N.Y. 2006) (finding patentee's disclosure of the prior art inconsistent with a finding of bad faith, let alone an intent to deceive the examiner with respect to its allegedly false statements regarding that art). Indeed, as the examiner had access to the PTO's confidential files concerning the Lilly Application, the examiner necessarily had more information concerning its potential for leading to an interference that Mr. Stempel or anyone else at Boehringer. For this reason, Barr has failed to meet its burden of proving any intent to deceive.

### 3. Barr Has Submitted No Evidence Suggesting That Dr. Dr. Fleischer Believed That Any Statement in the IDS Was Inaccurate, Much Less False

As Barr admits, intent to deceive may be inferred ***only*** "upon proof of a ***knowing*** misrepresentation of a material fact." *See* D.I. 145 at 5 (citing *Union Carbide Corp. v. Dow Chemical Co.*, 619 F. Supp. 1306, 1052 (D. Del. 1985); *Spalding*, 203 F.3d at 807). For a knowing misrepresentation to occur, the individual must have known both about the representation as well as its falsity. "A knowing and intentional misrepresentation must always be present." *Ulead Systems, Inc. v. Lex Computer & Management Corp.*, 351 F.3d 1139, 1154 (Fed. Cir. 2003) (Newman, J. concurring).

Putting aside the fact that he did not author the statement, Barr has offered no evidence suggesting that Dr. Fleischer believed that Mr. Stempel's statements in the IDS were anything other than accurate. In fact, when Barr asked Dr. Fleischer during his deposition whether he understood the December 22, 1984, priority date to be correct, Dr. Fleischer testified that it was. *See Dep. R. Fleischer* (Ex. B) at 331, ll. 8-21. That testimony alone undermines any suggestion of deceptive intent.

Moreover (and again putting aside the fact that he did not author the IDS), in order to infer that the statement constituted "knowing fraud," the Court would have to find Barr's "new matter" position to be so "patently correct" that it could not possibly be the subject of an honest disagreement.  *Compare Danisco*, 427 F. Supp. 2d at 450; *2M Asset Mgmt., LLC v. Netmass, Inc.*, 2:06-CV-215, 2007 U.S. Dist. LEXIS 14098, at *13 (E. D. Tex. Feb. 28, 2007) (denying motion to compel and finding no deceptive intent absent any evidence that patentee's misstatement of the facts as to inventorship was anything other than an honest mistake).  Given that Barr has not even attempted to analyze whether the statement was false under the correct standard, much less present any evidence in support of its position, Barr has not come close to meeting this threshold.  *See Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 147 (N.D. Ill. 2005) (denying *in camera* review where the purportedly fraudulent statements relating to § 102(g) were an attorney's reasonable inference from the evidence in the record).

**F.**    **Barr Has Not Established That Any Document Was Created in Furtherance of the Purported Fraud**

In addition, the scope of Barr's request is overly broad and unsupportable.  Barr seeks the production of nearly 90 concededly-privileged documents based solely on the fact that they were prepared between February 2, 1987 and December 12, 1989.  *See* D.I. 145 at 2.  Barr has not even attempted to demonstrate that any of the documents it seeks is a communication made "in furtherance" of an alleged fraud on the PTO.  *See Spalding*, 203 F.3d at 807 ("To invoke the crime-fraud exception, a party challenging the attorney-client privilege must make a *prima facie* showing that the communication was made 'in furtherance of' a crime or fraud.").  Without a *prima facie* showing that each of the documents so relates to the purported fraud, Barr's request must be denied:

> ***A moving party does not satisfy this threshold burden merely by alleging that a fraud occurred and asserting that disclosure of any privileged***

> ***communications may help prove the fraud.***   There must be a specific
> showing that a particular document or communication was made in
> furtherance of the client's alleged crime or fraud.

*In re Bankamerica Corp. Secs. Litig.*, 270 F.3d 639, 642 (8th Cir. 2001) (emphasis added).

      Because Barr has not even attempted to make such a showing, its motion should be denied.  In fact, the fact that Boehringer disclosed the Lilly Application, "urged" the examiner "to consider carefully [its] relevance," and noted that "[t]he possibility of interfering subject matter should be particularly considered" uniformly weigh against any allegation that the subject documents were created in furtherance of a fraud.  In the words of the Federal Circuit, those actions "would seem to be the opposite of furthering fraud."  *Spalding,* 203 F.3d at 808.

### G.    *In Camera* Review Is Inappropriate

      Nor has Barr justified its request for *in camera* review of Boehringer's privileged documents.  Although the standard for *in camera* review of privileged documents is sometimes expressed as more lenient than that necessary to support a finding that the crime-fraud exception applies, Barr must present at least "'a factual basis adequate to support a good faith belief by a reasonable person' . . . that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies....[M]ere allegations are not sufficient."  *In re ML-Lee Acquisition Fund II, L.P. Secs. Litig.*, 848 F. Supp. 527, 566 (D. Del. 1994) (citation omitted).  For the reason set forth above, Barr has presented only "mere allegations," and likewise has articulated no factual basis upon which the Court could reasonably conclude that the subject communications may be "in furtherance of" an alleged fraud.  Thus, "on the present state of the record, [Barr has] not even come close to 'showing ... a factual basis adequate to support a good faith belief by a reasonable person' that the crime-fraud exception applies."  *Nedler* ex rel *Circle of Friends ADHC, Inc. v. Vaisberg*, 2006 WL 2460892, *5 (E.D. Pa. Aug. 22, 2006) (quoting *Zolin*, 491 U.S. at 572).

## V.    <u>CONCLUSION</u>

For all of the foregoing reasons, Barr's motion to compel and for *in camera* review should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*
_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*
*Boehringer Ingelheim International GmbH and*
*Boehringer Ingelheim Pharmaceuticals, Inc.*

OF COUNSEL:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
(212) 906-1200

Kenneth G. Schuler
Amanda J. Hollis
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
(312) 876-7700

June 22, 2007
869511

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on June 22, 2007, 2006, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

Mary B. Matterer
Morris James LLP

Adam Wyatt Poff
Young, Conaway, Stargatt & Taylor LLP

I further certify that copies of the foregoing document were also served upon the following in the manner indicated:

### BY HAND DELIVERY

Mary B. Matterer, Esquire
Morris James LLP
500 Delaware Avenue
Wilmington, DE  19801

Adam Wyatt Poff, Esquire
Young, Conaway, Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

### BY FEDERAL EXPRESS on 6/23/07

Glenn J. Pfadenhauer, Esquire
Jessamyn S. Berniker, Esquire
Dov P. Grossman, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC  20005-5901

Shannon M. Bloodworth, Esquire
Heller Ehrman LLP
1717 Rhode Island Ave., NW
Washington, DC  20036

David J. Harth, Esquire
Heller Ehrman LLP
One East Main Street, Suite 201
Madison, WI  53703

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)