# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BARR LABORATORIES, INC. <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) )     C.A. No. 05-700 (***) |

## REPLY BRIEF IN SUPPORT OF DEFENDANT BARR LABORATORIES, INC.'S MOTION FOR *IN CAMERA* INSPECTION AND TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO THE CRIME-FRAUD EXCEPTION

OF COUNSEL:
Glenn J. Pfadenhauer
Jessamyn S. Berniker
Dov P. Grossman
Brett R. Tobin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000

Dated: July 18, 2007

YOUNG CONAWAY STARGATT &
   TAYLOR, LLP
Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Adam W. Poff (#3990)
Karen E. Keller (#4489)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
*Attorneys for Defendant Barr Laboratories, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................. iii

INTRODUCTION ............................................................................................................................ 5

ARGUMENT .................................................................................................................................... 5

    A.    The IDS Contained a Material Misrepresentation Regarding Boehringer's Effective Filing Date. ........................................................................ 5

        1.    Plaintiffs' Focus on Whether the Eli Lilly Application Was "Prior Art" Is a Diversion. .............................................................. 6

        2.    The Evidence of Record Is That the Eli Lilly Application Was Pending at the Time. ................................................................. 8

        3.    The German Applications Do Not Disclose Halogenated Phenyl Groups at the $R_1$ Position. ................................................. 10

    B.    Dr. Fleischer Intended to Deceive the USPTO. ........................................... 12

        1.    The Record Evidence Is That Dr. Fleischer Was Involved in Preparation of the IDS. ............................................................... 12

        2.    Even If Dr. Fleischer Only Reviewed the IDS After It Was Filed, He Had a Duty to Correct the Misrepresentation. .................... 14

        3.    In Light of the Record Evidence, the Court Can Properly Infer That Dr. Fleischer Intended to Deceive the USPTO. ......................... 15

    C.    The USPTO Relied on the Misrepresentation. ............................................. 17

    D.    The Allegedly Privileged Documents Were Created In Furtherance of the Fraud. ................................................................................................ 18

    E.    The Documents Proposed for *In Camera* Review ....................................... 18

CONCLUSION ............................................................................................................................... 19

CERTIFICATE OF SERVICE

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*In re Ahlbrecht*, 435 F.2d 908 (CCPA 1971) .................................................................... 6, 7

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997) .......... 13

*In re Edwards*, 568 F.2d 1349 (CCPA 1978) ............................................................................ 7

*Fox Industries, Inc. v. Structural Preservation System, Inc.*, 922 F.2d 801
    (Fed. Cir. 1991) ................................................................................................................ 11

*In re Grand Jury Proceedings*, 417 F.3d 18 (1st Cir. 2005) ...................................................... 15

*Li Second Family Ltd. Partnership v. Toshiba Corp.*, 231 F.3d 1373 (Fed. Cir. 2000) ................ 1

*Marlow Industries, Inc. v. Igloo Products Corporation*, 65 Fed. Appx. 313
    (Fed. Cir. 2003) ................................................................................................................ 13

*McKesson Information Solutions, Inc. v. Bridge Medical, Inc.*, 487 F.3d 897
    (Fed. Cir. 2007) ........................................................................................................... 10, 11

*Paragon Podiatry Laboratories, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182
    (Fed. Cir. 1993) .................................................................................................................. 4

*Phillips Electronics North America Corp. v. Universal Electronics Inc.*,
    892 F. Supp. 108 (D. Del. 1995) ...................................................................................... 10

*Syngenta Seeds, Inc. v. Monsanto Co.*, 404 F. Supp. 2d 584 (D. Del. 2005) ............................ 11

*Therma-Tru Corp. v. Peachtree Doors, Inc.*, 44 F.3d 988 (Fed. Cir. 1995) .............................. 11

*Union Carbide Corp. v. Dow Chemical Co.*, 619 F. Supp. 1036 (D. Del. 1985) ................. 11, 14

*United States v. Zolin*, 491 U.S. 554 (1989) ............................................................................ 15

*University of Rochester v. G. D. Searle*, 358 F.3d 916 (Fed. Cir. 2004) .................................... 6

## **FEDERAL STATUTES & REGULATIONS**

37 C.F.R. § 1.601 .................................................................................................................. 4, 13

**MISCELLANEOUS**

Manual of Patent Examining Procedure § 2303 (1988)..........................................................3, 4, 13

Manual of Patent Examining Procedure § 2001.06. ........................................................................11

## INTRODUCTION

Plaintiffs' Opposition to Barr's Motion is replete with baseless attempts to ignore the statements they actually made to the PTO and re-write the factual record. In actuality, the statements to the USPTO were materially false, and only a tortured reading of the IDS and the original German applications could lead to the opposite conclusion. In actuality, Dr. Fleischer added the new matter and admitted to being centrally involved in the substantive filings during the prosecution of the '812 patent. In actuality, the only evidence of record is that the Eli Lilly application was still pending at the time the IDS was submitted, despite Plaintiffs' wholly uncorroborated protestations to the contrary. In short, Plaintiffs knowingly and intentionally misrepresented the effective filing date of the '671 application to the USPTO in order to avoid an interference with Eli Lilly, and it worked. Barr therefore respectfully requests that the Court exercise its discretion and at least conduct an *in camera* review of Plaintiffs' allegedly privileged contemporaneous documents for further proof of this fraud.[1]

## ARGUMENT

### A.   The IDS Contained a Material Misrepresentation Regarding Boehringer's Effective Filing Date.

Plaintiffs Boehringer Ingelheim International and Boehringer Ingelheim Pharmaceutical, Inc. (collectively "Plaintiffs" or "Boehringer") cannot and do not dispute the basic legal principle that "an applicant's misrepresentation that he is entitled to the benefit of an earlier filing date is highly material." *Li Second Family Ltd. P'ship v. Toshiba Corp.*, 231 F.3d 1373, 1380 (Fed. Cir. 2000). Instead, Boehringer argues that the statement concerning their effective filing was:

---

[1] A classic example of Plaintiffs' efforts to re-write the record is their statement that Barr's "primary remaining defense involves the assertion that the '812 patent is unenforceable as a result of inequitable conduct." D.I. 161 at 7. That statement conveniently ignores Barr's defense that all of the asserted claims of the '812 patent are invalid for double patenting.

(1) irrelevant because the Eli Lilly application was not "prior art" and was not pending when the statement was made; and (2) factually correct. Neither position has merit.

### 1. Plaintiffs' Focus on Whether the Eli Lilly Application Was "Prior Art" Is a Diversion.

Plaintiffs' factual representations to the USPTO regarding their effective filing date are, taken as a whole, unquestionably false:

> [The Eli Lilly U.S. Application] is not available as prior art because its filing date is later than the effective filing date of the above-captioned application. (The effective filing date of the above-captioned application is 22 December 1984, the date on which the German application for which Convention priority is claimed was filed).

Ex. 99 ('812 File History) at BARR680.[2] Boehringer explicitly represented, in two separate sentences, that the effective filing date of the '671 application was earlier than it was. In the first sentence, Boehringer represented that the '671 application was entitled to a filing date before Eli Lilly—which is false—and in the second sentence Boehringer represented that the '671 application was entitled to a filing date of the first German application—which also is false.

Plaintiffs argue that both the sentences somehow become true simply because the Eli Lilly application arguably cannot be "prior art" as a matter of law. D.I. 161 at 1, 9-11. But Boehringer did not simply represent to the USPTO that "The Eli Lilly U.S. Application is not available as prior art." Nor did Boehringer represent that it was not prior art for the various post-hoc, litigation-inspired reasons it now offers. Instead, Boehringer stated that the Eli Lilly U.S. application was not available as prior art "<u>because</u> its filing date is later than the effective filing date of the above-captioned application" (emphasis added) and then explicitly told the USPTO that the effective filing date of their application was 22 December 1984. Those representations

---

[2] Exhibits 21, 23, 24, 25, P, Q, and R are included in the Appendix to this Reply Brief. All other exhibits can be found in the Appendices to Barr's Opening Memorandum, D.I. 146-47.

informed the USPTO that the Eli Lilly U.S. application should not be considered as a basis for an interference because Boehringer had an earlier effective filing date. And that was false.

Indeed, Plaintiffs' myopic reading of the IDS as restricted to whether the Eli Lilly U.S. Application was "prior art" is inconsistent with its actual context. The section of the IDS was entitled "Possibly Interfering Application of Another"—*i.e.*, it raised the question of whether the examiner should declare an interference. Ex. 99 ('812 File History) at BARR680. The thrust of Boehringer's materiality discussion—whether one application is "prior art" in the sense of a document that can be used for an ex parte rejection—simply is not part of the examiner's decision of whether to declare an interference, and Boehringer does not contend that it is. But the relative effective filing dates of the two applications are squarely part of the examiner's consideration of that issue. *See, e.g.,* Ex. O (MPEP § 2303 (1988)).

Plaintiffs rely on this very context—whether the examiner should declare an interference—in their own defense, emphasizing that they told the examiner that he should consider declaring an interference. D.I. 161 at 13. It is true that out of one side of their mouth Plaintiffs told the USPTO that the Eli Lilly U.S. Application disclosed and claimed "a subgenus of the compounds" of Boehringer's application[3] and "urged [the Examiner] to consider carefully" the Eli Lilly U.S. Application's relevance. Ex. 99 ('812 File History) at BARR680-81. But out of the other side of their mouth, Plaintiffs lied to the examiner and told him that their effective filing date was sufficiently in advance of Eli Lilly's that, in accordance with typical patent office procedures, he would not declare an interference. *See* Ex. O (MPEP § 2303

---

[3] In yet another example of re-writing the record, Boehringer now attempts to backtrack on this admission, stating in its Opposition that the Eli Lilly European application only had "potentially overlapping subject matter." D.I. 161 at 6 (emphasis added).

7

(1988)).[4]  This "half-truth" is a material misrepresentation by all accounts.  *See, e.g., Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1192 (Fed. Cir. 1993) (affirming inequitable conduct determination where affidavit contained "a classic example of a half truth.").

### 2. The Evidence of Record Is That the Eli Lilly Application Was Pending at the Time.

Plaintiffs next attempt to excuse their misconduct by arguing that the Eli Lilly application was "abandoned."  D.I. 161 at 16.  The relevant question, however, is not whether the application ultimately was abandoned, but whether it was still pending <u>at the time</u> Boehringer made its misstatement.  *See* 37 C.F.R. 1.601(i) (1988).  Contemporaneous evidence—and the only evidence of record in this case—shows that it was pending when Boehringer made the misrepresentation.  First, the IDS itself states that "It is believed that [the Eli Lilly U.S. application] is still pending."  Ex. 99 ('812 File History) at BARR680.  In addition, Dr. Fleischer—as part of Boehringer's extensive efforts in the 1980s to discover information about the Eli Lilly applications—wrote a note to himself on December 14, 1988 that the European Lilly application was still pending, Ex. 95 (May 10, 1988 Letter to EPO), further evidencing that Eli Lilly had not by that time abandoned its invention, let alone its primary U.S. Patent Application claiming that invention.  Moreover, third-party discovery from Eli Lilly revealed that it has no information regarding when its U.S. application was abandoned.  Thus, the record evidence is simple: the Eli Lilly application was pending at the time the false IDS was submitted.

---

[4] Boehringer argues that, because Section 2303 contains a potential exception if the effective filing date is based on foreign priority, "the statement at issue would not have had any bearing on a potential interference."  D.I. 161 at 16 n.4.  However, Boehringer ignores that determinations regarding such "exceptional situations" require approval of the group director, *i.e.*, a much higher level of approval, *see* Ex. O (MPEP § 2303 (1988)), and that there is no record of the examiner requesting any such approval in order to rely on that exception here.

8

Despite this, Plaintiffs go to great lengths to misconstrue the record regarding abandonment of the Eli Lilly application. At one point, Plaintiffs boldly state that the Eli Lilly application was abandoned in 1986, D.I. 161 at 2, an incredible proposition given that Eli Lilly filed several foreign counterparts to that very application around the world in 1986. Ex. 21 (South Africa, filed June 20, 1986); Ex. 22 (Europe, filed June 20, 1986); Ex. 23 (Australia, filed June 23, 1986); Exs. 24 & 25 (Japan, filed June 23, 1986). At other places, Boehringer states that the application was not pending at the time the IDS was submitted. D.I. 161 at 16 & n.4. Notably, *Plaintiffs do not cite anything* to support either of these assertions. Although Plaintiffs' brief alleges that "the prosecution history" of the Eli Lilly application supports this conclusion, D.I. 161 at 2, the file history of the Eli Lilly application is not publicly available, was not produced in this litigation, and was not attached as an exhibit to Boehringer's Opposition. In other words, Boehringer has not submitted a shred of evidence, documentary or otherwise, that the Eli Lilly application was abandoned before the false statement was made.

Indeed, Plaintiffs' contrary assertions notwithstanding, the first time Barr learned of Boehringer's position that the Eli Lilly application was not pending in 1988 was upon reading Plaintiffs' Opposition.[5] In response, counsel for Barr immediately contacted counsel for Boehringer and requested that, if they had the Eli Lilly file history in their possession, they produce it immediately in response to Barr's document requests. *See, e.g.,* Ex. P (Boehringer's Response to Barr's Document Request Nos. 81, 83, and 84). Counsel for Boehringer, however, never responded to Barr's request, never produced anything, and never provided any basis for its

---

[5] Boehringer states that Barr is "well aware" of its abandonment position from its interrogatory responses. D.I. 161 at 9. But those responses merely indicate that the Lilly U.S. application was abandoned at some point—which is not in dispute—not that it was abandoned prior to December 1988. And Boehringer's self-serving and unsupported interrogatory responses are not evidence.

9

bald assertion. Accordingly, Plaintiffs' mere allegation regarding the date Eli Lilly abandoned its application must be completely ignored as wholly unsupported speculation.

### 3. The German Applications Do Not Disclose Halogenated Phenyl Groups at the $R_1$ Position.

Finally, in a desperate effort to support the accuracy of the IDS, Plaintiffs proffer a litigation-inspired reading of the German applications which posits that they disclose halogenated phenyl groups at the $R_1$ position. Boehringer's assertions are without merit.

Dr. Fleischer's testimony was unequivocal: "These three compounds"—ones containing halogenated phenyl groups at $R_1$—"are not part of the scope of the German patent application. They are not part of the substance." Ex. D (Fleischer Tr.) at 213:15-214:2; *see also, id.* at 258:20-259:12. Given that Dr. Fleischer drafted both the First German Application and the Foreign Filing Text, his admission highlights the frivolous nature of Boehringer's argument.

Notwithstanding Dr. Fleischer's testimony, Plaintiffs remarkably argue that the German applications disclose compounds with halogen-substituted phenyl groups at the $R_1$ position merely because they disclosed synthetic methods (d) and (e) that can potentially be used <u>to make</u> such compounds. Plaintiffs never claim—nor could they—that these synthetic methods actually describe, disclose, or otherwise identify such compounds. But mere enablement, *i.e.*, providing a method that could be applied to make a compound, does not support a claim to priority of the compound itself. *See, e.g., Univ. of Rochester v. G. D. Searle*, 358 F.3d 916, 921 (Fed. Cir. 2004) ("an invention may be enabled even though it has not been described"). In *In re Ahlbrecht*, 435 F.2d 908 (CCPA 1971), the Court refused to accord the benefit of an earlier filing date on nearly identical facts. The parent application described the invention with a general formula and the subsequent claim broadened the formula from having between 3-12 methylene groups to having between 2-12 methylene groups. *Id.* at 908-09. The Court held that even

though one method in the parent application "may very well be sufficient to teach one skilled in the art how to make the claimed esters" the new subject matter was still not described. *Id.* at 911-12.[6]

Next, Plaintiffs offer a contorted reading of the German applications: namely, because the synthetic methods refer to making compounds with substituents $R_1$-$R_4$ mentioned "hereinbefore," the applications disclose compounds with halogenated phenyl groups at *$R_1$* in view of the application's previous description of specific halogenated (fluorinated, chlorinated, and brominated) phenyl groups at *$R_3$*. That reading turns the specification on its head.

As confirmed by Barr's expert chemist Dr. Eric Anslyn,[7] Ex. Q (Anslyn Supp. Rep.) at ¶¶ 9-12, Plaintiffs conveniently ignore that synthetic methods (d) and (e) are defined as making compounds of General Formula I and therefore should be read in that context:

> d) <u>In order to prepare compounds of general formula I</u> wherein at least one of the groups $R_1$, $R_2$, $R_3$ or $R_4$ represents one of the above-mentioned alkyl, or phenylalkyl group . . . .
>
> e) <u>In order to prepare compounds of general formula I</u> wherein at least one of the groups $R_1$, $R_2$, $R_3$ or $R_4$ represents one of the alkyl, cycloalkyl, alkenyl, alkynyl or phenylalkyl groups mentioned hereinbefore . . . .

Ex. 3 ('812 Patent) at Col. 3. Indeed, Plaintiffs' own expert, Dr. Bartlett, does not dispute that General Formula I of the German Applications <u>does not</u> encompass compounds with halogen

---

[6] Boehringer's reliance on *In re Edwards*, 568 F.2d 1349, 1354 (CCPA 1978), is misplaced. *Edwards* does not hold, as Plaintiffs suggest, that merely disclosing <u>any</u> method which could <u>theoretically</u> be manipulated to make the claimed compound is sufficient. *See* D.I. 161 at 12. Rather, the fact-specific opinion in *Edwards* held that the claimed compound was disclosed because the disclosed process inherently and inevitably produced the compound. 568 F.2d at 1352. Boehringer has not proffered any such evidence of inherency.

[7] Boehringer makes the incredible assertion that Dr. Anslyn failed to consider the German applications "as a whole" in opining on whether they disclosed halogenated phenyl groups at the $R_1$ position. D.I. 161 at 12 n.3. In his opening report, Dr. Anslyn explicitly states that "there is nothing in either of the German applications that discloses implicitly or explicitly to the skilled artisan, any starting material, intermediate, or final product in which $R_1$ contains or optionally contains a halogenated phenyl group." Ex. F (Anslyn Rep.) at ¶ 46.

11

substituted phenyl groups at the $R_1$ position.  *See* Ex. Q (Anslyn Supp. Rep.) at ¶ 6.  As such, when read in context, it is clear that neither method (d) nor (e) discloses preparation of compounds with halogen-substituted phenyl groups at the $R_1$ position.

Finally, even Plaintiffs' contorted reading of the German Applications does not render accurate Boehringer's statement about its effective filing date, as—even under Boehringer's theory—claims 1 and 2 of the '812 patent still contain subject matter not described in the German applications.  As explained by Dr. Anslyn, claims 1 and 2 of the '812 patent allow for any halogen substituted phenyl ring at the $R_1$ position, while Plaintiffs' reading (incorporating the disclosure of $R_3$) is limited to certain halogens, namely fluorine, chlorine or bromine.  Ex. Q (Anslyn Supp. Rep.) at ¶ 13.  In other words, compounds with phenyl rings substituted by other halogens (*e.g.*, iodine) at the $R_1$ position are claimed in claims 1 and 2 of the '812 patent, but are not disclosed in the German applications, even under Plaintiffs' fabricated interpretation.  *Id.*

### B.    Dr. Fleischer Intended to Deceive the USPTO.

Plaintiffs' only response to Barr's demonstration of Dr. Fleischer's intent to deceive is to baldly assert that Dr. Fleischer had nothing to do with the IDS.  That misstates the factual record.

#### 1.    The Record Evidence Is That Dr. Fleischer Was Involved in Preparation of the IDS.

Plaintiffs selectively ignore Dr. Fleischer's own testimony concerning his involvement with the IDS.  Dr. Fleischer testified—and it was confirmed by several witnesses—that he was responsible for overseeing the prosecution of the tetrahydrobenzothiazole patents around the world, including in the United States.  *See* Ex. D (Fleischer Tr.) at 75:2-18, 153:3-9, 158:17-159:5, 167:10-168:13, 243:3-5; *see also* Ex. E (Klaes 30(b)(6) Tr.) at 215:16-21; Ex. H (Stempel Tr.) at 133:3-19; Ex. M (Laudien Tr.) at 194:14-195:13.  He also testified that he was regularly consulted about and reviewed all substantive filings with the USPTO in connection with the

patent family that included the '812 patent. Ex. D (Fleischer Tr.) at 151:22-153:9, 236:14-237:8 (Q. . . . And with respect to the United States filings in the applications for Case 5/920, you were consulted about substantive filings before they were filed. Right, sir? . . . . A. Yes.); Ex. H (Stempel Tr.) at 136:17-137:8.

In light of Dr. Fleischer's testimony, it strains credulity for Boehringer to argue that Dr. Fleischer was not involved in drafting the IDS. Nonetheless, Plaintiffs boldly state that "Alan Stempel testified that he drafted the IDS without any involvement from Dr. Fleischer." D.I. 161 at 7 (citing Stempel Tr. at 573-74). But the testimony Boehringer cites for that proposition shows no such thing. Rather, the cited testimony reads:

> Q: Who came up with the text?
> A. Your question is assuming that one person came up with all the text.
> Q. I'm not assuming that. If there's more than one person, please feel free to include that in your answer.
> A. I don't have any recollection, but in that I signed it, I'm going to go out on a limb to say that I came up with least some of that text.
> Q. Do you know which part of the text you came up with?
> A. I don't.
> Q. Do you known whether you did come up with part of the text?
> A. I don't know that I did or did not.
> Q. Do you known who else came up with a least part of the text?
> A. I have no recollection about the creation of this document.
> Q. Do you remember having discussions with anybody about this document?
> A. I have no recollection about having a discussion about this document.
> Q. Do you know whether you consulted with Dr. Fleischer, regarding this document, before it was submitted to the United States patent office?
> A. Are you asking if I recall a conversation with Dr. Fleischer?
> Q. Yes.
> A. No, I do not.

> Q. But this is the kind of document that you would generally discuss with a German counterpart before submitting to the United States patent office, right?
>
> A. Generally speaking, yes.

Equally revisionist are Plaintiffs' representations that "Dr. Fleischer did not draft any portion of the IDS," D.I. 161 at 3, that "Dr. Fleischer did not participate in the drafting or submission of any documents directed to the PTO, much less the IDS at issue," D.I. 161 at 7, and that Dr. Fleischer did not receive a copy of the IDS until after it was filed, D.I. 161 at 18. In support of these "facts" Plaintiffs cite the testimony of three witnesses: two 30(b)(6) witnesses who were not fact witnesses (Messrs. Witkowski and Klaes), and Mr. Stempel. *See* D.I. 161 at 7. But a review of that cited testimony reveals that the 30(b)(6) witnesses merely testified that they did not know who, beyond Mr. Stempel, had any involvement with the IDS, and that Mr. Stempel himself did not remember what his own involvement was, much less Dr. Fleischer's, but that he remembered discussing substantive filings with Dr. Fleischer. When one actually reads the testimony cited by Plaintiffs, it is clear they have <u>no</u> support for the assertion that Dr. Fleischer was <u>not</u> involved with the IDS.[8] This latest effort to rewrite the record is also plainly at odds with Dr. Fleischer's own testimony describing his involvement.

### 2. Even If Dr. Fleischer Only Reviewed the IDS After It Was Filed, He Had a Duty to Correct the Misrepresentation.

Even if, as Plaintiffs assert, Dr. Fleischer only reviewed the IDS after it was filed, it does not excuse his misconduct. As an individual with an acknowledged duty of disclosure, Ex. D (Fleischer Tr.) at 143:20-144:17; 146:11-147:19, he had an obligation to correct any misrepresentations made to the USPTO. *See McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*,

---

[8] Obviously, Plaintiffs' privileged documents may confirm that Dr. Fleischer reviewed the IDS before it was submitted to the USPTO. Plaintiffs, however, have improperly refused to even review these documents in responding to Barr's discovery requests. *See, e.g., Phillips Elecs. N. Am. Corp. v. Universal Elecs. Inc.*, 892 F. Supp. 108, 110 (D. Del. 1995).

487 F.3d 897, 917-918 (Fed. Cir. 2007) (finding inequitable conduct for failure to correct a misrepresentation discovered <u>after</u> submission but before the end of prosecution) (citing *Fox Indus., Inc. v. Structural Preservation Sys., Inc.,* 922 F.2d 801, 803 (Fed. Cir. 1991) ("The duty of candor extends throughout the patent's entire prosecution history.") and MPEP § 2001.06 (duty to disclose extends to information learned during prosecution)). There is no dispute that Dr. Fleischer received and reviewed the IDS at issue. *See* D.I. 161 at 18; *see also* Ex. 98 (Fleischer Copy of the IDS); Ex. D (Fleischer Tr.) at 241:14-242:1; 320:22-321:9. Instead of fulfilling his duty of candor, however, at a minimum he allowed the false IDS to stand as submitted.[9]

### 3. In Light of the Record Evidence, the Court Can Properly Infer That Dr. Fleischer Intended to Deceive the USPTO.

There is no question that fraudulent intent may properly be inferred in the context of a motion to pierce the privilege and in this case. "The existence of fraudulent intent may be presumed upon proof of a knowing misrepresentation of a material fact, but may be rebutted at trial by a showing of the applicant's good faith." *Union Carbide Corp. v. Dow Chem. Co.,* 619 F. Supp. 1036, 1052 (D. Del. 1985). Given Dr. Fleischer's continued, substantive involvement in the U.S. and worldwide prosecutions of the tetrahydrobenzothiazole patent family, there is abundant evidence to support a finding of knowing intent to deceive. Plaintiffs admit that he prepared the Foreign Filing Text from the two German applications and added the new matter— *i.e.* he knew about the new matter. D.I. 161 at 3-4. Dr. Fleischer admitted that the compounds

---

[9] Boehringer's citations to *Therma-Tru Corp. v. Peachtree Doors, Inc.* and *Syngenta Seeds, Inc. v. Monsanto Co.* are inapposite. In *Therma-Tru*, the allegedly withheld evidence did not even exist while the application at issue was pending. 44 F.3d 988, 995-96 (Fed. Cir. 1995). Similarly, the attorney in *Syngenta Seeds* was unaware of a particular prior reference. 404 F. Supp. 2d 584, 593 (D. Del. 2005). Here, however, it is undisputed that Dr. Fleischer received and reviewed a copy of the IDS.

with halogenated phenyl groups at $R_1$ were not part of the "scope" or "substance" of the first German application, Ex. D (Fleischer Tr.) at 213:15-214:2—a fact which negates Boehringer's half-hearted suggestion that whether those compounds were disclosed in the earlier applications is "the subject of an honest disagreement," D.I. 161 at 20.  Knowing there was new matter in the Foreign Filing text, and knowing that it was then filed in the United States, *see* Ex. D. (Fleischer Tr.) at 140:16-19, 195:15-198:6, Dr. Fleischer then reviewed the false IDS at issue, knowing that he had a duty of disclosure to the USPTO and knowing that the addition of new matter to the foreign filing text would prevent Boehringer from claiming priority for the U.S. application to the German applications, *see* Ex. D (Fleischer Tr.) at 114:12-21, 117:14-119:8, 344:15-346:20.  He also knew that the statement was material, having himself represented that the Eli Lilly and Boehringer applications overlapped.  *See id.* at 285:21-286:14; Ex. 92 (Feb. 2, 1987 Letter to EPO); Ex. 95 (May 10, 1988 Letter to EPO); *see also* Ex. 98 (Fleischer's Copy of the IDS).  That is more than sufficient to infer an intent to deceive.

      Plaintiffs, however, attempt to undermine the evidence of intent by arguing that Dr. Fleischer's conduct "was entirely consistent with European patent law practice and procedure" according to their expert Mr. Holzer, a European patent attorney.  D.I. 161 at 5.  Notably, Mr. Holzer never actually addresses the IDS itself and never opines that it would be proper to make the statement at issue.  By contrast, Barr's expert on European and German law and practice, Dr. Günter Isenbruck, discusses the IDS in his expert report and opines that the statement concerning Boehringer's effective filing date would be incorrect under European law, and that a European or German practitioner reading the IDS in Dr. Fleischer's circumstances would be aware of the misrepresentation.  Ex. R (Isenbruck Rep.) at ¶¶ 18-22.

Finally, Boehringer focuses on the fact that Dr. Fleischer testified that the statement in the IDS was correct, arguing that the testimony "undermines any suggestion of deceptive intent." D.I. 161 at 19. But merely denying the falsity of the IDS is insufficient. In the words of the Federal Circuit, "a mere denial of an intent to deceive is not sufficient where a patentee faces a high level of materiality and proof that it knows or should have known of that materiality." *Marlow Indus., Inc. v. Igloo Prods. Corp.*, 65 Fed. Appx. 313, 319 (Fed. Cir. 2003) (citing *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997)).

### C.    The USPTO Relied on the Misrepresentation.

Boehringer's reliance argument is merely a re-hashed version of its materiality argument. As explained above, Boehringer's sudden and unsupported proclamation that the Eli Lilly application was abandoned in 1986 should be ignored. In addition, Boehringer's arguments that Barr has not demonstrated that the Eli Lilly application contained "the same patentable subject matter," D.I. 161 at 15, are disingenuous given that (1) "same patentable subject matter" is defined in 37 C.F.R. § 1.601(n) (1988) as satisfying the requirements of § 102 (anticipation) or § 103 (obviousness) and, (2) the IDS at issue filed by Boehringer states that the Eli Lilly U.S. application discloses "a subgenus of the compounds disclosed and originally claimed in" the '671 application—*i.e.*, they overlap, Ex. 99 ('812 File History) at BARR680.

The evidence demonstrating reliance is straightforward: after submission of the false IDS with the false effective filing date, the examiner allowed the claims of the '812 patent without declaring an interference. Under Section 2303 of the MPEP in effect at that time, an examiner was directed that an interference will normally <u>not</u> be declared if the difference in effective filing dates between the two pending applications is more than six months. *See* Ex. O (MPEP § 2303 (1988)). Thus, by misrepresenting that its application was entitled to a filing date more than six months <u>earlier</u> than the Lilly U.S. filing date, Boehringer avoided an interference between the

17

two. Notably, Boehringer does not dispute that, had an interference been declared, it would not have obtained some, if not all, of the claims pending in the '671 application. *See* D.I. 145 at 19.

### D. The Allegedly Privileged Documents Were Created In Furtherance of the Fraud.

Boehringer contends that there is no evidence that the communications at issue were made "in furtherance" of the fraud on the USPTO. D.I. 161 at 20. That ignores the record. As documented in Boehringer's privilege log, numerous individuals at Boehringer—including persons from the upper-most echelons of the organization—communicated on dozens of occasions about a "potential interference" following discovery of Lilly's applications. *See* Ex. A (Excerpts from Boehringer's Privilege Log). An apparent result of those communications was the disclosure of the Eli Lilly applications to the USPTO and the representations in the IDS concerning Boehringer's effective filing date. And, as Boehringer's own Rule 30(b)(6) witness testified, at least one of these communications concerned the accuracy of the statement to the USPTO. Ex. K (Witkowski 30(b)(6) Tr.) at 117:6-118:14, 214:21-216:16, 226:5-230:17. That plainly satisfies the "in furtherance" requirement.

### E. The Documents Proposed for *In Camera* Review

Plaintiffs assert that Barr's request for *in camera* inspection (and/or production) of the documents listed on Boehringer's log dated at least between February 2, 1987 and December 12, 1989 is overly broad. Yet this is narrowly tailored, consistent with *Union Carbide*, to be limited to the time frame between Boehringer's alleged first discovery of the Eli Lilly application—the date when evidence of the fraud first appeared—and the date the '812 patent issued—when the fraudulent scheme was complete. *See Union Carbide*, 619 F. Supp. at 1055. Despite Barr's repeated efforts to gain more information about these documents through deposition, interrogatories and meet and confer calls, Plaintiffs have refused to provide any additional

18

information about these materials.  *See, e.g.,* Ex. L (Boehringer's Responses to Barr's Third Set of Interrogatories) at Nos. 32-33.

Moreover, Plaintiffs' suggestion that even more information is needed to support *in camera* inspection is nonsensical.  "Precisely because of the initial barrier of the privilege, it is very hard for an adversary unaided to show that the privileged communications were themselves corrupt, so the requirements for access cannot be set too high.  And, if the communications were innocent, the initial look may often not damage the client."  *In re Grand Jury Proceedings*, 417 F.3d 18, 23 (1st Cir. 2005).  Boehringer has not proffered any reason why *in camera* review of its privileged documents would cause it any damage.

## CONCLUSION

Barr has demonstrated "'a factual basis adequate to support a good faith belief by a reasonable person,' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."  *United States v. Zolin*, 491 U.S. 554, 572 (1989) (citation omitted).  Therefore, for the foregoing reasons, as well as the reasons previously stated, Barr respectfully requests that this Court conduct an *in camera* review of the above-referenced documents and compel their production.

Dated: July 18, 2007

OF COUNSEL:
Glenn J. Pfadenhauer
Jessamyn S. Berniker
Dov P. Grossman
Brett R. Tobin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000

Respectfully Submitted:

*/s/ Karen E. Keller*
Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Karen E. Keller (#4489)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
Attorneys for Defendant Barr Laboratories, Inc.,

19

## **CERTIFICATE OF SERVICE**

I, Karen E. Keller, Esquire hereby certify that on July 18, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

| | |
|---|---|
| Jack B. Blumenfeld, Esquire | Mary B. Matterer, Esquire |
| Morris Nichols Arsht & Tunnell | Morris, James, Hitchens & Williams LLP |
| 1201 North Market Street | 222 Delaware Avenue, 10th Floor |
| PO Box 1347 | Wilmington, DE 19801 |
| Wilmington, DE 19899-1347 | |

I further certify that on July 18, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL**

| | |
|---|---|
| Steven C. Cherny, Esquire | Kenneth G. Schuler, Esquire |
| Latham & Watkins LLP | Latham & Watkins LLP |
| 885 Third Avenue, Suite 1000 | Sears Tower, Suite 5800 |
| New York, NY 10022-4834 | Chicago, IL 60606 |

Shannon M. Bloodworth, Esquire
Heller Ehrman LLP
1717 Rhode Island Ave., N.W.
Washington, DC 20036

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Karen E. Keller*
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com

*Attorneys for Barr Laboratories, Inc.*