EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., <br> Plaintiffs, <br> v. <br> BARR LABORATORIES, INC. <br> Defendant. | C.A. No. 05-700 (***) |

## EXPERT REPORT OF GÜNTER ISENBRUCK

### I.    Background

1.    I am both a European and a German Patent Attorney, and have been a patent and licensing practitioner for over 30 years. I qualified to become a European Patent Attorney in 1983 and a German Patent Attorney in 1985.

2.    From 1975 to 1996, I worked at Hoechst Aktiengesellschaft. I started out drafting patent applications, and was eventually promoted to the position of unit manager and then head manager. In 1992, I became General Intellectual Property Counsel for Hoechst.

3.    Throughout my employment at Hoechst, I was involved in the preparation of patent applications for filing as priority applications in the German patent office, as well as preparing foreign filing texts for filing outside Germany based on these German priority applications. I also coordinated with attorneys in the United States regarding the prosecution of U.S. counterpart applications.

4.    In 1996, I became a partner at Bardehle et al., and since January 2003 I have been the senior partner at the patent law firm of Isenbruck - Boesl - Hoerschler - Wichmann - Huhn. In private practice, my work has focused on advising clients on IP-related issues, procuring patents for clients, and representing clients in litigation.

5.   I graduated in 1969 from the Johann Wolfgang Goethe University in Frankfurt with a Diploma in Organic Chemistry, and received a PhD in Organic Chemistry from the same university in 1972. As a patent practitioner, my work has primarily related to patents in the fields of chemistry, pharmaceuticals, and biochemistry.

6.   In 1979, I spent four months studying U.S. Patent Law in the in-house patent department of American Hoechst Corporation and at the Catholic University in Washington DC.

7.   I often provide lectures on introductory principles of patent law to patent prosecutors who are at the early stages of their careers, as well as to scientific researchers.

8.   I am the President of the Licensing Executives Society ("LES") Germany, and was formerly the chair of the Patent and Technology Licensing Committee and of the Small and Medium Size Enterprises ("SME") support group of LES International.

9.   In 2007, I began a Teaching Position at the "Master in IP Law and Management" Program at CEIPI (Centre for International Industrial Property Studies) of Robert Schuman University in Strasbourg.

10.  During the last four years, I have testified as a court expert at the Landgericht (county court) in Düsseldorf, Germany. However, I am prohibited from disclosing the identity of the case in which I have testified. I have not previously testified as an expert in the Untied States.

11.  My curriculum vitae is attached as Exhibit A.

12.  I am being compensated for my time at the rate of € 340 per hour. My compensation is in no way dependent on the outcome of this case.

2

## II. Mandate

13. I have been asked to comment on and respond to issues raised in Mr. Walter Holzer's expert report submitted by plaintiffs Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharmaceuticals, Inc. (collectively, "Boehringer"). Specifically, I have been asked to use my expertise and experience in German and European patent law, practice, and procedures to testify regarding the understanding of European and German patent practitioners with respect to certain filings submitted by Boehringer in connection with U.S. Application Serial No. 256,671 ("the '671 application"), which I understand issued as U.S. Patent No. 4,886,812 ("the '812 patent").

14. In addition to the specific opinions set forth in this report, I may respond to additional testimony and information that becomes available during deposition, at trial, or otherwise, including any opinions put forth by Boehringer's experts. I may also use charts, graphs, or other demonstrative exhibits to support any potential testimony at trial, as well as provide further background information on European and German patent law, practice, and procedures.

15. In forming my opinions, I have relied on the materials cited throughout this report and listed in Exhibit B, as well as my training and experience.

## III. Mr. Holzer's Report

16. In his report, Mr. Holzer provides a review of Boehringer's "filing strategy" with respect to the '812 patent, as well as two earlier-filed German applications, and explains how they would be understood by a European patent practitioner. However, while Mr. Holzer indicates in the beginning of his report that he will provide opinions concerning Barr's inequitable conduct defense, and states that the defense "concerns certain statements to the

3

United States Patent and Trademark Office regarding the priorities claimed in US patent application Ser. No. 256,671," Holzer ¶ 11, his report does not include a discussion of how European and German patent practitioners would understand the statements at issue.[1]

17.  A European patent practitioner or a German patent practitioner familiar with European practice, and particularly one who prosecuted applications with counterpart applications pending in the United States, would be aware of the obligation to provide information about relevant prior art to the United States Patent and Trademark Office ("USPTO"). For this reason, any such person involved in the prosecution of a German or European patent application would inform the outside U.S. prosecuting attorney (or an in-house colleague) involved in the prosecution of a U.S. counterpart application about any relevant prior patent applications, publications, or patents. Such a practitioner would also be familiar with the form used in the USPTO known as an Information Disclosure Statement ("IDS") and its role in disclosing information to the USPTO.

18.  I have reviewed an IDS submitted by Boehringer to the USPTO in connection with the '671 application, which discusses the Eli Lilly U.S. Application No. 747,748 and EP 0 207 696. The IDS states:

> [The Eli Lilly U.S. Application] is not available as prior art because its filing date is later than the effective filing date of the above-captioned application. (The effective filing date of the above-captioned application is 22 December 1984, the date on which the German application for which Convention priority is claimed was filed).

---

[1] I will focus on the knowledge and understanding of European and German patent practitioners during the 1980s.

I understand that the date referenced in the above statement, 22 December 1984, is the filing date of German application DE 34 37 075, which is listed as one of two priority documents on the '812 patent.

19.  Mr. Holzer's report discusses the well-accepted and regular practice of indicating, at the time a patent application is filed, a claim to priority to (or the benefit of the filing date of) one or more earlier-filed patent applications. But a European patent practitioner or a German patent practitioner familiar with European practice would understand that such an initial claim to priority is different from making an affirmative representation to the patent examiner about a patent application's effective filing date during subsequent communications with the patent office regarding patentability—such as the statements made by Boehringer in the IDS discussed above. While an initial claim to priority consists essentially of identifying earlier, related applications that could potentially be used to establish an earlier filing date, an affirmative representation that an application has a particular effective filing date in correspondence such as an IDS would be understood to be a representation concerning a specific priority date for all of the then-pending claims of the application.

20.  Mr. Holzer's report also discusses that, under the European Patent Convention, a single claim can have multiple priority dates. This can occur where, for example, a European application contains a claim directed to a chemical genus and certain of the specified substituents were not disclosed in the original priority application filed in the originating country (for example Germany), but were first described in the European application. Mr. Holzer does not mention, however, that in such a circumstance a European patent practitioner or a German patent practitioner familiar with European practice would understand that it would not be correct to state that the European application as a whole has an effective filing that is identical to the filing

5

date of the earlier priority application. In the case, for example, where additional subject matter was included in a foreign counterpart application filed after the priority application, and such subject matter was not contained in the original priority application, it would be correct to state that certain portions of the counterpart application are entitled to one priority date, and that the remaining portions are entitled to a different priority date. A European patent practitioner or a German patent practitioner familiar with European practice would not assert that the counterpart application has an effective filing date that is identical to the filing date of the original priority application.

21. I have compared German applications DE 34 37 075 and DE 35 08 947 to their European counterpart, EP 0 186 087. I note that the scope of the General Formulas I in the German applications is not as broad as the General Formula I set forth in the European application with respect to the definition of $R_1$, a difference that can also be found in the claims of the respective applications. To the extent the broader scope of $R_1$ in the European application is not supported by the German applications, any claims of the European application that incorporate both original matter from the German applications and additional subject matter added at the time of the filing of the European application would have multiple priority dates under European law. Under that circumstance, a European patent practitioner or a German patent practitioner familiar with European practice would understand that it is not correct to state that such claims or the European application itself have an effective filing date that is identical to the filing date of German application DE 34 37 075.

22. A European or German practitioner would be aware that there are differences between U.S. law on the one hand, and European and German law on the other hand, with respect to priority of invention and what qualifies as prior art. In particular, he or she would be

Case 1:05-cv-00700-JJF    Document 169-8    Filed 08/14/2007    Page 8 of 13

aware that there exists a procedure in the U.S. known as an interference that does not exist under the European Patent Convention or under German law. Furthermore, he would know that, under U.S. patent law, an unpublished patent application could become relevant to an application with a later U.S. filing date for both novelty and inventive step (obviousness) considerations. In contrast, in Europe, an unpublished application with an earlier effective filing date could only be relevant for novelty, not inventive step. In light of those differences, such a practitioner who was aware that multiple priority dates were involved in the European prosecution would, upon seeing a statement in connection with the prosecution of a U.S. counterpart application that the application had an "effective filing date" of the earlier priority document, alert his U.S. correspondence attorney or U.S. in-house colleagues who were involved in the U.S. prosecution that, at least under European law, not all of the claimed subject matter had a priority date of the earlier application.

23.    Mr. Holzer states that, with respect to prosecution of a European application, "[a]ny *distribution of different priorities with respect to different claims would therefore only need to be done if there turned out to be intervening prior art that necessitated assessing entitlement to priority.*" Holzer at p.9. The discovery of the Eli Lilly U.S. application is precisely the kind of event that would cause a European or German patent practitioner to assess the distribution of different priorities with respect to different claims.

24.    On pages 13-14 of his report, Mr. Holzer discusses whether a claim with multiple priority dates "could be patentable notwithstanding the existence" of intervening prior art. However, whether or not such a claim could be patentable is a different issue from whether a

7

statement regarding the effective filing date of an application containing such a claim is an accurate statement.

July 9, 2007
Date

_____
Günter Isenbruck

8

# EXHIBIT A

**EXHIBIT A**

Dr. Guenter Isenbruck

**Patentanwalt, European Patent Attorney**

Isenbruck Boesl Hoerschler Wichmann Huhn - *Patentanwaelte*

Theodor-Heuss-Anlage 12, D 68165 Mannheim

Tel. +49/621/ 42271 0

Fax +49/621/ 42271 31

isenbruck@ib-patent.de

# CV -- Guenter Isenbruck

Dr. Guenter Isenbruck is a chemist and a national German as well as a European Patent Attorney and has been with the Hoechst group – finally as its General Intellectual Property Counsel – from 1975 to 1996. He used to be name partner with the internationally active law firm Bardehle et al. for about 6 years. He is now (since January 2003) senior partner of the patent attorney law firm Isenbruck - Boesl - Hoerschler - Wichmann - Huhn and is located in its Mannheim office with his majority of activities being in chemical, process engineering and biotech areas.

He has been involved in establishing patent and licensing strategies for the various nationally and globally active business units of former Hoechst AG together with its group companies e.g. in France, Japan and USA. Actually he is involved in patent litigation (infringement and revocation) activities for different clients in the LifeScience area.

Mr. Isenbruck is actually President of LES (Licensing Executives Society) Germany, and used to be chair of the Patent and Technology Licensing Committee and the SME task force of LES International. He is specialized - besides global patent filing and prosecuting - in technology transfer, opinion work (validity and FTO studies) and co-operations between industry or investors and universities or other non-profit R&D institutes (including start-ups and spin-offs).

A German national, Mr.Isenbruck obtained a diploma and a Ph.D. in Organic Chemistry from Johann Wolfgang Goethe University of Frankfurt and studied additionally Education at the university in Zuerich (Switzerland) – accompanied 1971 to 1975 by a four years' period as an instructor with a Swiss high school – and U.S Patent Law in 1979 at the Catholic University in Washington DC. He participated in many workshops, seminars and conferences on the teaching side on topics like IP in general, technology transfer, valuation of technology, or negotiation and formulation of technology oriented agreements. Beginning 2007 he holds a Teaching Position at the "Master in IP Law and Management" Program at CEIPI (Centre for International Industrial Property Studies) of Robert Schuman University in Strasbourg.

# EXHIBIT B

## EXHIBIT B

- U.S. Patent Nos. 4,731,374, 4,843,086, and 4,886,812, as well as their file histories

- EP 0 186 087 and its file history

- German applications 34 47 075 and 35 08 947, as well as English translations of those applications

- U.S. Application Serial No. 747,748 and EP Application 0 207 696