# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BOEHRINGER INGELHEIM INTERNATIONAL ) 
GMBH and BOEHRINGER INGELHEIM ) C.A. No. 05-700 (***)
PHARMACEUTICALS, INC., )
                       Plaintiffs, )
    v. )
                                 )
BARR LABORATORIES, INC. )
                      Defendant. )
                                 )

## DEFENDANT BARR LABORATORIES INC.'S ANSWERING BRIEF
## IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE

OF COUNSEL:

Glenn J. Pfadenhauer
Jessamyn S. Berniker
Dov P. Grossman
Brett R. Tobin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Adam W. Poff (#3990)
Jeffrey T. Castellano (#4837)
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600
jcastellano@ycst.com
*Attorneys for Defendant Barr Laboratories,*
*Inc.*

Dated: August 31, 2007

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................. 2

COUNTER-STATEMENT OF FACTS ......................................................................... 3

I.    THE EXPERT REPORTS AT ISSUE ................................................................. 3

    A.    Dr. Eric Anslyn's Report ......................................................................... 3

    B.    Dr. Richard Mailman's Report ............................................................... 7

II.    BARR'S OFFER TO ALLOW BOEHRINGER TO SUBMIT
SUPPLEMENTAL REPORTS ............................................................................ 9

ARGUMENT .................................................................................................................. 9

III.    BARR'S REPLY EXPERT REPORTS ARE ENTIRELY PROPER ................. 9

IV.    BOEHRINGER HAS NOT MET, AND CANNOT MEET, THE THIRD
CIRCUIT'S STANDARD FOR STRIKING EXPERT TESTIMONY .......... 11

    A.    The Third Circuit's Standard for Exclusion of Evidence ..................... 11

    B.    The *Pennypack* Factors Support Admission of Barr's Experts'
Opinions .................................................................................................. 13

        1.    Boehringer Is Not Prejudiced, and Any Prejudice Is Readily
Curable ........................................................................................ 13

        2.    There Will Be No Effect on the Trial of this Case ................... 15

        3.    There Is No Evidence of Bad Faith .......................................... 15

        4.    It Is Undisputed that the Evidence Is Important to Barr .......... 15

    C.    The Decisions Cited by Boehringer Are Inapposite ............................ 16

CONCLUSION .............................................................................................................. 17

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281 (Fed. Cir. 1985) ...............10

*Avocent Huntsville Corp. v. ClearCube Tech., Inc.*, 443 F. Supp. 2d 1284
(N.D. Ala. 2006) ...........................................................................................................16

*Baldwin Graphic System, Inc. v. Sibert, Inc.*, No. 03 C 7713, 2005 WL 1300763
(N.D. Ill. Feb. 22, 2005)................................................................................................16

*Bemer Aviation, Inc. v. Hughes Helicopter, Inc.*, 621 F. Supp. 290 (E.D. Pa. 1985)....................14

*Daugherty v. Fruehauf Trailer Corp.*, 146 F.R.D. 129 (E.D. Pa. 1993) .......................................14

*DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193 (3d Cir. 1978)....................................13

*DiFlorio v. Nabisco Biscuit Co.,* No. Civ. A. 95-0089, 1995 WL 710592
(E.D. Pa. Nov. 13, 1995)................................................................................................14

*Finch v. Hercules Inc.*, No. Civ. A. 92-251 MMS, 1995 WL 785100
(D. Del. Dec. 22, 1995)..................................................................................................16

*Foltz v. Hampton*, No. 99-CV-4295, 2001 WL 844467 (E.D. Pa. July 23, 2001)........................11

*Fritz v. Consolidated Rail Corp.*, Civ. A. No. 90-7530, 1992 WL 96285
(E.D. Pa. Apr. 23, 1992) ...............................................................................................12

*Goodman v. Lukens Steel*, 777 F.2d 113 (3d Cir. 1985)...............................................................11

*Graham v. Barolat*, C.A. No. 03-2029, 2005 U.S. Dist. LEXIS 644
(E.D. Pa. Jan. 12, 2005) ..........................................................................................12, 17

*GSI Group, Inc. v. Sukup Manufacturing Co.*, No. 05-3011, 2007 WL 757818
(C.D. Ill. Mar. 8, 2007)..................................................................................................16

*Jarritos, Inc. v. Los Jarritos,* No. C 05-02380 JSW, 2007 U.S. Dist. LEXIS 32245
(N.D. Cal. May 2, 2007) ................................................................................................16

*Johnson v. Vanguard Mfg., Inc.*, 34 Fed. Appx. 858 (3d Cir. 2002) ............................................16

*Kinney v. Trustees of Princeton Univ.*, No. 04-5252 (MLC), 2007 WL 700874
(D.N.J. Mar. 1, 2007)....................................................................................................15

*Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710 (3d Cir. 1997).........................................11, 16

*Mason v. SmithKline Beecham Corp.*, No. 05-CV-1252, 2007 U.S. Dist. LEXIS 21147
    (C.D. Ill. Mar. 26, 2007) ................................................................16

*In re Mercedes Benz Antitrust Litigation*, No. 99-4311, 2006 WL 2129100
    (D.N.J. July 26, 2006) ............................................................13, 14

*Meyers v. Pennypack Woods Home Ownership Association*, 559 F.2d 894
    (3d Cir. 1977) .......................................................................11, 14

*O2 Micro International Ltd. v. Monolithic Power System, Inc.*, 467 F.3d 1355
    (Fed. Cir. 2006) ....................................................................16

*In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 (3d Cir. 1994) ............................12, 13, 14, 15

*Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457 (D. Del. 2005) ............................................16

*Trilogy Communications, Inc. v. Times Fiber Communications, Inc.*, 109 F.3d 739
    (Fed. Cir. 1997) ....................................................................16

*United States v. 68.94 Acres of Land*, 918 F.2d 389 (3rd Cir. 1990) ..................................16

## FEDERAL STATUTES

35 U.S.C. § 102 ..............................................................................1, 4, 5

35 U.S.C. § 112 ..............................................................................3

Fed. R. Evid. 702 ............................................................................4

Fed. R. Civ. P. 26 ..........................................................................9, 11

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Boehringer Ingelheim International GmbH and Boehringer Ingelheim

Pharmaceutical, Inc. (collectively "Boehringer" or "Plaintiffs") have sued Barr for patent

infringement based on Barr's filing of an ANDA for generic pramipexole dihydrochloride

tablets. Boehringer has asserted claims 3-5 and 7-10 of U.S. Patent No. 4,886,812 ("the '812

patent"); Boehringer originally sued Barr for infringement of U.S. Patent No. 4,843,086 ("the

'086 patent") as well, but that patent expired in June 2006.

In response to Boehringer's infringement allegations, Barr asserts two primary defenses.[1]

First, Barr alleges that the asserted claims of the '812 patent are invalid for non-statutory double

patenting over the '086 patent. Second, Barr contends that at least claims 3, 4, 5, and 8 of the

'812 patent are invalid under 35 U.S.C. § 102(g) as a result of earlier work performed at Eli Lilly

& Company.

Fact discovery was initially scheduled to close on December 8, 2006, D.I. 30, but the

parties mutually agreed to extend the deadline to accommodate deposition scheduling, D.I. 120.

The parties also mutually agreed to several extensions of the expert discovery deadline, with

expert discovery currently scheduled to close on September 14, 2007. D.I. 159. The parties

have agreed to postpone that deadline into October to accommodate the availability of experts

for both parties for deposition.

On July 9, 2007—the date provided for Barr to serve rebuttal reports—Barr served expert

reports from Drs. Eric Anslyn and Richard Mailman. One month later, Boehringer sent Barr an

e-mail demanding that Barr withdraw certain portions of the Anslyn and Mailman reports by the

next day, or it would move to strike them. Ex. 1 (E-Mail from J. Neckers to D. Grossman & J.

---

[1] Of course, Boehringer bears the burden of proving infringement.

Berniker dated 8/9/07). On Friday, August 10, 2007, the parties had a brief meet and confer, after which Boehringer repeated its demand that Barr withdraw the reports by close of business on Monday, August 13, 2007. Ex. 2 (E-Mail from J. Neckers to D. Grossman & J. Berniker dated 8/10/07). When Barr declined to do so, Boehringer filed its Motion to Strike ("Motion") on Tuesday, August 14, 2007, in which it proposed striking (1) paragraphs 4-16 of Dr. Anslyn's report (which is a supplemental report in accordance with the Scheduling Order), and (2) paragraphs 35-36 of Dr. Mailman's report.[2] D.I. 169 at 16.

### SUMMARY OF THE ARGUMENT

Boehringer's Motion is frivolous. The limited portions of the two reports proposed to be stricken do not advance "new theories" as Boehringer argues, but contain proper reply opinions, as they are wholly supported by opinions set forth in Barr's opening reports and/or directly responsive to issues first raised by Boehringer during the second round of expert reports. Boehringer's efforts to characterize the reports otherwise should be summarily rejected.

Yet, even if Boehringer could establish that the opinions in these reports should have been disclosed earlier, Boehringer has utterly failed to meet the Third Circuit's standard for exclusion of evidence. Boehringer cannot point to any actual prejudice it has incurred, as the reports were disclosed months before the experts' depositions, and Boehringer has had ample time to prepare for them. Moreover, there is no trial date set for this action, nor is there a shred of evidence that Barr has acted in bad faith. In light of the Third Circuit's clear standard for admission of expert opinions, there simply is no basis for striking any portion of Barr's reply reports.

---

[2] Boehringer's Motion also proposed striking the expert report of Dr. Günter Isenbruck, D.I. 169 at 16, but Barr has subsequently withdrawn that report—for reasons unrelated to Boehringer's Motion—as a result of documents that were first produced by Boehringer on August 24, 2007.

Finally, Boehringer's course of conduct in preparing and submitting its Motion suggests that the goal of Boehringer's Motion was not to strike the reports, but to delay this case. Following submission of its Motion—which requests as alternative relief that Boehringer be permitted to file supplemental reports, D.I. 169 at 16 n.3—Barr in good faith offered to allow Boehringer to submit supplemental expert reports as long as it did not affect the schedule for expert depositions. Despite the fact that Barr's proposal ultimately would have given Boehringer at least four weeks to prepare expert responses to a total of 15 paragraphs—on top of the more than five weeks Boehringer already had to digest Barr's reply reports—Boehringer refused, insisting that expert depositions needed to be moved because it needed more time. Boehringer took that position despite the fact that it had not yet consulted its experts to determine whether they had any responsive opinions. It therefore appears that Boehringer has no interest in a reasonable compromise to cure any potential prejudice, and no interest in preserving the current schedule for expert discovery. Cast in that light, Plaintiffs' Motion appears to be intended to merely delay the inevitable determination that the asserted claims of the '812 patent are invalid.

## COUNTER-STATEMENT OF FACTS

I.    **THE EXPERT REPORTS AT ISSUE**

A.    **Dr. Eric Anslyn's Report**

Dr. Eric Anslyn is a Professor of Chemistry and a University Distinguished Teaching Professor at the University of Texas, Austin. In his opening report, which was timely served on March 28, 2007, Dr. Anslyn offered opinions underlying two of Barr's defenses.[3] First, Dr.

---

[3] Boehringer strains to argue that Dr. Anslyn did not address "whether the claims of the '812 patent are invalid for double patenting" or analyze "whether the '812 patent claims satisfy the written description requirement of 35 U.S.C. § 112." D.I. 169 at 4-5. While Dr. Anslyn did not employ legal terms such as "double patenting" or "written description," he provides extensive factual analyses that directly relate to precisely those defenses. As an expert witness, Dr. Anslyn properly offers testimony as to his expert views on factual matters, not ultimate legal issues

Anslyn laid the foundation for why the asserted claims of the '812 patent are invalid for double patenting in light of the claims of the earlier-issued '086 patent—opinions that were not responded to by any of Boehringer's five experts and are therefore uncontroverted. For example, Dr. Anslyn opined that "[t]he skilled artisan would understand that the compounds in claims of the '812 patent are identical to or completely encompass the compounds used in method claims in the '086 patent." D.I. 169, Ex. B (Anslyn Rep.) at ¶ 37. He then provided a chart detailing that inter-relationship. *Id.; see also id.* at ¶ 39. In addition, Dr. Anslyn stated that "[t]he skilled artisan would appreciate that, in order to perform the method of treatment in these claims [of the earlier-issued '086 patent], one would be required to have the specified compound or compounds" in the claims. D.I. 169, Ex. B (Anslyn Rep.) ¶ 36. Those facts demonstrate that the claims of the '812 patent are not patentably distinct from the '086 claims.

Second, Dr. Anslyn discussed prior work performed by individuals at Eli Lilly that demonstrates that at least claims 3, 4, 5, and 8 are invalid under Section 102(g) of the Patent Statute (prior invention by another). Specifically, Dr. Anslyn stated in his opening report that he "reviewed documents from Eli Lilly & Co. related to the synthesis and biological evaluation of tetrahydrobenzothiazoles [*i.e.,* the type of compounds at issue here], as well as testimony from individuals at Eli Lilly about those experiments." D.I. 169, Ex. B (Anslyn Rep.) at ¶ 48. He then opined that the materials show that several compounds which are encompassed by claims 3, 4, and 5 and the pharmaceutical compositions of claim 8 "were evaluated in biological experiments and shown to be active." D.I. 169, Ex. B (Anslyn Rep.) at ¶¶ 48-49, 52. Dr. Anslyn

---

which are solely the province of the Court. *See, e.g.,* Fed. R. Evid. 702 (expert witness may "assist the trier of fact to understand the evidence or to determine a fact in issue"). Indeed, Boehringer clearly understood the legal significance of Dr. Anslyn's analysis, as it proffered responsive testimony from several experts on Barr's double patenting and written description defenses. *See, e.g.,* D.I. 169, Ex. C (Bartlett Rep.) at ¶¶ 20, 57; D.I. 170, Ex. H (Olanow Rep.) at ¶¶ 15, 16.

also commented on the contents of U.S. Application Serial No. 747,748 ("the '748 application"),

which reflects much of the aforementioned synthesis and biological testing.  D.I. 169, Ex. B

(Anslyn Rep.) at ¶¶ 48-52.

Finally, in his opening report, Dr. Anslyn discussed the two German applications to

which the '812 patent purportedly claims priority ("the German applications") and analyzed the

differences between the disclosure of those applications and the disclosure of the '812 patent.

That analysis relates to Barr's Section 102(g) defense, as it establishes the date of invention for

at least claims 3, 4, and 8 of the '812 patent.  In that regard, Dr. Anslyn discussed that General

Formula I of the '812 patent permits the $R_1$ substituent to have a phenyl alkyl or phenyl alkanoyl

group that "may be substituted by 1 or 2 halogen atoms" (referred to herein as a "halogenated

phenyl group"), and that claims 3, 4, and 8 claim include compounds with halogenated phenyl

groups at $R_1$.  D.I. 169, Ex. B (Anslyn Rep.) at ¶¶ 40, 47.  Dr. Anslyn further opined that nothing

in the entirety of the German applications discloses to a skilled artisan a halogenated phenyl

group at $R_1$:

> [T]here is nothing in either of the German applications that discloses implicitly or
> explicitly to the skilled artisan, any starting material, intermediate, or final
> product in which $R_1$ contains or optionally contains a halogenated phenyl group.

D.I. 169, Ex. B (Anslyn Rep.) at ¶ 46.[4]

In response to Dr. Anslyn's report, Boehringer proffered the opinion of Dr. Paul Bartlett.

Dr. Bartlett offered a contorted reading of the German applications.  He opined that synthetic

examples (d) and (e) in those applications somehow disclose compounds with halogenated

phenyl groups at the $R_1$ position merely because: (1) those examples refer to making compounds

---

[4] In light of that clear statement in his report, Boehringer's repeated assertion that Dr. Anslyn did
not consider the "entire disclosure" of the German applications in his analysis lacks even the
slightest hint of credibility.  *See* D.I. 169 at 7.

with substituents $R_1$ to $R_4$ mentioned "hereinbefore;" and (2) $R_3$ of General Formula I permits substitution of a phenyl ring with fluorine, chlorine, or bromine. D.I. 169, Ex. C (Bartlett Rep.) at ¶¶ 58-66. But that argument is a complete red herring because synthetic examples (d) and (e) are limited to making compounds of General Formula I, and General Formula I clearly does not include halogenated phenyl groups at $R_1$. *See* D.I. 169, Ex. D (Anslyn Supp.) at ¶¶ 6, 8-10.

    In Dr. Anslyn's supplemental report—which was timely served on the date for Barr to "serve its *supplemental* disclosures to reply *on the same subject matter*," *see* D.I. 159 at 2 (emphasis added); Ex. 3 (E-Mail from K. Schuler to D. Grossman dated 7/2/07)—Dr. Anslyn comments on two basic issues. First, in section A, of which Boehringer moves to strike paragraphs 4-13, Dr. Anslyn replies to Dr. Bartlett's analysis, elaborating on his earlier-stated opinion that nothing in the German applications discloses a halogenated phenyl group at the $R_1$ position. D.I. 169, Ex. D (Anslyn Supp.) at ¶¶ 1-13. In particular, Dr. Anslyn explains why he disagrees with Dr. Bartlett that synthetic methods (d) and (e) disclose halogenated phenyl groups at $R_1$—an opinion fully supported by, and consistent with, the statement in Dr. Anslyn's opening report that "there is nothing in either of the German applications that discloses implicitly or explicitly" a halogenated phenyl group at $R_1$. D.I. 169, Ex. D (Anslyn Supp.) at ¶¶ 7-12; D.I. 169, Ex. B (Anslyn Rep.) at ¶ 46. Dr. Anslyn also points out that, even under Dr. Bartlett's tortured reading, the German applications still do not disclose the halogenated phenyl groups disclosed and claimed in the '812 patent, as the scope of $R_3$ that Dr. Bartlett relies on—a "phenyl nucleus [which] may be substituted by fluorine, chlorine or bromine atoms"—is narrower than the phrase in the '812 claims—"phenyl nuclei [which] may be substituted by 1 or two halogen atoms," which includes other halogens such as iodine. D.I. 169, Ex. D (Anslyn Supp.) at ¶ 13. That is plainly responsive to Dr. Bartlett's opinions and, therefore, allowable.

In Section B of Dr. Anslyn's report, of which Boehringer moves to strike paragraphs 14-16, Dr. Anslyn addresses the scope of the claims of the '812 patent and which compounds are used as a result of practicing the methods claimed in the '086 patent. Those opinions are consistent with the opinions expressed in his first report, which discussed (1) what is encompassed by the claims of the '812 patent, and (2) what compounds are used in the method claims of the '086 patent. D.I. 169, Ex. B (Anslyn Rep.) at ¶¶ 36-39. In addition, Boehringer's experts opine on issues related to secondary indicia of non-obviousness that are limited to the active ingredient in Mirapex®, *see, e.g.,* D.I. 170, Ex. H (Olanow Rep.) at ¶ 16, which is pramipexole dihydrochloride—*i.e.*, (S)-2-amino-6-n-propylamino-4,5,6,7-tetrahydrobenzothiazole dihydrochloride. Dr. Anslyn's opinions on the scope of the claims of the '812 patent are therefore proper responsive testimony, as they demonstrate that Boehringer has not shown that its alleged secondary indicia are commensurate with the full scope of the asserted claims, which encompass more than just pramipexole dihydrochloride.

## B.    Dr. Richard Mailman's Report

In the second round of expert discovery, Boehringer served the expert report of Dr. Warren Olanow on purported "unexpected uses" of pramipexole dihydrochloride relative to the uses claimed in the '086 patent. In reply, Barr timely served the expert opinion of Dr. Richard Mailman, a Professor in the Departments of Psychiatry, Pharmacology, and Neurology at the School of Medicine, and in the Division of Medicinal Chemistry and Natural Products in the School of Pharmacy at the University of North Carolina at Chapel Hill. Boehringer does not object to the first 34 paragraphs of Dr. Mailman's report. D.I. 169 at 10.

Boehringer's objection relates solely to two paragraphs contained in Section V of Dr. Mailman's report (paragraphs 35 and 36). In those paragraphs, Dr. Mailman properly replies to issues first raised by Boehringer in Dr. Bartlett's second-round report. As discussed above, Dr.

Anslyn's opening report commented on the work performed at Eli Lilly—including on compounds that "were evaluated in biological experiments and shown to be active" and the '748 application. D.I. 169, Ex. B (Anslyn Rep.) at ¶¶ 49-54. In response to Dr. Anslyn's discussion, Dr. Bartlett commented on the Eli Lilly work, including a statement that one of the compounds made (188305) "was tested for activity as a dopaminergic agent and as a hypotensive agent in December 1983 and January 1984"—*i.e.*, prior to the filing of Boehringer's first German application on December 22, 1984. D.I. 169, Ex. C (Bartlett Rep.) at ¶ 75. But Dr. Bartlett also asserted, "Although Dr. Laguzza submitted Compound 188305 for testing, there is no indication what expectations he may have had regarding its biological activity." D.I. 169, Ex. C (Bartlett Rep.) at ¶ 76.

In direct response to Dr. Bartlett's criticism regarding "what expectations" Dr. Laguzza may have had, Dr. Mailman makes a single, simple point. After briefly mentioning the biological experiments in the '748 application—which were discussed in both Dr. Anslyn and Dr. Bartlett's reports, *see, e.g.,* D.I. 169, Ex. B (Anslyn Rep.) at ¶¶ 48-51; D.I. 169, Ex. C (Bartlett Rep.) at ¶¶ 68-69—Dr. Mailman states that the person of ordinary skill in the art would select certain of the referenced tests "to evaluate the dopamine agonist activity of a given compound" and that "a compound that was expected to possess dopamine agonist activity would also be expected to be useful in connection with the treatment of parkinsonism or Parkinson's disease." D.I. 169, Ex. I (Mailman Rep.) at ¶¶ 35-36. In other words, Dr. Mailman replies to a criticism made by Dr. Bartlett concerning the expectations of Dr. Laguzza in submitting compound 188305 for specific types of biological testing.

## II.    BARR'S OFFER TO ALLOW BOEHRINGER TO SUBMIT SUPPLEMENTAL REPORTS

When the parties met and conferred with respect to Boehringer's Motion, Boehringer's position was that the Motion would be filed unless Barr withdrew all of the paragraphs identified by Boehringer. Ex. 1 (E-Mail from J. Neckers to D. Grossman & J. Berniker dated 8/9/07). For the first time, in footnote 3 of its Motion, Boehringer requested that it be allowed "to serve supplemental reports" as alternative relief. D.I. 169 at 16 n.3.

After receiving Boehringer's Motion, Barr contacted Boehringer on August 16, 2007 and proposed allowing Boehringer additional time to file supplemental reports to resolve the Motion. Ex. 4 (Letter from D. Grossman to A. Hollis dated 8/29/07); Ex. 5 (Letter from A. Hollis to D. Grossman dated 8/27/07). Barr continued to maintain that Boehringer's Motion was frivolous, but was willing to compromise so as not to delay the litigation. Ex. 4 (Letter from D. Grossman to A. Hollis dated 8/29/07). Thus, Barr's offer was conditioned on the new reports being served before the depositions of Boehringer's responsive experts, to ensure that the schedule for expert discovery would not be further delayed. *Id.* Boehringer refused to agree to Barr's proposal, allegedly because it did not allow sufficient time to prepare responsive reports. Ex. 4 (Letter from D. Grossman to A. Hollis dated 8/29/07); Ex. 5 (Letter from A. Hollis to D. Grossman dated 8/29/07). Yet, Boehringer has not even discussed these fifteen paragraphs from Barr's reports with Boehringer's experts during the seven weeks that have passed since the reports were served. Ex. 5 (Letter from A. Hollis to D. Grossman dated 8/27/07).

## ARGUMENT

## III.    BARR'S REPLY EXPERT REPORTS ARE ENTIRELY PROPER

The Amended Scheduling Order in this case, consistent with Federal Rule of Civil Procedure 26(a)(2)(C), states that the party with the burden of proof may "serve its *supplemental*

disclosures to reply on the same subject matter" by the third-round deadline. D.I. 159 (emphasis added). That is precisely what Barr did. Paragraphs 4-13 of Dr. Anslyn's supplemental report— so entitled consistent with the Amended Scheduling Order—are wholly supportive of opinions set forth in his opening report and they directly respond to criticisms set forth in Dr. Bartlett's responsive report. The remaining paragraphs are likewise fully supportive of Dr. Anslyn's opening report and include a criticism of Boehringer's proffered evidence of secondary indicia— an issue on which, if relevant, Boehringer bears the burden of production. *See Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 291-92 (Fed. Cir. 1985). Similarly, paragraphs 35 and 36 of Dr. Mailman's report directly respond to a criticism from Dr. Bartlett, and relate to issues and evidence cited and discussed by Barr's expert in the opening round. Boehringer's repeated assertions that Barr's expert reports contain "new opinions" that should have been disclosed earlier is demonstrably false. *See* D.I. 169 at 14.

The paragraphs proposed to be stricken do not contain any new theories of invalidity. They do not extend a previously asserted theory of invalidity to any additional patent claims. They do not rely on any new prior art references. To the contrary, Drs. Anslyn and Mailman provide opinions that (1) are directly responsive to Boehringer's experts, and/or (2) relate to theories of invalidity—double patenting and prior invention—that Boehringer has been aware of since the beginning of the litigation. Amazingly, Boehringer's position appears to be that where a party bears the burden of proof, its reply reports can be nothing other than a verbatim repetition of opening reports. Of course, that is simply not the standard. Reply reports are clearly intended to allow a party to substantively respond to opposition reports.

## IV. BOEHRINGER HAS NOT MET, AND CANNOT MEET, THE THIRD CIRCUIT'S STANDARD FOR STRIKING EXPERT TESTIMONY

Even if the Court were to conclude that the paragraphs in question do not contain proper reply material, Boehringer's Motion should still be denied under the applicable law.

### A. The Third Circuit's Standard for Exclusion of Evidence

"[T]he exclusion of critical evidence is an extreme sanction." *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel*, 777 F.2d 113 (3d Cir. 1985).[5] The Third Circuit requires more than a literal violation of Federal Rule of Civil Procedure 26 or the Court's Scheduling Order to preclude a party from presenting evidence at trial. When making the determination as to whether to exclude expert testimony on the grounds that it was not timely disclosed, the Third Circuit has mandated that courts consider the four factors set forth in *Meyers v. Pennypack* ("the *Pennypack* factors"):

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791 (3d Cir. 1994) (*quoting Pennypack*, 559 F.2d at 904-05). The Third Circuit also has stated that "'the importance of the excluded testimony' should be considered" as well. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (*quoting Pennypack*, 559 F.2d at 904). District courts in the Third Circuit have summed up the test as follows: to exclude evidence, a court must find that the party "(1) revealed previously undisclosed evidence when trial was either imminent or in progress, or (2) acted in bad faith." *See, e.g., Foltz v. Hampton*, No. 99-CV-4295, 2001 WL 844467, at *3 (E.D. Pa. July

---

[5] The parties are in agreement that Third Circuit law applies here. *See* D.I. 169 at 12.

23, 2001). Other district courts within the Third Circuit—including one cited by Plaintiffs on page 13 of their Motion—have held similarly: "[T]estimony of an expert on matters within the expert's expertise but outside of the expert's report is not only permissible at trial, but the exclusion of such testimony may be reversible error. . . . An expert may testify beyond the scope of his report absent surprise or bad faith." *Graham v. Barolat*, C.A. No. 03-2029, 2005 U.S. Dist. LEXIS 644 at *3 (E.D. Pa. Jan. 12, 2005) (ellipses in original); *see also Fritz v. Consolidated Rail Corp.*, Civ. A. No. 90-7530, 1992 WL 96285, at *3 (E.D. Pa. Apr. 23, 1992).

A classic example of the application of these factors is found in the Third Circuit's decision in *In re Paoli R.R. Yard PCB Litigation*, an opinion not mentioned in Boehringer's Motion. In that case, the expert served a supplemental report *after he had already been deposed* which gave details of his opinion concerning a medical monitoring plan. 35 F.3d at 791. The district court precluded testimony on the plan, but the Third Circuit reversed. *Id.* at 793. It found that the resulting prejudice, if any at all, was extremely minimal because the opposing party knew the expert was going to testify and was aware of the general substance of his testimony from his deposition. *Id.* at 792. Moreover, the supplemental report was served only a month after the deadline for the plaintiffs' expert reports, it was over four months prior to trial, and sixty days before the deadline for ending expert discovery. *Id.* Thus, the Appeals Court focused on the fact that "the defendants had abundant time to [re]depose [plaintiff's expert] regarding the specifics of his proposed program before the discovery deadline, and the district court could easily have extended the deadline to provide the defendants even more time." *Id.* It therefore concluded that, "[a]s a result, under the first three *Pennypack* factors . . . there is little in favor of exclusion." *Id.*

In addition, the Third Circuit reversed the district court's finding on willfulness. It held:

> Where plaintiffs named [their expert] by the deadline, provided most of the
> substance of his testimony by the deadline, provided the additional substance
> shortly after the deadline when requested to do so, and had little to gain from the
> month delay in provision of the additional material, there is no basis on which to
> conclude that the plaintiffs deliberately failed to comply with the requirements of
> the district court order. "Lack of diligence" does not constitute bad faith.

*Id.* at 793. The Third Circuit suggested the appropriate relief, if any, for the additional report

was to allow the opposing party to depose the expert, not to strike the opinions. *Id.*

## B.    The *Pennypack* Factors Support Admission of Barr's Experts' Opinions

Each of the *Pennypack* factors—both individually and collectively—weighs in favor of

admitting the entirety of Barr's reply reports.

### 1.    Boehringer Is Not Prejudiced, and Any Prejudice Is Readily Curable

The first two *Pennypack* factors point squarely in favor of allowing the reports in their

entirety. Boehringer has been well aware of Barr's double patenting and Section 102(g) defenses

since the beginning of the litigation and is aware that Barr's experts would be opining on those

issues, which negates any surprise concerning the substance of Dr. Anslyn and Dr. Mailman's

opinions. *See, e.g., DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193, 1201-02 (3d Cir.

1978) (reversing decision to exclude an expert's testimony where the opposing party had notice

prior to trial that there would be evidence on the subject); *In re Mercedes Benz Antitrust Litig.,*

No. 99-4311, 2006 WL 2129100, at *8-9 (D.N.J. July 26, 2006) (allowing an expert affidavit

containing new information and submitted after the close of expert discovery where the

information was "entirely consistent with plaintiffs' position throughout this litigation"). Any

remaining theoretical prejudice is eliminated by the fact that the reports in question were served

on July 9, 2007, and Boehringer will have had over two months to prepare for Dr. Anslyn's

deposition (scheduled for September 11) and over three months to prepare for Dr. Mailman's

deposition (proposed for mid-October). Indeed, multiple cases from within this Circuit have

held that the mere fact that an expert witness can be deposed after the submission of supposedly 'new opinions' conclusively cures any possible prejudice. *See, e.g., Paoli*, 35 F.3d at 793; *Daugherty v. Fruehauf Trailer Corp.*, 146 F.R.D. 129, 130-31 (E.D. Pa. 1993); *DiFlorio v. Nabisco Biscuit Co.*, No. Civ. A. 95-0089, 1995 WL 710592, *2-3 (E.D. Pa. Nov. 13, 1995); *Mercedes Benz*, 2006 WL 2129100, at *9.

Boehringer also asserts that it is prejudiced because it has "no opportunity to procure expert testimony to address those newly advanced theories." D.I. 169 at 14-15. But that is mere speculation, as Boehringer has not even bothered to consult with its experts to determine whether they, in fact, hold any contradictory opinions. Ex. 4 (Letter from D. Grossman to A. Hollis dated 8/29/07); Ex. 5 (Letter from A. Hollis to D. Grossman dated 8/27/07). Moreover, if Boehringer genuinely wanted to offer additional expert testimony on these subjects, it could have approached Barr with its concerns immediately after receiving the reports rather than spending a month preparing its Motion before even raising the issue. If Boehringer had promptly voiced its concerns, there would have been more than sufficient time for preparation and service of additional reports without delaying the expert discovery period. By not addressing the issue with Barr earlier, Boehringer itself is largely responsible for any prejudice it has purportedly suffered. *See, e.g., Pennypack*, 559 F.2d at 905 ("We believe that in these circumstances Pennypack had some obligation to take steps to minimize its alleged prejudice and surprise."); *Bemer Aviation, Inc. v. Hughes Helicopter, Inc.*, 621 F. Supp. 290, 303 (E.D. Pa. 1985) (allowing testimony in light of "the steps defense counsel failed to take to cure whatever prejudice defendant did suffer").

### 2.    There Will Be No Effect on the Trial of this Case

Boehringer half-heartedly suggests that the reports have "disrupted the orderly and efficient trial of this case" because "there is no time built into the Court's Scheduling Order to rebut the new opinions included in Barr's reply reports." D.I. 169 at 14.  But the relevant question is not the process of litigating this action—which is what Boehringer focuses on—it is rather the disclosure of the testimony and any effect on the *trial date itself.* Where, as here, no date has been set for the trial of this action,[6] there are no grounds to argue that the trial will be affected.  *See, e.g., Kinney v. Trustees of Princeton Univ.*, No. 04-5252 (MLC), 2007 WL 700874, at *6 (D.N.J. Mar. 1, 2007) (because "no trial date" had been set, late production "is likely to create minimal, if any, disruption of trial").

### 3.    There Is No Evidence of Bad Faith

Boehringer has not presented a shred of evidence that Barr was acting in bad faith.  To the contrary, Barr believes the material proposed to be stricken is the proper subject of supplemental or reply reports as set forth in the Court's Scheduling Order.  At most, Boehringer appears to be alleging a lack of diligence on the part of Barr.  While Barr disputes even that allegation, as the Third Circuit held in *Paoli* in reversing the district court's finding of bad faith, "'[l]ack of diligence' does not constitute bad faith." *Paoli*, 35 F.3d at 793.

### 4.    It Is Undisputed that the Evidence Is Important to Barr

Needless to say, Barr is relying on these opinions to further support its invalidity theories, which are its primary defenses in this action.  Boehringer does not contest that the evidence

---

[6] The trial date in this matter was scheduled for November 5, 2007. D.I. 30.  However, Magistrate Judge Thynge indicated to the parties that, for cases originally assigned to Judge Jordan, trial dates scheduled for 2007 would be cancelled as a result of Judge Jordan's appointment to the Third Circuit.  Given Boehringer's refusal to consent to Magistrate Judge Thynge's jurisdiction, no new trial date has been set.

proposed to be stricken is important to Barr—indeed there would be no need for Boehringer to seek its exclusion if Plaintiffs did not deem the evidence important. As such, this factor is definitively resolved in Barr's favor.

### C.    The Decisions Cited by Boehringer Are Inapposite

Many of the cases cited by Boehringer are out-of-jurisdiction decisions that do not even purport to apply the Third Circuit's standard for excluding expert testimony.[7] And the cases from within this Circuit are readily distinguishable. In *Konstantopoulos v. Westvaco Corp.*, the identity of the expert was not disclosed until three weeks before trial—over a year after the expert discovery deadline had passed—and the proponent of the expert testimony did not comply with its discovery obligations relating to the expert's testimony until even later. 112 F.3d at 719. In *United States v. 68.94 Acres of Land*, new evidence was not disclosed until the trial itself and contradicted pre-trial representations that no new evidence would be relied upon. 918 F.2d 389, 396 (3d Cir. 1990); *see also Johnson v. Vanguard Mfg., Inc.*, 34 Fed. Appx. 858, 859 (3d Cir. 2002) (expert opinions were not disclosed in the report and were apparently first elicited during direct examination). In *Praxair, Inc. v. ATMI, Inc.*, the expert's additional opinions were not made known until "close to a month after discovery was closed," and tens days before summary judgment motions were due. 231 F.R.D. 457, 463-64 (D. Del. 2005). In *Finch v. Hercules Inc.*, the excluded witnesses had not been deposed and there was no opportunity to depose them given the proximity to trial. No. Civ. A. 92-251 MMS, 1995 WL 785100, at *10, *17 (D. Del. Dec. 22,

---

[7] *See, e.g., Avocent Huntsville Corp. v. ClearCube Tech., Inc.*, 443 F. Supp. 2d 1284, 1308 (N.D. Ala. 2006); *Jarritos, Inc. v. Los Jarritos*, No. C 05-02380 JSW, 2007 U.S. Dist. LEXIS 32245, at *8 (N.D. Cal. May 2, 2007); *Baldwin Graphic Sys., Inc. v. Sibert, Inc.*, No. 03 C 7713, 2005 WL 1300763, at *1 (N.D. Ill. Feb. 22, 2005); *GSI Group, Inc. v. Sukup Mfg. Co.*, No. 05-3011, 2007 WL 757818, at *1 (C.D. Ill. Mar. 8, 2007); *Mason v. SmithKline Beecham Corp.*, No. 05-CV-1252, 2007 U.S. Dist. LEXIS 21147, at *11 (C.D. Ill. Mar. 26, 2007); *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.* 109 F.3d 739, 744 (Fed. Cir. 1997); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1368 (Fed. Cir. 2006).

1995). Finally, in *Graham v. Barolat*, the supplemental opinions were not disclosed to the opposing party prior to the deposition, and the probative value of the testimony was "quite low." 2005 U.S. Dist. LEXIS 644, at \*6.

## CONCLUSION

Because Barr's reply reports are proper, and because Boehringer's Motion so clearly fails to meet the Third Circuit's standard for striking expert reports, Barr respectfully requests that Boehringer's Motion be denied.[8]

Respectfully Submitted:

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Adam W. Poff (#3990)
Jeffrey T. Castellano (#4837)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
jcastellano@ycst.com
*Attorneys for Defendant Barr Laboratories, Inc.*

OF COUNSEL:
Glenn J. Pfadenhauer
Jessamyn S. Berniker
Dov P. Grossman
Brett R. Tobin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Dated: August 31, 2007

---

[8] In addition, Barr reserves its right to seek fees and costs for responding to Plaintiffs' Motion.

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, Esquire hereby certify that on August 31, 2007, I caused a copy of the foregoing document to be served by e-mail and hand delivery on the following counsel of record:

Jack B. Blumenfeld, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
PO Box 1347
Wilmington, DE 19899-1347

Mary B. Matterer, Esquire
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

I further certify that on August 31, 2007, I caused a copy of the foregoing document to be served on the following in the manner indicated:

### BY E-MAIL

Steven C. Cherny, Esquire
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834

Kenneth G. Schuler, Esquire
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL 60606

Shannon M. Bloodworth, Esquire
Heller Ehrman LLP
1717 Rhode Island Ave., N.W.
Washington, DC 20036

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Jeffrey T. Castellano (No. 4637)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jcastellano@ycst.com

*Attorneys for Barr Laboratories, Inc.*