IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL ) <br> GMBH and BOEHRINGER INGELHEIM ) <br> PHARMACEUTICAL, INC. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BARR LABORATORIES, INC., ) <br> ) <br> Defendant, ) | Civil Action No. 05-700 (***) <br><br> CONSOLIDATED |
| BOEHRINGER INGELHEIM INTERNATIONAL ) <br> GMBH and BOEHRINGER INGELHEIM ) <br> PHARMACEUTICAL, INC. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MYLAN PHARMACEUTICALS, INC., ) <br> ) <br> Defendant. ) | Civil Action No. 05-854 (***) |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF ITS**
**MOTION TO STRIKE PORTIONS OF BARR'S EXPERT REPLY REPORTS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com
*Attorneys for Plaintiffs*
    *Boehringer Ingelheim International GmbH and*
    *Boehringer Ingelheim Pharmaceutical, Inc.*

*Of Counsel*:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
(212) 906-1200

Kenneth G. Schuler
Amanda J. Hollis
Joel S. Neckers
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
(312) 876-7700

September 13, 2007

## **TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT..................................................................................................................................2

      A.      Dr. Mailman's Report................................................................................................2

      B.      Dr. Anslyn's Supplemental Report...........................................................................3

      C.      Barr's Expert "Reply" Reports Are Not Proper........................................................5

      D.      The Appropriate Remedy Is to Strike Portions of Barr's "Reply" Reports..........6

            1.      Boehringer is Prejudiced by the New Opinions in Barr's Reply Reports ..........................................................................................................7

            2.      The Prejudice to Boehringer Cannot be Cured ..........................................8

            3.      Barr Has Disrupted the Court's Ability to Manage This Case in an Efficient Manner ...................................................................10

            4.      Barr Willfully Failed to Comply with the Court's Scheduling Order ....................................................................................10

            5.      If the New Opinions Are Indeed Important to Barr, Such Opinions Would Have Been Included in Barr's Initial Reports .............11

CONCLUSION.............................................................................................................................12

i

# **TABLE OF AUTHORITIES**

## **CASES**

*AstraZeneca AB v. Mut. Pharm. Co.*, 278 F. Supp. 2d 491 (E.D. Pa. 2003) .................................9

*DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193 (3d Cir. 1978)....................................8

*In re Mercedes-Benz Antitrust Litig.*, 225 F.R.D. 498 (D.N.J. 2005)...........................................11

*In re Safeguard Scientifics*, Civil Action 01-3208, 2004 U.S. Dist. LEXIS 23494
    (E.D. Pa. Nov. 17, 2004).............................................................................................................8

*In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999) .........................................................................7, 8

*Mercedes Benz Antitrust Litig.*, No. 99-4311, 2006 WL 2129100 (D.N.J. July 26, 2006)............8

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977)...................6

*Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153 (3d Cir. 1995) .............10

*Scott by Tribble v. Snider*, Civil Action No. 91-7080, 1994 U.S. Dist. LEXIS 10211
    (E.D. Pa. July 26, 1994).......................................................................................................7, 11

*Wachtel v. Health Net, Inc.*, 239 F.R.D. 81 (D.N.J. 2006) .........................................................10

*Ware v. Rodale Press, Inc.*, 322 F .3d 218 (3d Cir. 2003)............................................................8

## **INTRODUCTION**

Barr has essentially conceded that it violated the Court's Scheduling Order and the federal rules through its submission of supplemental reports. Indeed, following the filing of the instant Motion, Barr withdrew the report submitted by Dr. Isenbruck (which contained opinions regarding Barr's inequitable conduct defense – a defense on which Barr bears the burden of proof). *See* Aug. 29, 2007 Corresp. fr. D. Grossman to A. Hollis, Ex. A hereto. Nevertheless, despite its tacit admission that Dr. Isenbruck's report was improper, in its opposition, Barr attempts to justify the reply reports from Drs. Mailman and Anslyn by recharacterizing the opinions in ways that are unsupported by the reports themselves.

The salient point remains that the portions of Barr's reply reports that are addressed in Boehringer's Motion contain opinions that relate directly to issues on which Barr bears the burden of proof. Those opinions should have been disclosed in Barr's initial expert disclosures per the unambiguous terms of the Court's Scheduling Order. They were not, and accordingly, those opinions are untimely and improper. Furthermore, while those opinions are of dubious importance to Barr, they are prejudicial to Boehringer. Boehringer cannot cure the prejudice, and Barr's disregard of the Court's Scheduling Order will disrupt the orderly management of this case. Thus, under settled Third Circuit law, the new opinions asserted in Barr's reply reports should be stricken.

## ARGUMENT

### A.   Dr. Mailman's Report

Barr cannot and does not dispute that expert reply reports are not the proper place to introduce new opinions that were not disclosed in the initial round of expert reports.[1] *See* Barr Opp. (D.I. 173) at *passim*. Instead, Barr attempts to justify its inclusion, in Section V of Dr. Mailman's report, of unquestionably new opinions related to issues upon which it bears the burden of proof by arguing that the opinions "properly repl[y] to issues first raised by Boehringer in Dr. Bartlett's second-round report." *See id.* at 7, 8. Barr's assertions are without merit.

First, if Dr. Mailman were, in fact responding to Dr. Bartlett's report, presumably he would have said so. He did not. Instead, Dr. Mailman indicates that he is responding to Dr. Olanow's report. Indeed, Dr. Mailman does not even mention Dr. Bartlett in his supplemental report. *See* Mailman Report, Ex. I to Boehringer's Motion. In Section V, Dr. Mailman addresses the Eli Lilly '748 application, presumably to bolster Barr's invalidity defense regarding prior invention. Though Barr now asserts that Dr. Mailman "replies to a criticism made by Dr. Bartlett concerning the expectations of Dr. Laguzza in submitting [a compound for testing]", such claim is unsupported by the record and little more than an attempt to rewrite the record after-the-fact.

Second, Dr. Bartlett did not opine on the subject to which Barr suggests he is replying. *Compare* Mailman Report, Ex. I to Boehringer's Motion *with* Dr. Bartlett's Report, Ex. C to Boehringer's Motion. Barr suggests that, in Section V of his report, Dr. Mailman offers opinions regarding which tests a person of skill in the art would have selected to evaluate the

---

[1] Boehringer is not objecting to the entirety of Dr. Mailman's report. Instead, Boehringer objects only to Section V of that report, as the opinions expressed therein in no way respond to Boehringer's opposition reports and, on its face, nothing in the report indicates that such opinions are responding to Boehringer's expert opinions.

2

dopamine activity of a given compound to respond to criticisms Dr. Bartlett made regarding the expectations of Dr. Laguzza. *See* Barr Opp. (D.I. 173) at 8. Dr. Bartlett, however, did not opine on what tests a skilled artisan would or would not have conducted to evaluate the dopamine agonist activity of a given compound or whether such compounds would be expected to be useful in the treatment of Parkinson's disease. *See* Bartlett Report, Ex. C to Boehringer's Motion at *passim*. *But see* Dr. Mailman's Report, Ex. I to Motion at ¶¶ 35, 36. Instead, Dr. Bartlett opined that there is no evidence as to what, if anything, Dr. Laguzza expected; nor is there any basis for concluding that he even *saw* the results of the tests that Barr claims were performed. *See* Bartlett Report, Ex. C to Boehringer's Motion at 76-78. Further, Dr. Bartlett ultimately concluded that there is no indication that Dr. Laguzza actually reduced his invention to practice, and not that Dr. Laguzza or one skilled in the art would have utilized certain tests or would have expected those tests to have any specific results. *See id.*

In sum, Dr. Mailman's opinions in Section V of his report do not respond to Dr. Bartlett's opinions, as Barr suggests. The opinions expressed in Section V are new opinions relating to issues on which Barr bears the burden of proof. They should have been included in Barr's initial reports but were not. The opinions should therefore be excluded.

**B.    Dr. Anslyn's Supplemental Report**

Barr also asserts that in his supplemental report, Dr. Anslyn is responding to Dr. Bartlett's opinions regarding the scope of the disclosures in the German priority applications. *See* Barr Opp. (D.I. 173) at 6. In support of its assertion, Barr suggests that in Section A of his supplemental report, Dr. Anslyn is responding to Dr. Bartlett's analysis of the disclosures in the German priority application. *See id.* Barr further asserts that in Section B of his supplemental report, Dr. Anslyn's opinions are consistent with the opinions expressed in his initial report

3

regarding the scope of the claims in the patents-in-suit and that Dr. Anslyn's supplemental opinions address certain opinions expressed by Dr. Olanow. *See id.* at 7. Again, Barr's assertions are not availing.

First, Barr ignores that the opinions in Dr. Anslyn's supplemental report extend well beyond the narrow opinions Dr. Anslyn offered in his initial report regarding General Formula I of the German priority applications. *Compare* Anslyn Report, Ex. B to Boehringer's Motion *with* Anslyn Supp. Report, Ex. D to Boehringer's Motion. For example, Dr. Anslyn's supplemental opinions in Section A of his report bear directly on Barr's new matter theory (and therefore should have been disclosed in his initial report) as he opines for the first time as to how one skilled in the art would read certain sections of the German priority applications. *See* Anslyn Supp. Report, Ex. D to Motion at ¶¶ 4-13. Indeed, Dr. Anslyn admitted that he formed opinions expressed within that portion of his Supplemental Expert Report at the time of his initial expert report, but simply refrained from including them. *See* Anslyn Dep. (rough), Ex. B hereto at 180-84. By so doing, Dr. Anslyn effectively foreclosed Dr. Bartlett from addressing those opinions in his Expert Report. Thus, Dr. Anslyn's supplemental opinions are improper, and should be excluded. *See id.*

Second, Barr's assertions that Dr. Anslyn's opinions in Section B of his supplemental report are consistent with the opinions in his initial report and that Dr. Anslyn's supplemental opinions are responsive to Dr. Olanow's opinions on issues related to secondary indicia of non-obviousness are incorrect. *See* Barr Opp. (D.I. 173) at 7. Notably, Dr. Anslyn stated simply that he was responding to the opinions expressed in Dr. Bartlett's report. *See* Anslyn Supp. Report, Ex. D to Motion at ¶ 1. Nowhere in Dr. Anslyn's supplemental report does he purport to respond to the opinions in Dr. Olanow's report. *See id.* at *passim*.

Likewise, Barr's assertion that Dr. Anslyn's supplemental opinions are "consistent" with his initial opinions regarding the claims of the '812 and '086 patents ignores that the supplemental opinions contain new material that was not initially disclosed. *See* Barr Opp. (D.I. 173) at 7; Anslyn Report, Ex. B to Boehringer's Motion at ¶¶ 36-39. To be sure, Paragraphs 36-39 of Dr. Anslyn's initial report do little more than compare the claims between the '086 and '812 patents (and do so in a way that appears unrelated to any issue in this litigation). *See id.* Dr. Anslyn's initial report does not address the number of compounds encompassed by the claims in the '812 patent or whether practicing the methods of certain claims in the '086 patent would be the formation of compounds disclosed in the '812 patent. Moreover, Dr. Bartlett says nothing about the "thousands of compounds" that, according to Dr. Anslyn, are encompassed by the claims of the '812 patent, or whether practicing the methods of certain claims of the '086 patent would lead to the formation of certain compounds. *See* Bartlett Report, Ex. C to Boehringer's Motion at *passim*; Anslyn Supp. Report, Ex. D to Boehringer's Motion at ¶¶ 14-16. To the extent Barr intends to argue that the '812 patent is invalid based on the opinions in Section B of Dr. Anslyn's supplemental report, it was incumbent upon Barr to submit those opinions in its initial reports. It did not.

C. **Barr's Expert "Reply" Reports Are Not Proper**

Barr further asserts that its reply reports are "entirely proper" because reply reports are intended to allow parties to respond to opposition reports and its reply reports contain no new opinions and do not extend previously asserted theories of liability or rely on new prior art references. *See* Barr Opp. (D.I. 173) at 9, 10.

To the extent Barr suggests it should have the opportunity to respond to Boehringer's opposition reports under the terms of the Court's Scheduling Order, Boehringer

5

does not disagree. That is why Boehringer challenged only portions of several of Barr's expert reply reports and did not move to strike Dr. Weinstein's report at all. *See* Scheduling Order, Ex. A to Boehringer's Motion. However, as noted above, Barr has impermissibly attempted, under the guise of supplemental reports, to include new opinions on issues upon which Barr bears the burden of proof.

Dr. Isenbruck's report is no longer a part of this case, but that is simply because Barr acknowledged that Dr. Isenbruck's report was improper in withdrawing it. Dr. Mailman's and Dr. Anslyn's supplemental reports suffer from the same infirmities as did Dr. Isenbruck's. Each of those reports contain opinions that: (1) do not respond to Boehringer's experts, and/or (2) improperly extend or add new opinions related to Barr's theories of invalidity. Though Barr's reply reports may not contain entirely new *theories* of invalidity, that is not the extent of the inquiry. Rather, the appropriate inquiry is whether Barr violated the Court's Scheduling Order by including opinions in its reply reports that were not included in its initial reports that relate to issues on which Barr bears the burden of proof. Thus, as Barr's reply reports are rife with new opinions not previously disclosed, its reply reports plainly exceed the bounds of what is permitted by the federal rules and the Court's Scheduling Order.

D.   **The Appropriate Remedy Is to Strike Portions of Barr's "Reply" Reports**

Under settled Third Circuit law, Section V of Dr. Mailman's report and Paragraphs 4-16 of Dr. Anslyn's supplemental report should be stricken.[2]

---

[2]   Though Barr cites a different case than did Boehringer (*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977)), for the standard the Court is to employ when deciding whether to strike expert testimony, the result under Third Circuit law is the same: the Court should strike portions of Barr's expert reports.

### 1. Boehringer is Prejudiced by the New Opinions in Barr's Reply Reports

Barr claims that Boehringer will suffer no prejudice from the inclusion of its expert reply opinions because Boehringer has been aware of Barr's defenses "since the beginning of the litigation" and Boehringer has had time to prepare for the depositions of Barr's experts. *See* Barr Opp. (D.I. 173) at 13, 14. Barr's assertions are incorrect for two primary reasons.

First, Barr's claim that Boehringer is not prejudiced by the inclusion of its new opinions because Boehringer has been aware of Barr's defenses since the outset of the litigation defies logic. If it were sufficient for a party to state generally a defense to a claim at the outset of the litigation and not disclose the topics of expert testimony in support of such defense in the manner prescribed by the federal rules and the Court's Scheduling Order, no party would ever make its disclosures until trial was actually in progress. That, however, is not the law. *See, e.g., Scott by Tribble v. Snider*, Civil Action No. 91-7080, 1994 U.S. Dist. LEXIS 10211 at *18 (E.D. Pa. July 26, 1994) ("A discovery period is senseless unless, *during that period*, the parties are under a duty to identify those individuals with knowledge of the facts of the case or those experts who would be providing their opinions to aid the finder of fact with its determination") (emphasis in original). As the Third Circuit noted in *In re TMI Litig.*, 193 F.3d 613, 722 (3d Cir. 1999):

> Although it appears from the record that the defendants knew the identity of the expert witnesses in a timely fashion, the record also shows that the substance of the experts' reports was not known to the defendants. Many of the timely reports have little, if any, resemblance to the supplemental initial reports which the Trial Plaintiffs subsequently filed.

7

As was the case with the defendants in *TMI*, the opinions offered in Barr's reply reports contain opinions that were not disclosed previously and, indeed, bear little resemblance to the opinions set forth in Barr's initial reports.[3] *See id.*

Second, Barr's suggestion that Boehringer can cure the prejudice simply by deposing Barr's experts and that any "theoretical prejudice is eliminated" because Boehringer will have had months to prepare for Barr's expert depositions is also without merit. *See* Barr Opp. (D.I. 173) at 13, 14. As the Third Circuit noted in *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003), prejudice may include the "burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy" and need not be irremediable. Boehringer's ability to effectively prepare a full and complete trial strategy has been significantly hampered by Barr's refusal to adhere to the Court's Scheduling Order, as Boehringer will be forced, late in the game, to dissect the new opinions in Barr's expert reports and attempt to come up with some way to counter those opinions. *See id.*; *see also, e.g., In re Safeguard Scientifics*, Civil Action 01-3208, 2004 U.S. Dist. LEXIS 23494 at *15 (E.D. Pa. Nov. 17, 2004) (striking supplemental expert declaration and rejecting the plaintiff's suggestion that defendants could cure any prejudice by re-deposing the expert).

### 2. The Prejudice to Boehringer Cannot be Cured

Barr's assertion that Boehringer could have cured any prejudice it will suffer by addressing the new opinions disclosed in Barr's reply reports with Barr earlier than it did is also

---

[3] The cases Barr cites in support of its argument are inapposite. *See De Marines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201 (3d Cir. 1978) (reversing trial court decision to exclude expert testimony where the scheduling order was substantially different than that in place in this case, as it did not narrowly prescribe the proper bounds of reply reports); *Mercedes Benz Antitrust Litig.*, No. 99-4311, 2006 WL 2129100 at *9 (D.N.J. July 26, 2006) (allowing supplemental affidavit that simply "clarified" information contained in an earlier report).

without merit. *See* Barr Opp. (D.I. 173) at 14. First, Barr's suggestion is belied by the fact that Barr withdrew Dr. Isenbruck's report. As that act acknowledged, the only way to cure the prejudice associated with the improper submission of such opinion testimony is to remove that testimony from the case entirely.

Second, Boehringer attempted to cure the prejudice it will suffer by moving in the alternative for the opportunity to serve supplemental reports. In response to Boehringer's request, Barr insisted that Boehringer could only serve additional reports "before the depositions as currently scheduled." *See* Aug. 29, 2007 Corresp. fr. D. Grossman to A. Hollis, Ex. A hereto. Boehringer countered Barr's offer by offering, instead, to serve supplemental reports within 30 days of Barr's agreement for Boehringer to serve supplemental reports. *See* Aug. 27, 2007 Corresp. fr. A. Hollis to D. Grossman, Ex. C hereto. Barr refused. *See id.*; Aug. 29, 2007 Corresp. fr. D. Grossman to A. Hollis, Ex. A hereto.

Given the circumstances, Barr's suggestion that Boehringer is responsible for the prejudice is unwarranted – Boehringer was under no obligation to accept Barr's proposal, nor the unreasonable conditions attached to it. Indeed, Barr's proposal would not have allowed Boehringer sufficient time to consult with its experts and identify new experts to respond to Barr's new opinions, if necessary. *See, e.g., AstraZeneca AB v. Mut. Pharm. Co.*, 278 F. Supp. 2d 491, 510 (E.D. Pa. 2003) ("the prejudice to Plaintiffs cannot be easily cured, considering that, even if this Court were to afford Plaintiffs more time in which to address the new data, Plaintiffs would be compelled to hire experts to perform testing…"). Further, Barr asserts that Boehringer is responsible for any prejudice it will suffer because it did not timely address the issue with its own experts. That argument, however, ignores the fact that prior to Barr's offer to allow Boehringer to submit supplemental testimony, Boehringer had no reason to consult with its

9

experts or new experts, as there was no such opportunity contemplated by the Court's Scheduling Order. Accordingly, the blame for the prejudice Boehringer will suffer falls squarely on Barr's shoulders.

### 3. Barr Has Disrupted the Court's Ability to Manage This Case in an Efficient Manner

Next, Barr asserts that the inclusion of the new opinions in its reply reports will have no effect on the trial date, as no trial date has been set in this case. *See* Barr Opp. (D.I. 173) at 15. However, the fact that no trial date has been set is not dispositive of the issue at hand. In *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 106 (D.N.J. 2006), the court struck expert testimony where the defendants' delays "disrupted this Court's and the Magistrate Judge's attempts to manage this case to trial in an efficient manner." So too, Barr's disregard for the Court's Scheduling Order has disrupted the Court's ability to manage this case to trial in an efficient manner, as Barr's actions have disrupted the parties' and the Court's ability to proceed with the expert discovery phase of this case.

### 4. Barr Willfully Failed to Comply with the Court's Scheduling Order

Next, Barr asserts that it did not act in bad faith. *See* Barr Opp. (D.I. 173) at 15. Barr ignores, however, that in the Third Circuit, the relevant inquiry is whether the offending party acted in bad faith *or* willfully in not complying with the disclosure rules. *See Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995). Barr does not argue that it did not willfully disregard the Court's Scheduling Order. Indeed, Barr's withdrawal of Dr. Isenbruck's Expert Report is a tacit admission otherwise. Moreover, as noted in Boehringer's opening brief, the new opinions Barr included in its supplemental reports are based on information that was plainly available to Barr when it served its initial reports (a point not contested by Barr). Accordingly, Barr cannot credibly argue that submitting new opinions in its

10

reply reports was anything but willful. *See, e.g., In re Mercedes-Benz Antitrust Litig.*, 225 F.R.D. 498, 507 (D.N.J. 2005) (finding that willfulness was present where, among other things, the offending party possessed the information it sought to introduce by way of a supplemental affidavit after it had already made certain disclosures through interrogatories).

### 5. If the New Opinions Are Indeed Important to Barr, Such Opinions Would Have Been Included in Barr's Initial Reports

Finally, Barr asserts that the new opinions in its reply reports are important to Barr. *See* Barr Opp. (D.I. 173) at 15, 16. Though the new opinions are unquestionably prejudicial to Boehringer, if such opinions were truly "important" to Barr, why did Barr choose to wait until the reply round of expert reports to include such opinions? As the court noted in *Scott by Tribble v. Snider*, 1994 U.S. Dist. LEXIS 10211 at *22, the importance of the evidence Barr seeks to introduce is questionable given that Barr did not seek to include such evidence until late in the expert discovery phase of this case.

## CONCLUSION

For the foregoing reasons, and for the reasons previously set forth in Boehringer's opening brief, Borheinger respectfully requests that the Court strike Section V of Dr. Mailman's Report and Paragraphs 4-16 of the Supplemental Anslyn Report.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P. 0. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharmaceuticals, Inc.*

*Of Counsel*:

Steven C. Chemy
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
(212) 906-1200

Kenneth G. Schuler
Amanda J. Hollis
Joel S. Neckers
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
(312) 876-7700

September 13, 2007

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on September 13, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

>Mary B. Matterer
>MORRIS JAMES LLP
>
>Adam Wyatt Poff
>YOUNG, CONAWAY, STARGATT & TAYLOR LLP

I further certify that copies of the foregoing document were also served upon the following in the manner indicated:

### BY ELECTRONIC MAIL and HAND DELIVERY

| | |
|---|---|
| Mary B. Matterer, Esquire | Adam Wyatt Poff, Esquire |
| MORRIS JAMES LLP | YOUNG, CONAWAY, STARGATT & TAYLOR LLP |
| 500 Delaware Avenue | The Brandywine Building |
| Wilmington, DE 19801 | 1000 West Street, 17th Floor |
| | Wilmington, DE 19801 |

### BY ELECTRONIC MAIL and FEDERAL EXPRESS

| | |
|---|---|
| Glenn J. Pfadenhauer, Esquire | Shannon M. Bloodworth, Esquire |
| Jessamyn S. Berniker, Esquire | HELLER EHRMAN LLP |
| Dov P. Grossman, Esquire | 1717 Rhode Island Ave., NW |
| WILLIAMS & CONNOLLY LLP | Washington, DC 20036 |
| 725 Twelfth Street, N.W. | |
| Washington, DC 20005-5901 | |

David J. Harth, Esquire
HELLER EHRMAN LLP
One East Main Street, Suite 201
Madison, WI 53703

/s/ *Maryellen Noreika*
_____
Maryellen Noreika (#3208)