**Exhibit 1**

**Joint Statement of Facts That Are Admitted And Require No Proof At Trial**

1.      Plaintiff Boehringer Ingelheim International GmbH is a corporation organized and existing under the laws of Germany, having an office and place of business at Binger Strasse 173, 55216 Ingelheim, Germany.

2.      Plaintiff Boehringer Ingelheim Pharmaceuticals, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 900 Ridgebury Road, Ridgefield, Connecticut 06877.   (The Boehringer plaintiffs are referred to collectively as "Boehringer").

3.      Barr Laboratories, Inc. ("Barr") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 2 Quaker Road, Pomona, New York 10970.

4.      Mylan Pharmaceuticals Inc. ("Mylan") is a corporation organized and existing under the laws of the State of West Virginia, having a principal place of business at 781 Chestnut Ridge Road, Morgantown, West Virginia, 26504.

5.      United States Patent No. 4,886,812 ("the '812 patent"), entitled "Tetrahydro-Benzthiazoles, The Preparation Thereof and Their Use as Intermediate Products or as Pharmaceuticals," issued on December 12, 1989 to Dr. Karl Thomae GmbH of Biberach an der Riss, Germany, the assignee of the named inventors, Gerhart Griss, Claus Schneider, Rudolf Hurnaus, Walter Kobinger, Ludwig Pichler, Rudolf Bauer, Joachim Mierau, Dieter Hinzen and Gunter Schingnitz.

6.      Plaintiff Boehringer Ingelheim International GmbH is the assignee and record owner of the '812 patent.

7.    Boehringer's MIRAPEX® product was approved by the United States Food and Drug Administration ("FDA") for the treatment of the signs and symptoms of idiopathic Parkinson's disease on July 1, 1997.

8.    The active ingredient in MIRAPEX® is pramipexole dihydrochloride. Pramipexole dihydrochloride is a member of a group of compounds generally referred to as "tetrahydro-benzthiazoles," "tetrahydrobenzthiazoles," or "tetrahydrobenzothiazoles."

9.    There are two enantiomers of 2-Amino-6-n-propylamino-4,5,6,7-tetrahydro-benzthiazole. Pramipexole is the S-enantiomer, which corresponds in this case to (-) 2-Amino-6-n-propylamino-4,5,6,7-tetrahydrobenzthiazole (Boehringer's internal designation for that compound is SND919Y). The R-enantiomer corresponds in this case to (+) 2-Amino-6-n-propylamino-4,5,6,7-tetrahydrobenzthiazole (Boehringer's internal designation for that compound is SND919X).

10.    Pramipexole dihydrochloride is the dihydrochloride salt of (-) 2-Amino-6-n-propylamino-4,5,6,7-tetrahydrobenzthiazole.

11.    Mylan is the owner of ANDA No. 77-854, which was submitted under section 505(j) of the Federal Food, Drug and Cosmetic Act, and seeks approval to engage in the commercial manufacture, use and sale of generic pramipexole dihydrochloride tablets in 0.125, 0.25, 0.5, 1.0 and 1.5 mg strengths ("Mylan's product").

12.    The active ingredient in Mylan's product is pramipexole dihydrochloride.

13.    The commercial manufacture, sale or use of Mylan's product would infringe Claim 7 of the '812 patent. Therefore, by submitting ANDA No. 77-854 seeking approval to engage in the commercial manufacture, use and sale of Mylan's product prior to the expiration of the '812 patent, Mylan has infringed claim 7 of the '812 patent.

14. Barr is the owner of ANDA No. 77-724, which was submitted under section 505(j) of the Federal Food, Drug, and Cosmetic Act, and seeks approval to engage in the commercial manufacture, use and sale of generic pramipexole dihydrochloride tablets in 0.125, 0.25, 0.5, 1.0 and 1.5 mg strengths ("Barr's product").

15. The active ingredient in Barr's product is pramipexole dihydrochloride.

16. The commercial manufacture, sale or use of Barr's product would infringe Claim 7 of the '812 patent. Therefore, by submitting ANDA No. 77-724 seeking approval to engage in the commercial manufacture, use and sale of Barr's product prior to the expiration of the '812 patent, Barr has infringed claim 7 of the '812 patent.

17. Boehringer filed U.S. Patent Application No. 06/810,947 ("the '947 application") on December 19, 1985. The '947 application issued as U.S. Patent No. 4,731,374 (the '374 patent") on March 15, 1988.

18. On November 23, 1987, Boehringer filed U.S. Application No. 07/124,197 ("the '197 application"). The '197 application issued as U.S. Patent No. 4,843,086 (the "'086 patent") on June 27, 1989.

19. The '086 patent expired on June 27, 2006.

20. On October 12, 1988, Boehringer filed U.S. Application No. 07/256,671 ("the '671 application"). The '671 application issued as the '812 patent on December 12, 1989.

**Exhibit 2**

**Boehringer's Statement Of Issues Of Fact That Remain To Be Litigated**

Boehringer reserves the right to modify, supplement, or change this Statement Of Issues Of Fact That Remain To Be Litigated to the extent necessary to respond to any issues that Barr or Mylan raise in their respective Statement Of Issues Of Fact That Remain To Be Litigated.

If any statement in Boehringer's Statement Of Issues of Fact That Remain To Be Litigated should properly be considered an issue of law, then such statement shall be considered to be part of Boehringer's Statement of Issues of Law That Remain To Be Litigated.

## I.    INFRINGEMENT

1.    Whether by filing ANDA No. 77-724 seeking approval to make, use and sell proposed pramipexole dihydrochloride tablets prior to the expiration of the '812 patent, Barr has infringed claims 5, 9 and 10 of the '812 patent, in addition to claim 7.  Barr has not contested that by filing ANDA No. 77-724 it has infringed claims 5, 9 and 10.

2.    Mylan has not contested that by filing ANDA No. 77-854 it has infringed claims 5, 7, 9 and 10 of the '812 patent.

## II.    VALIDITY

Obviousness-type Double Patenting

1.    Whether the Defendants have disclosed facts establishing a prima facie case of obviousness-type double patenting with regard to claims 5, 7, 9 and 10 of the '812 patent. If so, whether the Defendants can prove by clear and convincing evidence that claims 5, 7, 9 and 10 of the '812 patent are invalid under the doctrine of obviousness-type double patenting.

Prior invention under 35 U.S.C. § 102(g)

2.      Whether the Defendants have disclosed facts establishing a prima facie case that claim 5 of the '812 patent is invalid under 35 U.S.C. § 102(g) over work allegedly performed by Eli Lilly scientists Laguzza and Turner.

3.      Whether Defendants can prove by clear and convincing evidence that work allegedly performed by Eli Lilly scientists Laguzza and Turner constitutes prior invention of any compound covered by claim 5 of the '812 patent under 35 U.S.C. § 102(g).

4.      Whether Defendants can prove by clear and convincing evidence that Eli Lilly did not abandon, suppress, or conceal any alleged invention covered by claim 5 of the '812 patent.

## III.    RELIEF

5.      Whether Boehringer is entitled, under 35 U.S.C. § 271(e)(4)(A), to an Order that the effective date of any approval of Barr's proposed pramipexole dihydrochloride tablets that are the subject of ANDA No. 77-724 be a date not earlier than the expiration date of the '812 patent or any later date of exclusivity to which Boehringer is or becomes entitled.

6.      Whether Boehringer is entitled, under 35 U.S.C. § 271(e)(4)(B), to a permanent injunction, restraining and enjoining Barr from engaging in the commercial manufacture, use, offer for sale or sale of its proposed pramipexole dihydrochloride tablets within the United States, or importation into the United States.

7.      Whether Boehringer is entitled, under 35 U.S.C. § 271(e)(4)(A), to an Order that the effective date of any approval of Mylan's proposed pramipexole dihydrochloride tablets that are the subject of ANDA No. 77-874 be a date not earlier than the expiration date of the '812 patent or any later date of exclusivity to which Boehringer is or becomes entitled.

8.    Whether Boehringer is entitled, under 35 U.S.C. § 271(e)(4)(B), to a permanent injunction, restraining and enjoining Mylan from engaging in the commercial manufacture, use, offer for sale or sale of its proposed pramipexole dihydrochloride tablets within the United States, or importation into the United States.

## IV.    ATTORNEYS' FEES

Whether this case is exceptional such that Boehringer is entitled to its attorneys' fees.

**Exhibit 3**

**Defendants' Statement Of Issues Of Fact That Remain To Be Litigated**

To the extent that Defendants' Statement of Issues of Law contains issues of fact, those issues are incorporated herein by reference. Should the Court determine that any issue identified in this list as an issue of fact is more properly considered an issue of law, Defendants incorporate such issues by reference into their Statement of Issues of Law.

Barr and Mylan's identification of issues of fact that remain to be litigated is based in part on their current understanding of the arguments Boehringer is likely to make in attempting to respond to Defendants' non-infringement and invalidity contentions, based upon the pleadings (including Boehringer's draft pre-trial order sections provided to Defendants on January 2, 2008) and discovery in the action to date. To the extent Boehringer attempts to introduce different or additional facts, Defendants reserve the right to object to and/or contest those facts, and to present any and all rebuttal evidence in response to those facts. Defendants also reserve the right to modify, supplement, or amend this Statement of Issue of Fact, including to respond to any issues, exhibits, or witnesses presented by Boehringer.

## I.     INFRINGEMENT

1.     Whether Boehringer has met its burden of proof that Barr's product literally infringes each of claims 5, 9, and 10 of the '812 patent.

2.     Whether the active ingredient in Barr's product is pramipexole dihydrochloride.

## II.     DOUBLE PATENTING

With respect to Defendants' defense that claims 3, 4, 5, 7, 9, and 10 of the '812 patent are invalid for double patenting, the issues of fact to be litigated are as follows:

1.     Whether claims 3, 4, 5, 7, 9, and 10 of the '812 patent are invalid for double patenting over claims of the '086 patent.

2.      Whether claims 3, 4, 5, 7, 9, and 10 of the '812 patent are not patentably distinct from claims of the '086 patent.

3.      Whether claims 3, 4, 5, 7, 9, and 10 of the '812 are anticipated by (literally and/or inherently), or obvious in light of, claims of the '086 patent.

4.      Whether, in order to practice the method of treatments in the claims of the '086 patent, one would be required to have the specified compound or compounds.

5.      Whether the earlier-issued '086 patent is directed to methods of treatment using tetrahydro-benzthiazoles that are then claimed in the later-issued '812 patent.  As an example, claim 29 of the '086 patent differs from claim 7 of the '812 patent only in that the earlier issued claim 29 of the '086 patent recites a method of using compounds to treat Parkinsonism or Parkinson's disease, while the later-issued claim 7 of '812 patent claims those compounds themselves:

| Claim 29 of the '086 Patent | Claim 7 of the '812 Patent |
|---|---|
| A method for treating Parkinsonism or Parkinson's disease which comprises administering a therapeutically effective amount of **2-Amino-6-n-propylamino-4,5,6,7-tetrahydro-benzthiazole, or a pharmaceutical acceptable acid addition salt thereof**. | **2-Amino-6-n-propylamino-4,5,6,7-tetrahydro-benzthiazole, or a pharmaceutical acceptable acid addition salt thereof.** |

Claims 9, 19, and 39 of the '086 patent similarly claim methods of using the same compounds for treating schizophrenia, lowering heart rate, and lowering blood pressure but are otherwise identical to claim 29 and bear the same relationship to claim 7.

6.      Whether the '086 patent claims methods of using either (a) the identical compounds claimed in the '812 patent, or (b) a sub-genus of the compounds claimed in the '812 patent, as set forth in the following chart:

| '086 Patent Claims | '812 Patent Claims |
|---|---|
| 7, 8, 9, 10, 17, 18, 19, 20, 23, 27, 28, 29, 30, 37, 38, 39, 40 | 3 |
| 7, 8, 9, 10, 17, 18, 19, 20, 27, 28, 29, 30, 37, 38, 39, 40 | 4 |
| 9, 10, 19, 20, 29, 30, 39, 40 | 5 |
| 9, 19, 29, 39 | 7 |
| 8, 9, 18, 19, 28, 29, 38, 39 | 9 |
| 8, 9, 18, 19, 28, 29, 38, 39 | 10 |

7.    Whether the following facts support Defendants' double patenting defense:

a.  The '374 patent contains compound and method of treatment claims, as well as one pharmaceutical composition claim, the '086 patent contains method of treatment claims, and the '812 patent contains compound claims as well as one pharmaceutical composition claim.

b.  The '086 patent contains claims to methods of using compounds for lowering blood pressure, lowering the heart rate, treatment of Parkinsonism or Parkinson's disease, and treatment of schizophrenia.  The '086 patent method claims recite treatment of these disorders by administering a therapeutically effective amount of a compound identified in the respective claims.

c.  Because the '086 patent is directed to methods of treatment using tetrahydro-benzthiazoles that are then claimed in the later-issued '812 patent, the '812 patent claims are not the product of innovation but, at best, of ordinary skill and common sense.

d.  Boehringer contends that the use of Barr's proposed ANDA product—pramipexole dihydrochloride tablets—to treat the signs and symptoms of

idiopathic Parkinson's disease literally infringes claims 3, 4, 5, 7, 9, and 10 of the '812 patent.

    e.   One cannot practice each of multiple claims of the '086 patent without also infringing the '812 patent.

    f.   One cannot use pramipexole for any of the uses disclosed in the '812 patent without also infringing the '086 patent.

    g.   Practicing the methods of at least claims 8, 9, 18, 19, 28, 29, 38, and 39 of the '086 patent, naturally and necessarily results in the formation of the claimed compounds in both protonated (acidic) and unprotonated (free base) form.

8.      Whether the '086 patent can be used as a reference against the '812 patent for purposes of double patenting.

9.      Whether a restriction requirement imposed during prosecution of the grandparent application to the '812 patent, Application Serial No. 6/810,947 ("the '947 application"), which matured as the '374 patent, did not carry over to Application Serial No. Application Serial No. 7/124,197 ("the '197 application"), which matured as the '086 patent.

10.     Whether the examiner in the '197 application, by his actions, withdrew the restriction requirement that was imposed in the '947 application.

11.     Whether the '812 patent was not filed as a result of a restriction requirement.

12.     Whether the claims of the '812 patent are not consonant with the restriction requirement imposed during the '947 application.

13.     Whether the application that matured into the '812 patent, Application Serial No. 07/256,671 ("the '671 application") was filed October 12, 1988, approximately seven months after issuance of the '374 patent.

14.     Whether Boehringer has met its burden of showing that the third sentence of 35 U.S.C. § 121 prevents a finding of double patenting.

15.     Whether the following additional facts support Defendants' position that the third sentence of 35 U.S.C. § 121 does not prevent the '086 patent from being used as a reference against the '812 patent for purposes of double patenting:

a) The '947 application was filed December 19, 1985.  The claims as filed contained the following general subject matter:

| | |
|---|---|
| Claims 1-5 | Genus and subgenus tetrahydro-benzthiazoles |
| Claim 6 | 2-Amino-6-dimethylamino-4,5,6,7-tetrahydro-benzthiazole |
| Claim 7 | 2-Amino-6-n-propylamino-4,5,6,7-tetrahydro-benzthiazole |
| Claim 8 | A pharmaceutical composition comprising a tetrahydro-benzthiazole of claim 3 |
| Claim 9 | A method of lowering the blood pressure with a compound of claims 3-7 |
| Claim 10 | A method for lowering the heart rate with a compound of claims 3-7 |
| Claim 11 | A method of treating Parkinsonism with a compound of claims 3-7 |
| Claim 12 | A method of treating Parkinson's disease with a compound of claims 3-7 |
| Claim 13 | A method of treating schizophrenia with a compound of claims 3-7 |
| Claims 14-15 | Methods for making a tetrahydro-benzthiazole of claim 1 |

b) During prosecution of the '947 application, the patent examiner (Examiner Ceperley) imposed the following restriction requirement:

I.     Claims 1-8 (at least part of each), drawn to benzothiazole compounds and a pharmaceutical composition, classified in Class 548, subclasses 161, 163 and 164.

II.     Claims 1-5 and 8-10 (at least part of each), drawn to pyrrolidinyl-substituted benzothiazole compounds and a pharmaceutical composition, classified in Class 514, subclass 367.

III.    Claims 1-4 and 8 (at least part of each), drawn to piperidinyl-substituted benzothiazole compounds and a pharmaceutical composition, classified in Class 546, subclass 192.

IV.     Claims 1-4 and 8 (at least part of each), drawn to hexamethylimino substituted benzothiazole compounds and a pharmaceutical composition, classified in Class 540, subclass 603.

V.      Claims 1-4 and 8, drawn (at least part of each) morpholinyl-substituted benzothiazole compounds and a pharmaceutical composition, classified in Class 544, subclass 135.

VI.     Claim 14, drawn to a method of preparing benzothiazole compounds using a thiourea reactant.

VII.    Claim 15, drawn to a method of preparing benzothiazole compounds using a disulfide reactant classified based on type of compounds formed.

VIII.   Claims 9 and 10, drawn to a method of lowering blood pressure or heart rate classified based on type of compound used.

IX.     Claims 11 and 12, drawn to a method for treating Parkinsonism, classified based on type of compound used.

X.      Claim 13, drawn to a method for treating schizophrenia, classified based on type of compound used.

c)  In the restriction requirement, the examiner used the term "benzothiazole" to refer to "tetrahydro-benzthiazole."

d)  The restriction requirement imposed during prosecution of the '947 application required compound/composition groups and utility (method of use) groups to be prosecuted together.  As part of the restriction requirement, the examiner stated that the applicants needed to "elect either (A) one of the compound groups I-V and one of the utility groups VIII-X (composition and utility to be limited to

6

elected compound type for examination) or (B) one of the process groups VI and VII."

e) During prosecution of the '947 application, Boehringer elected claims consistent with the restriction requirement, *i.e.*, one of the compound/composition groups—Group II, pyrrolidino substituted tetrahydro-benzthiazoles—and one of the utility groups—Group IX, a method of treating Parkinsonism—and those claims issued as the '374 patent on March 15, 1988.

f) The '197 application was filed November 23, 1987.

g) The restriction requirement imposed during prosecution of the '947 application did not carry over to the '197 application.

h) During prosecution of the '197 application, Boehringer re-submitted all of the claims from the parent application in the exact same form, including the subject matter of claims that had already issued in the '374 patent. No preliminary amendment was filed to remove the pyrrolidino limitation.

i) During prosecution of the '197 application, a new patent examiner (Examiner Gerstl) stated that originally-filed claims 6 and 7 (compounds) and 9, 10, and 13 (three types of methods of treatment) were allowable in the same patent. Claims 1-5, 8, 11, and 12, however, were rejected for double patenting over the '374 patent, because those claims still encompassed tetrahydro-benzthiazoles claimed in the '374 patent. As the examiner stated, "Although the conflicting claims are not identical, they are not patentably distinct from each other because they overlap."

j)  While the claims of this '197 application were identical to the ones that were submitted during prosecution of the '947 application, the new examiner examined all of the claims together and neither referred to the prior restriction requirement nor imposed a new one.  Instead, the examiner allowed claims in a pattern inconsistent with the prior restriction requirement.

k)  In response to the examiner's rejection of some claims and allowance of others, Boehringer cancelled all of the pending claims, including the allowed claims, and submitted new claims that did not comply with the restriction requirement imposed during prosecution of the '947 application.

l)  Boehringer acknowledged that the '947 restriction requirement no longer applied when it voluntarily withdrew the allowed claims in the '197 application and re-submitted claims for multiple methods of treatment (*i.e.*, Groups VIII-X (if categorized according to the '947 restriction requirement)) employing compounds from multiple restriction groups (*i.e.*, Groups I-V (if categorized according to the '947 restriction requirement)).

m)  The claims of the '197 application which issued as the '086 patent were not consonant with the restriction requirement imposed during prosecution of the '947 application.  Using the terminology from the restriction requirement imposed during prosecution of the '947 application, the method of treatment claims that issued in the '086 patent include methods of using compounds of Groups I-V of the restriction requirement for the treatment of the disorders of Groups VIII-X of that restriction requirement.  In addition, the applicants did not "elect either (A) one of the compound groups I-V and one of the utility groups VIII-X

(composition and utility to be limited to elected compound type for examination) or (B) one of the process groups VI and VII."

n)  On June 24, 1985, almost six months before Boehringer filed the '947 application, Eli Lilly Corporation filed U.S. Application Serial No. 747,748 ("the Eli Lilly '748 application").  The Eli Lilly '748 application disclosed compounds that overlapped with the compounds disclosed in Boehringer's tetrahydrobenzthiazole patent applications.  Boehringer became aware of the Eli Lilly '748 application no later than February 2, 1987.

o)  Boehringer was concerned that there may be an interference between the Eli Lilly '748 application and its U.S. applications.

p)  During prosecution of the '197 application, Boehringer disclosed the Eli Lilly '748 application and explained to the examiner that it disclosed "a subgenus of the compounds disclosed and originally claimed in the above-captioned application."  Boehringer represented that it contained potentially interfering subject matter with Boehringer's compound claims.

q)  "In view of the particular pertinence of" the Eli Lilly '748 application to the compound/composition claims and given the apparent concern over a potential interference between those claims and the Lilly application, Boehringer stated that it would re-file the compound/composition claims in a separate application to "advance the prosecution of [the '086 patent] and [so] that issues presented by [the Eli Lilly '748 application] will be more easily dealt with."

r)  Scientists at Eli Lilly synthesized compounds within the scope of the claims of the '812 patent in 1983 and 1984.

s)  The '086 patent expired on or about June 27, 2006.

t)  The restriction requirement imposed during prosecution of the '947 application did not carry over to the '671 application.

u)  The claims submitted by the applicants in the '671 application which issued in the '812 patent are from Groups I and III-V (if categorized according to the '947 application's restriction requirement).  The claims also do not include "(A) one of the compound groups I-V and one of the utility groups VIII-X (composition and utility to be limited to elected compound type for examination), or (B) one of the process groups VI and VII" as those categorizations were used during prosecution of the '947 application.

v)  The '671 application was filed for the reasons stated during prosecution of the '086 patent: "[i]n view of the particular pertinence of" the Eli Lilly '748 application to the compound/composition claims, the '671 application was filed to "advance the prosecution of [the '086 patent] and [so] that issues presented by [the Eli Lilly '748 application] will be more easily dealt with."

w)  No terminal disclaimer has been filed for the '812 patent.

16.    Whether Boehringer's proffered evidence of non-obviousness is relevant to Defendants' double patenting defense.

17.    Even if Boehringer's evidence of non-obviousness were relevant to Defendants' double patenting defense, whether Boehringer's proffered evidence of non-obviousness is limited to pramipexole, the S-enantiomer of 2-amino-6-n-propylamino-4,5,6,7-tetrahydrobenzthiazole, and therefore is not commensurate with the scope of claims 3, 4, 5, 7, 9, or 10 of the '812 patent.

18.     Whether each of claims 3, 4, 5, 7, 9, and 10 encompasses more compounds than just S-enantiomer of 2-amino-6-n-propylamino-4,5,6,7-tetrahydrobenzthiazole, and as many as thousands more.

19.     Whether Boehringer has demonstrated that pramipexole possesses unexpected properties as compared to the uses claimed in the '086 patent.

20.     Whether Boehringer has demonstrated that pramipexole actually treats fibromyalgia or depression, or acts as a neuroprotective agent.

21.     Whether Boehringer has demonstrated that pramipexole is a commercial success.

22.     Whether Boehringer has only provided evidence of what it refers to as "commercial significance," not commercial success.

23.     Whether Boehringer has proffered any evidence of nexus between the secondary indicia and the claims of the '812 patent.

24.     Whether Boehringer has demonstrated that pramipexole satisfied any long-felt but unmet need as compared to the uses claimed in the '086 patent.

25.     Whether Boehringer has demonstrated copying.

26.     Whether the inactive ingredients in MIRAPEX® are mannitol, corn starch, colloidal silicon dioxide, povidone, and magnesium stearate.

27.     Whether the inactive ingredients in Mylan's product are colloidal silicon dioxide, crospovidone, hydroxpropyl cellulose, magnesium stearate, mannitol, pregelatinized starch, and sodium citrate.

28.     Whether the inactive ingredients in Barr's product are corn starch, hydrogenated vegetable oil, mannitol, povidone, and pregelatinized corn starch.

26.     Whether Boehringer has proffered any evidence of failure of others.

11

27.    Whether Boehringer has proffered any evidence that treatment of restless legs syndrome, depression, or fibromyalgia or neuroprotective ability, if proven, constitute "materially different" methods of use from the methods claimed in the '086 patent.

28.    Whether Boehringer has proffered any evidence of other objective indicia of non-obviousness.

## III.    PRIOR INVENTION UNDER 35 U.S.C. § 102(g)

1.    Whether claims 3, 4, and 5 of the '812 patent are invalid under 35 U.S.C. § 102(g)(2) based on the prior invention of scientists at Eli Lilly.

2.    Whether, before the relevant priority dates for claims 3, 4, and 5 of the '812 patent, scientists at Eli Lilly invented compounds within the scope of those claims.

3.    Whether the priority date of claims 3 and 4 of the '812 patent is December 19, 1985.

4.    Whether Boehringer has met its burden of creating a genuine issue of material fact as to whether the Eli Lilly scientists abandoned their prior invention before the priority dates of claims 3, 4, and 5 of the '812 patent.

5.    Whether the following additional facts support Defendants' Section 102(g) defense:

      a.    During the 1983-84 timeframe, Bennett Laguzza was a scientist at Eli Lilly working in the area of central nervous system diseases, including dopamine agonists.  Prior to December 22, 1984, he synthesized 2-amino-6-di-n-propylamino-4,5,6,7-tetrahydrobenzothiazole dihydrobromide and submitted for testing to scientists working in the ergoline group.  The compound was shown to be active in those experiments, which were known for evaluating receptor agonist activity.

12

b. Prior to December 22, 1984, William Turner, a scientist at Eli Lilly, prepared 2-amino-6-dimethylamino-4,5,6,7-tetrahydrobenzothiazole dihydrobromide and 2-methylamino-6-dimethylamino-4,5,6,7-tetrahydrobenzothiazole dihydrobromide in connection with work being performed by the ergoline group.  2-amino-6-dimethylamino-4,5,6,7-tetrahydrobenzothiazole was subsequently submitted for biological testing and shown to be active.

c. On June 24, 1985, the Eli Lilly '748 application was filed listing Bennett Laguzza and William Turner as inventors.

d. The '748 patent discloses and claims 2-amino-6-di-n-propylamino-4,5,6,7-tetrahydrobenzothiazole dihydrobromide and 2-amino-6-dimethylamino-4,5,6,7-tetrahydrobenzothiazole dihydrobromide, and discloses test data for each of those compounds regarding their utility as receptor agonists.

e. In 1986, foreign counterpart applications to the '748 application were filed in South Africa, Europe, Australia, and Japan.

f. The '748 application was not abandoned until approximately February 17, 1987, after the priority dates of claims 3, 4, and 5 of the '812 patent.

g. The definition of $R_1$ in the '812 patent specification is as follows:

$R_1$ represents a hydrogen atom, an alkyl group having 1 to 6 carbon atoms, an alkenyl or alkynyl group each having 3 to 6 carbon atoms, an alkanoyl group having 1 to 6 carbon atoms, a phenyl alkyl or phenyl alkanoyl group having 1 to 3 carbon atoms in the alkyl part, whilst the above mentioned phenyl nuclei may be substituted by 1 or 2 halogen atoms.

h.  A compound where a phenyl group is substituted by one or more halogen atoms can be referred to as a "halogenated phenyl," "halogenated phenyl group," or "halogenated phenyl moiety."

i.  In addition to the above-referenced definition of $R_1$ for General Formula I, there are several references in the '812 patent to compounds where the $R_1$ substituent contains within it a halogenated phenyl group.

j.  The definition of $R_1$ in General Formula I of the '812 patent, however, is broader than the definition of $R_1$ set forth in the two German applications to which the '812 patent allegedly claims priority.  General Formula I of the '075 and '947 German applications reads:

$R_1$ represents a hydrogen atom, an alkyl group having 1 to 6 carbon atoms, an alkenyl or alkynyl group each having 3 to 6 carbon atoms, an alkanoyl group having 1 to 6 carbon atoms, a phenyl alkyl or phenyl alkanoyl group having 1 to 3 carbon atoms in the alkyl part.

k.  There is nothing in either of the German applications that discloses implicitly or explicitly any starting material, intermediate, or final product in which $R_1$ contains or optionally contains a halogenated phenyl group.

l.  Claims 3 and 4 of the '812 patent encompass compounds with a halogenated phenyl group at the $R_1$ position.

m.  Synthetic methods (d) or (e) in the German applications do not disclose either compounds, or the synthesis of compounds, with a halogenated phenyl group at the $R_1$ position.

## IV.  **RELIEF**

1.  A judgment should be entered declaring that claims 3, 4, 5, 7, 9, and 10 of the '812 patent are invalid.

14

2.    A judgment should be entered declaring that the manufacture, use, offer to sell, sale and/or importation into the United States of Barr's product does not infringe claims 5, 9 and 10 of the '812 patent.

3.    A judgment should be entered declaring that the manufacture, use, offer to sell, sale and/or importation into the United States of Mylan's product does not infringe any valid claim of the '812 patent.

4.    An order should be entered that Boehringer has no good-faith basis to believe that the '812 patent is not invalid.

5.    An order should be entered that this is an "exceptional case" within the meaning of 35 U.S.C. § 285 warranting an award of reasonable attorney's fees to Barr and Mylan.

6.    An order should be entered awarding costs to Barr and Mylan.

**Exhibit 4**

**Boehringer's Statement Of Issues Of Law That Remain To Be Litigated**

Boehringer reserves the right to modify, supplement, or change this Statement Of Issues Of Law That Remain To Be Litigated to the extent necessary to respond to any issues that Barr or Mylan raise in their Statement Of Issues Of Law That Remain To Be Litigated.

If any statement in Boehringer's Statement Of Issues of Law That Remain To Be Litigated should be considered an issue of fact, then such statement shall be considered to be part of Boehringer's Statement of Issues of Fact That Remain To Be Litigated.

## I.    INFRINGEMENT

1.    Boehringer has the burden of proving infringement of one or more of claims 5, 7, 9 and 10 of the '812 patent by Barr and Mylan by a preponderance of the evidence.  35 U.S.C. § 271(e)(2); *see e.g.*, *Warner-Lambert Co. v. Teva Pharmaceuticals USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005).

## II.    VALIDITY

Obviousness Type Double Patenting

1.    Defendants Barr and Mylan bear the burden of proving invalidity based on obviousness type double patenting by clear and convincing evidence.  *See, e.g.*, *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569 (Fed. Cir. 1991); *Pfizer Inc. v. Ranbaxy Laboratories, Ltd.*, 405 F. Supp.2d 495 (D. Del. 2005).

2.    The "obvious-type double patenting analysis involves two steps: (1) the court must construe the claim in the earlier patent and the later patent and determine the differences between the two patents, and (2) the court must determine whether the differences in the subject

matter between the two claims render the claims patentably distinct." *See, e.g.*, *Pfizer*, *supra* (citing *Eli Lilly*, 251 F.3d at 968).

3.    "In assessing the differences between the claims, the Court may not treat the earlier claim as prior art.   Rather, specific attention must be given to what is claimed in the earlier patent." *Id.* (citing *General Foods Corp. v. Studiengesellschaft Kohle,* 972 F.2d 1272, 1278, 1280 (Fed. Cir. 1992)).  A claim is invalid for obviousness-type double patenting only "if the later claim is anticipated by or obvious in light of the earlier claim" and thereby "not patentably distinct from the earlier claim." *Id.* (citing *Eli Lilly,* 251 F.3d at 968).

4.    For purposes of the obviousness-type double patenting inquiry, it is improper simply to compare chemical names and formulas identified in the claims of one patent with those recited in a later patent's claims. *See Astellas Pharma, Inc. v. Ranbaxy Inc.*,  2007 WL 576341 (D. N.J. 2007); *General Foods Corp. v. Studiengesellschaft Kohle,* 972 F.2d 1272 (Fed. Cir. 1992).

5.    Given that neither Defendants nor any of their experts have identified the differences between claims 5, 7, 9 and 10 of the '812 patent and the claims of the '086 patent, nor offered any analysis as to how the '812 patent claims are obvious in light of those myriad differences, the Defendants failed to establish a prima facie case of obviousness-type double patenting. *See, e.g.*, *Symbol Techs., Inc.*, *supra*; *Pfizer Inc.*, *supra*; FED. R. CIV. P. 37(c)(1).

6.    35 U.S.C. § 121 precludes the use of the '086 patent as a reference against claims 5, 7, 9 and 10 of the '812 patent.  35 U.S.C. § 121; *Union Carbide Corp. v. Dow Chemical Co.*, 619 F. Supp. 1036 (D. Del. 1985); *Lerner v. Ladd*, 216 F. Supp. 81 (D. D.C. 1962); *Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, 98 F.3d 1563 (Fed. Cir. 1996); *Gerber Garment Technology, Inc. v. Lectra Systems, Inc.*, 916 F.2d 683 (Fed. Cir. 1990).

7.    The compounds covered by claims 5, 7, 9 and 10 of the '812 patent can be used in materially different processes than those claimed in the '086 patent and therefore, claims 5, 7, 9 and 10 of the '812 patent are patentably distinct from the '086 patent claims.  *See* M.P.E.P. § 806.05(h); *Takeda Pharmaceutical Co., Ltd. v. Dudas*, 84 U.S.P.Q.2d 1365, 1376 (D.D.C. 2007) (and authorities cited therein).

8.    In deciding whether patent claims are invalid for obviousness-type double patenting, courts may also consider secondary considerations of non-obviousness, including "commercial success, long felt but unsolved needs, failure of others, etc."  *See, e.g.*, *Tidewater Patent Development Co. v. Kitchen*, 152 U.S.P.Q. 36 (4th Cir. 1966); *American Cyanamid Co. v. U.S. Surgical Corp.*, 30 U.S.P.Q.2d 1561 (D. Conn. 1992); *Mirafi, Inc. v. Murphy*, 14 U.S.P.Q.2d 1337 (W.D.N.C. 1989).

9.    The secondary considerations of non-obviousness related to pramipexole's uses as a treatment for RLS, depression, and fibromyalgia (among other conditions) – including the commercial success, long felt but unsolved needs, and failure of others – weigh in favor of finding that claims 5, 7, 9 and 10 of the '812 patent are not invalid for obviousness-type double patenting.

10.    Any obviousness-type double patenting issue can be cured by the filing of a terminal disclaimer pursuant to 35 U.S.C. § 253.  *See, e.g.*, 37 CFR § 1.321(C)(3); *Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc.*, 82 U.S.P.Q.2d 1203 (Fed. Cir. 2007); *Ortho Pharmaceutical Crop v. Smith*, 959 F.2d 936 (Fed. Cir. 1992); *In re Longi*, 759 F.2d 887 (Fed. Cir. 1985); *In re Robeson*, 331 F.2d 610 (C.C.P.A. 1964); *Syngenta Seeds, Inc. v. Monsanto Co.*, 2004 WL 2790499 (D. Del. 2004); *King Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA*, 78 U.S.P.Q.2d 1237 (D. N.J. 2006); *Bott v. Four Star Corp.*, 675 F. Supp. 1069 (E.D. Mich.

1987); *Technicon Instruments Corp. v. Coleman Instruments, Corp.*, 385 F.2d 391 (N.D. Ill. 1966).

Prior Invention Under § 102(g)

1.    The Defendants bear the burden of proving invalidity under 35 U.S.C. § 102(g) by clear and convincing evidence. *E.g.*, *Z4 Technologies, Inc. v. Microsoft Corp.*, -- F.3d --, 2007 WL 3407175 (Fed. Cir. 2007).

2.    In order to reduce to practice a chemical compound for purposes of prior invention 35 U.S.C. § 102(g), the alleged prior inventor must have synthesized a compound of the invention, tested the compound for utility, and appreciated or recognized that such tests were successful. *E.g.*, *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359 (Fed. Cir. 2001); *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588 (Fed. Cir. 1997); *see also Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572 (Fed. Cir. 1996); *Hahn v. Wong*, 892 F.2d 1028 (Fed. Cir. 1989).

3.    The Defendants must proffer evidence that the alleged prior inventors (Messrs. Laguzza and Turner) recognized or appreciated that any compound falling within the scope of claim 5 had utility prior to the effective filing date for that claim. *See, e.g.,* FED. R. CIV. P. 37(c)(1).

4.    The Defendants must show the named inventors on the Lilly application did not abandon, suppress, or conceal any alleged invention covered by claim 5 of the '812 patent.

## III.    RELIEF

1.    Boehringer is entitled, under 35 U.S.C. § 271(e)(4)(A), to an Order that the effective date of any approval of Barr's proposed pramipexole dihydrochloride tablets that are the subject of ANDA No. 77-724 be a date not earlier than the expiration date of the '812 patent or any later date of exclusivity to which Boehringer is or becomes entitled.

2.      Boehringer is entitled, under 35 U.S.C. § 271(e)(4)(B), to a permanent injunction, restraining and enjoining Barr from engaging in the commercial manufacture, use, offer for sale, or sale of its proposed pramipexole dihydrochloride tablets within the United States, or importation into the United States.  *See Abbott Labs. v. Torpharm, Inc.*, 503 F.3d 1372 (Fed. Cir. 2007); *Impax Laboratories, Inc. v. Aventis Pharmaceuticals, Inc.*, 235 F. Supp. 2d 390 (D. Del. 2002).

3.      Boehringer is entitled, under 35 U.S.C. § 271(e)(4)(A), to an Order that the effective date of any approval of Mylan's proposed pramipexole dihydrochloride tablets that are the subject of ANDA No. 77-874 be a date not earlier than the expiration date of the '812 patent or any later date of exclusivity to which Boehringer is or becomes entitled.

4.      Boehringer is entitled, under 35 U.S.C. § 271(e)(4)(B), to a permanent injunction, restraining and enjoining Mylan from engaging in the commercial manufacture, use, offer for sale, or sale of its proposed pramipexole dihydrochloride tablets within the United States, or importation into the United States.  *See Abbott Labs.*, *supra*; *Impax Labs.*, *supra.*

## IV.    ATTORNEYS' FEES

1.  This case is exceptional such that Boehringer is entitled to its attorneys' fees.  *See, e.g.*, *Yamanouchi Pharmaceutical Co., Ltd. v. Danbury Pharmacal, Inc*., 231 F.3d 339 (Fed. Cir. 2000).

**Exhibit 5**

**Defendants' Statement Of Issues Of Law That Remain To Be Litigated**

To the extent that Defendants' Statement of Issues of Fact contains issues of law, those issues are incorporated herein by reference. Should the Court determine that any issue identified in this list as an issue of law is more properly considered an issue of fact, Defendants incorporate such issues by reference into their Statement of Issues of Fact.

Defendants' identification of the issues of law that remain to be litigated is based in part on their current understanding of the arguments Boehringer is likely to make in attempting to respond to Defendants' non-infringement and invalidity contentions, based upon the pleadings (including Boehringer's draft pre-trial order sections provided to Defendants on January 2, 2008) and discovery in the action to date. To the extent Boehringer attempts to introduce different or additional legal arguments, Defendants reserve the right to object to and/or contest those legal arguments, and to present any and all rebuttal evidence or legal principles in response to those arguments. Defendants also reserve the right to modify, supplement, or amend this Statement of Issues of Law, including to respond to any issues, exhibits, or witnesses presented by Boehringer.

## I.    CLAIM CONSTRUCTION

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). Unless otherwise specified, the Court should construe a claim term according to "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*). "Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court

looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'  Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'"  *Id.* at 1314 (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys, Inc*., 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

In light of these legal principles, Defendants will demonstrate that the claim term "2-Amino-6-n-propylamino-4,5,6,7-tetrahydrobenzthiazole" should be construed as "(+)2-Amino-6-n-propylamino-4,5,6,7-tetrahydrobenzthiazole; (-)2-Amino-6-n-propylamino-4,5,6,7-tetrahydrobenzthiazole; or any mixture thereof."

## II.    THE PERSON OF ORDINARY SKILL IN THE ART

"The hypothetical person of ordinary skill in the art represents an ideal."  *In re Metz*, 173 F.3d 433, 1998 WL 670185, at *4 (Fed. Cir. Sept. 22, 1998); *see also Endress + Hauser, Inc. v. Hawk Measurement Sys. Prop., Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997) (person of ordinary skill is a "theoretical construct" that "is not descriptive of some particular individual").  As a hypothetical person, the person of ordinary skill can possess the skills and experience of multiple individuals.  *See, e.g., Afros S.p.A. v. Krauss-Maffei Corp.*, 671 F. Supp. 1402, 1418 (D. Del. 1987) (expert testified that "the hypothetical person of ordinary skill would be a composite of a team"), *aff'd*, 848 F.2d 1244 (Fed. Cir. 1988); *Merck & Co. v. Teva Pharms. USA, Inc.*, 228 F. Supp. 2d 480, 501 (D. Del. 2002) (person of ordinary skill would have knowledge and experience from various disciplines), *aff'd*, 347 F.3d 1367 (Fed. Cir. 2003).

## III.    INFRINGEMENT

"The patentee has the burden of proving infringement by a preponderance of the evidence."  *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004).  Literal

infringement occurs when "the accused device falls within the scope of the asserted claims as properly interpreted." *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 547 (Fed. Cir. 1994).

The Federal Circuit has explained that arguments against infringement may be "indistinguishably woven with the factual underpinnings of the validity and enforceability determinations." *Witco Chem. Corp. v. Peachtree Doors Inc.*, 787 F.2d 1545, 1549 (Fed. Cir. 1986). "Having construed the claims one way for determining their validity, it is axiomatic that the claims must be construed in the same way for infringement." *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1279 (Fed. Cir. 1988).

## IV.    DOUBLE PATENTING

### A.    Double Patenting Generally.

The law recognizes two bases for invalidation of a claim for double patenting. The first, "statutory double patenting" (often called "same invention double patenting") is based on 35 U.S.C. § 101 and provides that a later-issued patent cannot claim the identical subject matter claimed in an earlier-issued patent with the same assignee. *In re Longi*, 759 F.2d 887, 892-93 (Fed. Cir. 1985) ("Whoever invents or discovers any new and useful process . . . may obtain *a* patent therefor" (emphasis in original) (*quoting* 35 U.S.C. § 101)); *In re Vogel*, 422 F.2d 438, 441 (C.C.P.A. 1970). The second basis for double patenting, referred to generically as "non-statutory" or "obviousness-type" double patenting, is a judicially created doctrine which applies when "claims in a later patent . . . are not patentably distinct from claims in a commonly owned earlier patent." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 967 (Fed. Cir. 2001); *Longi*, 759 F.2d at 892; *see also In re Metoprolol Succinate Patent Litig.*, 494 F.3d 1011, 1016 (Fed. Cir. 2007) ("non-statutory" double patenting is also referred to as "obviousness-type" double patenting).

### B.    Non-Statutory Double Patenting

Generally, a non-statutory double patenting analysis entails two steps.  "First, as a matter of law, a court construes the claim in the earlier patent and the claim in the later patent and determines the differences.  Second, the court determines whether the differences in subject matter between the two claims render the claims patentably distinct."  *Eli Lilly*, 251 F.3d at 968. "A later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim."  *Id.*; *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, 405 F.Supp. 2d 495, 513 (D. Del. 2005); *see also General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1279 (Fed. Cir. 1992).

### 1.    Anticipation

Non-statutory double patenting can be based on anticipation.  *See, e.g., Eli Lilly*, 251 F.3d at 968; *In re Goodman*, 11 F.3d 1046, 1053 (Fed. Cir.1993).  A later claim is anticipated when a single prior art reference—or, for purposes of double patenting, an earlier, commonly-owned patent—discloses either expressly or inherently each limitation of a claim.  *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003); *Eli Lilly*, 251 F.3d at 970.  When one or more of the limitations is inherently disclosed, it is referred to as "inherent anticipation," which can form the basis for a holding of double patenting.  *See Eli Lilly*, 251 F.3d at 970 (finding double patenting based on inherent anticipation).  "A reference includes an inherent characteristic if that characteristic is the 'natural result' flowing from the reference's explicitly explicated limitations."  *Id.* at 970.  The production or formation of a compound, even in trace amounts, is sufficient to invalidate a compound claim for anticipation.  *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1346 (Fed. Cir. 2005).

A subsequent claim directed to a genus is anticipated by an earlier claim directed to a species within the genus, including in the double patenting context. *Eli Lilly*, 251 F.3d at 971; *Goodman*, 11 F.3d at 1053.

"That which infringes, if later, would anticipate, if earlier." *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889); *Knapp v. Morss*, 150 U.S. 221, 228 (1893); *see also SmithKline*, 403 F.3d at 1341; *Schering*, 339 F.3d at 1379.

The Federal Circuit has held that there is double patenting where a first patent claims compounds and a later patent claims methods of using those same compounds. *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373 (Fed. Cir. 2003). In *Geneva*, the court explained that the later patent was invalid for double patenting because the compound and the method claims constituted a single invention. *Id.* at 1385-86. *Geneva* also affirmed a decision of the district court that a later patent to a compound is not patentably distinct from an earlier method claim that recited use of the same compound. *Id.* at 1374-77; *see also Geneva Pharms., Inc. v. Glaxosmithkline PLC*, No. 2:01cv391 (consolidated), slip op. (E.D. Va. Apr. 22, 2002) (*Geneva II*) (attached as Exhibit 5A).

A claim to a compound and a claim to a method of using that compound which is disclosed in the patent as a utility are not patentably distinct from one another as a matter of law. *Geneva*, 349 F.3d at 1385-86 (Fed. Cir. 2003); *In re Christmann*, 128 F.2d 596, 599 (C.C.P.A. 1942); *In re Byck*, 48 F.2d 665, 666-67 (C.C.P.A. 1931). "It would shock one's sense of justice if an inventor could receive a patent upon a composition of matter, setting out at length in the specification the useful purposes of such composition, manufacture and sell it to the public, and then prevent the public from making any beneficial use of such product by

securing patents upon each of the uses to which it may be adapted." *Byck*, 48 F.2d at 666-67; *Christmann*, 128 F.2d at 600; *see also Geneva*, 349 F.3d at 1386.

Objective indicia of nonobviousness are legally irrelevant to double patenting based on anticipation. *See, e.g., In re Paulsen*, 30 F.3d 1475, 1482 n.11 (Fed. Cir. 1994) ("[E]vidence of nonobviousness is irrelevant for patentability purposes when an invention is anticipated under section 102."). *Geneva* and its predecessor decisions did not consider objective indicia of non-obviousness relevant to their analyses. *Geneva*, 349 F.3d 1373; *Christmann*, 128 F.2d 596; *Byck*, 48 F.2d 665; *see also Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 364 F. Supp. 2d 820, 911 (S.D. Ind. 2005) (evidence of nonobviousness was irrelevant in *Geneva* because the case "involv[ed] nonstatutory double patenting based upon anticipation under § 102 rather than obviousness under § 103").

A later, commonly owned patent to a compound is invalid for double patenting where the earlier claims both disclose and claim a method of using a compound in its entirety. *See Metoprolol*, 494 F.3d at 1019. *General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272 (Fed. Cir. 1992) is not inconsistent with this principle because it involved two multi-step processes in which only a part of each of the earlier- and later-issued claims—a single step from each process—overlapped. *Id.* at 1276-78; *see also Metoprolol*, 494 F.3d at 1018-19.

## 2.    Obviousness

An alternative basis for finding non-statutory double patenting could be obviousness. An earlier patent renders obvious a later, commonly owned patent where the second patent is "'the product not of innovation but of ordinary skill and common sense.'" *Metoprolol*, 494 F.3d at 1017 n.2 (finding double patenting when elements were omitted from the composition of the later patent but disclosed in the earlier patent (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. ___, 127 S. Ct. 1727, 1742 (2007)). "Claims which are broad enough to read on obvious subject

matter are unpatentable even though they also read on nonobvious subject matter." *In re Lintner*, 458 F.2d 1013, 1015 (C.C.P.A. 1972).

The patentee bears the burden of production with respect to objective indicia of nonobviousness. *See Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 293 (Fed. Cir. 1985). Evidence of nonobviousness, including unexpected properties, long-felt but unmet need, and commercial success, must be commensurate with the scope of the claim whose validity it is offered to support. *See, e.g., In re Peterson*, 315 F.3d 1325, 1330-31 (Fed. Cir. 2003); *In re Peterson*, 315 F.3d 1325, 1330-31 (Fed. Cir. 2003); *In re Greenfield*, 571 F.2d 1185, 1189 (C.C.P.A. 1978).

Evidence of commercial success is not relevant in a double patenting case where a prior patent acts as a blocking patent. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1376-77 (Fed. Cir. 2005). To establish commercial success, the patentee must proffer evidence of market share, growth in market share, and replacement of prior sales by others. *Kan. Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1150 (Fed. Cir. 1983); *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) ("evidence related solely to the number of units sold provides a very weak showing of commercial success, if any"). The patentee also must demonstrate a nexus between the claimed sales and the merits of the invention, and the nexus must be coextensive with the scope of the claims. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000); *Zenith Goldline*, 364 F. Supp. 2d at 907.

A showing of copying is only "equivocal evidence of non-obviousness." *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1380 (Fed. Cir. 2000); *see also Eli Lilly & Co. v. Zenith Goldline Pharms.*, 2001 U.S. Dist. LEXIS 18361 (S.D. Ind. Oct. 12, 2001) (evidence of copying

in the context of the Hatch Waxman Act adds "relatively little weight" to any proof of non-obviousness).

### C.    Restriction Requirements and 35 U.S.C. § 121

A restriction requirement does not automatically carry over to subsequent applications. *Bristol-Myers Squibb Co. v. Pharmachemie B.V.* ("*BMS*"), 361 F.3d 1343, 1348-49 & n.2 (Fed. Cir. 2004); *In re Ziegler,* 443 F.2d 1211, 1215 (C.C.P.A. 1971).  In *BMS*, the Federal Circuit found that there was no legal basis to conclude that a restriction requirement carries over to a subsequent application.  361 F.3d at 1348 n.2 ("patentee had "not cited any statutory or regulatory basis for concluding that the [earlier] restriction requirement was automatically applicable to" subsequent applications).

An examiner, through his actions, can "ma[k]e clear that the previous restriction requirements did not carry over to" a subsequent application because he can "re-examine an application and withdraw the restriction requirement."  *Ziegler,* 443 F.2d at 1215 ("We see no good reason why the Patent Office may not, within the bounds of due process, re-examine an application and withdraw the restriction requirement if it is found to be erroneous or unwarranted.").  Where the original claims are presented for re-examination in a subsequent application, and the examiner fails to make reference to a prior restriction requirement but instead allows a claim pattern that is inconsistent with the earlier restriction requirement, it is clear that the earlier restriction requirement did not carry over to the subsequent application. *See BMS*, 361 F.3d at 1348-49.

The third sentence of Title 35, Section 121 provides:

> A patent issuing on an application with respect to which a requirement for restriction under this section has been made, or on an application filed as a result of such a requirement, shall not be used as a reference either in the Patent and Trademark Office or in the courts against a divisional application or against the original

application or any patent issued on either of them, if the divisional
application is filed before the issuance of the patent on the other
application.

35 U.S.C. § 121.  The third sentence of Section 121 only applies where a restriction requirement

has actually been made and is clearly documented.  *Geneva*, 349 F.3d at 1382; *In re Russell*,

239 F.2d 387, 389 (C.C.P.A. 1956).   The patentee has the burden of showing that the third

sentence of Section 121 applies.  *See Geneva*, 349 F.3d at 1382; *Regents of Univ. of Cal. v.

Dakocytomation Cal., Inc.*, 2006 WL 1343950, at *2 (N. D. Cal. May 17, 2006).

The mere fact that an application is denominated a divisional does not mean that it is

entitled to the benefit of Section 121.  *See, e.g., BMS*, at 361 F.3d 1347-48.  A patentee must

demonstrate at least three things to obtain the benefit of the third sentence of Section 121.  First,

the patentee must show that the later-filed application was filed "as a result of a restriction

requirement."  *BMS*, 361 F.3d at 1347-48; *see also In re Zickendraht*, 319 F.2d 225, 232

(C.C.P.A. 1963) (Rich, J., concurring) (applicant must be "forced to make [the claims of the

later patent] in a separate application [from the earlier patent] by a requirement of restriction").

Second, the subsequent application must be "consonant with," said restriction requirement.

*BMS*, 361 F.3d at 1347-48; *see also Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1579

(Fed. Cir. 1991) ("Consonance requires that the line of demarcation between the 'independent

and distinct inventions' that prompted the restriction requirement be maintained  . . . .  Where

that line is crossed the prohibition of the third sentence of Section 121 does not apply.").

Finally, the subsequent application must be filed before the issuance of the patent from the

earlier application during which the restriction requirement was made.  35 U.S.C. § 121; *see

also* P.J. Federico, *Commentary on the New Patent Act*, at 35 (1954), *reprinted in* 75 J. Pat. &

Trademark Off. Soc'y 161, 196 (1993) (plain language of Section 121 requires that "if two or

more divisional applications are filed as a result of a multiple requirement for restriction, they each must be filed before the original application is patented in order to obtain the benefit of this provision"); *Symbol Techs., Inc. v. Lemelson Med., Inc.*, 277 F.3d 1361, 1366 (Fed. Cir. 2002) ("Federico's commentary is an invaluable insight into the intentions of the drafters of the [1952 Patent] Act.").

Section 121 exists to accommodate administrative convenience and because applicants do not have the option of appealing a restriction requirement. *See Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1568 (Fed. Cir. 1996) ("The purpose of § 121 is to accommodate administrative convenience and to protect the patentee from technical flaws based on this unappealable examination practice.").

### D.    Other Principles of Double Patenting

The policy rationale underlying the doctrine of double patenting is that the "the world [should] be free to use" the invention claimed in the earlier patent once it expires. *Symbol Techs.*, 935 F.2d at 1581; *see also Longi*, 759 F.2d at 894. The later patent should not "effectively extend the life of the" earlier patent. *Symbol Techs.*, 935 F.2d at 1580-81.

In a double patenting analysis, the specification of a patent may be used to construe a claim term. *See, e.g., In re Vogel*, 422 F.2d at 441. The specification also is available to understand the scope of the patentable invention, which necessitates disclosing a utility. *See Geneva*, 349 F.3d at 1385.

A patentee may be able to fix a non-statutory double patenting problem by filing a terminal disclaimer that restricts the term of the later patent to the term of the original patent. *Geneva*, 349 F.3d at 1378. However, one cannot terminally disclaim to an expired patent. *In re Lonardo*, 119 F.3d 960, 965 (Fed. Cir. 1997); *see also Eli Lilly*, 251 F.3d at 967 n.5.

The Manual of Patent Examining Procedure ("MPEP") does not bind the Federal Circuit and does not have the force of law. *See, e.g.*, *Racing Strollers, Inc. v. TRI Indus., Inc.*, 878 F.2d 1418, 1422 (Fed. Cir. 1989); Foreward, MPEP.

The vacated decision in *Astellas Pharma, Inc. v. Ranbaxy, Inc.*, 2007 WL 576341 (D.N.J. Feb. 21, 2007) did not involve double patenting of compound claims over claims to methods of using the same compounds, and distinguished such a situation from the factual posture presented in that case. 2007 WL 576341, at *6; *see also Takeda Pharm. Co. Ltd. v. Dudas*, 511 F. Supp. 2d 81, 96-97 (D.D.C. 2007) (discussing the relationship between earlier-issued compound claims and later-issued process claims for making those compounds, not compounds and methods of using them); Docket for Civil Action No. 05-CV-2563 (MLC) (D.N.J), *Astellas Pharma, Inc. & Boehringer Ingelheim Pharms. Inc. v. Ranbaxy Inc., et al.*, Entry Nos. 50-51.

## V.    PRIOR INVENTION

### A.    35 U.S.C. § 102(g)(2)

Section 102(g)(2) of Title 35 provides:

> A person shall be entitled to a patent unless –
>
> (g)(2) before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it.  In determining priority of invention under this subsection, there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

35 U.S.C. § 102(g)(2).  "[P]riority of invention goes to the first party to reduce an invention to practice unless the other party can show that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing that invention to practice."  *Monsanto Co. v.*

*Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1362 (Fed. Cir. 2001). "Conception of a chemical substance requires knowledge of both the specific chemical structure of the compound and an operative method of making it." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997).

The Federal Circuit has interpreted Section 102(g) "to permit qualifying art to invalidate a patent claim even if the same art may not qualify as prior art under other subsections of § 102." *Thomson, S.A. v. Quixote Corp.*, 166 F.3d 1172, 1174 (Fed. Cir. 1999). In the 102(g)(2) context, "corroboration is required only when the testifying inventor is asserting a claim of derivation or priority of his or her invention and is a named party, an employee of or assignor to a named party, or otherwise is in a position where he or she stands to directly and substantially gain by his or her invention being found to have priority over the patent claims at issue." *Id. at* 1176.

A broader genus claim is anticipated under 102(g)(2) by a prior invention of one or more species within that genus. *See, e.g.*, *In re Slayter,* 276 F.2d 408, 411 (C.C.P.A. 1962); *In re Gosteli*, 872 F.2d 1008, 1010 (Fed. Cir. 1989),

### B.    Abandonment

"If prior invention has been established, the burden shifts to the patentee to produce sufficient evidence to create a genuine issue of material fact as to whether the prior inventor abandoned, suppressed, or concealed the invention." *Flex-Rest LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358 (Fed. Cir. 2006).

"[A]bandonment [of an application] is irrelevant unless it occurred 'before the [subsequent] applicant's invention.' The use of the pluperfect tense—'had not abandoned'— plainly refers to an abandonment which occurred 'before the applicant's invention.'" *Allen v. W.H. Brady*, 508 F.2d 64 (7th Cir. 1974) (Stevens, J.); *see also Del Mar Eng'g Labs. v. United States*, 524 F.2d 1178, 1184 (Ct. Cl. 1975) ("abandonment of work on the [invention] in 1957

does not remove it as a prior invention against work in April 1956"); *Sys. Mgmt. Arts Inc. v. Avesta Tech. Inc.*, 54 U.S.P.Q.2d 1239, 1254 (S.D.N.Y. 2000) ("abandonment by the prior inventor is immaterial unless it occurred prior to the challenging party's own date of invention"); *Oak Indus., Inc. v. Zenith Elecs. Corp.*, 726 F. Supp. 1525, 1533 (N.D. Ill. 1989) ("to preclude a 102(g) defense, abandonment must occur prior to the time of the second invention"); *Leesona Corp. v. Varta Batteries, Inc.*, 522 F. Supp. 1304, 1308 (S.D.N.Y. 1981) ("After an unsuccessful prosecution, Oswin abandoned his application. This abandonment, however, was well after the final Elmore and Tanner amendments [and, therefore] irrelevant . . .").

### C.    Date of Invention/Priority Date

For work performed outside the United States, a patentee can rely on the filing date of a foreign application to establish a priority date. *See* 35 U.S.C. §§ 104, 119; *Gosteli*, 872 F.2d at 1010. "Under section 119, the claims set forth in a United States application are entitled to the benefit of a foreign priority date if the corresponding foreign application supports the claims in the manner required by section 112, ¶ 1." *Gosteli*, 872 F.2d at 1010. Section 112 requires that the specification "describe the invention sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention at the time of the application, i.e., that the patentee invented what is claimed." *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005). Mere enablement—providing a method to make a compound—does not support a claim to priority of the compound itself. *See, e.g., Univ. of Rochester v. G. D. Searle*, 358 F.3d 916, 921 (Fed. Cir. 2004) ("an invention may be enabled even though it has not been described"); *see also LizardTech*, 424 F.3d at 1344 (treating enablement and written description as separate requirements under 35 U.S.C. § 112, ¶ 1). In *In re Ahlbrecht*, 435 F.2d 908 (C.C.P.A. 1971), the Court of Customs of Patent Appeals did not accord the benefit of an earlier filing date where parent application described the invention with a general formula and

13

the subsequent claim broadened the formula from having between 3-12 methylene groups to having between 2-12 methylene groups.  *Id.* at 908-09.  The Court held that even though one method in the parent application "may very well be sufficient to teach one skilled in the art how to make the claimed esters" the new subject matter was still not described.  *Id.* at 911-12.

## VI.   **RELIEF**

A judgment should be entered declaring that claims 3, 4, 5, 7, 9, and 10 of the '812 patent are invalid.

A judgment should be entered declaring that the manufacture, use, offer to sell, sale and/or importation into the United States of Barr's product does not infringe claims 5, 9, and 10 of the '812 patent.

A judgment should be entered declaring that the manufacture, use, offer to sell, sale and/or importation into the United States of Mylan's product does not infringe any valid claim of the '812 patent.

An order should be entered that Boehringer has no good-faith basis to believe that the '812 patent is not invalid.

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "[L]itigation misconduct such as vexatious or unjustified litigation or frivolous filings" can create an exceptional case for purposes of awarding fees.  *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1350 (Fed. Cir. 2004).  An order should be entered that this is an "exceptional case" within the meaning of 35 U.S.C. § 285 warranting an award of reasonable attorney's fees to Barr and Mylan.

"[C]osts—other than attorneys' fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1); *see also* D. Del. L.R. 54(a)(1).  An order should be entered awarding costs to Barr and Mylan.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

GENEVA PHARMACEUTICALS, INC., ET. AL.,

    PLAINTIFF,



FILED

APR 2 2 2002

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

v.

    CIVIL ACTION NO: 2:01CV391
    CIVIL ACTION NO: 2:01CV677
    AND
    CIVIL ACTION NO: 2:01CV925
    [CONSOLIDATED]

GLAXOSMITHKLINE PLC and
SMITHKLINE BEECHAM CORPORATION,
d/b/a GLAXOSMITHKLINE INC.,

    DEFENDANTS.

OPINION AND ORDER[1]

  This case comes before the Court on a second summary judgment motion from Plaintiff Teva

Pharmaceuticals (Teva), under Federal Rule of Civil Procedure (Rule) 56. Teva asks the Court to

find that United States Patent Nos. 6,031,093 (the '093 patent), 6,048,977 (the '977 patent) and

6,051,703 (the '703 patent) (collectively the Cole Patents) are invalid for obviousness-type double

patenting in light of U.S. Patent No. 4,529,720 (the '720 patent). All of these patents are commonly

held by the Defendants in this case, Glaxosmithkline, et al. (Defendants and all predecessors in

---

  [1] This opinion views the facts and all legitimate inferences therefrom in the light most
favorable to the non-moving party.

interest are collectively referred to as GSK). At a hearing on March 13, 2002, the Court GRANTED

Teva's motion, FINDING that the patents were invalid for obviousness-type double patenting. This

order further explains the Court's rationale.

TEVA'S SECOND MOTION FOR SUMMARY JUDGMENT

a. *The Standard*

District courts may enter summary judgment only when there is no genuine issue of material

fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ. P. 56(c); *Eli Lilly and*

*Co. v. Barr Laboratories, et al.*, 251, F.3d 955, 962 (Fed. Cir. 2001); *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 (1986). The burden falls on the moving party to show that there is no

genuine issue of material fact. Fed. R.Civ. P. 56(c); *Charbonnages de France v. Smith*, 597 F.2d

496, 414 (4th Cir. 1979). The non-moving party who bears the burden of proof on a particular claim,

however, must present evidence to support each element of his claim. *See Celotex v. Catrett*, 477

U.S. 317, 323 (1986). This evidence must be more than a mere scintilla, and summary judgment

may be granted "[i]f the evidence is merely colorable, or is not significantly probative." *Anderson*,

477 U.S. at 249-50. Nonetheless, all inferences drawn from the facts must be viewed in the light

most favorable to the non-moving party, with "his version of all that is in dispute accepted, [and] all

internal conflicts in it resolved favorably to him." *Charbonnages de France*, 597 F.2d at 414. When

evaluating a motion for summary judgment in a patent case, the court views the record evidence

through the prism of the evidentiary standard of proof that would pertain at a trial on the merits.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-53, (1986).

-2-

Statutorily, a patent enjoys a presumption of validity,[2] which can only be overcome through clear and convincing evidence. *Unites States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1563 (Fed. Cir. 1997). Therefore, a moving party seeking to invalidate a patent "must submit clear and convincing evidence of invalidity so that no reasonable jury could find otherwise." *Eli Lilly*, 251 F.3d at 962. "Alternatively, a moving party seeking to have a patent held not invalid at summary judgment must show that the non-moving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Id.*

b. *One-Way Review or Two-Way Review*

Normally a when a court is reviewing a patent to determine obviousness-type double patenting, a *one-way test* is used to determine whether the later patent is obvious in light of the earlier issued patent. *See In re Berg*, 140 F.3d 1428, 1432, (Fed. Cir. 1998). Under this one-way test a court "asks whether the application claims are obvious over the patent claims." *Id.* "[I]f the scope of the application and the patent claims is not identical, the court must ask whether the former defines merely an obvious variation of the latter." *Id.* If the former does define a merely obvious variation of the latter, then it is invalid for obviousness-type double patenting. *See Id.* In effect, a court is saying that the second patent should not have been issued by the Patent and Trademark Office (PTO), and strikes the second patent. This is done to prevent an improper extension of the patent monopoly beyond the statutorily defined limit. *Id.* at 1431; *see also In re Goodman*, 11 F.3d 1046 (Fed. Cir. 1993).

---

[2]35 U.S.C.S. §282 (2000).

GSK argues, however, that this is not the proper type of review the Court should use when it construes the patents in issue. The Defendants would have the Court apply the rarely used *two-way test* in construing the '093, '977 and '703 patents in light of the '720 patent. Under a two-way test, after the Court looks to see if the later claims are obvious in light of the earlier claims; it then reverses the initial review and asks whether the earlier patent claims are obvious variations of the claims later patents. *Berg* at 1432. If not, the application claims made later may be allowed. *Id.* Thus, when the two-way test applies, some claims may be allowed that would have been rejected under the one-way test. *Id.* "The essential concern was to prevent rejections for obviousness-type double patenting when the applicants filed first for a basic invention [and then later for an application with an improvement of the basic invention], but, through no fault of the applicants, the PTO decided the applications in reverse order of filing, rejecting the basic application although it would have been allowed if the applications had been decided in the order of their filing." *Id.*

While many patent holders facing a one-way review routinely attempt to re-adjust their cases to fit within the parameters required for the two-way test, the Federal Circuit emphasizes that two-way test is a "*narrow exception*" to the general rule that should be used only in "*unusual circumstances.*" *Id.* Whether to use a one-way or two-way test is a decision of law that a court decides using the underlying facts of the case at bar. *Id.*

The Federal Circuit has outlined a two-prong rule to guide trial courts in when to decide whether to use a one-way or two way test: (1) the patent applicant could not have avoided separate patent application filings' for the claims included in the earlier-issued and later issued patents; (2) the PTO was solely responsible for the delay in causing the one patent to issue before the other. *Id.*

at 1435. If *both* prongs are satisfied in the view of a court, then it is appropriate to use the *two-way test* to evaluate whether obviousness double patenting has taken place.

During the Court's December 14, 2001 hearing on Teva's first motion for summary judgment, GSK argued that the undated interview summary memorializing an informal conference, estimated to have taken place sometime during 1979, constituted a restriction requirement. The Court's estimation of the Interview Summary has not changed in the interim. The undated, one-page "Examiner Interview Summary Record," that GSK presented at the December 14, 2001 hearing was its basic evidence of the imposition of a restriction requirement. GSK Cross-Mot. for Sum. Jud. at Exhibit 33. GSK conceded that if a restriction requirement was imposed it could only have been imposed during this interview. The document states that it was "Agreed"[3] that *proposed* claims of the application at issue would be separated. Such language is insufficient to support the imposition of a restriction requirement by the PTO. At the March 13, 2002 hearing, GSK again relies upon this interview and the subsequent references to it as the basis for the first prong of the two prong rule. As it was deficient to support the imposition of a restriction requirement, it is also insufficient to support a finding by this Court that "the patent applicant could not have avoided separate patent application filings for the claims included in the earlier-issued and later issued patents."GSK has proffered no authority to this Court to demonstrate that it could not have avoided separate patent application filings other than by a restriction requirement. It's instant argument merely seeks to clothe the same factual scenario in a different theory. There is simply no support in law or fact for

---

[3] Black's Law Dictionary, 66 (6th ed. 1990), defines the ordinary legal meaning of the term *agree* as, in part, "To concur, come into harmony; give mutual assent; [and] unite in mental harmony."

the argument that GSK was *forced* to file separately.

As the Court looks at the totality of the circumstances surrounding the 1979 Interview Summary, it reads more like a mutual decision on how to handle a set of proposed claims, not an edict from the PTO to file separate applications. The first prong of the rule this Court must apply when deciding whether to conduct a two-way test for obviousness-type double patenting *cannot be satisfied*. Accordingly, the Court FINDS that the two way test is not applicable to the patents at issue. As the Court ruled for the December 14, 2001 hearing, the one-way test will again be used to review the patents at issue for obviousness-type double patenting during this review. Given the fact that it is unnecessary to do so, the Court will not decide whether the second prong of the rule has been met, nor will the Court speculate on the potential outcome of a two-way review.

*c. Obviousness-Type Double Patenting Analysis*

A party claiming invalidity of a patent has the burden of demonstrating that contention by clear and convincing evidence. The primary evidence to be considered is the claims listed in the patents. All of the patents at issue relate to clavulanic acid and its pharmaceutically useful salts, which includes potassium clavulanate. After carefully reviewing the differences in these patent's claims[4], they are not significant, which the Court will illustrate with a few of the many direct examples available. Claim one of the '720 patent reads:

1.    A method of effecting $\beta$-lactamase inhibition in a human or animal in need thereof arising from a $\beta$-lactamase producing bacteria which comprises administering to said human or animal a $\beta$-lactamase inhibitory

---

[4] So clear is the evidence from these claims in the patents themselves, the Court does not need to use this opinion to delve into the specifications of the patents, which elaborate upon the claims of the patents in more highly detailed language.

amount of clavulanic acid or a pharmaceutically acceptable salt thereof.[5]

Claim one of the '093 patent reads:

>  1.    A *solid* pharmaceutically acceptable salt of clavulanic acid.[6]

A plain reading of claim one of the '720 patent doesn't claim any particular form of clavulanic acid. As it was written, it covers solid forms of the substance. In other words, before the '093 patent was issued, the Defendants were protected against anyone attempting to market a solid pharmaceutically acceptable form of clavulanic acid by the '720 patent.

Continuing on, the claims of the '703 patent[7] professes ownership to, inter alia:

>  1.    *Purified* clavulanic acid
>  2.    A *purified* pharmaceutically acceptable salt of clavulanic acid
>  3.    *Purified* potassium clavulanic acid
>  4.    *Purified* crystalline potassium clavulanate
>  5.    *Purified solid* potassium clavulanate.

While the '703 patent is claiming purified versions of the claims made in the '720 patent, the '977 patent[8] reads:

>  1.    Clavulanic acid free of [2 types of penicillins].

---

[5] '720 patent, column 40, lines 12-18.

[6] '093 patent, column 40, lines 40-41.

[7] '703 patent, column 40, lines 17-22.

[8] '977 patent, column 40, lines 24-29.

-7-

Not only are the three later patents duplicative over the '720 patent, but they are reflections *of one another*. The '720 patent doesn't claim any specific purity of clavulanic acid or any particular form of clavulanic acid - solid or otherwise. During the entire time GSK has held the '720 patent they could have successfully prosecuted an infringement action against someone who marketed clavulanic acid as a solid, liquid or gas, as well as in virtually any purity. There are no distinguishing differences in these patents, beyond the fact that the '093, '703 and '977 patents give GSK protection until 2017, and the '720 patent runs its course shortly. Martin Cole, the inventor of record on these patents, himself submitted a statement in 1981 opposing a motion to dissolve an interference where he stated, "There is ... no significant or patentable distinction between a highly pure clavulanate salt and a less than highly pure clavulanate salt." Teva Mem. in Sup. of 2nd Mot. for Sum. Jud. at Ex. 14. In another filing in that same matter, Cole further stated, "There is ... no significant or patentable distinction between a highly pure clavulanate salt and a less than highly pure clavulanate salt." *Id.* at Ex. 30.

There are no distinguishing differences between any of these four patents, and those minor differences that do exist are not patentably distinct. In order to receive patent protection, a newly claimed invention must be novel and distinct from *all* previously claimed patented inventions the holder owns. In order to receive patent protection the newly claimed invention must be novel and distinct from *all* previously claimed patented inventions the holder owns. *Eli Lilly,* 251 F.3d at 962; *see also General Foods v. Stduiengesellschaft Kohle mbH*, 972 F2d 1272, 1277 (Fed. Cir. 1992).Based on the plain wording of the patents' claims themselves, the differences are superficial

-8-

and trivial. Upon the issuance of the '720 patent, GSK was protected against the same infringement the '903, '977 and '703 patents purport to cover. This additional protection is unnecessary and duplicative. Accordingly, the Court FINDS by clear and convincing evidence that the differences between these patents at issue are not patentably distinct.

CONCLUSION

The Court FINDS that the normal one-way review for obviousness-type double patenting is applicable to the patents in issue. Having construed the minor differences in these patents, the Court FINDS by clear and convincing evidence that the '903, '977 and '703 patents are not patentably distinct from the '720 patent. Accordingly, the Court FINDS that the '903, '977 and '703 patents are *invalid* on the ground of obviousness-type double patenting, and GRANTS Teva's motion for partial summary judgment as to these patents.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

HENRY COKE MORGAN, JR.
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

April  22, 2002

# EXHIBIT 6
## BOEHRINGER'S TRIAL EXHIBIT INDEX

Boehringer reserves the right to modify, supplement, or change this Exhibit List to the extent necessary to respond to any issues, exhibits or witnesses that Barr or Mylan include in their respective proposed sections of the pretrial order.

| TX NO. | BATES | DATE | DESCRIPTION | BARR/MYLAN OBJECTIONS[1] |
|--------|-------|------|-------------|--------------------------|
| TX 3 | BOE00000001-BOE00000015 | | U.S. Patent 4,886,812 | |
| TX 9 | BOE00849171-BOE00849178 | 06/26/84 | Tatigkeitsbericht II/1984 (Quarterly Report) | Relevance, Hearsay |
| TX 35 | BOE00849191-BOE00849203 | 09/20/84 | Tatigkeitsbericht III/1984 (Quarterly Report) | Relevance, Hearsay |
| TX 40 | BOE00849213-BOE00849224 | 12/17/84 | Tatigkeitsbericht IV/1984 (Quarterly Report) | Relevance, Hearsay |
| TX 41 | BOE00849164-BOE00849170 | 03/29/85 | Tatigkeitsbericht I/1985 (Quarterly Report) | Relevance, Hearsay |
| TX 42 | BOE00849179-BOE00849190 | 05/28/85 | Tatigkeitsbericht II/1985 (Quarterly Report) | Relevance, Hearsay |
| TX 43 | BOE00849225-BOE00849236 | 12/16/85 | Tatigkeitsbericht IV/1985 (Quarterly Report) | Relevance, Hearsay |
| TX 46 | BARR000065-BARR000427 | | U.S. Patent 4,731,374 File History | |
| TX 50 | BOE00849204-BOE00849212 | 10/02/85 | Tatigkeitsbericht III/1985 (Quarterly Report) | Relevance, Hearsay |
| TX 64 | BARR194696- | 05/09/06 | Analytical Method Validation Report Pramipexole | Relevance, Hearsay |

[1]    As used in the following objections, "Relevance" refers to Federal Rules of Evidence 401, 402, and 403; "Hearsay" refers to Federal Rules of Evidence 801, 802, and 805; "Authenticity" refers to Federal Rule of Evidence 901; "Lack of Foundation" refers to Federal Rules of Evidence 602 and 901; "Confusing" refers to Federal Rule of Evidence 403; "Cumulative" refers to Federal Rules of Evidence 403 and 611(a); "Multiple Documents" refers to Federal Rules of Evidence 401, 402, 403, 1001, 1002, and 1003; and "Incomplete" refers to Federal Rules of Evidence 106, 401, 402, and 403.  By setting forth these objections to the documents on Boehringer's Trial Exhibit list, Defendants do not concede that the descriptions of the documents on Boehringer's list are necessarily accurate.  Defendants reserve the right to object further to documents on or added to this list on any basis that depends upon how a document is introduced, for what purpose a document is introduced, and what portion of a document is introduced.

| | BARR194712 | | Dihydrochloride Monohydrate Drug Substance – Enantiomeric Purity and Pramipexole Dihydrochloride Tablets, 0.125 mg, 0.25 mg, 0.5 mg, 1.0 mg, 1.0 mg and 1.5 mg - HPLC | |
|---|---|---|---|---|
| TX 99 | BARR000615-BARR000925 | | U.S. Patent 4,886,812 File History | |
| TX 106 | BOE00037394-BOE00037531 | 01/1993 | Pramipexole in Parkinson's Disease Product Development Plan First Edition January, 1993 | Relevance, Hearsay, Authenticity (as to Handwriting) |
| TX 136 | BARR015768-BARR015782 | 02/15/05 | Pramipexole Dihydrochloride Tablets, 0.25 MG Bio-Committee Meeting Notes | Relevance, Hearsay |
| TX 139 | BARR018656-BARR018664 | | Barr Labs Inc: Product Development Information Summary | Relevance, Hearsay |
| TX 142 | BARR208390-BARR208455 | 10/15/04 | E-mail to W. Kwok, E. Noble Gray from L. O'Dea re Pramipexole Dihydrochloride Monohydrate/Amino Chemicals Ltd. Technical Package | Relevance, Hearsay, Lack of Foundation, Authenticity, Multiple Documents, Cumulative |
| TX 145 | GYMA000001-GYMA000030 | 05/2004 | Email with attachment of Amino: Pramipexole Technical Package | Relevance, Hearsay, Lack of Foundation, Cumulative |
| TX 146 | GYMA000440-GYMA000490 | 09/01/04 | Email to G. Yen , J. Kover, and S. Indahl from G. Yen enclosing Technical Dossier for Pramipexole | Relevance, Hearsay, Lack of Foundation, Cumulative |
| TX 152 | GYMA000495-GYMA000497 | 10/15/04 | Email to J. Kover and G. Yen from S. Indahl re Pramipexole information request | Relevance, Hearsay |
| TX 153 | GYMA000038 | 10/20/04 | Email to S. Indahl from P. Munoz re Pramipexole/Amino | Relevance, Hearsay |
| TX 154 | GYMA000063-GYMA000066 | 11/01/04 | Email to S. Indahl from Gyma Administrative Office re attached letter re Pramipexole Dihydrochloride Monhydrate/Amino Chemicals Ltd. | Relevance, Hearsay, Authenticity, Multiple Documents |
| TX 157 | BARR032187-BARR032190 | 03/02/06 | Email to G. Yen , H. Prisco, E. Noble Gray, L. O'Dea and P. Costa from W. Kwok re attached list of requests for Amino re Pramipexole Dihydrochloride Monohydrate | Relevance, Hearsay |
| TX 206 | BARR195178-BARR195180 | 05/01/06 | Change Control for Finished Product Test Method & Specs Pramipexole Dihydrochloride Tablets, All Strengths 0 Update QC Specification Sheets and MTH-684 | Relevance, Hearsay |
| TX 209 | BARR022807-BARR023189 | | Excerpts from Abbreviated New Drug Application Chemistry, Manufacturing and Controls: Drug Substance | Relevance |

| TX 223 | | 10/16/06 | Notice of Deposition of Barr Laboratories, Inc. Pursuant to Fed. R.Civ.P. 30(b)(6) | Relevance, Hearsay |
|---|---|---|---|---|
| TX 227 | BARR018493-BARR018651 | 01/09/06 | Product Development Report for Pramipexole Dihydrochloride Tablets, 0.125 mg, 0.25 mg, 1 mg & 1.5 mg | Relevance, Hearsay |
| TX 228 | BARR049897-BARR049925 | 05/2004 | Pramipexole Dihydrochloride Monohydrate  Technical Package | Relevance, Hearsay, Lack of Foundation, Cumulative |
| TX 229 | BARR016120-BARR016168 | 07/2004 | Pramipexole Dihydrochloride Monohydrate/Amino Chemicals Ltd. Technical Package | Authenticity (as to Handwriting), Relevance, Hearsay, Lack of Foundation, Cumulative |
| TX 261 | BARR142577-BARR142607 | 03/02/06 | Investor Presentation | Relevance, Hearsay |
| TX 262 | | 8/30/06 | Barr Pharmaceuticals Inc. Form 10-k Annual Report Filed 8/30/2006 for Period Ending 6/30/2006 | Relevance, Hearsay |
| TX 263 | BARR014162-BARR014163 | 04/09/02 | Dopamine Agonists discussed as treatment option for Restless Legs Syndrome | Relevance, Hearsay |
| TX 264 | BARR014167-BARR014168 | 11/27/02 | Pramipexole now in Clinical Development for Restless Legs Syndrome indication | Relevance, Hearsay |
| TX 265 | BARR014172-BARR014173 | 04/30/04 | Study Demonstrates Mirapex/Sifrol (pramipexole) induces Rapid Relief from Restless Legs Syndrome | Relevance, Hearsay |
| TX 266 | BARR014134-BARR014137 | 1999 | Mirapex for Restless Legs Syndrome or Periodic Limb Movements of Sleep | Relevance, Hearsay |
| TX 275 | BARR022395-BARR022398 | 05/26/05 | Letter to Center for Drug Evaluation and Research from Barr re Abbreviated new drug application 0.25 mg | Authenticity, Multiple Documents, Relevance, Hearsay |
| TX 276 | BARR026516-BARR026520 | 06/23/05 | Letter to Center for Drug Evaluation and Research from Barr re: Abbreviated new drug application 0.125 mg, 0.5 mg, 1 mg, 1.5 mg | Authenticity, Multiple Documents, Relevance, Hearsay |
| TX 277 | BARR042773-BARR042849 | | Abbreviated New Drug Application 0.25 mg Comparison between Generic Drug and Reference listed Drug | Relevance |
| TX 278 | BARR0208826 | | Abbreviated New Drug Application: Bioequivalency Amendment to ANDA # 77-605 | Relevance |

3

| | | | Pramipexole Tablets: 0.125 mg, 0.25 mg, 0.5 mg, 1 mg, 1.5 mg | |
|---|---|---|---|---|
| TX 279 | BARR194333-<br>BARR194364 | | Product Development Report for Pramipexole Tablet 0.125 mg, 0.25 mg, 0.5 mg, 1 mg, 1.5 mg | Relevance, Hearsay, Cumulative |
| TX 281 | BARR049063-<br>BARR049112 | 08/18/04 | Letter to S. Indahl from G. Yen re enclosed Pramipexole Dihydrochloride Monohydrate/Amino Chemicals Ltd. Technical Package | Relevance, Hearsay, Lack of Foundation, Cumulative |
| TX 283 | BARR020781-<br>BARR020783 | 2/16/2006 | Minor Amendment<br>ANDA 77-724 | Relevance, Incorrect Description, Authenticity (as to Handwriting) |
| TX 284 | BARR209163-<br>BARR209239 | | Minor Amendment<br>ANDA 77-724<br>Pramipexole Tablets 0.125 mg, 0.25 mg, 0.5 mg, 1 mg, and 1.5 mg | Relevance |
| TX 286 | BARR000428-<br>BARR000614 | | U.S. Patent 4,843,086 File History | |
| TX 287 | | | Alexander M. Klibanov CV | |
| TX 291 | | | Excerpt of The Condensed Chemical Dictionary Tenth Edition | Relevance, Hearsay |
| TX 292 | | 1976 | Excerpt of the Merck Index Ninth Edition 1976 | Relevance, Hearsay |
| TX 293 | | 1983 | Excerpt of the Merck Index Tenth Edition 1983 | Relevance, Hearsay |
| TX 294 | | 01/03/07 | Letter to Kenneth Schuler from Jessamyn Berniker re proposed claim constructions for terms/phrases | Hearsay |
| TX 295 | BOE00001102-<br>BOE00001201 | | Dr. Schneider's Lab Notebook | Relevance, Hearsay, Incorrect Description |
| TX 301 | BOE0002910-<br>BOE0002999 | | Spreadsheet | Relevance, Hearsay, Confusing, Lack of Foundation |
| TX 302 | BOE00003087-<br>BOE0003102 | | Prescription Spreadsheet | Relevance, Hearsay, Confusing, Lack of Foundation |
| TX 305 | BOE00881507 | 02/2007 | Performance Metrics Overview by Diagnoses | Relevance, Hearsay, Confusing, Lack of Foundation |
| TX 310 | BARR209593 | | IMS Health National Disease & Therapeutic Index | Relevance, Hearsay |
| TX 311 | | | National Institute of Neurological Disorders and Stroke Myoclonus Fact Sheet | Relevance, Hearsay |
| TX 312 | | | ICD9DATA.COM website printout | Relevance, Hearsay |

| TX 313 | BOE00002701-BOE00002721 | 01/27/06 | Mirapex Weekly Report | Relevance, Hearsay |
|--------|-------------------------|----------|-----------------------|---------------------|
| TX 314 | BOE00677589-BOE00677614 | 10/28/05 | Mirapex RLS 2006 Business Plan | Authenticity (As to Handwriting), Relevance, Hearsay |
| TX 315 | BOE00806859-BOE00806914 | 10/10/05 | U.S. Marketing Plan 2006 Mirapex – Parkinson's Disease | Relevance, Hearsay |
| TX 326 | | 8/07 | Aiken, C., Pramipexole in Psychiatry: A Systematic Review of the Literature, J Clin Psychiatry 68:8, August 2007 | Relevance, Hearsay |
| TX 400 | | 12/11/06 | Notice of Deposition of Mylan Pharmaceuticals, Inc. Pursuant to Fed.R.Civ. P. 30(b)(6) | Relevance, Hearsay |
| TX 401 | MYL0000140 | 08/26/05 | Letter from S. Talton to G. Buehler Regarding Mylan Certifications | Relevance, Hearsay |
| TX 402 | MYL0000141 | | Table of Comparison | Relevance, Hearsay |
| TX 403 | MYL0002296 | 07/01/04 | Mylan Pharmaceuticals Inc. Phase II New Product Selection Product/Market Overview | Relevance, Hearsay |
| TX 404 | MYL0002305 | | Mylan Pharmaceuticals Inc. 3 Year Plan | Relevance, Hearsay |
| TX 405 | MYL0002297 | | Pramipexole (Mirapex) Pharmacia & Upjohn (Sales, Trends and Shares of Pramipexole) | Relevance, Hearsay |
| TX 406 | BARR000011-BARR000020 | 09/12/05 | Barr's Notice Letter to Boehringer | Relevance, Hearsay |
| TX 407 | | 03/02/06 | Defendant Barr Laboratories, Inc.'s Responses to Plaintiffs Boehringer Ingelheim International GMBH and Boehringer Ingelheim Pharmaceutical, Inc.'s First Set of Interrogatories | Relevance |
| TX 408 | | 06/22/06 | Defendant Barr Laboratories, Inc.'s Responses to Plaintiffs Boehringer Ingelheim International GMBH and Boehringer Ingelheim Pharmaceutical, Inc.'s Second Set of Interrogatories | Relevance |
| TX 409 | | 08/22/06 | Defendant Barr Laboratories, Inc.'s Supplemental Responses to Plaintiffs Boehringer Ingelheim International GMBH and Boehringer Ingelheim Pharmaceutical, Inc.'s Interrogatories Nos. 3,4,5,8 and 10 | Relevance |
| TX 410 | | 09/11/06 | Defendant Barr Laboratories, Inc.'s Responses to Plaintiffs Boehringer Ingelheim International GMBH and Boehringer Ingelheim Pharmaceutical, Inc.'s Third Set of Interrogatories | Relevance |
| TX 411 | | 01/30/07 | Defendant Barr Laboratories, Inc.'s Responses to Plaintiffs Boehringer Ingelheim International GMBH and Boehringer Ingelheim Pharmaceutical, Inc.'s Fourth Set of Interrogatories | Relevance |

| TX 411-A | BARR021827-BARR021837 | 5/26/05 | New Product Launch Risk Analysis – Active Supply<br>Product: Pramipexole Dihychloride Tablets 0.25, 0.5, 1.0, 1.5, 0.125mg<br>Brand: Mirapex (Boehringer Ingel)<br>Submitted: 5/26/05 | Relevance, Lack of Foundation, Hearsay |
|---|---|---|---|---|
| TX 411-B | BARR021854-BARR021859 | | Chart:<br>Assumptions<br>Pramipexole Dihychloride Tablets 0.25, 0.5, 1.0, 1.5, | Relevance, Lack of Foundation, Hearsay |
| TX 411-C | BARR060049-BARR060072 | | CI Filed Products<br>Chart | Relevance, Lack of Foundation, Hearsay |
| TX 411-D | BARR060076-BARR060080 | | Pramipexole Dihychloride API Cost Model | Relevance, Lack of Foundation, Hearsay |
| TX 411-E | BARR060144-BARR060158 | 3/16/06 | Pramipexole Dihychloride – Validation and Launch Analysis | Relevance, Lack of Foundation, Hearsay |
| TX 411-F | BARR064420-BARR064454 | 8/14/04 | Strategic Business Development | Relevance, Lack of Foundation, Hearsay |
| TX 411-G | BARR160507-BARR160512 | | 7 Yr. Summary $ - SherlockFY06 | Relevance, Lack of Foundation, Hearsay |
| TX 412 | | 02/09/06 | Defendant's Objections and Responses to Plaintiffs' First Set of Interrogatories to Mylan | Relevance |
| TX 413 | | 10/16/06 | Defendant's Supplemental Objections and Responses to Plaintiffs' First Set of Interrogatories to Mylan | Relevance |
| TX 414 | | 10/16/06 | Defendant's Objections and Responses to Plaintiffs' Second Set of Interrogatories to Mylan | Relevance |
| TX 415 | | 10/16/06 | Defendant's Objections and Responses to Plaintiffs' Third Set of Interrogatories to Mylan | Relevance |
| TX 416 | | 01/08/07 | Defendant's Objections and Responses to Plaintiffs' Fourth Set of Interrogatories to Mylan | Relevance |
| TX 417 | MYL00002176-MYL00002212 | | Mylan's Proposed Product Label Insert | Authenticity, Incomplete, Relevance |
| TX 418 | MYL0003931-MYL0003984 | | Mylan's Proposed Product Label for Pramipexole | Relevance |
| TX 419 | BOE00881432-BOE00881467 | 11/07/06 | Boehringer's Revised Product Label for Mirapex | Relevance, Hearsay |
| TX 420 | BARR023323-BARR023341 | 05/2005 | Barr's Proposed Product Label for Pramipexole | Relevance |
| TX 421 | BARR027051- | 06/2005 | Barr's Proposed Product Label for Pramipexole | Relevance |

| | BARR027069 | | | |
|---|---|---|---|---|
| TX 422 | BARR208788-BARR208806 | 08/2006 | Barr's Revised Proposed Product Label for Pramipexole | Relevance |
| TX 423 | BOE00881649-BOE00881817 | 06/24/85 | Certified copy of 06/747,748 Eli Lilly Patent Application File History (Abandoned) | Relevance |
| TX 424 | | 12/11/07 | USPTO Website Printout: Patent Terms Extended Under 35 USC §156 | Relevance, Hearsay, Late Production |
| TX 425 | BYR000059 | 03/02/05 | Email to Venkatesh from Kelley (for N. Cola) re Pramipexole/Mylan Pharmaceuticals | Relevance, Hearsay |
| TX 426 | BOE00001351-BOE00001430 | 11/12/92 | Agreement between Boehringer Ingelheim International GMBH and The Upjohn Co | Relevance, Hearsay, Authenticity, Multiple Documents |
| TX 427 | BOE00001432-BOE00001449 | 07/02/97 | Co-Promotion Agreement between Pharmacia & Upjohn Co and Boehringer Ingelheim Pharmaceuticals, Inc | Relevance, Hearsay |
| TX 428 | BOE00001451-BOE00001457 | 07/14/97 | Supply Agreement between Pharmacia & Upjohn Caribe, Inc. and Boehringer Ingelheim International GmbH | Relevance, Hearsay, Authenticity (as to Handwriting) |
| TX 429 | BOE00001481-BOE00001518 | 12/01/03 | Toll Manufacturing Agreement Between Pfizer Inc. and Boehringer Ingelheim Pharmaceuticals, Inc. | Relevance, Hearsay |
| TX 430 | BOE00000048-BOE00000051 | 03/06/06 | Certified copy of Patent Assignment Records for 4,866,812, 4,843,086 and 4,731,374 | |
| TX 431 | BOE00000052-BOE00000053 | 03/06/06 | Certified copy of Patent Assignment Records for D-7950 | |
| TX 432 | BOE00000054-BOE00000072 | | Patent Assignment Records | Relevance, Hearsay, Authenticity, Multiple Documents |
| TX 433 | BOE00881818-BOE00881857 | 08/2007 | Performance Metrics Overview by Diagnoses | Relevance, Hearsay, Confusing, Lack of Foundation, Authenticity, Incomplete, Late Produciton |
| TX 434 | BOE00881858-BOE00881897 | | PD Market: Mirapex NRxs (Factored for PD) | Relevance, Hearsay, Confusing, Lack of Foundation, Authenticity, Incomplete, Late |

| | | | | Produciton |
|---|---|---|---|---|
| TX 435 | BOE00881898-BOE00881937 | 08/2007 | Market Information:<br>RLS Market: NRxs  (Factored for RLS) | Relevance, Hearsay, Confusing, Lack of Foundation, Authenticity, Incomplete, Late Produciton |
| TX 436 | BOE00881348-BOE00881396 | 2007 | Mirapex Parkinson's Disease Brand Plan | Relevance, Hearsay |
| TX 437 | | | Curriculum Vitae of Charles Warren Olanow, M.D., F.R.C.P. (C) | |
| TX 438 | | | Ehringer H, Hornykiewicz O.  Distribution of noradrenalin and dopamine (3-hydroxytyramine) in the human brain and their behavior in diseases of the extrapyramidal system. Klin Wochenschr. 960;38:1236-1239 | Relevance, Hearsay |
| TX 439 | | 2004 | Olanow CW. The Scientific Basis for the Current Treatment of Parkinson's Disease. Annu. Rev. Med. 2004;55:41-60 | Relevance, Hearsay |
| TX 440 | | 1967 | Cotzias GC, Van Woert MH, Schiffer LM. Aromatic amino acids and modification of parkinsonism. New Engl. J. Med. 1967;276:374-379 | Relevance, Hearsay |
| TX 441 | | 2004 | Olanow CW, Agid Y, Mizuno Y, et al. Levodopa in the Treatment of Parkinson's  Disease: Current Controversies. Movement Disorders. Vol. 19: No. 9, 2004, 997-1005 | Relevance, Hearsay |
| TX 442 | | 1974 | Calne DB, Teychenne PF, Claveria LE  et al. Bromocriptine in Parkinsonism. Br. Med. J. 1974; 4: 442-444 | Relevance, Hearsay |
| TX 443 | | 1998 | Calne DB, Burton K, Beckman J, Martin WR. Dopamine Agonists and Neuroprotection in Parkinson's Disease. Ann. Neurol. 1998;44:S167-74 | Relevance, Hearsay, Incorrect Description |
| TX 444 | | 1992 | Mierau J, Schingnitz G. Biochemical and pharmacological studies on pramipexole, a potent and selective dopamine D2 receptor agonist. Eur J Pharmacol. 1992;215:161-70 | Relevance, Hearsay |
| TX 445 | BOE00664295-BOE00664305 | 1998 | Piercey MF. Pharmacology of Pramipexole, a Dopamine D3-Preferring Agonist Useful in Treating Parkinson's Disease. Clin. Olanow Expert Report Appendix Neuropharmacol. 1998;21:141-51 | Relevance, Hearsay |

| TX 446 | | 2007 | Dewey RB 2nd, Reimold SC, O'Suilleabhain PE. Cardiac valve regurgitation with pergolide compared with nonergot agonists in Parkinson disease. Arch Neurol. 2007;64:377-80 | Relevance, Hearsay |
|---|---|---|---|---|
| TX 447 | | 1997 | Parkinson Study Group. Safety and Efficacy of Pramipexole in Early Parkinson Disease. A Randomized Dose-Ranging Study. JAMA. 1997;278:125-30 | Relevance, Hearsay |
| TX 448 | | 1997 | Lieberman A, Ranhosky A, Korts D. Clinical evaluation of pramipexole in advanced Parkinson's disease: results of a double-blind, placebo-controlled, parallel-group study. Neurology. 1997;49:162-8 | Relevance, Hearsay |
| TX 449 | BOE00640082-BOE00640087 | 1999 | Pinter MM, Pogarell O, Oertel WH. Efficacy, safety, and tolerance of the non-ergoline dopamine agonist pramipexole in the treatment of advanced Parkinson's disease: a double-blind, placebo-controlled, randomized, multicentre study. J Neurol, Neurosurg, Psychiatry. 1999;66:436-441 | Relevance, Hearsay, Authenticity (as to Handwriting) |
| TX 450 | BOE00640606-BOE00640613 | 1998 | Wermuth L and the Danish Pramipexole Study Group. A double-blind, placebo-controlled, randomized, multi-center study of pramipexole in advanced Parkinson's disease. Eur. J. Neurol. 1998; 5:235-242 | Relevance, Hearsay, Authenticity (as to Handwriting) |
| TX 451 | BOE00655728-BOE00655733 | 1997 | Guttman M for the International Pramipexole-Bromocriptine Study Group. Double-blind comparison of pramipexole and bromocriptine treatment with placebo in advanced Parkinson's disease. Neurology 1997;49:1060-5 | Relevance, Hearsay |
| TX 452 | | 1999 | Kunig G, Pogarell O, Moller JC, Delf M, Oertel WH. Pramipexole, a nonergot dopamine agonist, is effective against rest tremor in intermediate to advanced Parkinson's disease. Clin Neuropharmacol. 1999;22:301-5 | Relevance, Hearsay |
| TX 453 | | 2000 | Parkinson Study Group. Pramipexole vs Levodopa as Initial Treatment for Parkinson Disease: A Randomized Controlled Trial. JAMA. 2000;284:1931-8 | Relevance, Hearsay |
| TX 454 | | 2001 | Parkinson Study Group. Pramipexole vs Levodopa as Initial Treatment for Parkinson Disease: a 4-Year Randomized Controlled Trial. Arch Neurol. 2004l;61:1044-53 | Relevance, Hearsay |
| TX 455 | | 2005 | Olanow CW, Watts RL, Koller WC. An algorithm (decision tree) | Relevance, Hearsay |

| | | | for the management of Parkinson's disease (2001): Treatment guidelines. Neurology 2001; 56:S1-S88 | |
|---|---|---|---|---|
| TX 456 | | 2005 | Hely MA, Morris JG, Reid WG, Trafficante R. Sydney Multicenter Study of Parkinson's Disease: Non-L-Dopa-Responsive Problems Dominate at 15 Years. Mov. Disord. 2005;20:190-9 | Relevance, Hearsay |
| TX 457 | | 2004 | Schapira AH, Olanow CW. Neuroprotection in Parkinson Disease: Mysteries, Myths, and Misconceptions. JAMA. 2004;291:358-64 | Relevance, Hearsay |
| TX 458 | | 2006 | Suchowersky O, Gronseth G, et al. Practice Parameter: Neuroprotective strategies and alternative therapies for Parkinson disease (an evidence-based review): Report of the Quality Standards Subcommittee of the American Academy of Neurology. Neurology 2006;66:976-82 | Relevance, Hearsay |
| TX 459 | | 2005 | Goetz CG, Poewe W, Rascol O, Sampaio C. Evidence-Based Medical Review Update: Pharmacological and Surgical Treatments of Parkinson's Disease: 2001 to 2004. Mov. Disord. 2005;20:523-39 | Relevance, Hearsay |
| TX 460 | BOE00711520-BOE00711544 | 2003 | Schapira AHV, Olanow CW. Rationale for the use of dopamine agonists as neuroprotective agents in Parkinson's disease. Ann. Neurol. 2003; 53 (suppl 3): 149-159 | Relevance, Hearsay |
| TX 461 | | 1998 | Olanow CW, Jenner P, Brooks D. Dopamine agonists and neuroprotection in Parkinson's disease. Ann Neurol. 1998 Sep.;44 (3 Suppl 1):S167-74 | Relevance, Hearsay |
| TX 462 | | 2001 | Le Wei-Dong, Jankovic J. Are Dopamine Receptor Agonists Neuroprotective in Parkinson's Disease? Drugs and Aging 2001; 18(6) | Relevance, Hearsay |
| TX 463 | | 1999 | Zou L, Jankovic J, Rowe DB, et al. Neuroprotection by pramipexole against dopamine- and levodopa-induced cytotoxicity. Life Sci. 1999;64:1275-85 | Relevance, Hearsay |
| TX 464 | | 2002 | Schapira AH. Dopamine agonists and neuroprotection in Parkinson's disease. Eur. J. Neurol. 2002;9 Suppl. 3:7-14 | Relevance, Hearsay |
| TX 465 | | 2006 | Iravani MM, Haddon CO, Cooper JM, et al. Pramipexole protects against MPTP toxicity in non-human primates. J. Neurochem. 2006;96:1315-21 | Relevance, Hearsay |

| TX 466 | | 2000 | Takata K, Kitamura Y, Kakimura J-I, et al. Increase of Bcl-2 protein in neuronal dendritic processes of cerebral cortex and hippocampus by the antiparkinsonian drugs, talipexole and pramipexole. Brain Research. 2000; 872: 236-241 | Relevance, Hearsay |
|---|---|---|---|---|
| TX 467 | | 2002 | Parkinson Study Group. Dopamine Transporter Brain Imaging to Assess the Effects of Pramipexole vs Levodopa on Parkinson Disease Progression. JAMA. 2002;287:1653-61 | Relevance, Hearsay |
| TX 468 | | 2006 | Schapira AH, Obeso J. Timing of Treatment Initiation in Parkinson's Disease: A Need for Reappraisal? Ann. Neurol. 2006;59:559-62 | Relevance, Hearsay |
| TX 469 | | 2004 | Chaudhuri KR, Odin P, Olanow CW. Restless Legs Syndrome. Parthenon Publishing, London, 2004 | Relevance, Hearsay, Authenticity, Incomplete |
| TX 470 | | 2002 | Comella CL. Restless legs syndrome: Treatment with dopaminergic agents. Neurology. 2002; 58 (Suppl 1):S87-92 | Relevance, Hearsay |
| TX 471 | | 2007 | Oertel WH, Stiasny-Kolster K, Bergtholdt B, et al. Efficacy of Pramipexole in Restless Legs Syndrome: A Six-Week, Multicenter, Randomized, Double-Blind Study (Effect-RLS Study). Mov. Disord. 2007;22:213-9 | Relevance, Hearsay |
| TX 472 | | 2006 | Winkelman JW, Sethi MD, Kushida CA, et al. Efficacy and safety of pramipexole in restless legs syndrome. Neurology. 2006; 67:1034-9 | Relevance, Hearsay |
| TX 473 | BOE00649837-BOE00649839 | 2003 | Silber MH, Girish M, Izurieta R. Pramipexole in the Management of Restless Legs Syndrome: An Extended Study. Sleep. 2003;26(7):819-21 | Relevance, Hearsay |
| TX 474 | BOE00649804-BOE00649809 | 1999 | Montplaisir J, Nicolas A, Denesle R, Gomez-Mancilla B. Restless legs syndrome improved by pramipexole: A double-blind randomized trial. Neurology. 1999;52:938-43 | Relevance, Hearsay |
| TX 475 | | 1998 | Lin SC, Kaplan J, Burger CD, Fredrickson PA. Effect of Pramipexole in Treatment of Resistant Restless Legs Syndrome. Mayo Clin Proc. 1998;73:497-500 | Relevance, Hearsay |
| TX 476 | | 2006 | Montplaisir J, Fantini ML, Desautels A, et al. Long-term treatment with pramipexole in restless legs syndrome. Eur. J. Neurol. | Relevance, Hearsay |

| | | | 2006;13:1306-11 | |
|---|---|---|---|---|
| TX 477 | BOE00649842-BOE00649847 | 2004 | Winkelman JW, Johnston L. Augmentation and tolerance with long-term pramipexole treatment of restless legs syndrome (RLS). Sleep Med. 2004;5(1):9-14 | Relevance, Hearsay |
| TX 478 | | 2006 | Partinen M, Hirvonen K, Jama L, et al. Efficacy and safety of pramipexole in idiopathic restless legs syndrome: a polysomnographic dose-finding study – the PRELUDE study. Sleep Med. 2006;7:407-17 | Relevance, Hearsay |
| TX 479 | | 2006 | Vignatelli L, Billiard M, Clarenbach P et al. EFNS guidelines on management of restless legs syndrome and periodic limb movement disorder in sleep. Eur. J. Neurol. 2006;13:1049-1065 | Relevance, Hearsay |
| TX 480 | BOE00881504 | 12/2006 | Overview by Diagnoses | Relevance, Hearsay, Confusing, Lack of Foundation |
| TX 481 | | 02/08/07 | GlaxoSmithKline. Feb. 8, 2007 Press Release; http://www.gsk.com/investors/reports/gsk_q42006/q42006.pdf | Relevance, Hearsay |
| TX 482 | BOE00881505 | | RLS Patient Based Model | Relevance, Hearsay, Confusing, Lack of Foundation |
| TX 483 | | | U.S. Department of Health and Human Services. Evidence Shows Fibromyalgia Pain Is Real: Experts; http://www.womenshealth.gov/news/english/536333.htm | Relevance, Hearsay |
| TX 484 | | 2003 | Holman AJ. Fibromyalgia and Pramipexole: Promise and Precaution. J. Rheumatol. 2003;30:2733 | Relevance, Hearsay |
| TX 485 | | 2005 | Holman AJ, Myers RR. A Randomized, Double-Blind, Placebo-Controlled Trial of Pramipexole, a Dopamine Agonist, in Patients With Fibromyalgia Receiving Concomitant Medications. Arthritis & Rheum. 2005;52:2495-2505 | Relevance, Hearsay |
| TX 486 | | 2000 | Corrigan MH, Denahan AQ, Wright CE, Ragual RJ, Evans DL. Comparison of pramipexole, fluoxetine, and placebo in patients with major depression. Depression and Anxiety. 2000;11(2):58-65 | Relevance, Hearsay, Confusing (Wrong number on cover sheet) |

| TX 487 | | 2002 | Burn DJ. Beyond the Iron Mask: Towards Better Recognition and Treatment of Depression Associated with Parkinson's Disease. Mov. Disord. 2002;17:445-54 | Relevance, Hearsay, Confusing (Wrong number on cover sheet) |
|---|---|---|---|---|
| TX 488 | | 2003 | Rektorova I, Rektor I, Bares M, et al. Pramipexole and pergolide in the treatment of depression in Parkinson's disease: a national multicenter prospective randomized study. Eur. J. Neurol. 2003;10:399-406 | Relevance, Hearsay, Confusing (Wrong number on cover sheet) |
| TX 489 | | | Curriculum Vitae of Paul A. Bartlett | |
| TX 491 | BOE00882000-BOE00882011 | 12/17/84 | English Translation of BOE00849213-BOE00849224 (TX 40) | Relevance, Hearsay |
| TX 492 | BOE00881958-BOE00881965 | | English Translation of BOE00849171-BOE00849178 (TX 9) | Relevance, Hearsay |
| TX 493 | BOE00881978-BOE00881990 | 09/20/84 | English translation of BOE00849191-BOE00849203 (TX 35) | Relevance, Hearsay |
| TX 494 | BOE00882012-BOE00882018 | | English translation for BOE00849164-BOE00849170 (TX 41) | Relevance, Hearsay |
| TX 495 | BOE00881966-BOE00881977 | 05/28/85 | English translation of BOE00849179-BOE00849190 (TX 42) | Relevance, Hearsay |
| TX 496 | BOE00132270-BOE00132271 | 09/06/85 | Memorandum re SND 919 CL2Y on September 4, 1985 | Authenticity (as to Handwriting), Relevance, Hearsay |
| TX 497 | BOE00881956-BOE00881957 | | English translation of BOE00132270-BOE00132271 (TX 496) | Relevance, Hearsay |
| TX 498 | BOE00881991-BOE00881999 | 10/02/85 | English translation of BOE00849204-BOE00849212 (TX 50) | Relevance, Hearsay |
| TX 499 | BOE00004167-BOE00004177 | 1985 | Bericht III/1985 – July – September 1985 Report | Relevance, Hearsay |
| TX 500 | BOE00881945-BOE00881955 | 1985 | English translation of BOE00004167-BOE00004177 (TX 499) | Relevance, Hearsay |
| TX 501 | BOE00004178-BOE00004197 | 1986 | Bericht II/1986 – April – June 1986 Report | Relevance, Hearsay |

13

| TX 502 | BOE00882019-<br>BOE00882038 | | English translation of BOE00004178-BOE00004197 (TX 501) | Relevance, Hearsay |
|---|---|---|---|---|
| TX 503 | BOE00037825-<br>BOE00037861 | 08/01/88 | SND 919 Report by Julian H. Shelley | Relevance, Hearsay |
| TX 504 | BOE00754889-<br>BOE00754929 | | Mirapex Formulary Submission Dossier | Relevance, Hearsay |
| TX 505 | BOE00116352 | 07/1997 | First Approval, in USA, for P&U/Boehringer Ingelheim's Mirapex (Market Letter) | Relevance, Hearsay, Authenticity (as to Handwriting) |
| TX 506 | BOE00822063-<br>BOE00822083 | | Article: Restless Legs Syndrome by William Ondo, MD | Relevance, Hearsay |
| TX 507 | MYL00000093-<br>MYL00000394 | 08/06/05 | Letter to M. Garcia from S. Talton enclosing "technical sections" of ANDA for Pramipexole Dihydrochloride Tablets | Relevance |
| TX 508 | BARR027009-<br>BARR027011 | | Barr Labs: ANDA<br>Patent Certification and Exclusivity Statement | Relevance |
| TX 509 | MYL0003771-<br>MYL0003801 | 10/26/2005 | Letter from S. Bloodworth to M. Morris re Paragraph IV Notification of U.S. Patent No. 4,886,812 | Relevance |
| TX 510 | MYL00000395-<br>MYL00000877 | | Section VII Components and Composition Statement Qualitative Compositions and Pharmaceutical Function of Components Pramipexole Dihydrochloride 2.5% Trituration and Pramipexole Dihydrochloride Tablets 0.125MG, 0.25MG, 1MG and 1.5 MG | Relevance |
| TX 511 | BARR026502-<br>BARR026505 | | Barr Labs: ANDA<br>Chemistry, Manufacturing and Controls: Drug Products | Relevance |
| TX 512 | | 03/29/07 | Curriculum Vitae of Dr. Mohan Rao | |
| TX 513 | | 2006 | Boehringer Ingelheim 2006 Annual Report | Relevance, Hearsay, Late Production |
| TX 514 | BOE00706138-<br>BOE00706282 | | Cognos Study # 75<br>Parkinson's Disease | Relevance, Hearsay |
| TX 515 | BOE00761287-<br>BOE00761337 | 9/25/2005 | Pramipexole: Restless Legs Syndrome Corporate Brand Plan | Relevance, Hearsay |
| TX 516 | BOE0846803-<br>BOE00846866 | | Boehringer Inglheim: Mirapex Competitor War Game Briefing Packet | Relevance, Hearsay |
| TX 517 | BOE00881503 | | IMS Health, National Sales Perspective: Retail, Non-Ret, NDTI | Relevance, Hearsay |
| TX 518 | BOE00881506 | | IMS Health, National Disease and Therapeutic Index | Relevance, Hearsay |

| TX 519 | | 02/09/07 | Letter to Ken Schuler from Jessamyn Berniker re claim terms for construction | Relevance |
|---|---|---|---|---|
| TX 520 | | 12/16/85 | English Translation for IV/1985 Quarterly Report  BOE00849225-BOE00849236 | Relevance, Hearsay |
| TX 521 | | 3/24/2007 | "FDA Announces Voluntary Withdrawal of Pergolide Products," *FDA News*, New Releases P07-54 | Relevance, Hearsay, Late Production |
| TX 522 | | 2005 | R. Allen, A. Walters, et al., "Restless Legs Syndrome Prevalence and Impact: REST General Population Study," *Archives of Internal Medicine*, Volume 165, 2005, p. 1286-92 | Relevance, Hearsay, Late Production |
| TX 523 | | | "Restless Legs Syndrome Fact Sheet," National Institute of Neurological Disorders and Stroke: www.ninds.nih.gov | Relevance, Hearsay, Late Production |
| TX 524 | | | "Cancer Facts and Figures 2006," American Cancer Society | Relevance, Hearsay, Late Production |
| TX 525 | | | "All About Diabetes," American Diabetes Association: www.diabetes.org/about-diabetes.jsp | Relevance, Hearsay, Late Production |
| TX 526 | | | M. Silber, et al. "An Algorithm for the Management of Restless Legs Syndrome," *Mayo Clinic Proceedings*, Vol. 79(7), 2004, p. 916-922 | Relevance, Hearsay, Late Production |
| TX 527 | BOE00708678 | | Statement of Income: Spreadsheet | Relevance, Hearsay |
| TX 528 | BARR026065-BARR026068 | | Barr Laboratories, Inc. Abbreviated New Drug Application Pramipexole Dihydrochloride Tablets, 0.25 mg Basis for the ANDA Submission | Relevance |
| TX 529 | BARR022417-BARR022603 | | Barr Laboratories, Inc. Abbreviated New Drug Application Pramipexole Dihydrochloride Tablets, 0.25 mg Chemistry, Manufacturing and Controls: Drug Substance | Relevance |
| TX 530 | BARR022131-BARR022287 | | Barr Laboratories, Inc. Abbreviated New Drug Application Pramipexole Dihydrochloride Tablets, 0.25 mg Bioavailablity/Bioequivalence Summary | Relevance |
| TX 531 | BARR027070-BARR027073 | | Barr Laboratories, Inc. Abbreviated New Drug Application Pramipexole Dihydrochloride Tablets, 0.25 mg Amendment for addition of 0.125mg, 0.5 mg, 1 mg, and 1.5 mg strengths Basis for the ANDA Submission | Relevance |
| TX 532 | BARR026530-BARR026651 | | Barr Laboratories, Inc. Abbreviated New Drug Application Pramipexole Dihydrochloride Tablets, 0.25 mg | Relevance |

| | | | Amendment for addition of 0.125 mg, 0.5 mg, 1 mg, and 1.5 mg strengths<br>Bioavailability/Bioequivalence General Information | |
|---|---|---|---|---|
| TX 533 | BARR042894-<br>BARR042946 | | Barr Laboratories, Inc. Abbreviated New Drug Application Pramipexole Dihydrochloride Tablets, 0.25 mg<br>Amendment for addition of 0.125 mg, 0.5 mg, 1 mg, and 1.5 mg strengths<br>Comparison between Last Submitted and Proposed Labeling | Relevance |
| TX 534 | BARR045496-<br>BARR045572 | | Barr Laboratories, Inc. Abbreviated New Drug Application Pramipexole Dihydrochloride Tablets, 0.25 mg<br>Comparison between Generic Drug and Reference Listed Drug | Relevance |
| TX 535 | MYL0002161-<br>MYL0002175 | | Pramipexole Dihydrochloride Tablets 0.125 mg Side by Side Comparison of the Bottle Label | Relevance |
| TX 536 | | 09/29/06 | Letter to Joel Neckers from David Harth re Mylan's interest in litigation | Relevance, Hearsay |
| TX 537 | BOE00650147-<br>BOE00650169 | | Article: Prospective Study of Periodic Leg Movements in Prepubertal Children with Sleep Complaints | Relevance, Hearsay |
| TX 538 | BOE00673350-<br>BOE00673353 | 02/27/01 | Certified copy of U.S. Patent 6,194,445<br>Oertel, et al.<br>Use of Pramipexole in the Treatment of Restless Legs Syndrome | Relevance, Hearsay |
| TX 539 | BOE00673354-<br>BOE00673357 | 12/14/99 | Certified Copy of U.S. Patent 6,001,861<br>Oertel et al.<br>The Use of Pramipexole in the Treatment of Restless Legs Syndrome | Relevance, Hearsay |
| TX 540 | BOE00879936-<br>BOE00879938 | 02/20/01 | Certified copy of U.S. Patent 6,191,153<br>Hammer et al.<br>Use of 2-Amino-6-N-Propyl-Amino-4,5,6,7-Tetrahydrobenzothiazole as a pharmaceutical Composition Having an Antidepressant Activity | Relevance, Hearsay, Lack of Foundation |
| TX 542 | | 06/15/04 | Certified Copy of U.S. Patent 6,750,235<br>Rosenbaum<br>Pramipexole as a Treatment for Cocaine Craving | Relevance, Hearsay, Lack of Foundation |
| TX 543 | | 07/22/97 | Certified copy U.S. Patent 5,650,420<br>Hall et al.<br>Pramipexole as a Neuroprotective Agent | Relevance, Hearsay, Lack of Foundation |
| TX 544 | | 10/09/01 | Certified copy of U.S. Patent 6,300,365<br>Holman | Relevance, Hearsay, Lack of Foundation |

| | | | Use of Dopamine D2/D3 Receptor Agonists to Treat Fibromyalgia | |
|---|---|---|---|---|
| TX 545 | BOE00649690-<br>BOE00649708 | | Presentation: Boehringer Ingelheim Slides on LCM | Relevance, Hearsay |
| TX 546 | BOE00001459-<br>BOE00001479 | 10/15/02 | Transition Agreement between Boehringer Ingelheim International GmbH and Pfizer Inc. | Relevance, Hearsay |

Exhibit 7

**BOEHRINGER INGELHEIM INTERNATIONAL GmbH et al. v. BARR LABORATORIES, Inc. et al.**
**DEFENDANTS' TRIAL EXHIBIT LIST**

Defendants reserve the right to modify, supplement, or amend this Exhibit List, including to respond to any issues, exhibits, or witnesses presented by Boehringer.

| TRIAL EXHIBIT NO. | DATE | DESCRIPTION | BATES RANGE | DEPOSITION EXHIBIT NO. | PLAINTIFFS' OBJECTIONS[1] |
|---|---|---|---|---|---|
| 1 | 3/15/1988 | Certified Copy of USPN 4,731,374, Griss, deceased, et al., *Tetrahydro-Benzthiazoles, The Preparation Thereof and Their Use as Intermediate Products or as Pharmaceuticals* | BOE00000033-47 | 1 | |
| 2 | 6/27/1989 | Certified Copy of USPN 4,843,086, Griss, deceased, et al., *Tetrahydro-Benzthiazoles, The Preparation Thereof and Their Use as Intermediate Products or as Pharmaceuticals* | BOE00000016-32 | 2 | |
| 3 | 12/12/1989 | Certified Copy of USPN 4,886,812, Griss, deceased, et al., *Tetrahydro-Benzthiazoles, The Preparation Thereof and Their Use as Intermediate Products or as Pharmaceuticals* | BOE0000001-15 | 3 | |
| 4 | 7/3/1986 | German Application DE 3447075 A1 | BOE00003998-4052 | 4 | Relevance, Hearsay |
| 5 | 9/18/1986 | German Application DE 3508947 A1 | -- | 5 | Relevance, Hearsay |
| 6 | | Laboratory Notebook of Hanfried Baltes | BOE00058521-58620 | 6 | Relevance, Hearsay |
| 7 | | Laboratory Notebook of Rosemary Kurz | BOE00001102-1201 | 7 | Relevance, Hearsay |
| 8 | | Laboratory Notebook of Michael Lavall | BOE00061964-62067 | 8 | Relevance, Hearsay |

---

[1]     As used in the following objections, "Relevance" refers to Federal Rules of Evidence 401, 402 and 403; "Hearsay" refers to Federal Rules of Evidence 801, 802 and 805; "Authenticity" refers to Federal Rule of Evidence 901; "Lack of Foundation" refers to Federal Rules of Evidence 602 and 901; "Confusing" refers to Federal Rule of Evidence 403; and "Incomplete" refers to Federal Rules of Evidence 106, 401, 402 and 403.  By setting forth these objections to the documents on Defendants' Trial Exhibit List, Plaintiffs do not concede that the descriptions of the documents on Defendants' list are necessarily accurate.  Plaintiffs reserve the right to object further to documents on or added to this list on any basis that depends upon how a document is introduced, for what purpose a document is introduced, and what portion of a document is introduced.

| TRIAL EXHIBIT NO. | DATE | DESCRIPTION | BATES RANGE | DEPOSITION EXHIBIT NO. | PLAINTIFFS' OBJECTIONS[1] |
|---|---|---|---|---|---|
| 11 | 11/30/1983 – 2/21/1984 | Excerpt from Laboratory Notebook of Bennett Laguzza | LLY 40-44 | 11 | Relevance, Hearsay |
| 12 | | Illustration of Dipropyl Compound | -- | 12 | Relevance, Hearsay, Authenticity, Lack of Foundation, Incomplete, Confusing |
| 13 | 12/13/1983 | Graph of Mass Spectrometry Report | LLY 4 | 13 | Relevance, Hearsay, Authenticity, Lack of Foundation, Incomplete, Confusing |
| 14 | 1/5/1984 | Excerpt of Laboratory Notebook of Richard Hahn | LLY 7-9 | 14 | Relevance, Hearsay |
| 15 | 12/23/1983 | Results of Prolactin Inhibition Test Conducted by E. Barry Smalstig | LLY 6 | 15 | Relevance, Hearsay |
| 16 | 1/24/1984 | Results of Rat-Turning Test Conducted by E. Barry Smalstig | LLY 5 | 16 | Relevance, Hearsay |
| 17 | 6/29/2006 | 30(b)(6) Subpoena of Eli Lilly & Co. | -- | 17 | Relevance, Hearsay |
| 18 | 6/24/1985 | U.S. Patent Application 747,748 | BARR027389-414 | 18 | |
| 19 | | Chart Showing Tests Conducted at Eli Lilly & Co. | LLY 39 | 19 | Relevance, Hearsay |
| 21 | 6/20/1986 | Republic of South Africa Patent Application 864,626 | BARR027291-315 | 21 | Relevance, Hearsay |
| 22 | 6/20/1986 | European Patent Application 0 207 696 A1 | BARR027263-288 | 22 | Relevance, Hearsay |
| 23 | 1/8/1987 | Australia Patent Application AU-A-59195/86 | BARR027348-374 | 23 | Relevance, Hearsay |
| 24 | 1/6/1987 | Japan Patent Application 61-147991 | BARR027415-423 | 24 | Relevance, Hearsay |
| 25 | 6/1/2006 | Japan Patent Application 61-147991 (Translation) | BARR045456-470 | 25 | Relevance, Hearsay, Lack of Foundation, Authenticity |
| 26 | 4/27/1987 | *Chemical Abstracts*, Vol. 106, No. 17. | BARR029174-175 | 26 | Relevance, Hearsay |
| 27 | 2/20/1984 | Excerpt from Laboratory Notebook of Bennett Laguzza | LLY 53 | 27 | Relevance, Hearsay, Authenticity, Lack of Foundation, Incomplete |

| TRIAL EXHIBIT NO. | DATE | DESCRIPTION | BATES RANGE | DEPOSITION EXHIBIT NO. | PLAINTIFFS' OBJECTIONS[1] |
|---|---|---|---|---|---|
| 30 | 9/7/1983 – 11/20/1985 | Laboratory Notebook of William Turner | LLY 45-48 | 30 | Relevance, Hearsay |
| 31 | | Illustration of Dimethyl Compound with R1 and R2 as Hydrogen | -- | 31 | Relevance, Hearsay, Authenticity, Lack of Foundation |
| 32 | | Illustration of Dimethyl Compound with R1 as Hydrogen and R2 as Methyl | -- | 32 | Relevance, Hearsay, Authenticity, Lack of Foundation |
| 46 | 12/19/1985 | Certified Copy of the File History of USPN 4,731,374, Griss, deceased, et al., *Tetrahydro-Benzthiazoles, The Preparation Thereof And Their Use As Intermediate Products Or As Pharmaceuticals* | BARR000065-427 | 46 | |
| 51 | 2001 | *The Merck Index* (Maryadele J. O'Neil et al. eds., 13th ed. 2001) | BARR022107-110 | 51 | Relevance, Hearsay |
| 53 | 2/26/1985 | Translation of German Application DE 3447075 A1, for filing with Australia Application 51544/85 | BARR028267-324 | 53 | Relevance |
| 88 | 7/2/1988 | Foreign Filing Text for 5/920 and 1/737 | BARR027709-71 | 88 | Relevance |
| 95 | 5/10/1988 | Letter from Drs. Fleischer and Milnes to European Patent Office Objecting to European Application 0 207 696 A1 because of European Patent Application  0 186 087 A1 | BOE00848610 | 95 | Relevance |
| 99 | 10/12/1988 | Certified Copy of the File History of U.S. Patent Application 256,671 | BARR000615-925 | 99 | |
| 100 | | Boehringer Ingelheim's Privilege Log | -- | 100 | Relevance |
| 106 | 1/25/1993 | Boehringer Ingelheim Product Development Plan for Pramipexole | BOE00037394-531 | 106 | |
| 112 | 9/15/2006 | Barr's 30(b)(6) Deposition Notice to Boehringer Ingelheim | -- | 112 | Relevance, Hearsay |
| 119 | 4/13/1987 | Summary of 4/6/1987 Development Team Meeting Signed by Juergen Kauffmann | BOE00131525-29 | 119 | Relevance |
| 121 | 5/18/1988 | Project Status Report for SND 919 | BOE00033115 | 121 | Relevance |
| 122 | 8/5/1988 | Project Status Report for SND 919 | BOE00033114 | 122 | Relevance |
| 127 | 9/29/1988 | SND 919 Quarterly Development Report | BOE00033352-54 | 127 | Relevance |
| 130 | 11/23/1987 | Draft of a Concept of Development for SND 919 | BOE00131033-99 | 130 | Relevance |

| TRIAL EXHIBIT NO. | DATE | DESCRIPTION | BATES RANGE | DEPOSITION EXHIBIT NO. | PLAINTIFFS' OBJECTIONS[1] |
|---|---|---|---|---|---|
| 133 | 12/15/1988 | Records from Presentation of Dr. Herschel During PSK Meeting | BOE00131824-40 | 133 | Relevance |
| 134 | 5/9/1988 | Memo re: Patent Situation for SND 919 CL 2 Y | BOE00136612-13 | 134 | Relevance |
| 235 | 9/15/2006 | Barr's 30(b)(6) Deposition Notice to Boehringer Ingelheim | -- | 235 | Relevance, Hearsay |
| 252 | 6/26/1990 | File History for European Patent Application 0 186 087 | BARR027685-972 | 252 | Relevance, Hearsay |
| 253 | 12/16/1985 | European Patent Application  0 186 087 | -- | 253 | Relevance, Hearsay |
| 257 | 11/1/2006 | Letter from Amanda Hollis to Dov Grossman re: 30(b)(6) witnesses for Boehringer | -- | 257 | Relevance |
| 286 | 6/27/1989 | Certified Copy of the File History of USPN 4,843,086, Griss, deceased, et al., *Tetrahydro-Benzthiazoles, The Preparation Thereof And Their Use As Intermediate Products Or As Pharmaceuticals* | BARR000428- 614 | 286 | |
| 305 | 2/2007 | Table of Contents along with Presentation Titled "Performance Metrics – Overview by Diagnoses" | BOE00881507 | 305 | |
| 306 | | IMS Sales Data 6/2001 – 12/2006 | BOE00881503 | 306 | |
| 310 | 2001 | National Disease and Therapeutics Index from IMS Health | BARR209593 (CD) | 310 | |
| 312 | 9/5/2007 | Excerpt from icd9data.com re: Diagnosis Codes for Diseases of the Nervous System | -- | 312 | |
| 320 | 11/1982 | Akpinar, S., *Treatment of Restless Legs Syndrome With Levodopa Plus Benserazide*, Arch. Neurol. 39:739 (1982). | BARR209413–16 | 320 | Relevance, Hearsay |
| 322 | 10/12/1982 | N. Bouras and P.K. Bridges, *Bromocriptine in Depression*, Current Medical Research and Opinion, Vol. 8, No. 3, 1982 | BARR209482-86 | 322 | Relevance, Hearsay |
| 700 | 9/26/2005 | Complaint (D.I. 1) | -- | | |
| 701 | 10/14/2005 | Amended Complaint (D.I. 7) | -- | | |
| 702 | 3/2/2006 | Plaintiffs' Objections and Responses to Defendant's First Set of Interrogatories (Nos. 1-9) | -- | | |
| 703 | 10/10/2006 | Plaintiffs' Objections and Responses to Defendant's Second Set of Interrogatories (Nos. 10-17) | -- | | |

| TRIAL EXHIBIT NO. | DATE | DESCRIPTION | BATES RANGE | DEPOSITION EXHIBIT NO. | PLAINTIFFS' OBJECTIONS[1] |
|---|---|---|---|---|---|
| 704 | 1/30/2007 | Plaintiffs' Objections and Responses to Defendant's Third Set of Interrogatories (Nos. 18-45) | -- | | |
| 705 | 3/28/2007 | Plaintiffs' Supplemental Objections and Responses to Defendant's Third Set of Interrogatories (Nos. 29 and 40) | -- | | |
| 706 | 4/26/2007 | Plaintiffs' Objections and Responses to Defendant's Fourth Set of Interrogatories (Nos. 46-48) | -- | | |
| 707 | 9/17/2007 | Plaintiffs' Supplemental Objections and Responses to Defendant's Third Set of Interrogatories (No. 26) | -- | | |
| 708 | 2/14/2006 | Plaintiffs' Initial Disclosures | -- | | Relevance |
| 709 | 8/14/2006 | Plaintiffs' Objections and Responses to Defendant's First Requests for Admission (Nos. 1-2) | -- | | Relevance |
| 710 | 7/13/2007 | Plaintiffs' Objections and Responses to Defendant's Second Requests for Admission (Nos. 3-225) | -- | | Relevance |
| 711 | 10/20/2006 | Boehringer's Supplemental Privilege Log | -- | | Relevance |
| 712 | 1/3/2007 | Letter from Joel Neckers to Jessamyn Berniker and Bloodworth re Proposed Construction of Claim Terms from the '812 Patent | -- | | Relevance |
| 713 | 5/18/1988 | Translation of Exhibit 121 | -- | | Relevance |
| 714 | 5/18/1988 | Translation of Exhibit 122 | -- | | Relevance |
| 715 | 5/9/1988 | Translation of Exhibit 134 | -- | | Relevance |
| 716 | 3/28/2007 | CV of Dale H. Hoscheit, Esq. | -- | | |
| 717 | 7/9/2007 | CV of Richard B. Mailman, Ph.D. | -- | | |
| 718 | 3/13/1985 | Translation of Exhibit 5 – German Application DE 3508497 A1 | BARR209351-403 | | Relevance |
| 719 | 7/22/2005 | Sections of Mylan's ANDA | MYL00000878-1377 | | |
| 720 | 3/28/2007 | CV of Eric V. Anslyn, Ph.D. | -- | | |
| 721 | 5/10/1988 | Translation of Exhibit 95 | BARR209408-09 | | Relevance |
| 722 | 1/25/1996 | Chemistry Development Report for | BOE00075129-62 | | Relevance |

| TRIAL EXHIBIT NO. | DATE | DESCRIPTION | BATES RANGE | DEPOSITION EXHIBIT NO. | PLAINTIFFS' OBJECTIONS[1] |
|---|---|---|---|---|---|
| | | SND 919 CL 2 Y | | | |
| 723 | 5/5/1978 | Tamminga, et al., Schizophrenic Symptoms Improve with Apomorphine, *Science*, 200:567-68 (1978) | -- | | Relevance, Hearsay, Untimely Disclosure |
| 724 | 2006 | *The Merck Index*, (Maryadele J. O'Neil et al. eds., 14th ed. 2006) at 7707 | BARR209410-12 | | Relevance, Hearsay |
| 725 | 12/1982 | Fuller, et al., Degree of Selectivity of Pergolide as an Agonist Versus Postsynaptic Dopamine Receptors: Implications for Prevention or Treatment of Tardive Dyskinesia, *J. Clinical Psychopharmacology*, Vol. 2 No. 6 (1982) | -- | | Relevance, Hearsay, Untimely Disclosure |
| 726 | 6/17/1967 | Strang, R.R., The Symptoms of Restless Legs, *Med. J. of Australia*, 1211-13 (June 17, 1967) | -- | | Relevance, Hearsay, Untimely Disclosure |
| 727 | 2005 | Fahn, et al., Does Levodopa Slow or Hasten the Rate of Progression of Parkinson's Disease?, *J. Neurol.* 252 [Suppl 4]: IV/37-IV/42 | BARR209417-22 | | Relevance, Hearsay |
| 728 | 2007 | Chan, et al., Levodopa Slows Progression of Parkinson's Disease. External Validation by Clinical Trial Stimulation, *Pharm. Res.*, 24:791-802 (2007) | BARR209423-34 | | Relevance, Hearsay |
| 729 | 1998 | Beal et al., Coenzyme $Q_{10}$ Attenuates the 1-methyl1-4-phenyl-1,2,3,6-tetrahydropyridine (MPTP) Induced Loss of Striatal Dopamine and Dopaminergic Axons in Aged Mice, *Brain Res.*, 783:109-114 (1998) | BARR209435-40 | | Relevance, Hearsay |
| 730 | 2007 | Storch et al., Randomized, Double-Blind, Placebo-Controlled Trial on Symptomatic Effects of Coenzyme $Q_{10}$ in Parkinson Disease, *Arch. Neurol.* 64:E1-E6 (2007) | BARR209441-47 | | Relevance, Hearsay |
| 731 | 2006 | Williams, J.M. and Galli, A. (2006) The Dopamine Transporter: A Vigilant Border Control for Psychostimulant Action. *Handb. Exp. Pharmacol.* 175:215-32. | BARR209448-65 | | Relevance, Hearsay |
| 732 | 2007 | Abeles et al., Narrative Review: The Pathophysiology of Fibromyalgia, *Ann. Intern. Med.* 146:726-734 (2007) | BARR209466-75 | | Relevance, Hearsay |

| TRIAL EXHIBIT NO. | DATE | DESCRIPTION | BATES RANGE | DEPOSITION EXHIBIT NO. | PLAINTIFFS' OBJECTIONS[1] |
|---|---|---|---|---|---|
| 733 | 2006 | Clayton, A.H. and West, S.G. (2006) Combination Therapy in Fibromyalgia. *Curr. Pharm. Design.* 12:11-16. | BARR209476-81 | | Relevance, Hearsay |
| 734 | 1982 | Theohar et al., A Comparative, Multicenter Trial Between Bromocriptine and Amiriptyline in the Treatment of Endogenous Depression, *Azrneimittelforschung.* 32:783-787 | BARR209487-93 | | Relevance, Hearsay |
| 735 | 1983 | Jouvent et al., Antiparkinsonian and Antidepressant Effects of High Doses of Bromocriptine, *J. Affect. Disord.* 5:141-145 (1983) | BARR209494-500 | | Relevance, Hearsay |
| 736 | 11/2007 | Happe et al., *Treatment of Idiopathic Restless Legs Syndrome (RLS) with Gabapentin*, Neurology 2001;57:1717-1719 | BARR209587-589 | | Relevance, Hearsay |
| 737 | 1998 | Winkelman et al., *Treatment of Restless Leg Syndrome with Pergolide – An Open Clinical Trial*, Movement Disorders Vol. 13, No. 3, 1998, pp. 566-567 | BARR209590-593 | | Relevance, Hearsay |
| 738 | 5/25/2005 | Allen, *An Introduction to Restless Leg Syndrome*, Medscape Neurology & Neurosurgery 2005; 7(1) | BARR209594-598 | | Relevance, Hearsay |
| 739 | 10/18/2005 | Mirapex RLS 2006 Business Plan | BOE00677589-7614 | | |
| 740 | 4/5/2004 | Direct Promotion Summary: 2004-2009, BIPI Prescription Medicine – Branded, April 5, 2004 | BOE00699110 | | Relevance |
| 741 | | Pramipexole-Restless Leg Syndrome, Project Cost Estimate, Years 1998 through 2001 | BOE00700258 | | Relevance, Hearsay |
| 742 | | Pramipexole-Restless Leg Syndrome, Project Cost Estimate, Years 1998 through 2001 | BOE00700265-70 | | Relevance, Hearsay |
| 743 | | Roy Weinstein Workpapers | BARR209585 | | Relevance, Hearsay |
| 744 | | Roy Weinstein Workpapers | BARR209586 | | Relevance, Hearsay |
| 745 | 2007 | National Disease and Therapeutic Index Diagnosis Vol. 1, 1Q 2007 | BARR209506-546 | | Relevance, Hearsay |
| 746 | 2007 | National Disease and Therapeutic Index Drug Vol. 1, 1Q 2007 | BARR209547-584 | | Relevance, Hearsay |
| 747 | | 2006 Boehringer Annual Report | -- | | |
| 748 | 5/5/2005 | GSK Press Release May 5, 2005 | BARR209501-02 | | Relevance, Hearsay, Authenticity, Lack of |

| TRIAL EXHIBIT NO. | DATE | DESCRIPTION | BATES RANGE | DEPOSITION EXHIBIT NO. | PLAINTIFFS' OBJECTIONS[1] |
|---|---|---|---|---|---|
| | | | | | Foundation |
| 749 | 11/10/2006 | Boehringer Ingelheim Press Release November 10, 2006 | BARR209503-05 | | Relevance |
| 750 | | David, J. and Stewart, M.B. "Commercial Success: Economic Principles Applied to Patent Litigation," Economic Damages in Intellectual Property, John Wiley & Sons, 2006 | -- | | Relevance, Hearsay, Untimely Disclosure |
| 751 | 8/2005 | Mylan's Proposed Product Labeling Information | MYL0002111-49 | | |
| 752 | | Mylan's Proposed Label | MYL0003931-84 | | |
| 753 | 2/2/2006 | Mirapex Label | BARR000926-47 | | |
| 754 | 8/2006 | Barr's Revised Proposed Label | BARR208788-806 | | |
| 755 | | Mylan's Proposed Label Insert | MYL00002176R-212R | | |
| 756 | | IMS Data (Anti-Parkinson's) 1997 - 2005 | BARR209585 | | Relevance, Hearsay |
| 757 | | IMS Data (Anti-Parkinson's) 6/2001 - 5/2007 | BARR209586 | | Relevance, Hearsay |
| 758 | | IMS Data (L-Dopa) 1997 - 2001 | BARR209587 | | Relevance, Hearsay |
| 759 | | IMS Data (L-Dopa) 2001 - 2007 | BARR209588 | | Relevance, Hearsay |
| 760 | | IMS Data (Anti-Parkinson's) 1997 - 2005 | BARR209589 | | Relevance, Hearsay |
| 761 | | IMS Data (L-Dopa Sales Perspective) 1997 – 2001 | BARR209590 | | Relevance, Hearsay |
| 762 | | IMS Data (Anti-Parkinson's Sales Perspective) 1997 - 2005 | BARR209591 | | Relevance, Hearsay |
| 763 | | IMS Data (L-Dopa Sales Perspective) 2001 – 2007 | BARR209592 | | Relevance, Hearsay |
| 764 | | IMS Data (NDTI) 2001 | BARR209593 | | Relevance, Hearsay |
| 765 | | IMS Data (NDTI) 2002 - 2007 | BARR209594 | | Relevance, Hearsay |
| 766 | 9/6/1985 | Memorandum re SND 919 CL 2 Y | BOE00132270-71 | | Relevance |
| 767 | | English Translation of Exhibit 766 | BOE00881956-57 | | Relevance |
| 768 | 2007 | Excerpt from icd9data.com re: Diagnosis 332 | -- | | Relevance, Hearsay, Authenticity, Lack of Foundation, Untimely Disclosure |

| TRIAL EXHIBIT NO. | DATE | DESCRIPTION | BATES RANGE | DEPOSITION EXHIBIT NO. | PLAINTIFFS' OBJECTIONS[1] |
|---|---|---|---|---|---|
| 769 | 2007 | Excerpt from icd9data.com re: Diagnosis 296 | -- | | Relevance, Hearsay, Authenticity, Lack of Foundation, Untimely Disclosure |
| 770 | 2007 | Excerpt from icd9data.com re: Diagnosis 311 | -- | | Relevance, Hearsay, Authenticity, Lack of Foundation, Untimely Disclosure |
| 771 | 2007 | Excerpt from icd9data.com re: Diagnosis 729 | -- | | Relevance, Hearsay, Authenticity, Lack of Foundation, Untimely Disclosure |
| 772 | 2007 | Excerpt from icd9data.com re: Diagnosis 314 | -- | | Relevance, Hearsay, Authenticity, Lack of Foundation, Untimely Disclosure |
| 773 | 7/18/2007 | CV of Roy Weinstein | -- | | |
| 774 | 7/18/2007 | Exhibit 3 to Weinstein's Report | -- | | Relevance, Hearsay |
| 775 | 7/18/2007 | Exhibit 4 to Weinstein's Report | -- | | Relevance, Hearsay |
| 776 | 7/18/2007 | Exhibit 5 to Weinstein's Report | -- | | Relevance, Hearsay |
| 777 | 7/18/2007 | Exhibit 6 to Weinstein's Report | -- | | Relevance, Hearsay |
| 778 | 7/18/2007 | Exhibit 7 to Weinstein's Report | -- | | Relevance, Hearsay |
| 779 | 7/18/2007 | Exhibit 8 to Weinstein's Report | -- | | Relevance, Hearsay |
| 780 | 7/18/2007 | Exhibit 9 to Weinstein's Report | -- | | Relevance, Hearsay |
| 781 | 11/13/2006 | Barr's Amended Answer and Counterclaims (D.I. 107) | -- | | |
| 782 | 1/4/2006 | Mylan's Answer and Counterclaims (D.I. 6) | -- | | |

**Exhibit 8**

**Boehringer's Witness List**

Boehringer reserves the right to modify, supplement, or change this Witness List to the extent necessary to respond to any issues, exhibits or witnesses that Barr or Mylan include in their respective proposed sections of the pretrial order.

## I.     FACT WITNESSES

Boehringer may call each of the following witnesses:

Heidi C. Reidies
Boehringer Ingelheim Pharmaceuticals, Inc.
900 Ridgebury Rd.
Ridgefield, CT  06877
Phone:  (203) 798-4345

Heinz-Gerd Klaes
Boehringer Ingelheim Pharma GmbH & Co. KG
Binger Straße 173
55216 Ingelheim am Rhein
Germany
Phone:  49613-2773-905

Elizabeth Keating
Executive Director, Mirapex
Boehringer-Ingelheim Pharmaceuticals, Inc.
900 Ridgebury Rd.
Ridgefield, CT 06877
(203) 798-5207

Boehringer may also call any witnesses listed by Barr or Mylan.  Boehringer further reserves its right to call additional witnesses in rebuttal to those witnesses called by Barr or Mylan.

## II.     EXPERT WITNESSES

Boehringer intends to call the following expert witnesses during trial.  Each witness's specialty is indicated.

Dr. Paul Bartlett (Organic and Medicinal Chemistry)
Department of Chemistry, MC 1460
University of California
Berkeley, California 94720-1460

Phone (510) 642-1259

Dr. Alexander Klibanov (Organic and Medicinal Chemistry)
Room 56-579
Massachusetts Institute of Technology
77 Massachusetts Ave.
Cambridge, MA 02139-4307
(617) 253-3556

Mohan P. Rao, Ph.D. (Economics)
LECG
1603 Orrington Ave. Suite 1500
Evanston, IL 60201
Phone: (847) 424-4109

Dr. Warren Olanow (Medicine, including Neurology, Parkinson's Disease, and
Movement Disorders)
Chairman Department of Neurology
Mount Sinai Medical Center
Box 1137
New York, NY 10029
Phone: (212) 241-8435

These experts are expected to testify as to the facts and opinions stated in their expert

reports, which are incorporated herein by reference.

2

**Exhibit 9**

**Defendants' Witness List**

Defendants set forth below the names and addresses of the witnesses whom they may call to testify at trial.  Defendants reserve the right to modify, supplement, or change this Witness List, including to respond to any issues, exhibits, or witnesses presented by Boehringer.  If any witness listed as a person who Defendants may call to testify in person is unavailable, Defendants reserve the right to offer deposition testimony from such witness.  Defendants may also call any witnesses listed by Boehringer.  Defendants further reserve their right to call additional witnesses in rebuttal to evidence submitted by Boehringer.

## I.    FACT WITNESSES

Defendants may call each of the following witnesses to testify live:

- A Boehringer Ingelheim Boehringer Ingelheim International GmbH document custodian

- A Boehringer Ingelheim Pharmaceuticals, Inc. document custodian

- Nicholas Tantillo
  Barr Laboratories, Inc.
  400 Chestnut Ridge Rd
  Woodcliff Lake, NJ 07677

- Jason Harper
  Mylan Pharmaceuticals Inc.
  781 Chestnut Ridge Road
  Morgantown, WV  26505

## II.    EXPERT WITNESSES

Defendants may call the following expert witnesses during trial.  Each witness's area of expertise is indicated.

Eric V. Anslyn, Ph.D. (Chemistry)
University of Texas at Austin
Department of Chemistry and Biochemistry
Austin, TX 78712

Richard B. Mailman, Ph.D. (Neuroscience and Neuropharmacology)
CB #7160
7001C NC Neuroscience Hospital
University of North Carolina School of Medicine
Chapel Hill, NC 27599

Roy Weinstein (Economics)
Micronomics, LLC
777 South Figueroa St., Suite 4600
Los Angeles, California 90017

Dale H. Hoscheit, Esq. (Patent Prosecution)
Banner & Witcoff, Ltd.
1100 13th Street, N.W.
Suite 1200
Washington, D.C. 20005

These experts are expected to testify as to the facts and opinions stated in their expert reports and

depositions, which are incorporated herein by reference.

**Exhibit 10 – BOEHRINGER'S DEPOSITION DESIGNATIONS**

Boehringer reserves the right to modify, supplement, or change these Deposition Designations to the extent necessary to respond to any issues, exhibits or witnesses that Barr or Mylan include in their respective proposed sections of the pretrial order.

**Deposition of Sonja Indahl**
**12/15/06**

| Deposition Designations | Objections[1] | Counter-designations |
|---|---|---|
| 6:14-7:1 | Relevance; Incomplete | |
| 10:3-10:15 | Relevance | |
| 13:3-13:22 | Relevance | |
| 30:1-31:12 | Relevance; Lack of Foundation; Calls for Speculation | |
| 38:17-39:1 | Relevance; Hearsay | |
| 78:6-79:4 | Relevance | |
| 83:2-84:6 | Relevance; Hearsay | |
| 90:5-90:20 | Relevance | 90:21-91:6 |
| 91:7-91:11 | Relevance | 91:20-92:2; 92:5-11 |
| 123:15-124:16 | Relevance; Lack of Foundation | |
| 126:1-126:6 | Relevance; Hearsay | |
| 126:1-127:13 | | |

---

[1] As used in the foregoing objections, "Relevance" refers to Federal Rules of Evidence 401, 402, and 403; "Hearsay" refers to Federal Rules of Evidence 801, 802, and 805; "Lack of Foundation" refers to Federal Rules of Evidence 602 and 901; "Calls for Speculation" refers to Federal Rule of Evidence 602; "Incomplete" refers to Federal Rules of Evidence 106, 401, 402, and 403; "Cumulative" and "Asked and Answered" refer to Federal Rules of Evidence 403 and 611(a); "Confusing" refers to Federal Rule of Evidence 403; "Calls for a Legal Conclusion" refers to Federal Rule of Evidence 701; "Best Evidence" refers to Federal Rule of Evidence 1002;  and "Vague and Ambiguous" and "Indefinite" refer to Federal Rules of Evidence 403 and 611(a).

**Deposition of Nicholas Tantillo**
**01/18/07**

| **Deposition Designations** | **Objections** | **Counter-designations** |
|---|---|---|
| 10:13-11:19 | Relevance | |
| 12:14-12:21 | Relevance | |
| 13:22-14:4 | Relevance | |
| 19:3-19:10 | Relevance; Hearsay | |
| 20:19-22:9 | Relevance; Hearsay | |
| 27:20-27:23 | Relevance; Incomplete | 27:24-28:20 |
| 29:4-29:7 | Relevance | |
| 56:7-56:23 | Relevance | |
| 59:12-59:25 | Relevance | |
| 70:2-70:18 | Relevance; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | 70:19-70:22 |
| 70:23-71:7 | Relevance; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | 71:8-71:10 |
| 71:11 | Relevance | |
| 71:12-72:23 | Outside the Scope of Rule 30(b)(6) Topic; Relevance; Late Designation | |
| 73:19-77:10 | Relevance | |
| 79:7-81:13 | Relevance; Outside the Scope of Rule 30(b)(6) Topic | |
| 83:23-84:15 | Relevance; Hearsay; Incomplete | 84:16-84:20 |
| 84:21-84:24 | Relevance; Incomplete; Outside the Scope of Rule 30(b)(6) | |

**Deposition of Nicholas Tantillo**
**01/18/07**
**(continued)**

| Deposition Designations | Objections | Counter-designations |
|---|---|---|
| | Topic | |
| 87:3-87:18 | Relevance; Incomplete; Outside the Scope of Rule 30(b)(6) Topic; Calls for Speculation | 87:23-24 |
| 88:3 | Relevance; Outside the Scope of Rule 30(b)(6) Topic | |
| 88:15-89:22 | Relevance | |
| 90:3-91:17 | Relevance | |
| 91:23 | Relevance | |
| 92:11-92:16 | Relevance | |
| 93:15-93:18 | Relevance; Lack of Foundation | |
| 93:22-94:25 | Relevance | |
| 95:20-95:22 | Relevance; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | 95:23-96:3 |
| 96:4-96:20 | Relevance; Hearsay; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | 96:21-96:24 |
| 96:25 | Relevance; Outside the Scope of Rule 30(b)(6)Topic; Incomplete | |
| 97:4-5 | Relevance; Incomplete | |
| 97:9-97:18 | Relevance; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | 97:19-97:22 |
| 97:23-98:4 | Relevance; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | |

**Deposition of Nicholas Tantillo**
**01/18/07**
**(continued)**

| Deposition Designations | Objections | Counter-designations |
|---|---|---|
| 99:4-99:13 | Relevance; Outside the Scope of Rule 30(b)(6) Topic; Incomplete; Lack of Foundation | 99:14-99:22 |
| 99:23-100:19 | Relevance; Hearsay; Outside the Scope of Rule 30(b)(6) Topic; Incomplete; Lack of Foundation | 100:20-100:21 |
| 100:22-101:7 | Relevance; Outside the Scope of Rule 30(b)(6) Topic | |
| 110:24-111:20 | Relevance | |
| 116:4-117:4 | Relevance | |
| 131:8-131:14 | Relevance | |
| 131:22-131:25 | Relevance; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | 132:2-132:8 |
| 132:9-10 | Relevance; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | |
| 133:5-133:12 | Relevance | |
| 134:13-135:4 | Relevance; Outside the Scope of Rule 30(b)(6) Topic; Incomplete; Not Evidence | |
| 135:8-135:12 | Relevance; Hearsay; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | 135:13-135:15 |
| 135:16-136:4 | Relevance; Hearsay; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | 136:5-136:8 |
| 136:9-136:17 | Relevance; Hearsay; Outside the Scope of Rule 30(b)(6) Topic; Incomplete; Lack of | |

**Deposition of Nicholas Tantillo**
**01/18/07**
**(continued)**

| Deposition Designations | Objections | Counter-designations |
|---|---|---|
| | Foundation | |
| 142:5-7 | Relevance; Hearsay; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | |
| 142:16-142:20 | Relevance; Hearsay; Outside the Scope of Rule 30(b)(6) Topic; Incomplete; Not Evidence | 142:21-142:25 |
| 143:2 | Relevance; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | 143:3-143:17 |
| 143:18-144:2 | Relevance | |
| 146:17-147:5 | Relevance; Calls for a Legal Conclusion; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | 147:6-147:11 |
| 147:12 | Relevance; Outside the Scope of Rule 30(b)(6) Topic | |
| 149:18-150:15 | Relevance | |
| 152:16-155:13 | Relevance; Outside the Scope of Rule 30(b)(6) Topic | |
| 161:5-161:23 | Relevance | |
| 166:14-168:8 | Relevance | |
| 169:15-170:4 | Relevance | |
| 171:7-173:16 | Relevance; Lack of Foundation; Calls for Speculation | |
| 183:2-18 | Calls for Speculation; Relevance; Late Designation | |

**Deposition of Paul Bisaro**
**01/17/07**

| **Deposition Designations** | **Objections** | **Counter-designations** |
|---|---|---|
| 7:16-9:5 | Relevance; Incomplete | |
| 10:15-19 | Relevance; Late Designation | |
| 13:1-14:9 | Relevance | |
| 14:20-15:8 | Outside the Scope of Rule 30(b)(6) Topic; Relevance; Late Designation | |
| 16:10-17:2 | Relevance; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | 17:3-17:6 |
| 17:7-18:5 | Relevance; Outside the Scope of Rule 30(b)(6) Topic; Incomplete | |
| 26:22-28:18 | Relevance; Outside the Scope of Rule 30(b)(6) Topic; Hearsay | |
| 29:17-29:19 | Relevance; Lack of Foundation; Calls for Speculation; Outside the Scope of Rule 30(b)(6) Topic; Incomplete; Hearsay | 29:20-30:3 |
| 30:4-30:15 | Relevance; Lack of Foundation; Calls for Speculation; Outside the Scope of Rule 30(b)(6) Topic; Incomplete; Hearsay | |
| 50:1-56:25 | Relevance; Calls for Speculation; Hearsay; Outside the Scope of Rule 30(b)(6) Topic | 57:1-58:6 |

**Deposition of Linda O'Dea**
**11/16/06**

| Deposition Designations | Objections | Counter-designations |
|---|---|---|
| 5:23-25 | Relevance | |
| 12:12-13:4 | Relevance; Incomplete | |
| 13:11-15:7 | Relevance | |
| 17:5-18:12 | Relevance; Incomplete | 18:13-18:16 |
| 17:18-21 | Relevance; Compound | 18:13-18:16 |
| 19:4-16 | Relevance | |
| 30:20-31:5 | Relevance; Lack of Foundation; Calls for Speculation | |
| 65:19-21 | Relevance; Incomplete | 65:22-66:8 |
| 67:15-68:5 | Relevance; Calls for Speculation | |

**Deposition of Madhu Sudhan Shaik**
**12/05/06**

| Deposition Designations | Objections | Counter-designations |
|---|---|---|
| 5:20-6:5 | Relevance | |
| 11:4-12:14 | Relevance | |
| 13:2-9 | Relevance | |
| 17:7-19 | Relevance | |
| 19:16-21:14 | Relevance | |
| 36:10-23 | Relevance; Incomplete; Hearsay | |
| 78:3-80:14 | Relevance; Hearsay | |
| 84:25-87:17 | Relevance; Hearsay | |
| 89:4-90:6 | Relevance; Calls for Speculation | |
| 92:10-95:14 | Relevance; Hearsay | |

**Deposition of Jason Harper**
**01/18/07**

| Deposition Designations | Objections | Counter-designations |
|---|---|---|
| 4:9-14 | | |
| 9:20-12:16 | Relevance; Incomplete; Lack of Foundation | 12:17-13:1 |
| 15:21-16:7 | Relevance; Incomplete; Calls for a Legal Conclusion; Vague and Ambiguous; Lack of Foundation | 16:8-16:10 |
| 16:11-17:5 | Incomplete; Lack of Foundation | 17:6 |
| 17:7-12 | Incomplete; Lack of Foundation | |
| 29:19-30:5 | Relevance; Indefinite | |
| 30:20-31:12 | Relevance; Best Evidence; Vague and Ambiguous | |
| 36:4-17 | Relevance; Vague and Ambiguous | |
| 49:8-50:23 | Relevance; Best Evidence | 50:24-51:7 |
| 65:3-13 | Relevance; Incomplete | 65:14-66:4 |
| 70:9-72:8 | Relevance; Incomplete; Best Evidence | 69:12-70:5 |
| 74:20-75:1 | Relevance; Lack of Foundation; Vague and Ambiguous | |
| 92:11-93:4 | Relevance; Incomplete | 93:5-93:16 |
| 93:17-22 | Relevance; Incomplete; Lack of Foundation | |
| 94:6-19 | Relevance; Incomplete; Lack of Foundation; Mischaracterizes Testimony | 94:20-94:24 |
| 95:1-96:3 | Relevance; Incomplete | 96:4-96:7 |

**Deposition of Jason Harper**
**01/18/07**
**(continued)**

| 96:9-99:21 | Relevance; Incomplete | 126:8-127:4 |
|---|---|---|
| 100:5-20 | Relevance; Incomplete | 100:21-101:13; 126:8-127:4 |
| 101:14-19 | Relevance; Incomplete; Lack of Foundation | 101:20-103:9 |
| 106:4-10 | Relevance; Incomplete; Vague and Ambiguous | 106:11 |
| 106:12-109:2 | Relevance; Calls for a Legal Conclusion; Vague and Ambiguous | |
| 127:16-22 | Relevance; Incomplete | |

**Deposition of Rajendra Alvencar**
**10/20/06**

| Deposition Designations | Objections | Counter-designations |
|---|---|---|
| 42:19-43:21 | Relevance; Lack of Foundation; Calls for Speculation; Vague; Late Designation; Witness Not Previously Designated | |

**Exhibit 11**

**Defendants' List Of Deposition Designations**

Defendants set forth below the names and addresses of the witnesses whom they may call to testify at trial by deposition. Defendants reserve the right to modify, supplement, or change this list, including to respond to any issues, exhibits, or witnesses presented by Boehringer. Defendants further reserve the right to designate additional deposition testimony, including from other witnesses, in rebuttal to evidence submitted by Boehringer.

Defendants may call each of the following witnesses to testify by deposition:

Rolf Fleischer
Alpen Strasse 29
Biberach, Germany

Richard Hahn
5049 Deer Ridge Drive South
Carmel, Indiana 46033

Rudolph Hurnaus
Silcher Strasse 19
Biberach, Germany

Juergen Kauffman
Georg Scheuing Strasse 28
Ingelheim, Germany

Elizabeth Keating
4 Short Hill Road
Newtown, Connecticut 06470

Heinz-Gerd Klas
Ludwig Jahnstov 16
Gau-Bickelheim, Germany

Walter Kobinger
Baumgarten Strasse 47
Vienna, Austria

Bennett Laguzza
3715 Briarwood Drive
Indianapolis, Indiana 46240

Joachim Mierau
Auden Weiden 3
Mainz, Germany

Rodger Milnes
47A Fen End Over
Cambridge, England CB24 5NE

Gunter Schingnitz
Unter den Garten 10
Bad Kreuznach, Germany

Claus Schneider
Grenzhoper Strasse 59
Eppelheim, Germany

Edward Barry Smalstig
14320 Cherry Tree Road
Carmel, Indiana, 46033

Alan Stempel
2A Aspen Way
Brookfield, Connecticut 06804

William Turner
3688 Tamarron Drive
Bloomington, Indiana 47408

Timothy Witkowski
18 Deer Woods Drive
New Milford, Connecticut

In addition, to the extent any witnesses identified above testified as a witness pursuant to Rule 30(b)(6), Defendants may call Boehringer Ingelheim International, GmbH, Boehringer Ingelheim Pharmaceuticals, Inc., and/or Eli Lilly and Company to testify by deposition.

Set forth on the following pages are the designations for each of the witnesses listed above.

**Deposition of Rolf Fleischer**
**10/25/06 and 10/26/06**

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 6:20 | 7:6 | |
| 7:11 | 7:12 | |
| 11:16 | 12:5 | |
| 13:12 | 13:22 | |
| 14:20 | 15:1 | |
| 15:5 | 15:12 | |
| 98:8 | 98:16 | Relevance |
| 105:10 | 105:19 | Relevance |
| 109:5 | 109:8 | Relevance |
| 109:12 | 110:12 | Relevance |
| 117:1 | 117:5 | Relevance |
| 117:14 | 117:18 | Relevance |
| 125:11 | 125:17 | Relevance |
| 126:8 | 126:13 | Relevance |
| 127:1 | 127:16 | Relevance |
| 156:13 | 156:20 | |
| 162:11 | 162:13 | |
| 163:2 | 163:2 | |
| 167:10 | 167:11 | |
| 167:15 | 167:18 | |
| 167:22 | 167:22 | |
| 168:2 | 168:13 | |
| 170:12 | 170:15 | |
| 172:4 | 172:8 | |

**Deposition of Rolf Fleischer**
**10/25/06 and 10/26/06**
**(continued)**

| | | |
|---|---|---|
| 177:1 | 177:11 | Relevance |
| 177:19 | 177:21 | Relevance |
| 178:14 | 178:19 | Relevance |
| 184:12 | 184:21 | Relevance; Foundation |
| 185:21 | 186:2 | Relevance |
| 186:16 | 186:22 | Relevance |
| 195:15 | 197:2 | |
| 197:21 | 198:2 | |
| 198:5 | 198:6 | |
| 201:22 | 202:1 | Relevance |
| 202:6 | 203:7 | Relevance |
| 203:17 | 204:5 | Relevance |
| 204:10 | 205:6 | Relevance |
| 205:10 | 205:19 | Relevance |
| 206:1 | 206:7 | Relevance |
| 211:2 | 212:8 | Relevance |
| 212:11 | 212:12 | Relevance |
| 212:19 | 213:7 | Relevance |
| 213:14 | 214:9 | Relevance |
| 232:17 | 232:20 | |
| 233:10 | 233:10 | |
| 246:19 | 247:6 | Relevance |
| 248:13 | 249:21 | Relevance |
| 250:8 | 250:16 | Relevance |
| 251:5 | 251:15 | Relevance |
| 251:20 | 253:10 | Relevance |
| 258:20 | 259:8 | Relevance |
| 259:12 | 259:12 | Relevance |

**Deposition of Rolf Fleischer**
**10/25/06 and 10/26/06**
**(continued)**

| | | |
|---|---|---|
| 309:4 | 309:5 | |
| 309:11 | 309:16 | |
| 313:14 | 313:16 | |

| Counter Designations | | Objections |
|---|---|---|
| Start | End | |
| 107:15 | 108:25 | Calls for Speculation; Vague and Ambiguous; Relevance |
| 111:12 | 114:10 | Calls for Speculation; Relevance |
| 116:10 | 116:25 | Calls for Speculation; Relevance |
| 226:9 | 226:18 | Confusing; Narrative<br><br>Defendants' Counter-Designations: 231:1 - 3; 231:12 – 232:8 |
| 227:3 | 228:9 | Confusing; Narrative<br><br>Defendants' Counter-Designations: 231:1 - 3; 231:12 – 232:8 |
| 229:19 | 230:22 | Confusing; Narrative<br><br>Defendants' Counter-Designations: 231:1 - 3; 231:12 – 232:8 |

**Deposition of Richard Hahn**
**7/6/06**

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 10:16 | 10:21 | |
| 11:8 | 11:10 | |
| 11:15 | 11:23 | |
| 15:10 | 16:1 | |
| 16:7 | 16:19 | |
| 17:17 | 17:21 | |
| 19:16 | 19:19 | |
| 19:24 | 20:14 | |
| 21:9 | 21:17 | |
| 22:14 | 22:19 | Non-Responsive |
| 24:19 | 25:4 | |
| 25:12 | 25:18 | |
| 26:1 | 26:9 | |
| 26:13 | 26:20 | |
| 28:9 | 28:14 | |
| 31:4 | 31:6 | |
| 31:19 | 31:23 | |
| 32:12 | 32:22 | |
| 33:6 | 33:13 | |
| 34:14 | 34:16 | |
| 55:1 | 55:9 | Speculation; Relevance |

**Deposition of Richard Hahn**
**7/6/06**
**(continued)**

| Counter Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 21:18 | 22:13 | |
| 23:18 | 23:22 | Defendants' Counter-Designations: 23:23 – 24:18 |
| 39:8 | 41:12 | Defendants' Counter-Designations: 54:15 - 21 |
| 42:8 | 43:23 | Relevance; Vague and Ambiguous;  Lacks Foundation; Confusing |
| 45:18 | 46:7 | Relevance; Vague and Ambiguous; Lacks Foundation; Confusing<br><br>Defendants' Counter-Designation 54:1-9 |
| 46:18 | 47:20 | Relevance; Vague and Ambiguous; Lacks Foundation; Confusing |
| 48:13 | 48:17 | Relevance; Vague and Ambiguous; Lacks Foundation; Confusing |
| 50:12 | 53:3 | Relevance; Vague and Ambiguous; Lacks Foundation |

## Deposition of Dr. Rudolph Hurnaus
### 10/24/06

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 6:20 | 6:21 | |
| 9:6 | 9:12 | |
| 13:4 | 13:18 | Incomplete; Relevance |
| 14:6 | 14:10 | |
| 15:22 | 16:6 | |
| 27:19 | 28:17 | |
| 29:3 | 29:10 | |
| 31:17 | 31:19 | |
| 35:9 | 35:19 | |
| 36:9 | 36:16 | |
| 36:21 | 37:9 | |
| 39:19 | 39:22 | |
| 73:10 | 74:1 | |
| 80:21 | 81:15 | |
| 82:10 | 83:6 | Relevance |
| 83:9 | 83:9 | Relevance |
| 104:9 | 104:13 | Relevance; Legal Conclusion; Incomplete Hypothetical |
| 104:17 | 104:22 | Relevance; Legal Conclusion; Incomplete Hypothetical |
| 105:5 | 105:8 | Relevance; Legal Conclusion; Incomplete Hypothetical |
| 105:13 | 105:19 | Relevance; Legal Conclusion; Incomplete Hypothetical |
| 108:6 | 108:11 | Relevance; Legal Conclusion; Incomplete Hypothetical |
| 108:15 | 108:15 | Relevance; Legal Conclusion; Incomplete Hypothetical |

**Deposition of Dr. Rudolph Hurnaus**
**10/24/06**
**(continued)**

| | | |
|---|---|---|
| 108:17 | 108:18 | Relevance |
| 109:22 | 110:1 | Relevance |
| 110:3 | 110:8 | Relevance |
| 159:20 | 162:2 | Relevance |
| 162:5 | 162:5 | Relevance |
| 164:21 | 165:1 | |
| 165:3 | 166:8 | Relevance; Legal Conclusion |
| 166:10 | 166:18 | Relevance; Legal Conclusion |
| 166:21 | 166:21 | Relevance; Legal Conclusion |
| 167:1 | 167:4 | Relevance; Legal Conclusion |
| 167:7 | 167:7 | Relevance; Legal Conclusion |
| 167:9 | 168:3 | Relevance; Legal Conclusion |
| 168:6 | 168:11 | Relevance; Legal Conclusion |
| 168:13 | 168:13 | Relevance; Legal Conclusion |
| 168:15 | 169:3 | Relevance; Legal Conclusion |
| 169:6 | 169:16 | Relevance; Legal Conclusion |
| 170:1 | 170:3 | Relevance; Legal Conclusion |
| 170:7 | 170:11 | Relevance; Legal Conclusion |
| 170:15 | 171:3 | Relevance; Legal Conclusion |
| 171:6 | 171:16 | Relevance; Legal Conclusion |
| 171:20 | 171:22 | Relevance; Legal Conclusion |
| 172:3 | 172:7 | Relevance; Legal Conclusion |
| 172:10 | 172:13 | Relevance; Legal Conclusion |
| 172:18 | 172:22 | Relevance; Legal Conclusion |
| 173:4 | 173:7 | Relevance; Legal Conclusion |
| 173:10 | 173:10 | Relevance; Legal Conclusion |
| 196:19 | 197:10 | |
| 197:18 | 197:22 | |

Deposition of Dr. Rudolph Hurnaus
**10/24/06**
**(continued)**

| 198:3 | 198:7 | Relevance; Legal Conclusion |
|---|---|---|
| 198:9 | 198:16 | Relevance; Legal Conclusion |
| 198:20 | 199:2 | Relevance; Legal Conclusion |
| 199:5 | 199:10 | Relevance; Legal Conclusion |
| 199:13 | 199:17 | Relevance; Legal Conclusion |
| 204:19 | 204:21 | |
| 205:1 | 205:20 | Relevance |
| 206:2 | 206:2 | Relevance |
| 206:22 | 208:2 | Relevance |
| 209:8 | 209:10 | Relevance |
| 209:14 | 209:15 | Relevance |
| 209:17 | 210:3 | Relevance |
| 214:1 | 214:2 | |
| 214:4 | 215:12 | Relevance; Legal Conclusion |
| 264:4 | 265:7 | Relevance; Legal Conclusion |
| 265:12 | 265:20 | Relevance; Legal Conclusion |
| 268:17 | 268:21 | Relevance; Legal Conclusion |
| 269:4 | 269:9 | Relevance; Legal Conclusion |
| 269:14 | 269:15 | Relevance; Legal Conclusion |
| 273:19 | 274:1 | |
| 274:3 | 275:19 | Relevance |

| **Counter Designations** | | **Objections** |
|---|---|---|
| **Start** | **End** | |
| 105:1 | 105:4 | Relevance |
| 265:21 | 269:16 | Improperly Includes Colloquy; Duplicative in Part; Incomplete |

### Deposition of Juergen Kauffmann
### 11/30/06

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 9:16 | 10:3 | |
| 15:7 | 15:9 | |
| 18:18 | 19:3 | |
| 19:9 | 19:20 | |
| 40:19 | 41:1 | |
| 41:4 | 41:4 | |
| 49:20 | 50:10 | |
| 50:14 | 50:19 | |
| 51:19 | 51:21 | Relevance; Foundation |
| 71:7 | 71:11 | Foundation |
| 71:19 | 71:20 | Relevance; Vague and Ambiguous |
| 72:1 | 72:2 | Relevance; Vague and Ambiguous |
| 80:22 | 81:9 | |
| 81:13 | 81:15 | |
| 83:19 | 83:22 | Relevance; Hearsay |
| 129:3 | 129:14 | Foundation; Hearsay |
| 129:18 | 130:16 | Foundation; Vague and Ambiguous; Hearsay |
| 130:21 | 131:2 | Relevance |
| 132:17 | 133:10 | Relevance; Foundation; Hearsay |
| 133:14 | 133:18 | Relevance; Foundation; Hearsay |
| 154:17 | 154:20 | |
| 155:12 | 155:21 | Foundation; Vague and Ambiguous; Hearsay |
| 156:7 | 156:9 | Foundation; Vague and Ambiguous; Hearsay |
| 157:8 | 157:10 | |

**Deposition of Juergen Kauffmann**
**11/30/06**
**(continued)**

| | | |
|---|---|---|
| 168:12 | 169:3 | |
| 169:6 | 169:9 | |
| 174:13 | 174:15 | Asked and Answered; Hearsay |
| 174:19 | 174:19 | Asked and Answered; Hearsay |
| 175:12 | 175:16 | |
| 178:6 | 178:13 | |
| 179:12 | 179:22 | |
| 181:3 | 181:21 | Relevance |
| 185:16 | 186:11 | Relevance |

| **Counter Designations** | | **Objections** |
|---|---|---|
| **Start** | **End** | |
| 71:14 | 71:14 | |
| 129:15 | 129:16 | |
| 130:17 | 130:18 | |
| 133:11 | 133:12 | |
| 136:1 | 136:8 | Relevance; Asked and Answered; Cumulative |
| 137:9 | 138:19 | Relevance; Asked and Answered; Cumulative; Confusing, Improperly Includes Colloquy<br><br>Defendants' Counter-Designations: 135:2-22; 136:10-137:8; 139:18-140:5 |
| 155:22 | 156:1 | |
| 172:21 | 173:9 | Confusing; Lack of Foundation<br><br>Defendants' Counter-Designations: 173:10-174:2; 174:5; 174:9-11 |
| 174:6 | 174:7 | Confusing; Incomplete |
| 174:16 | 174:17 | |

**Deposition of Elizabeth Keating**
**11/16/06**

| **Deposition Designations** | | **Objections** |
|---|---|---|
| **Start** | **End** | |
| 6:11 | 6:17 | |
| 40:16 | 40:20 | |
| 40:24 | 41:22 | |
| 43:22 | 44:7 | |
| 48:14 | 48:18 | |
| 49:8 | 49:25 | |
| 50:2 | 50:2 | |
| 55:17 | 56:3 | |
| 56:4 | 56:12 | |
| 59:2 | 59:17 | |
| 62:19 | 63:8 | |
| 74:18 | 74:25 | Relevance |
| 75:2 | 75:3 | Relevance |
| 86:14 | 86:21 | Relevance |
| 111:8 | 111:10 | Relevance |
| 111:12 | 112:12 | Relevance; Vague and Ambiguous |
| 133:6 | 134:4 | Relevance |
| 139:24 | 140:9 | Relevance |

| **Counter Designations** | | **Objections** |
|---|---|---|
| **Start** | **End** | |
| 44:8 | 44:15 | Relevance; Hearsay |
| 106:14 | 107:9 | Relevance; Calls for Speculation; Hearsay |

**Deposition of Elizabeth Keating**
**11/16/06**
**(continued)**

| 110:5 | 111:7 | Relevance; Incomplete; Calls for Speculation; Hearsay |
|-------|-------|---------------------------------------------------------|
| 111:11 | 111:11 | |
| 112:13 | 113:4 | Relevance; Calls for Speculation; Hearsay |

**Deposition of Heinz-Gerd Klas**
**1/10/07**

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 5:2 | 5:5 | |
| 11:11 | 11:19 | |
| 25:6 | 25:9 | |
| 38:22 | 38:25 | |
| 39:2 | 39:25 | |
| 40:2 | 40:25 | |
| 41:2 | 41:14 | |
| 81:23 | 81:25 | |
| 82:2 | 82:4 | |
| 128:5 | 128:10 | Relevance |
| 128:12 | 128:25 | Relevance |
| 129:2 | 129:25 | Relevance |
| 130:2 | 130:2 | Relevance |
| 130:7 | 130:10 | Relevance; Foundation |
| 130:17 | 130:25 | Relevance; Foundation |
| 131:2 | 131:2 | Relevance; Foundation; Outside the Scope of Designation |
| 131:7 | 131:12 | Relevance; Foundation; Outside the Scope of Designation; Incomplete |
| 135:13 | 135:25 | Relevance |
| 136:2 | 136:5 | Relevance |
| 141:24 | 141:25 | Relevance |
| 142:2 | 142:25 | Relevance |
| 143:2 | 143:8 | Relevance |
| 192:23 | 192:25 | Relevance |

**Deposition of Heinz-Gerd Klas**
**1/10/07**
**(continued)**

| 193:2 | 193:3 | Relevance |
|-------|-------|-----------|
| 194:4 | 194:9 | Relevance |
| 196:9 | 196:19 | Relevance; Incomplete |
| 196:22 | 196:25 | Relevance; Incomplete |

| **Counter Designations** | | **Objections** |
|--------------------------|---|----------------|
| **Start** | **End** | |
| 131:13 | 131:22 | Relevance; Lacks Foundation; Calls for Speculation; Hearsay; Calls for Legal Conclusion<br><br>Defendants' Counter-Designation: 250:9-16 |
| 133:15 | 134:18 | Relevance; Lacks Foundation; Calls for Speculation; Hearsay; Calls for Legal Conclusion<br><br>Defendants' Counter-Designation: 250:9-16 |
| 141:5 | 141:11 | Relevance; Lacks Foundation; Calls for Speculation; Hearsay; Calls for Legal Conclusion<br><br>Defendants' Counter-Designation: 250:9-16 |
| 144:9 | 149:20 | Relevance; Lacks Foundation; Calls for Speculation; Hearsay; Calls for Legal Conclusion<br><br>Defendants' Counter-Designation: 250:9-16 |
| 156:5 | 157:2 | Relevance; Lacks Foundation; Calls for Speculation; Hearsay; Calls for Legal Conclusion<br><br>Defendants' Counter-Designation: 250:9-16 |
| 158:2 | 160:17 | Relevance; Lacks Foundation; Calls for Speculation; Hearsay; Calls for Legal Conclusion<br><br>Defendants' Counter-Designation: 250:9-16 |
| 197:22 | 198:9 | Relevance; Lacks Foundation; Calls for Speculation; Hearsay; Calls for Legal |

**Deposition of Heinz-Gerd Klas**
**1/10/07**
**(continued)**

|  |  | Conclusion<br><br>Defendants' Counter-Designation: 250:9-16 |
|---|---|---|
| 199:3 | 199:9 | Relevance; Lacks Foundation; Calls for Speculation; Hearsay; Calls for Legal Conclusion<br><br>Defendants' Counter-Designation: 250:9-16 |

**Deposition of Dr. Walter Kobinger**
**10/19/06**

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 6:21 | 6:22 | |
| 8:15 | 9:9 | |
| 10:20 | 11:14 | |
| 30:10 | 31:4 | Relevance |
| 32:20 | 32:22 | |
| 39:11 | 39:16 | Relevance |
| 39:19 | 39:22 | Relevance |
| 62:11 | 63:21 | Relevance |
| 68:22 | 69:4 | Relevance |
| 78:10 | 78:19 | Relevance |
| 78:22 | 78:22 | |
| 79:2 | 79:20 | Relevance |
| 134:2 | 134:4 | |
| 134:20 | 135:10 | |
| 135:14 | 136:14 | Relevance |
| 137:5 | 137:21 | |
| 140:5 | 140:8 | Relevance |
| 184:15 | 184:19 | |
| 184:22 | 185:8 | |
| 185:10 | 186:10 | Relevance; Incomplete Hypothetical |
| 186:13 | 186:13 | Relevance; Incomplete Hypothetical |
| 219:11 | 219:16 | Relevance |
| 230:20 | 231:18 | Relevance; Legal Conclusion |

**Deposition of Dr. Walter Kobinger**
**10/19/06**
**(continued)**

| Counter Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 45:19 | 46:13 | Relevance; Hearsay |
| 103:16 | 103:18 | Relevance; Vague and Ambiguous |

**Deposition of Bennett Laguzza**
**7/5/06**

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 13:25 | 14:11 | |
| 14:15 | 14:23 | |
| 15:14 | 15:21 | |
| 16:6 | 16:11 | |
| 17:2 | 18:2 | |
| 26:9 | 27:19 | Relevance |
| 31:21 | 32:3 | |
| 34:8 | 34:22 | |
| 35:2 | 35:4 | |
| 36:16 | 37:1 | |
| 39:11 | 39:13 | |
| 39:24 | 40:19 | |
| 47:16 | 48:6 | |
| 48:18 | 48:23 | |
| 49:12 | 49:22 | |
| 52:8 | 53:2 | Relevance |
| 57:6 | 58:12 | |
| 59:24 | 60:3 | |
| 60:22 | 61:6 | |
| 64:7 | 64:9 | |
| 65:22 | 66:2 | |
| 66:21 | 67:2 | |
| 67:16 | 68:1 | |
| 69:2 | 69:5 | |

**Deposition of Bennett Laguzza**
**7/5/06**
**(continued)**

| | | |
|---|---|---|
| 69:24 | 70:2 | |
| 70:5 | 70:13 | Foundation |
| 70:22 | 71:12 | |
| 72:10 | 72:20 | |
| 72:25 | 73:2 | |
| 73:10 | 73:15 | |
| 73:20 | 74:9 | |
| 79:22 | 80:7 | |
| 80:10 | 80:16 | |
| 80:19 | 81:2 | Foundation; Speculation |
| 81:15 | 81:25 | Foundation; Speculation |
| 82:19 | 83:1 | Foundation; Speculation |
| 84:16 | 84:25 | |
| 85:9 | 85:15 | |
| 85:22 | 85:25 | |
| 86:6 | 86:8 | |
| 87:1 | 87:8 | |
| 87:14 | 87:18 | |
| 92:21 | 92:25 | |
| 93:11 | 93:17 | |
| 94:8 | 94:12 | |
| 97:9 | 97:18 | |
| 98:3 | 98:18 | Foundation; Speculation |
| 100:13 | 101:8 | |
| 101:14 | 101:20 | |
| 102:2 | 102:17 | |
| 105:14 | 105:20 | |
| 106:8 | 106:21 | Foundation; Speculation |

**Deposition of Bennett Laguzza**
**7/5/06**
**(continued)**

| | | |
|---|---|---|
| 117:25 | 118:16 | |
| 119:3 | 119:6 | |
| 119:15 | 119:19 | |
| 120:15 | 121:4 | Foundation; Speculation |
| 122:6 | 122:10 | |
| 128:8 | 128:10 | |
| 129:7 | 129:13 | |
| 129:16 | 129:18 | |
| 129:21 | 129:23 | |
| 131:19 | 132:9 | Foundation; Speculation |
| 132:14 | 132:23 | No Answer; Relevance |
| 133:4 | 133:5 | Relevance |
| 133:8 | 133:8 | Relevance |
| 133:12 | 133:17 | Relevance |
| 133:23 | 134:5 | Relevance |
| 134:12 | 134:15 | |
| 134:22 | 134:24 | Foundation; Speculation; Relevance |
| 135:8 | 135:9 | |
| 135:12 | 135:24 | Foundation; Speculation; Relevance |

| **Counter Designations** | | **Objections** |
|---|---|---|
| **Start** | **End** | |
| 19:3 | 19:18 | Relevance |
| 86:1 | 86:5 | Relevance |
| 87:9 | 87:13 | Relevance |
| 94:13 | 94:16 | Relevance |
| 101:21 | 102:1 | Relevance |

**Deposition of Bennett Laguzza**
**7/5/06**
**(continued)**

| 102:18 | 104:5 | Relevance |
|--------|-------|-----------|
| 106:22 | 107:8 | Relevance |
| 137:20 | 148:7 | Relevance; Improperly Includes Colloquy; Calls for Speculation; Lack of Foundation |
| 164:9 | 165:2 | Relevance |
| 165:13 | 166:6 | Relevance; Calls for Speculation; Lack of Foundation |
| 166:14 | 167:8 | |
| 167:20 | 168:14 | Relevance; Vague and Ambiguous; Lack of Foundation |

**Deposition of Dr. Joachim Mierau**
**11/09/06**

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 6:5 | 6:8 | |
| 8:23 | 8:25 | |
| 10:23 | 11:5 | |
| 11:9 | 11:22 | |
| 22:4 | 22:20 | |
| 25:18 | 25:25 | Relevance |
| 26:2 | 26:4 | Relevance |
| 27:23 | 27:25 | Relevance |
| 28:2 | 28:2 | Relevance |
| 31:12 | 31:15 | Relevance |
| 32:7 | 32:8 | Relevance |
| 32:10 | 32:11 | Relevance |
| 33:8 | 33:9 | Relevance |
| 39:19 | 39:20 | |
| 39:25 | 39:25 | |
| 40:2 | 40:8 | |
| 42:22 | 42:24 | Relevance |
| 43:3 | 43:7 | Relevance |
| 64:2 | 64:10 | Relevance |
| 65:9 | 65:13 | Relevance |
| 66:24 | 67:4 | Relevance |
| 67:7 | 67:14 | Relevance |
| 67:17 | 67:18 | Relevance |
| 166:9 | 166:17 | Relevance |

**Deposition of Dr. Joachim Mierau**
**11/09/06**
**(continued)**

| | | |
|---|---|---|
| 166:24 | 166:25 | Relevance |
| 167:2 | 167:3 | |
| 171:22 | 172:8 | |
| 205:14 | 205:15 | |
| 205:18 | 205:25 | Relevance |
| 206:2 | 206:20 | Relevance |
| 206:23 | 206:25 | Relevance |
| 207:2 | 207:15 | Relevance |
| 209:2 | 209:4 | Relevance |

**Deposition of Rodger Milnes**
**1/5/07**

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 6:24 | 7:2 | |
| 29:2 | 29:4 | |
| 29:22 | 30:3 | |
| 30:9 | 30:15 | |
| 80:12 | 81:12 | Relevance |
| 167:15 | 167:20 | Relevance |
| 168:22 | 169:8 | Relevance; Hearsay |
| 169:18 | 169:19 | Calls for Legal Conclusion; Relevance |
| 169:22 | 170:4 | Calls for Legal Conclusion; Relevance |
| 170:7 | 170:9 | Vague and Ambiguous; Asked and Answered; Relevance |
| 183:15 | 185:17 | |
| 185:24 | 187:2 | Relevance; Hearsay |

| Counter Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 149:14 | 149:19 | Relevance; Confusing; Lack of Foundation |
| 162:23 | 163:7 | Relevance |
| 169:20 | 169:21 | |
| 170:5 | 170:6 | |
| 174:4 | 175:2 | Relevance |
| 176:25 | 177:4 | Relevance; Lack of Foundation; Confusing |
| 187:3 | 187:14 | Relevance |

**Deposition of Gunter Schingnitz**
**12/12/06**

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 4:11 | 4:20 | |
| 12:12 | 14:5 | |
| 58:3 | 58:5 | |
| 58:11 | 58:17 | Relevance |
| 64:2 | 64:10 | Relevance |
| 79:17 | 79:20 | |
| 159:10 | 159:24 | Relevance; Incomplete Hypothetical |

**Deposition of Dr. Claus Schneider**
**9/29/06**

| Deposition Designations | | Objections |
| --- | --- | --- |
| **Start** | **End** | |
| 6:18 | 6:19 | |
| 7:16 | 7:22 | |
| 8:16 | 8:25 | |
| 9:14 | 10:3 | |
| 10:20 | 11:2 | Relevance |
| 12:9 | 12:21 | Relevance |
| 17:4 | 17:15 | |
| 19:18 | 20:7 | |
| 32:3 | 32:15 | Relevance; Legal Conclusion |
| 32:18 | 32:25 | Relevance; Legal Conclusion; Incomplete |
| 33:25 | 34:17 | Relevance; Legal Conclusion |
| 45:23 | 45:25 | |
| 46:5 | 46:10 | |
| 46:15 | 46:24 | Relevance; Legal Conclusion |
| 49:23 | 49:24 | Relevance |
| 50:4 | 50:14 | Relevance |
| 50:22 | 53:8 | Relevance |
| 54:14 | 55:1 | Relevance |
| 55:6 | 55:7 | Relevance |
| 58:1 | 58:3 | |
| 58:8 | 59:2 | Relevance |
| 59:24 | 60:10 | Relevance |
| 61:1 | 61:11 | Relevance |
| 61:20 | 62:5 | Relevance |

**Deposition of Dr. Claus Schneider**
**9/29/06**
**(continued)**

| | | |
|---|---|---|
| 64:2 | 64:19 | Relevance; Legal Conclusion |
| 67:3 | 67:10 | |
| 67:20 | 68:15 | Relevance; Legal Conclusion |
| 69:23 | 69:24 | |
| 70:4 | 70:7 | |
| 70:11 | 70:13 | Relevance; Legal Conclusion |
| 70:18 | 70:22 | |
| 71:2 | 71:17 | Relevance |
| 72:11 | 73:9 | Relevance |
| 73:15 | 74:6 | Relevance; Legal Conclusion |
| 74:11 | 74:21 | Relevance; Legal Conclusion |
| 75:3 | 75:9 | Relevance |
| 75:13 | 75:20 | Relevance |
| 146:7 | 146:8 | |
| 146:13 | 146:13 | |
| 146:19 | 146:21 | |
| 147:18 | 147:21 | |
| 148:23 | 148:24 | |
| 152:16 | 154:8 | Relevance |
| 162:14 | 164:6 | Relevance |
| 170:16 | 170:22 | |
| 171:1 | 171:10 | Relevance |
| 171:14 | 172:7 | Relevance |
| 201:14 | 202:3 | Relevance |
| 202:11 | 202:18 | Relevance |

**Deposition of Dr. Claus Schneider**
**9/29/06**
**(continued)**

| Counter Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 68:16 | 69:5 | Relevance |
| 203:20 | 205:1 | Relevance; Calls for Speculation |

**Deposition of Edward Smalstig**
**7/27/06**

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 7:10 | 7:14 | |
| 10:1 | 10:3 | |
| 10:7 | 10:9 | |
| 10:15 | 11:7 | |
| 12:9 | 12:15 | |
| 12:20 | 12:23 | |
| 14:3 | 14:23 | |
| 15:16 | 16:1 | |
| 16:4 | 17:17 | |
| 17:23 | 18:12 | |
| 18:21 | 18:23 | |
| 19:7 | 19:9 | |
| 19:12 | 20:10 | |
| 20:21 | 20:24 | Foundation; Mischaracterization of Prior Testimony |
| 21:3 | 21:11 | |
| 21:19 | 23:6 | |
| 24:3 | 24:7 | |
| 24:14 | 25:14 | |
| 25:19 | 25:25 | |
| 26:22 | 27:12 | |
| 27:22 | 28:4 | |
| 28:12 | 28:18 | |
| 29:1 | 29:4 | |
| 29:17 | 29:20 | Foundation; Relevance |

**Deposition of Edward Smalstig**
**7/27/06**
**(continued)**

| | | |
|---|---|---|
| 29:22 | 29:23 | |
| 32:13 | 32:15 | |
| 33:4 | 33:10 | |
| 34:11 | 34:13 | |
| 34:21 | 35:3 | |
| 35:24 | 36:9 | |
| 36:25 | 37:11 | |
| 38:17 | 39:1 | |

| **Counter Designations** | | **Objections** |
|---|---|---|
| **Start** | **End** | |
| 26:4 | 26:21 | |
| 33:4 | 34:5 | Relevance |

**Deposition of Alan Stempel**
**10/11/06**

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 6:8 | 6:9 | |
| 6:15 | 6:18 | |
| 6:22 | 6:25 | |
| 7:12 | 8:20 | |
| 14:8 | 14:19 | |
| 17:17 | 18:2 | |
| 32:13 | 32:17 | |
| 34:4 | 34:16 | |
| 131:13 | 132:6 | |
| 132:20 | 132:24 | |
| 133:2 | 133:2 | |
| 149:12 | 149:13 | |
| 149:19 | 150:5 | |
| 150:15 | 151:6 | |
| 152:18 | 152:21 | |
| 153:6 | 153:8 | |
| 155:18 | 155:19 | |
| 155:24 | 156:4 | |
| 213:3 | 213:12 | Relevance |
| 215:11 | 215:19 | Relevance |
| 215:22 | 217:9 | Relevance |
| 218:9 | 218:11 | Relevance |
| 218:13 | 218:23 | Relevance |
| 219:2 | 219:3 | Relevance |

**Deposition of Alan Stempel**
**10/11/06**
**(continued)**

| | | |
|---|---|---|
| 231:5 | 232:6 | Relevance |
| 232:15 | 233:3 | Relevance |
| 233:6 | 234:14 | Relevance |
| 234:21 | 234:23 | Relevance |
| 243:14 | 243:24 | Relevance |
| 244:4 | 244:7 | Relevance |
| 246:10 | 246:18 | Relevance |
| 246:24 | 248:3 | Relevance |
| 260:15 | 260:17 | |
| 260:23 | 260:24 | |
| 261:6 | 261:25 | |
| 263:4 | 263:10 | |
| 263:21 | 264:10 | |
| 264:18 | 265:24 | Relevance |
| 266:21 | 267:17 | No Answer; Compound; Relevance |
| 267:22 | 269:25 | Foundation; Speculation; Incomplete Hypothetical; Relevance |
| 270:3 | 270:9 | Foundation; Speculation; Incomplete Hypothetical; Relevance |
| 272:16 | 273:11 | |
| 273:17 | 274:9 | |
| 274:14 | 274:17 | |
| 276:14 | 276:21 | |
| 277:5 | 278:7 | |
| 279:9 | 279:20 | |
| 282:22 | 284:2 | Relevance |
| 290:8 | 290:9 | Relevance |
| 290:13 | 290:13 | Relevance |
| 290:18 | 292:8 | Relevance |

**Deposition of Alan Stempel**
**10/11/06**
**(continued)**

| 292:12 | 292:16 | Relevance |
|--------|--------|-----------|
| 292:19 | 293:21 | Relevance |
| 294:8 | 294:11 | |
| 298:3 | 298:6 | |
| 298:11 | 298:11 | |
| 298:18 | 298:21 | |
| 301:15 | 302:2 | Foundation; Speculation; Incomplete Hypothetical; Relevance |
| 302:5 | 302:7 | Foundation; Speculation; Incomplete Hypothetical; Relevance |

| **Counter Designations** | | **Objections** |
|--------------------------|--------|-----------|
| **Start** | **End** | |
| 138:7 | 138:8 | Relevance; Calls for a Legal Conclusion; Hearsay |
| 138:14 | 138:25 | Relevance; Calls for a Legal Conclusion; Hearsay |
| 139:15 | 141:3 | Relevance; Calls for a Legal Conclusion; Hearsay |
| 143:5 | 143:14 | Relevance; Calls for a Legal Conclusion; Hearsay; Vague and Ambiguous |
| 219:4 | 219:22 | Hearsay |
| 235:8 | 235:17 | Hearsay |
| 262:1 | 263:3 | Relevance; Legal Conclusion; Hearsay; Calls for Speculation |
| 272:1 | 272:8 | Relevance; Confusing; Lacks Foundation<br><br>Defendants' Counter-Designations: 271:20-23; 271:3-5; 272:9-11; 272:14-15 |
| 295:18 | 295:25 | Hearsay |
| 296:5 | 296:24 | Hearsay; Lack of Foundation |
| 298:12 | 298:17 | |
| 299:15 | 300:25 | Hearsay; Relevance |

**Deposition of Alan Stempel**
**10/11/06**
**(continued)**

| 306:18 | 306:22 | Incomplete; Confusing; Hearsay; Relevance<br><br>Defendants' Counter-Designations: 305:23-306:11; 306:14-17 |
|--------|--------|------|

**Deposition of Alan Stempel**
**1/19/07**

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 319:2 | 319:5 | |
| 346:16 | 346:23 | Relevance |
| 402:14 | 403:8 | Relevance |
| 404:17 | 405:21 | Relevance |
| 407:8 | 407:21 | Relevance |
| 439:7 | 439:10 | |
| 439:13 | 439:25 | |
| 441:21 | 442:21 | |
| 443:12 | 443:23 | |
| 446:20 | 447:4 | |
| 462:2 | 462:5 | |
| 462:13 | 462:13 | |
| 465:5 | 465:21 | |
| 466:11 | 466:17 | |
| 467:14 | 467:17 | |
| 468:22 | 469:13 | |
| 470:5 | 470:8 | |
| 470:19 | 470:23 | |
| 474:24 | 475:6 | |
| 476:5 | 476:14 | |
| 477:14 | 477:22 | |
| 482:11 | 483:6 | Relevance |
| 484:14 | 484:17 | |
| 484:23 | 485:11 | |

**Deposition of Alan Stempel**
**1/19/07**
**(continued)**

| | | |
|---|---|---|
| 485:20 | 486:19 | |
| 486:22 | 487:8 | |
| 487:10 | 487:22 | |
| 489:24 | 490:15 | |
| 492:4 | 494:2 | |
| 502:12 | 502:14 | |
| 502:25 | 502:25 | |
| 503:7 | 503:11 | |
| 508:20 | 509:2 | Compound/No Answer Designated |
| 509:6 | 510:4 | |
| 510:9 | 510:13 | |
| 511:13 | 512:17 | |
| 512:20 | 513:18 | |
| 513:21 | 514:22 | |
| 515:2 | 515:23 | |
| 520:19 | 521:17 | |
| 521:22 | 521:25 | |
| 527:12 | 528:3 | |
| 542:5 | 544:16 | |
| 544:19 | 545:20 | |
| 548:2 | 550:10 | |
| 554:10 | 555:4 | Foundation; Speculation; Incomplete Hypothetical; Relevance |
| 556:21 | 557:15 | |
| 557:22 | 557:25 | |
| 558:12 | 558:17 | |
| 558:20 | 561:15 | |
| 567:7 | 568:2 | |
| 569:3 | 569:16 | |

**Deposition of Alan Stempel**
**1/19/07**
**(continued)**

| | | |
|---|---|---|
| 570:3 | 571:8 | |
| 572:14 | 572:23 | |
| 574:17 | 575:20 | |
| 597:24 | 598:7 | Relevance |
| 616:4 | 617:2 | |
| 617:10 | 617:12 | |

| **Counter Designations** | | **Objections** |
|---|---|---|
| **Start** | **End** | |
| 440:1 | 440:14 | Relevance; Calls for a Legal Conclusion; Hearsay |
| 471:24 | 473:17 | Relevance; Calls for a Legal Conclusion; Hearsay |
| 478:8 | 478:25 | Relevance; Hearsay; Vague and Ambiguous |
| 481:9 | 482:7 | Relevance; Hearsay; Vague and Ambiguous |
| 483:7 | 483:16 | Relevance; Hearsay; Calls for Speculation |
| 487:23 | 489:4 | Relevance; Hearsay; Calls for Speculation; Calls for a Legal Conclusion; Lacks Foundation |
| 510:19 | 511:3 | Relevance; Hearsay; Vague and Ambiguous; Calls for Speculation |
| 525:25 | 527:11 | Relevance; Hearsay |
| 545:21 | 547:8 | Hearsay |
| 550:11 | 551:18 | Relevance; Hearsay; Calls for Speculation |
| 552:20 | 553:13 | Hearsay |
| 564:6 | 565:2 | Relevance; Calls for a Legal Conclusion; Hearsay |
| 565:10 | 565:25 | Relevance; Calls for a Legal Conclusion; Hearsay |
| 566:6 | 566:25 | Hearsay; Speculation; Improperly Includes Colloquy; Lacks Foundation<br><br>Defendants' Counter-Designation: 567:2-6 |

**Deposition of Alan Stempel**
**1/19/07**
**(continued)**

| 569:17 | 569:22 | Hearsay |
|--------|--------|---------|
| 571:9 | 572:6 | Relevance; Hearsay; Confusing; Lacks Foundation |
| 608:11 | 609:5 | Relevance; Hearsay |
| 609:25 | 610:8 | Relevance; Hearsay |
| 617:13 | 618:6 | Relevance; Hearsay; Calls for Speculation; Calls for a Legal Conclusion |

**Deposition of William Turner**
**7/6/06**

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 13:21 | 14:3 | |
| 14:8 | 14:10 | |
| 15:8 | 15:22 | |
| 20:16 | 21:11 | Relevance |
| 21:24 | 22:1 | |
| 24:9 | 24:15 | |
| 24:18 | 25:4 | |
| 25:23 | 26:5 | |
| 26:11 | 26:20 | |
| 27:20 | 28:4 | Relevance |
| 28:21 | 28:23 | |
| 29:21 | 30:4 | |
| 31:9 | 31:15 | |
| 32:6 | 32:17 | |
| 33:12 | 34:5 | |
| 34:8 | 34:16 | |
| 34:25 | 35:3 | |
| 35:6 | 36:21 | |
| 36:24 | 37:3 | |
| 37:11 | 38:3 | |
| 39:7 | 39:11 | |
| 40:17 | 40:20 | |
| 40:23 | 41:16 | |
| 41:21 | 41:23 | |

**Deposition of William Turner**
**7/6/06**
**(continued)**

| | | |
|---|---|---|
| 42:9 | 42:20 | |
| 42:22 | 43:8 | |
| 43:11 | 44:2 | Relevance |
| 44:5 | 44:8 | Relevance |
| 45:16 | 46:16 | Relevance |
| 47:11 | 47:25 | Relevance |
| 48:13 | 48:18 | Relevance |
| 48:22 | 48:25 | Relevance |
| 49:3 | 49:7 | Relevance |
| 49:17 | 49:19 | Relevance |
| 50:2 | 50:14 | Relevance |
| 50:19 | 51:15 | Relevance |
| 53:16 | 54:5 | |
| 54:23 | 55:6 | |
| 55:14 | 55:15 | Incomplete |
| 55:21 | 55:24 | |
| 57:2 | 57:4 | |
| 57:15 | 57:20 | |
| 58:3 | 58:4 | |
| 58:17 | 58:20 | Foundation; Relevance |
| 63:1 | 63:11 | Foundation; Relevance |
| 65:2 | 65:5 | Foundation; Relevance |
| 65:7 | 65:9 | Foundation; Relevance |
| 65:16 | 65:18 | Foundation; Relevance |
| 65:23 | 66:10 | Relevance |
| 66:19 | 67:3 | Speculation; Relevance |
| 67:22 | 68:4 | Foundation; Relevance |
| 68:12 | 68:16 | Foundation; Relevance |

**Deposition of William Turner**
**7/6/06**
**(continued)**

| | | |
|---|---|---|
| 68:19 | 68:22 | Foundation; Relevance |
| 69:1 | 69:10 | Foundation; Relevance |
| 69:14 | 69:23 | Foundation; Relevance |
| 74:17 | 74:23 | Incomplete; Relevance |
| 75:7 | 75:9 | Foundation; Relevance |
| 75:12 | 75:19 | Foundation; Relevance |
| 75:23 | 75:25 | Foundation; Relevance |
| 76:22 | 76:24 | |
| 77:4 | 77:8 | Foundation; Relevance |
| 77:13 | 77:17 | Relevance; Non-responsive |
| 77:24 | 78:3 | Speculation; Relevance |
| 81:2 | 81:4 | |
| 81:8 | 82:15 | |
| 82:19 | 82:24 | |
| 84:17 | 84:23 | |
| 85:9 | 85:11 | |
| 85:17 | 85:18 | Relevance |
| 85:20 | 85:20 | |
| 86:12 | 86:18 | |
| 94:13 | 94:22 | |
| 95:1 | 95:4 | |
| 95:14 | 96:1 | |
| 97:14 | 98:4 | |
| 98:13 | 98:14 | |
| 98:18 | 99:9 | |
| 99:12 | 100:13 | |

**Deposition of William Turner**
**7/6/06**
**(continued)**

| **Counter Designations** | | **Objections** |
|---|---|---|
| **Start** | **End** | |
| 20:9 | 20:15 | Relevance |
| 22:6 | 22:9 | Relevance |
| 55:19 | 55:24 | Relevance |
| 57:13 | 57:14 | Relevance |
| 79:23 | 80:7 | Relevance |
| 83:8 | 84:10 | Relevance |
| 85:21 | 86:4 | Relevance |
| 89:9 | 91:7 | Relevance |
| 100:15 | 101:18 | Relevance; Lacks Foundation |
| 103:16 | 104:15 | Relevance; Lacks Foundation |
| 104:21 | 106:2 | Relevance; Lacks Foundation |
| 106:20 | 109:16 | Relevance; Lacks Foundation |
| 110:25 | 111:16 | Relevance; Lacks Foundation |
| 112:20 | 113:2 | Relevance; Lacks Foundation |
| 113:17 | 114:25 | Relevance; Lacks Foundation |
| 115:3 | 115:21 | Relevance |
| 116:19 | 117:20 | Relevance; Lack of Foundation |
| 120:24 | 121:9 | Relevance |

### Deposition of Timothy Witkowski
### 1/31/07

| Deposition Designations | | Objections |
|---|---|---|
| **Start** | **End** | |
| 4:4 | 4:6 | |
| 10:7 | 10:13 | |
| 10:23 | 11:8 | Relevance |
| 11:25 | 12:25 | Relevance |
| 13:5 | 13:18 | |
| 13:22 | 14:2 | |
| 14:16 | 14:20 | |
| 15:2 | 15:20 | |
| 29:3 | 29:12 | |
| 30:2 | 30:17 | |
| 31:3 | 31:9 | |
| 58:20 | 59:16 | |
| 60:16 | 60:18 | |
| 60:21 | 61:3 | |
| 61:5 | 61:17 | Foundation; Outside Scope of Designation; Relevance |
| 62:2 | 62:7 | Foundation; Outside Scope of Designation; Relevance |
| 62:13 | 62:13 | Foundation; Outside Scope of Designation; Relevance |
| 63:10 | 63:14 | Foundation; Outside Scope of Designation; Relevance |
| 64:4 | 64:10 | Foundation; Outside Scope of Designation; Relevance |
| 64:13 | 64:13 | Foundation; Outside Scope of Designation; Relevance |
| 64:22 | 65:20 | |
| 69:19 | 69:22 | Foundation; Outside Scope of Designation; Relevance |

**Deposition of Timothy Witkowski**
**1/31/07**
**(continued)**

| | | |
|---|---|---|
| 70:2 | 70:19 | Foundation; Outside Scope of Designation; Relevance |
| 70:22 | 70:25 | Foundation; Outside Scope of Designation; Relevance |
| 71:6 | 71:9 | Foundation; Outside Scope of Designation; Relevance |
| 71:21 | 72:6 | |
| 72:16 | 73:4 | |
| 73:7 | 73:22 | |
| 74:7 | 74:15 | Relevance |
| 74:18 | 75:3 | Relevance |
| 75:12 | 75:16 | Relevance |
| 75:21 | 75:21 | Relevance |
| 77:24 | 78:3 | |
| 82:22 | 83:7 | |
| 83:10 | 83:12 | |
| 89:10 | 89:22 | Relevance |
| 89:25 | 90:5 | Relevance |
| 90:16 | 91:4 | Relevance |
| 98:7 | 98:18 | Foundation; Outside Scope of Designation; Relevance |
| 98:20 | 98:20 | Foundation; Outside Scope of Designation; Relevance |
| 99:2 | 99:17 | Relevance |
| 107:5 | 107:8 | |
| 110:5 | 110:7 | Relevance |
| 110:15 | 111:6 | Relevance |
| 124:16 | 124:22 | Relevance |
| 125:2 | 125:7 | Relevance |
| 125:10 | 125:17 | Relevance |
| 125:20 | 125:22 | Relevance |
| 126:19 | 126:23 | Relevance |

**Deposition of Timothy Witkowski**
**1/31/07**
**(continued)**

| | | |
|---|---|---|
| 127:2 | 127:4 | Relevance |
| 128:8 | 128:12 | Relevance |
| 128:15 | 128:19 | |
| 139:10 | 139:21 | |
| 141:10 | 142:19 | |
| 142:21 | 143:6 | |
| 143:8 | 143:15 | |
| 148:21 | 148:22 | Foundation; Outside Scope of Designation; Relevance |
| 149:7 | 149:21 | Foundation; Outside Scope of Designation; Relevance |
| 150:4 | 150:4 | Foundation; Outside Scope of Designation; Relevance |
| 150:22 | 151:12 | |
| 152:3 | 152:5 | |
| 152:8 | 152:12 | Outside Scope of Designation |
| 152:17 | 152:23 | Outside Scope of Designation |
| 153:4 | 153:9 | Outside Scope of Designation |
| 153:14 | 153:14 | Outside Scope of Designation |
| 156:18 | 157:4 | |
| 157:7 | 157:9 | |
| 157:15 | 157:18 | |
| 163:2 | 163:6 | Foundation; Outside Scope of Designation; Relevance; Incomplete Hypothetical |
| 163:12 | 163:22 | Foundation; Outside Scope of Designation; Relevance; Calls for Legal Conclusion |
| 164:5 | 164:10 | Foundation; Outside Scope of Designation; Relevance; Calls for Legal Conclusion |
| 164:21 | 165:12 | Foundation; Outside Scope of Designation; Relevance; Calls for Legal Conclusion |
| 165:23 | 166:15 | Foundation; Outside Scope of Designation; Relevance; Calls for Legal Conclusion |
| 166:23 | 167:5 | Foundation; Outside Scope of Designation; Relevance; Calls for Legal Conclusion |

**Deposition of Timothy Witkowski**
**1/31/07**
**(continued)**

| | | |
|---|---|---|
| 167:12 | 167:15 | Foundation; Outside Scope of Designation; Relevance |
| 167:17 | 167:25 | Outside Scope of Designation |
| 169:15 | 169:18 | Outside Scope of Designation |
| 170:17 | 170:21 | |
| 170:24 | 171:4 | |
| 171:8 | 171:13 | |
| 172:23 | 173:2 | |
| 177:12 | 177:20 | |
| 178:3 | 178:14 | |
| 178:16 | 178:16 | |
| 182:13 | 182:16 | |
| 182:19 | 183:8 | |
| 183:12 | 183:16 | |
| 184:24 | 185:8 | Outside Scope of Designation |
| 185:12 | 185:15 | Outside Scope of Designation |
| 185:20 | 185:24 | Outside Scope of Designation |
| 186:2 | 186:6 | Outside Scope of Designation |
| 186:12 | 186:20 | Outside Scope of Designation; Relevance |
| 187:3 | 187:17 | Outside Scope of Designation; Relevance |
| 187:20 | 188:2 | Outside Scope of Designation |
| 188:5 | 188:5 | |
| 209:7 | 209:16 | |
| 209:19 | 209:19 | |
| 213:6 | 213:9 | |
| 213:12 | 213:17 | |
| 213:25 | 214:20 | |
| 216:24 | 217:4 | Relevance |
| 217:11 | 217:13 | Relevance |

**Deposition of Timothy Witkowski**
**1/31/07**
**(continued)**

| | | |
|---|---|---|
| 217:22 | 219:9 | Relevance |
| 219:25 | 220:7 | Relevance |
| 220:14 | 221:3 | Relevance |
| 225:12 | 225:14 | Relevance |
| 225:22 | 226:9 | Relevance |
| 226:25 | 227:4 | Relevance |
| 238:16 | 238:25 | |
| 239:4 | 239:14 | |
| 239:17 | 239:20 | |
| 239:25 | 240:14 | |
| 240:18 | 240:18 | |
| 241:4 | 242:17 | |
| 242:25 | 243:22 | |
| 243:25 | 244:11 | |
| 244:14 | 244:19 | |
| 244:22 | 245:9 | |
| 245:18 | 245:21 | |
| 248:6 | 248:22 | |
| 249:19 | 249:25 | |
| 250:8 | 250:13 | |
| 250:23 | 251:9 | |
| 251:12 | 251:15 | |
| 256:9 | 256:23 | |
| 257:2 | 257:19 | |
| 257:23 | 258:7 | |
| 258:10 | 258:23 | |
| 259:2 | 259:4 | |
| 288:22 | 289:3 | |

**Deposition of Timothy Witkowski**
**1/31/07**
**(continued)**

| | | |
|---|---|---|
| 298:12 | 298:13 | |
| 298:17 | 298:18 | Relevance |
| 310:23 | 311:10 | Relevance |

| **Counter Designations** | | **Objections** |
|---|---|---|
| **Start** | **End** | |
| 154:24 | 155:3 | Relevance; Hearsay; Calls for a Legal Conclusion |
| 155:8 | 155:14 | Relevance; Hearsay; Calls for a Legal Conclusion |
| 157:19 | 157:22 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion;<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2 |
| 158:3 | 158:18 | Relevance; Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2 |
| 158:24 | 159:4 | Relevance; Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion |
| 159:10 | 159:15 | Relevance; Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2 |
| 159:23 | 160:24 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2 |
| 161:10 | 161:18 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion |

**Deposition of Timothy Witkowski**
**1/31/07**
**(continued)**

| | | |
|---|---|---|
| | | Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2 |
| 162:8 | 162:25 | Relevance; Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion; Vague and Ambiguous<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2 |
| 169:19 | 169:22 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2 |
| 170:5 | 170:16 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2 |
| 171:14 | 171:19 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2 |
| 172:3 | 172:16 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2 |
| 173:9 | 175:4 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2 |
| 252:4 | 252:15 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2; 252:16-20; 253:9-254:6; 254:10-16 |
| 254:17 | 256:8 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2 |

**Deposition of Timothy Witkowski**
**1/31/07**
**(continued)**

| | | |
|---|---|---|
| 264:22 | 265:10 | Relevance; Calls for Speculation; Lacks Foundation; Hearsay; Confusing; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations:  16:2-16:4; 28:24-29:2 |
| 289:4 | 289:7 | Relevance; Hearsay; Calls for a Legal Conclusion; Lacks Foundation; Calls for Speculation |
| 304:10 | 306:8 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2; 306:9-12; 306:15-18; 306:22-23 |
| 307:10 | 307:13 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2; 306:9-12; 306:15-18; 306:22-23 |
| 307:17 | 308:8 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2; 306:9-12; 306:15-18; 306:22-23 |
| 308:13 | 308:21 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations: 16:2-16:4; 28:24-29:2 |
| 309:1 | 310:22 | Calls for Speculation; Lacks Foundation; Hearsay; Calls for a Legal Conclusion<br><br>Defendants' Counter-Designations:  16:2-16:4; 28:24-29:2 |

**Exhibit 12**

**Boehringer's Statement Of Anticipated Proofs**

Boehringer presently intends to offer the following proof at trial (Boehringer reserves the right to modify, supplement, or change this Statement Of Anticipated Proofs to the extent necessary to respond to any issues that Barr or Mylan raise in their respective Statements):

**I.    CLAIM CONSTRUCTION**

1.    The term "2-Amino-6-n-propylamino-4,5,6,7-tetrahydro-benzthiazole" in claim 7 of the '812 patent should be construed to mean "any compound characterized by the chemical name '2-Amino-6-n-propylamino-4,5,6,7-tetrahydro-benzthiazole,' including any stereoisomer and mixture thereof."

**II.    INFRINGEMENT**

2.    Barr infringed claims 5, 7, 9 and 10 of the '812 patent, by filing ANDA No. 77-724 seeking approval to make, use, and sell proposed pramipexole dihydrochloride tablets prior to the expiration of the '812 patent.  Specifically:

  i.    Barr has admitted that it has infringed claim 7 of the '812 patent.

  ii.    Barr has not contested infringement of claims 5, 9 or 10 of the '812 patent.

  iii.    Barr's proposed pramipexole dihydrochloride tablets include pramipexole, a compound covered by claims 5, 7, 9 and 10 of the '812 patent.

3.    Mylan infringed claims 5, 7, 9 and 10 of the '812 patent, by filing ANDA No. 77-854 seeking approval to make, use, and sell proposed pramipexole dihydrochloride tablets prior to the expiration of the '812 patent.

  i.    Mylan has admitted that it has infringed claim 7 of the '812 patent.

  ii.    Mylan has not contested infringement of claims 5, 9 and 10 of the '812 patent.

    iii. Mylan's proposed pramipexole dihydrochloride tablets include pramipexole, a compound covered by claims 5, 7, 9 and 10 of the '812 patent.

## III.   VALIDITY

1. Boehringer will rebut Mylan and Barr's evidence that claims 5, 7, 9 and 10 of the '812 patent are invalid for obviousness-type double patenting.

Specifically:

    i. Neither Barr nor Mylan has made a *prima facie* case of obviousness-type double patenting.

    ii. The '086 patent cannot be used as a reference against the claims of the '812 patent.

    iii. Claims 5, 7, 9 and 10 of the '812 patent are patentably distinct from the claims of the '086 patent. For example, compounds covered by claims 5, 7, 9 and 10 of the '812 patent have uses that are materially different from those claimed in the '086 patent.

    iv. Moreover, secondary indicia including commercial success, long felt but unsolved needs, failure of others, and copying indicate that the inventions claimed by claims 5, 7, 9 and 10 of the '812 patent are not obvious over the claims of the '086 patent.

2. Boehringer will rebut Defendants' evidence that claim 5 is invalid as anticipated under 35 U.S.C. § 102(g).

## IV.   EXCEPTIONAL CASE

1. This is an exceptional case that warrants an award of Boehringer's attorneys' fees.

**Exhibit 13**

**Defendants' Brief Statement Of Intended Proofs**

Defendants presently intend to offer the following proofs at trial. This statement is based in part on Defendants' current understanding of the arguments Boehringer is likely to make in attempting to respond to Defendants' non-infringement and invalidity contentions, based upon the pleadings (including Boehringer's draft pre-trial order sections provided to Defendants on January 2, 2008) and discovery in the action to date. To the extent Boehringer attempts to introduce different or additional facts or legal arguments, Defendants reserve the right to object to and/or contest those facts or legal arguments, and to present any and all rebuttal evidence in response. Defendants also reserve the right to modify, supplement, or amend this Statement of Intended Proofs, including to respond to any issues, exhibits, or witnesses presented by Boehringer.

## I.    CLAIM CONSTRUCTION

1.    The term "2-Amino-6-n-propylamino-4,5,6,7-tetrahydrobenzthiazole" should be construed as "(+)2-Amino-6-n-propylamino-4,5,6,7-tetrahydrobenzthiazole; (-)2-Amino-6-n-propylamino-4,5,6,7-tetrahydrobenzthiazole; or any mixture thereof."

## II.    NON-INFRINGEMENT

1.    Boehringer has not met its burden of proof that Barr's product, which contains pramipexole dihydrochloride, infringes each of claims 5, 9, and 10 of the '812 patent.

## III.    DOUBLE PATENTING

In light of Defendants' Statements of Issues of Fact and Law, which are explicitly incorporated herein by reference, Defendants intend to prove the following in support of their double patenting defense:

1.      Claims 3, 4, 5, 7, 9, and 10 of the '812 patent are invalid for non-statutory double patenting over claims of the '086 patent.

2.      Claims 3, 4, 5, 7, 9, and 10 of the '812 patent are not patentably distinct from claims of the '086 patent.

3.      Claims 3, 4, 5, 7, 9, and 10 of the '812 patent are anticipated by (literally and/or inherently), or obvious in light of, claims of the '086 patent.

4.      The third sentence of Section 121 does not prevent the '086 patent from being used as a reference against the '812 patent for purposes of double patenting.

5.      Secondary considerations of non-obviousness are not relevant to Defendants' double patenting defense.

6.      Even if secondary considerations of non-obviousness were relevant to Defendants' double patenting defense, Boehringer has not made *a prima facie* case that secondary indicia of non-obviousness support the validity of claims 3, 4, 5, 7, 9, and 10 of the '812 patent.

## IV.   PRIOR INVENTION UNDER 35 U.S.C. § 102(g)

In light of Defendants' Statements of Issues of Fact and Law, which are explicitly incorporated herein by reference, Defendants intend to prove the following in support of their prior invention defense:

1.      Claims 3, 4, and 5 of the '812 patent are invalid under 35 U.S.C. § 102(g) based on the prior invention of scientists at Eli Lilly.

2.      The priority date of claims 3 and 4 is December 19, 1985, the filing date of the '947 application.

3.      Boehringer has not met its burden of creating a genuine issue of material fact as to whether the Eli Lilly scientists had abandoned their invention as of the priority dates of claims 3, 4, and 5.

## V.      <u>RELIEF</u>

Defendants intend to establish that:

1.      A judgment should be entered declaring that claims 3, 4, 5, 7, 9, and 10 of the '812 patent are invalid.

2.      A judgment should be entered declaring that the manufacture, use, offer to sell, sale and/or importation into the United States of Barr's product does not infringe claims 5, 9, and 10 of the '812 patent.

3.      A judgment should be entered declaring that the manufacture, use, offer to sell, sale and/or importation into the United States of Mylan's product does not infringe any valid claim of the '812 patent.

4.      An order should be entered that Boehringer has no good-faith basis to believe that the '812 patent is not invalid.

5.      An order should be entered that this is an "exceptional case" within the meaning of 35 U.S.C. § 285 warranting an award of reasonable attorney's fees to Barr and Mylan. .

6.      An order should be entered awarding costs to Barr and Mylan.

**Exhibit 14**

**Boehringer's Miscellaneous Issues**

Boehringer would like to raise the following miscellaneous issues at the pretrial conference (Boehringer reserves the right to modify, supplement, or change this list of Miscellaneous Issues to the extent necessary to respond to any issues that Barr or Mylan raise in their respective proposed pretrial orders):

1.    Whether the testimony of Dale Hoscheit, Esq., Barr's patent law expert, should be precluded on the grounds that expert testimony from a patent law expert will not assist the trier of fact.

2.    Whether portions of Barr's expert reply reports should be stricken, and testimony on those matters precluded, pursuant to Rule 26.

3.    Whether Defendants should be permitted to contest infringement of claims 5, 9 and 10 of the '812 patent in light of their prior discovery responses.

**Exhibit 15**

**<u>Defendants' Miscellaneous Issues</u>**

Defendants intend to raise the following miscellaneous issues at the Pretrial Conference. Defendants reserve the right to modify, supplement, or amend this list of miscellaneous issues, including to respond to any issues, exhibits, or witnesses presented by Boehringer.

1.     Whether Heidi Reidies, who is identified on Boehringer's Witness List but who was not disclosed in Boehringer's Initial Disclosures nor identified in any of Boehringer's discovery responses, and who has not been deposed in this matter, should be permitted to testify at trial.

2.     Whether Defendants will be permitted to use their trial presentation time to read or play their designations of deposition testimony.