IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 05-700 (JJF) CONSOLIDATED |
| BARR LABORATORIES, INC., | ) ) | |
| Defendant. | ) ) ) | **PUBLIC VERSION** |
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 05-854 (JJF) |
| MYLAN PHARMACEUTICALS, INC., | ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANTS' OPENING BRIEF REGARDING EVIDENTIARY OBJECTIONS

OF COUNSEL:
Glenn J. Pfadenhauer
Jessamyn S. Berniker
Dov P. Grossman
Brett R. Tobin
Kendra P. Robins
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
(202) 434-5000

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Karen E. Keller (#4489)
kkeller@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

*Attorneys for Defendant Barr
Laboratories, Inc.*

OF COUNSEL:
Kevin J. Culligan
Joy Arnold
HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 832-8300

Shannon M. Bloodworth
HELLER EHRMAN LLP
171 Rhode Island Avenue, NW
Washington, DC 20036
(202) 912-2000

Dated: April 18, 2008

MORRIS JAMES LLP
Mary B. Matterer (#2696)
mmatterer@morrisjames.com
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
(302) 888-6960

*Attorneys for Mylan*
*Pharmaceuticals, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iv

INTRODUCTION .......................................................................................................... 1

I.    EVIDENCE OF ALLEGED OBJECTIVE INDICIA OF
NONOBVIOUSNESS IS WHOLLY IRRELEVANT AND SHOULD BE
EXCLUDED ......................................................................................................... 1

    A.    Objective Indicia Are Irrelevant as a Matter of Law When Considering
Defendants' Double Patenting Defense ................................................... 2

    B.    Objective Indicia Are Also Irrelevant Here Because the '086 Patent
Claims Anticipate the '812 Patent Claims ............................................. 3

    C.    The Evidence to Be Excluded ................................................................ 3

II.    THE COURT SHOULD EXCLUDE DR. OLANOW'S TESTIMONY
COMPARING METHODS OF USING COMPOUNDS CLAIMED IN THE
'086 PATENT WITH ALLEGED NEW USES FOR PRAMIPEXOLE ................ 4

III.    THE COURT SHOULD EXCLUDE THE TERMINAL DISCLAIMER
BOEHRINGER OFFERED AFTER THE CLOSE OF EVIDENCE AS WELL
AS BOEHRINGER'S NEW TERMINAL DISCLAIMER DEFENSE ............... 8

    A.    Boehringer Did Not Disclose a Terminal Disclaimer or Its New
Terminal Disclaimer Defense in the Pre-Trial Order, and Therefore
Has Waived Its Ability to Rely on Them ................................................ 8

        1.    The Pre-Trial Order Did Not Provide Notice of the Terminal
Disclaimer or Boehringer's New Terminal Disclaimer Defense ........... 9

        2.    Boehringer Cannot Satisfy the Stringent Standard for
Amending the Pre-Trial Order ..................................................... 10

            a.    Boehringer Cannot Meet the Threshold Requirement of
Showing "Manifest Injustice" ..................................... 10

            b.    The *Pennypack* Factors Do Not Warrant Admission of
the Evidence ................................................................ 11

    B.    The Court Should Not Reopen the Evidence to Admit the Terminal
Disclaimer .......................................................................................... 14

CONCLUSION ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*CMI Corp. v. Lakeland Constr. Co.*,
    184 USPQ 721 (N.D. Ill. 1975) ...................................................................14

*DeMarines v. KLM Royal Dutch Airlines*,
    580 F.2d 1193 (3d Cir. 1978).......................................................................6

*Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*,
    364 F. Supp. 2d 820 (S.D. Ind. 2005) ...........................................................3

*Ely v. Reading Co.*,
    424 F.2d 758 (3d Cir. 1970)....................................................................9, 10

*Geneva Pharmaceuticals., Inc. v. GlaxoSmithKline PLC*,
    349 F.3d 1373 (Fed. Cir. 2003).....................................................................2

*Greate Bay Hotel & Casino v. Tose*,
    34 F.3d 1227 (3d Cir. 1994).........................................................................12

*In re Byck*,
    48 F.2d 665 (CCPA 1931) ............................................................................2

*In re Christmann*,
    128 F.2d 596 (CCPA 1942) ..........................................................................2

*In re Deters*,
    515 F. 2d 1152 (CCPA 1975) ......................................................................14

*In re Heyl*,
    379 F. 2d 1018 (CCPA 1967) ......................................................................14

*In re Jursich*,
    410 F. 2d 803 (CCPA 1969) ........................................................................14

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994)........................................................................5, 6

*In re Paulsen*,
    30 F.3d 1475 (Fed. Cir. 1994).......................................................................3

*In re Purdy*,
    393 F. 2d 1010 (CCPA 1968) ......................................................................14

*In re Rogers,*
    394 F. 2d 566 (CCPA 1968) ...................................................................................14

*In re Thorington,*
    418 F. 2d 528 (CCPA 1969) ...................................................................................14

*Konstantopoulos v. Westvaco Corp.,*
    112 F.3d 710 (3d Cir. 1997).....................................................................................6

*Lentz v. Mason,*
    32 F. Supp. 2d 733 (D.N.J. 1999) ....................................................................10, 11

*Leonen v. Johns-Manville Corp.,*
    No. 82-2684, 1989 WL 5819 (D.N.J. Jan. 23, 1989)........................................10, 12

*Manasco v. Rogers,*
    No. 01-1426, 2006 WL 2568838 (D.N.J. Sept. 1, 2006) .........................................13

*Meyers v. Pennypack Woods Home Ownership Ass'n,*
    559 F.2d 894 (3d Cir. 1977)....................................................................................5, 6

*Petree v. Victor Fluid Power, Inc.,*
    831 F.2d 1191 (3d Cir. 1987)............................................................................10, 11

*Pfizer, Inc. v. Ranbaxy Labs Ltd.,*
    No. 03-209-JJF, 2005 WL 3525681 (D. Del. Dec. 22, 2005)...................................7

*Pfizer, Inc. v. Teva Pharms. USA, Inc.,*
    518 F.3d 1353 (Fed. Cir. 2008)................................................................................2

*Philips Elecs. N. Am. Corp. v. Contec Corp.,*
    No. 02-123-KAJ, 2005 WL 552509 (D. Del. Mar. 8, 2005) ...............................9, 13

*Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.,*
    842 F.2d 1466 (3d Cir. 1988)..................................................................................13

*Proctor & Gamble Co. v. Teva Pharms USA, Inc.,*
    *536 F. Supp. 2d 476, 497-98 (D. Del. 2008)* ........................................................2

*Sample v. Diecks,*
    885 F.2d 1099 (3d Cir. 1989)..................................................................................11

*Semper v. Santos,*
    845 F.2d 1233 (3d Cir. 1988)....................................................................................6

*United States v. Blankenship,*
    775 F.2d 735 (6th Cir. 1985) ........................................................................14, 15

*United States v. Coward,*
    296 F.3d 176 (3d Cir. 2002).................................................................................15

*United States v. Kithcart,*
    218 F.3d 213 (3d Cir. 2000)..........................................................................14, 15

## FEDERAL STATUTES, RULES AND REGULATIONS

35 U.S.C. § 253 ...............................................................................................................10

Fed. R. Civ. P. 16(e) ...................................................................................................9, 10

Fed. R. Civ. P. 26.........................................................................................................5, 6

Fed. R. Evid. 401, 402, and 403................................................................................1, 7

D. Del. R. 16.3 ............................................................................................................9, 10

# INTRODUCTION

The Court should strike and refuse to consider three categories of evidence that Plaintiffs Boehringer Ingelheim International GmbH and Boehringer Ingelheim Pharmaceuticals, Inc. (collectively "Boehringer") offered during trial. First, Boehringer offered fact and expert testimony directed to purported secondary or objective indicia of nonobviousness, specifically unexpected properties and commercial success, even though such evidence is undeniably irrelevant in this nonstatutory double patenting case. Second, Boehringer offered at trial opinions from its expert neurologist, Dr. Warren Olanow, comparing the methods of use in the '086 patent to alleged new uses of pramipexole, even though such opinions were never disclosed prior to trial, in blatant violation of the Federal Rules and the Third Circuit's *Pennypack* standard. Finally, after the close of the evidence, Boehringer purported to offer into evidence a terminal disclaimer that Boehringer intentionally decided not to file with the Patent Office or disclose to Defendants until the trial was all but completed. All three categories of proffered evidence should be excluded from the trial record.

## I.    EVIDENCE OF ALLEGED OBJECTIVE INDICIA OF NONOBVIOUSNESS IS WHOLLY IRRELEVANT AND SHOULD BE EXCLUDED

Boehringer has attempted to divert the Court's attention from the issues relevant to Defendants' double patenting defense by padding the record with hours of unnecessary testimony concerning alleged secondary or objective indicia of nonobviousness, such as unexpected properties and commercial success. But the law could not be more clear that such evidence is irrelevant as a matter of law in a double patenting case such as this one. All of Boehringer's proffered evidence directed to objective indicia of nonobviousness is, therefore, inadmissible pursuant to Federal Rules of Evidence 401, 402, and 403, and should be excluded from the trial record.

A.    **Objective Indicia Are Irrelevant as a Matter of Law When Considering Defendants' Double Patenting Defense**

Just last month, this Court in *Proctor & Gamble Co. v. Teva Pharmaceuticals USA, Inc.*, addressed whether evidence of objective indicia of nonobviousness is relevant in considering nonstatutory double patenting. 536 F. Supp. 2d 476, 497-98 (D. Del. 2008). Relying on the Federal Circuit decision in *Geneva Pharmaceuticals., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373 (Fed. Cir. 2003), the Court deemed such evidence irrelevant and, accordingly, declined to consider it.

The Court's reliance on *Geneva* is particularly relevant here because *Geneva*, like the instant case, involved comparing claims directed to a method of using a compound and claims directed to the compound itself. 349 F.3d at 1375-82, 1384-86. *Geneva* left no doubt that evidence of objective indicia is wholly irrelevant to such an inquiry, stating that while "[o]bviousness requires inquiry into objective criteria suggesting non-obviousness; nonstatutory double patenting does not." *Id.* at 1377 n.1.

*Geneva* is not the only controlling decision to reach that conclusion. Far from it. A consistent line of precedent—starting with decisions of the Court of Customs and Patent Appeals ("CCPA") and continuing to a Federal Circuit opinion issued just last month—declines to give consideration to objective indicia of nonobviousness in holding that there is no patentable distinction between claims directed to compounds and claims directed to methods of using those compounds. *See In re Christmann*, 128 F.2d 596, 599 (CCPA 1942); *In re Byck*, 48 F.2d 665, 666-67 (CCPA 1931); *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 518 F.3d 1353, 1363 & n.8 (Fed. Cir. 2008).

**B.    Objective Indicia Are Also Irrelevant Here Because the '086 Patent Claims Anticipate the '812 Patent Claims**

The evidence of nonobviousness should be excluded for the additional and independent reason that the '812 patent claims are anticipated—both literally and inherently—by the earlier '086 patent claims. *See* Defendants' Opening Post-Trial Brief at 5-13 (filed simultaneously herewith). Given that the '812 patent claims do not satisfy the statutory requirement for novelty, no amount of objective indicia can ever make them valid, as it is black letter patent law that objective indicia of nonobviousness are irrelevant to anticipation. *In re Paulsen*, 30 F.3d 1475, 1482 n.11 (Fed. Cir. 1994); *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 364 F. Supp. 2d 820, 911 (S.D. Ind. 2005).

**C.    The Evidence to Be Excluded**

Boehringer spent the vast majority of its trial time touting alleged objective indicia related to pramipexole, such as unexpected properties, long-felt need, and commercial success. All of the testimony from both Dr. Olanow and Boehringer's economist Dr. Mohan Rao was directed to this issue.[1] That testimony should be excluded in its entirety, as well as each of the exhibits offered by Boehringer through those witnesses,[2] any exhibits offered by Boehringer through Defendants' expert Dr. Richard Mailman (who responded to Dr. Olanow's testimony),[3] and any proposed findings of fact or conclusions of law based on the testimony or exhibits.

In addition, Boehringer dumped into the record dozens of exhibits and pages of designated deposition testimony from Defendants' witnesses. Tr. 440:22-441:15 (Counsel for

---

[1] As discussed below in Section II, part of Dr. Olanow's testimony should be excluded for the additional reason that it was not timely disclosed.

[2] The exhibits are TX 301, 302, 419, 433, 437, 460, 461, 465, 467, 469, 471, 472, 480, 483, 485, 486, 512, and 527.

[3] The exhibits are TX 547, 549, and 550.

Boehringer). To the extent those documents and/or testimony are being offered to establish

objective indicia of nonobviousness, they have no place in this record.[4]

## II.    THE COURT SHOULD EXCLUDE DR. OLANOW'S TESTIMONY COMPARING METHODS OF USING COMPOUNDS CLAIMED IN THE '086 PATENT WITH ALLEGED NEW USES FOR PRAMIPEXOLE

As discussed in Section I, above, Dr. Olanow's testimony should be excluded because it

relates to objective indicia of nonobviousness, and therefore is irrelevant as a matter of law.

However, a portion of that testimony—which compares the methods of using compounds in the

'086 patent to alleged new uses of pramipexole—should be excluded for a second, independent

reason. Specifically, Defendants were ambushed by that evidence, as Boehringer provided

absolutely no advance notice of Dr. Olanow's opinions.

During his direct testimony, Dr. Olanow for the first time disclosed all manner of

opinions regarding purported differences between (a) the use of pramipexole to treat the medical

conditions referenced in the claims of the '086 patent, and (b) the alleged use of pramipexole to

treat restless leg syndrome ("RLS"), depression, or fibromyalgia, or as a neuroprotective agent.

*See, e.g.*, Tr. 60:10-61:11 (Olanow). Specifically, Boehringer elicited testimony from Dr.

Olanow that Boehringer's alleged other uses affected different populations, involved different

symptoms, and had different mechanisms of action than the uses claimed in the '086 patent. *See,*

*e.g.*, Tr. 60:10-61:11, 67:20-69:13, 76:18-77:18, 78:7-79:12, 82:1-83:9, 89:12-21, 92:10-93:2,

96:5-99:20 (Olanow).

However, the first time that Defendants had any notice that Dr. Olanow would offer such

---

[4] The exhibits include TX 145, 146, 261, 262, 266, 281, 310, 326, 411, 411A-G, 422, 426, 435, 436, 455, 457, 458, 459, 475, 476, 477, 478, 479, 481, 487, 488, 507, 508, 513, 515, 517, 518, 530, 532, 538, 539, 540, 542, 543, 544, and 755. The testimony is designated portions of the deposition transcripts of Sonja Indahl, Nicholas Tantillo, Paul Bisaro, Linda O'Dea, Madhu Sudhan Shaik, Jason Harper, and Rajendra Alvencar.

opinions was during his direct examination at trial. One searches in vain through both Dr.

Olanow's report and his deposition testimony for even the faintest hint that he would testify

about such purported differences. *See generally* Ex. A (Expert Report of Dr. C. Warren

Olanow); Ex. B (Dr. Olanow's deposition transcript). As such, this is not a case where an expert

disclosed a new opinion after he had been deposed, or even after the close of expert discovery,

but prior to trial. This is not even a case where the expert's opinions were disclosed on the eve

of trial in the Pre-Trial Order. Boehringer's violation here is far more egregious, as it concealed

the fact that its expert was going to offer new opinions until the moment such opinions were

actually offered from the witness stand.

      Given the untimely disclosure of Dr. Olanow's opinions, his testimony should be

excluded. Federal Rule of Civil Procedure 26 requires that an expert set forth "a complete

statement of <u>all</u> opinions the witness will express and the basis . . . for them" in his reports. Fed.

R. Civ. P. 26(a)(2)(B) (emphasis added). Where, as here, that rule has been violated, the Third

Circuit has mandated that courts consider the so-called *Pennypack* factors to assess whether the

expert opinion should be stricken. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559

F.2d 894 (3d Cir. 1977) ("*Pennypack*"). In the case of expert testimony disclosed for the first

time at trial, the *Pennypack* factors demand exclusion of the evidence.

      In *Pennypack*, the Third Circuit identified the following factors that must be considered

in evaluating whether to exclude late-disclosed evidence:

> (1) the prejudice or surprise in fact of the party against whom the
> excluded witnesses would have testified, (2) the ability of that
> party to cure the prejudice, (3) the extent to which waiver of the
> rule against calling unlisted witnesses would disrupt the orderly
> and efficient trial of the case or of other cases in the court, and (4)
> bad faith or willfulness in failing to comply with the district court's
> order.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791 (3d Cir. 1994) (*quoting Pennypack*, 559 F.2d at 904-05). The Third Circuit also has stated that "'the importance of the excluded testimony' should be considered" as well. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (*quoting Pennypack*, 559 F.2d at 904).

This precedent demands exclusion of Dr. Olanow's never-disclosed opinions. The prejudice to Defendants could not be more extreme, as Defendants had absolutely no opportunity to investigate or probe Dr. Olanow's opinions, much less elicit or develop contrary evidence, in advance of Dr. Olanow's testimony at trial. Defendants had no ability to prepare to cross examine Dr. Olanow on these opinions, and insufficient time to fully prepare any rebuttal exhibits or testimony from its own expert. Indeed, in *Semper v. Santos*, 845 F.2d 1233 (3d Cir. 1988), the Third Circuit affirmed the exclusion of expert testimony disclosed during trial, stating that the opposing party "had been effectively precluded from the opportunity to obtain discovery concerning [the expert witness'] treatment, findings, or prospective testimony." *Id.* at 1237.[5]

As for the second factor, because the prejudice to Defendants arose at the very last possible moment, it was incurable. Unlike cases in which evidence was allowed despite a technical violation of Rule 26 because the prejudice could be cured prior to trial, here Defendants had absolutely no prior notice of the new opinions and could not depose Dr. Olanow on them because they arose during the trial itself. *C.f. Paoli*, 35 F.3d at 793 (opportunity to depose after new opinions arose cured the prejudice); *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201-02 (3d Cir. 1978) (evidence allowed because opposing party had notice prior to trial). Thus the only possible cure is to exclude the evidence in its entirety. The third factor also

---

[5] While Defendants deposed Dr. Olanow, that deposition was based on his report, which plainly did not contain these new opinions.

weighs in favor of exclusion. Allowing parties to introduce undisclosed expert testimony at trial would certainly disrupt the orderly and efficient trial of cases.

As to the fourth factor, the evidence points to a willful disregard of Boehringer's disclosure obligations. Boehringer cannot credibly claim that it did not know such opinions would be offered at trial, as it obviously elicited the testimony. It is simply inconceivable that Boehringer believed disclosing opinions for the first time at trial complied with its discovery obligations. Its actions cannot be written off as mere oversight.

The importance factor also weighs against admitting the testimony. To the extent that Dr. Olanow's testimony was offered to support Boehringer's "materially different process" theory, it is irrelevant. That theory has no basis in law, and is directly contrary to the governing law for evaluating whether claims are patentably distinct. *See* Defendants' Opening Post-Trial Brief at 13-15. And, as discussed above, if it was offered to show objective indicia of nonobviousness, such evidence is also completely irrelevant to the issues before the Court. Because the testimony is not relevant to any issue in the case, that alone warrants exclusion under Federal Rules of Evidence 401, 402, and 403.

On these facts—withholding disclosure of expert opinions until direct examination at trial—the law permits exclusion of the evidence. *See, e.g., Pfizer, Inc. v. Ranbaxy Labs Ltd.*, No. 03-209-JJF, 2005 WL 3525681 at *2 (D. Del. Dec. 22, 2005) (excluding expert testimony and any related proposed findings of fact and conclusions of law where expert opinion was disclosed for the first time at trial). The testimony should be excluded, as well as any proposed findings of fact or conclusions of law based on it.[6]

---

[6] The relevant portions of the transcript include, *inter alia*, Tr. 57:22-58:15, 60:10-61:11, 63:12-64:4, 67:20-69:13, 72:5-73:22, 76:18-77:18, 78:7-79:10, 82:1-83:9, 89:12-21, 92:10-93:2, 96:5-99:20, 112:4-18, 113:14-115:15, 168:24-169:11 (Olanow).

III.    **THE COURT SHOULD EXCLUDE THE TERMINAL DISCLAIMER BOEHRINGER OFFERED AFTER THE CLOSE OF EVIDENCE AS WELL AS BOEHRINGER'S NEW TERMINAL DISCLAIMER DEFENSE**

On the last day of trial, after all parties rested, Boehringer sought to move into evidence Exhibit 548, a terminal disclaimer filed the same day, March 13, 2008.  TX 548; Tr. 441:21-22, 718:14-719:7 (Counsel for Boehringer).  The Court should exclude from the record (1) the terminal disclaimer (TX 548); (2) any argument that the Boehringer's terminal disclaimer cures the double patenting here; and (3) any of Boehringer's proposed findings of fact or conclusions of law related to the terminal disclaimer.

Boehringer offers no explanation for why it waited 18 years after the issuance of the '812 patent to file its terminal disclaimer.  On August 14, 2006, after the '086 patent had expired, Boehringer admitted, in response to a request for admission, that it had not filed a terminal disclaimer on the '812 patent.  TX 709 (Response to Request for Admission No. 2).  In fact, the day before filing its terminal disclaimer, Boehringer represented to this Court and Defendants that no terminal disclaimer was at issue in this case.  Counsel for Boehringer specifically stated "Do we terminally disclaim?  No, we have not terminally disclaimed."  Tr. 275:2-3 (Counsel for Boehringer).  Twenty four hours later, two and half years into this litigation, after both sides had rested, Boehringer suddenly produced to Defendants and offered into evidence the terminal disclaimer that it now alleges somehow cures double patenting.

A.    **Boehringer Did Not Disclose a Terminal Disclaimer or Its New Terminal Disclaimer Defense in the Pre-Trial Order, and Therefore Has Waived Its Ability to Rely on Them**

By failing to raise in the Pre-Trial Order either the terminal disclaimer or the newly-fabricated defense that the terminal disclaimer cured any double patenting, Boehringer has waived the right to rely on either one.  Federal Rule of Civil Procedure 16(e) provides that a pre-trial order "shall control the subsequence course of the action unless modified by a subsequent

order. The order following a final pretrial conference shall be modified only to prevent <u>manifest injustice</u>." Fed. R. Civ. P. 16(e) (emphasis added); *see also* D. Del. LR. 16.3. To that end, the Pre-Trial Order in this case affirmatively states that "This Order shall control the subsequence course of this action, unless modified by the Court to prevent manifest injustice." D.I. 190 (Pre-Trial Order Cover) at ¶ 9. In other words, the "law is clear that the issues presented in the pretrial order control the issues to be addressed during trial." *Philips Elecs. N. Am. Corp. v. Contec Corp.,* No. 02-123-KAJ, 2005 WL 552509, at * 5 (D. Del. Mar. 8, 2005).

The stringent requirement for modifying the Pre-Trial Order is logical. "One of the main purposes of the pretrial conference is to formulate the issues to be litigated to aid the parties in preparation for trial. If counsel are permitted to change the positions taken at pretrial obviously the effectiveness of this procedure is destroyed." *Ely v. Reading Co.*, 424 F.2d 758, 763 (3d Cir. 1970) (affirming exclusion of expert not listed in pre-trial order, offered to testify about an issue not disclosed in the pre-trial order).

### 1. The Pre-Trial Order Did Not Provide Notice of the Terminal Disclaimer or Boehringer's New Terminal Disclaimer Defense

Boehringer's terminal disclaimer and its alleged effect on Defendants' double patenting defense were simply not disclosed by Boehringer in the Pre-Trial Order. Neither Boehringer's Statement of Facts nor its Statement of Anticipated Proofs makes any reference to terminal disclaimers, and the disclaimer itself was not included on the exhibit list. D.I. 190, Exs. 2, 6, 12. Nor is the patent term extension—which is central to Boehringer's new defense—mentioned anywhere in the Pre-Trial Order, let alone for the proposition that disclaiming some of it is somehow equivalent to disclaiming original patent life.

In fact, Boehringer's sections of the Pre-Trial Order contain only a single, fleeting reference to terminal disclaimers. The "Statement of Issues of Law that Remain to be Litigated,"

includes the unremarkable proposition that "[a]n obviousness-type double patenting issue can be cured by the filing of a terminal disclaimer pursuant to 35 U.S.C. § 253." D.I. 190, Ex. 4 at 3. That lone, general statement was insufficient to put Defendants on notice that Boehringer intended to file a terminal disclaimer (particularly where Boehringer had failed to do so for the two and a half years the case had been pending) and then rely on that non-existent, peculiar disclaimer as a lynchpin of its response to Defendants' double patenting defense. Defendants were also not put on notice of the contents of any intended disclaimer.

      **2.**      **Boehringer Cannot Satisfy the Stringent Standard for Amending the Pre-Trial Order**

           **a.**      **Boehringer Cannot Meet the Threshold Requirement of Showing "Manifest Injustice"**

Nor can Boehringer satisfy the requirements for amending the Pre-Trial Order. Both the law and the Pre-Trial Order require a demonstration that Boehringer would suffer "manifest injustice" if the amendment were not allowed. *See* D.I. 190 (Pre-Trial Order Cover), at 9; Fed. R. Civ. P. 16(e); D. Del. LR. 16.3; *Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1194 (3d Cir. 1987) ("[W]e need not evaluate the potential prejudice to the nonmoving party unless it appears that refusal to amend will result in manifest injustice to the moving party."); *Ely*, 424 F.2d at 763 (A pre-trial order "cannot be modified without the permission of the court and a showing of manifest injustice.").

It is Boehringer's burden to show that it would suffer "manifest injustice." *Lentz v. Mason*, 32 F. Supp. 2d 733, 738 (D.N.J. 1999) ("the moving party has the burden to demonstrate that manifest injustice will result without amendment"); *Leonen v. Johns-Manville Corp.*, No. 82-2684, 1989 WL 5819, at *2 (D.N.J. Jan. 23, 1989) ("The burden of showing . . . manifest injustice . . . falls squarely on the moving party") (quotation omitted). Further "the moving party has the burden to demonstrate . . . that the moving party had a 'compelling reason why' it did not

seek to amend" earlier. *Lentz,* 32 F. Supp. 2d at 738; *see also Petree,* 831 F.2d at 1194 ("The plaintiff has offered no compelling reason why the proposed theory of liability was not disclosed at the pretrial conference."); *Sample v. Diecks,* 885 F.2d 1099, 1107 (3d Cir. 1989) (affirming exclusion of a late-disclosed defense because Defendants did not offer "any reason why they were justified in not earlier advancing their new theory").

The facts demonstrate that Boehringer simply cannot satisfy the relevant standard, as there is no explanation whatsoever as to why Boehringer did not raise this issue earlier. Not only has Boehringer not met this burden, but it has not even tried to satisfy it. It fails to offers any justification for not having included this issue in the Pre-Trial Order. Boehringer could have filed its terminal disclaimer anytime in the last <u>eighteen years</u>. It certainly could have filed it anytime in the last two and a half years that this case has been litigated. And Boehringer unquestionably could have filed it before the Pre-Trial Order was submitted in this case. For no justifiable reason, Boehringer waited until after the last minute—after evidence closed at trial— to file and produce its terminal disclaimer and assert its new terminal disclaimer defense.

In apparent recognition of the "manifest injustice" requirement, Boehringer suggested that it could not have presented the terminal disclaimer to the Court and the Defendants before the moment it did, because it had not been executed or filed prior to that day. Tr. 720:8-11 (Counsel for Boehringer). Of course, that argument ignores the fact that it was <u>entirely</u> in Boehringer's control if and when the disclaimer was filed.

        **b.**      **The *Pennypack* Factors Do Not Warrant Admission of the Evidence**

Even if Boehringer could make the threshold showing of manifest injustice here—which it plainly cannot do—this evidence should still be excluded under the analytical framework set forth in *Pennypack.* Courts in this Circuit routinely rely on the same four factors spelled out in

*Pennypack* to evaluate whether to grant a motion to amend a pre-trial order. *See, e.g., Greate Bay Hotel & Casino v. Tose*, 34 F.3d 1227, 1236 (3d Cir. 1994); *see also Leonen*, 1989 WL 5819 at *2-3 (courts consider these factors only if the showing of manifest injustice has been met).

With respect to the prejudice factor, there is no question that Defendants have been prejudiced, as Defendants would have presented their evidence to this Court differently and introduced additional evidence into the record if they had been on notice of the terminal disclaimer. For example, Defendants could have elicited testimony concerning the scope of non-asserted claims that would have further supported Defendants' argument that the term extension period Boehringer surrendered does not involve the same rights that Boehringer improperly obtained between the expiration of the '086 and '812 patents. *See* Defendant's Opening Post-Trial Brief at 23-25.

The second and third *Pennypack* factors favor Defendants as well. The prejudice to Defendants cannot be cured. Boehringer's after-the-bell submission of the terminal disclaimer made sure of that. Once the presentation of evidence was closed, Defendants had no opportunity to take any of the curative measures identified in the case law. *See, e.g., Greate Bay*, 34 F.3d at 1236 (describing curative measures taken including making witnesses not previously identified available for deposition, bearing the expense of the depositions, producing all personnel files for those witnesses and allowing the injured party to call new witnesses). And while trial was not disrupted by the introduction of the terminal disclaimer, that is only a consequence of Boehringer having raised this issue <u>so late</u> that Defendants could do absolutely nothing about the extreme prejudice to them. That can hardly be weighed in Boehringer's favor.

Finally, there can be no question that the timing of Boehringer's machinations equates to willful non-compliance with the Pre-Trial Order requirements. The decision to file a terminal

disclaimer was entirely at Boehringer's option. If Boehringer had intended to put this issue in the case at that time of the Pre-Trial Order, it should have filed the terminal disclaimer at that time, produced it to Defendants, raised it explicitly in the Pre-Trial Order, and allowed Defendants to be in a position to cure the prejudice that had been occasioned by its late disclosure.[7] Boehringer's failure to do that constitutes willful noncompliance with the rules.

Several courts have excluded evidence offered under similar circumstances. In *Philips Electronics North America Corp. v. Contec Corp.*, the defendant, CMT, tried to assert a defense that had not been raised in the pre-trial order—that the plaintiff could only recover royalties for those products used in an infringing manner. 2005 WL 552509, at *5. The defendant had not stated in the pre-trial order that an issue of fact was the number of units sold to customers who actually used the patented method. *Id.* The Court held that the defendant had waived this argument because it was not included in the pre-trial order. *Id.* at *4 ("CMT has waived its opportunity to raise those arguments in this case."). In reaching that conclusion, the court further stated that "CMT was not entitled to wait until the middle of the trial to present its arguments on damages." *Id.* at *5 (emphasis added); *see also Manasco v. Rogers*, No. 01-1426, 2006 WL 2568838, at *4-5 (D.N.J. Sept. 1, 2006) (holding that the plaintiffs waived a liability theory by not presenting it in their pre-trial order); *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1476 (3d Cir. 1988) (affirming district court rejection of a claim for consequential damages asserted after trial but not in the pre-trial order).

In the context of terminal disclaimers specifically, the court in *CMI Corp. v. Lakeland*

---

[7] Boehringer's late presentation of key evidence also violates Federal Rule of Civil Procedure 26, because even had the terminal disclaimer been disclosed on the eve of trial, such disclosure could not have cured the prejudice to Defendants. Defendants still would have been deprived of the right to depose Plaintiffs' expert and fact witnesses on this topic, as well as the opportunity to prepare affirmative opinions from Defendants' expert witnesses in response.

*Constr. Co.*, 184 USPQ 721 (N.D. Ill. 1975), found that a terminal disclaimer filed on the eve of

trial, over seven years after the allowance of the patent and almost two years since the filing of

the litigation, was ineffective to cure double patenting. The Court explained that it was

"concerned with the timing of the disclaimer, coming at such a late date, especially since

defendants' answer had raised the issue several years earlier."[8] 184 USPQ at 727.

### B.     The Court Should Not Reopen the Evidence to Admit the Terminal Disclaimer

The terminal disclaimer also should be excluded because it was submitted after both sides

had rested at trial and after the close of evidence. Therefore, Boehringer would need to reopen

evidence in order for it to properly be part of the record. Not only has Boehringer failed to

request that the Court reopen evidence, but it cannot meet the requisite standard for doing so.

In *United States v. Kithcart*, 218 F.3d 213, 219 (3d Cir. 2000), the Third Circuit, heavily

citing from the opinion of its sister circuit in *United States v. Blankenship*, 775 F.2d 735, 740

(6th Cir. 1985), explained the standard for considering a motion to reopen evidence after both

parties have rested. It stated that "courts should be extremely reluctant to grant reopenings."

*Kithcart*, 218 F.3d at 219. "When faced with a motion to reopen, the district court's primary

focus should be on whether the party opposing reopening would be prejudiced if reopening is

permitted." *Id.* at 220. Quoting from *Blankenship,* 775 F.2d at 740, the court further explained

that:

> "the party moving to reopen should provide a reasonable
> explanation for failure to present the evidence [initially]." In order
> to properly exercise its discretion the district court must evaluate

---

[8] The CCPA has also repeatedly declined to consider terminal disclaimers filed in the later stage of appeals from the Board of Patent & Trademark Office Appeals Board. *See, e.g.*, *In re Deters*, 515 F.2d 1152, 1156 (CCPA 1975); *In re Thorington*, 418 F.2d 528, 533-34 (CCPA 1969); *In re Jursich*, 410 F.2d 803, 807 (CCPA 1969); *In re Rogers*, 394 F.2d 566, 571 (CCPA 1968); *In re Purdy*, 393 F.2d 1010, 1011 (CCPA 1968); *In re Heyl*, 379 F.2d 1018, 1021 (CCPA 1967).

> that explanation and determine if it is both reasonable, and
> adequate to explain why the government initially failed to
> introduce evidence that may have been essential to meeting its
> burden of proof.

*Kithcart*, 213 F.3d at 220 (brackets in original).  The evidence was ultimately excluded because

the Government had not offered any explanation for its failure to introduce it earlier.  *Id.* at 221.

Similarly, in *United States v. Coward*, 296 F.3d 176, 181 (3d Cir. 2002), the court

reaffirmed the standard set forth in *Kithcart* and further explained that "[a] critical factor in

evaluating prejudice is the timing of the motion to reopen."  Quoting from *Blankenship*, 775 F.2d

at 741, the Third Circuit in *Coward* explained that:

> If [the motion to reopen] comes at a stage in the proceedings where
> the opposing party will have an opportunity to respond and attempt
> to rebut the evidence introduced after reopening, it is not nearly as
> likely to be prejudicial as when reopening is granted after all
> parties have rested, or even after the case has been submitted to the
> jury.

*Coward*, 296 F.3d at 181.

For the reasons explained in connection with the waiver argument above, this Court

should decline to reopen the evidence in this case exclude the terminal disclaimer.  Boehringer

has not and cannot offer a reasonable and adequate explanation for not offering it into evidence

earlier.  There is no question that it could have been filed earlier.

\*        \*        \*

In sum, this Court should exclude the terminal disclaimer itself (TX 548), any arguments

by Boehringer that it can cure double patenting with this terminal disclaimer, and any of

Boehringer's proposed findings of fact or conclusions of law based on the terminal disclaimer.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court's should

exclude all evidence offered by Boehringer concerning:  (1) any alleged objective indicia of

nonobviousness; (2) Dr. Olanow's testimony comparing methods of using compounds in the '086 patent and the alleged new uses of pramipexole; and (3) the terminal disclaimer filed by Boehringer on the last day of trial.  Defendants further request that the Court exclude any of Boehringer's arguments, proposed findings, of fact or conclusions of law based on the aforementioned evidence.

                                    Respectfully submitted,


YOUNG CONAWAY STARGATT &           MORRIS JAMES LLP
     TAYLOR, LLP

/s/ Karen E. Keller                 /s/ Mary B. Matterer
Karen E. Keller (#4489)             Mary B. Matterer (#2696)
kkeller@ycst.com                    MMatterer@morrisjames.com
The Brandywine Building             500 Delaware Avenue, Suite 1500
1000 West Street, 17th Floor        P.O. Box 2306
Wilmington, DE 19801                Wilmington, DE 19899-2306
(302) 571-6600                      (302) 888-6960
Attorney for Barr Laboratories, Inc.   Attorney for Mylan Pharmaceuticals Inc.

Dated: April 18, 2008

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on April 25, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Jack B. Blumenfeld, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
PO Box 1347
Wilmington, DE 19899-1347

Mary B. Matterer, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

I further certify that on April 25, 2008, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

Steven C. Cherny, Esquire
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834

Kenneth G. Schuler, Esquire
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL 60606

Shannon M. Bloodworth, Esquire
Heller Ehrman LLP
1717 Rhode Island Ave., N.W.
Washington, DC 20036

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Karen E. Keller*
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
kkeller@ycst.com

*Attorneys for Barr Laboratories, Inc.*