# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 05-700 (JJF) |
| v. | ) ) ) | |
| BARR LABORATORIES, INC., | ) ) ) | |
| Defendant, | ) | |
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 05-854 (JJF) |
| v. | ) ) ) | |
| MYLAN PHARMACEUTICALS, INC., | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' ANSWERING BRIEF
## <u>REGARDING EVIDENTIARY OBJECTIONS</u>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*
*Boehringer Ingelheim International GmbH and*
*Boehringer Ingelheim Pharmaceuticals, Inc.*

*Of Counsel:*

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834
(212) 906-1200

Kenneth G. Schuler
Amanda J. Hollis
Joel Neckers
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL 60606
(312) 876-7700

Dated: May 14, 2008

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................ii

INTRODUCTION ........................................................................................1

I.    Evidence Of Objective Indicia Of Non-Obviousness Is Admissible.............................1

II.   Dr. Olanow's Testimony Should Not Be Excluded.........................................5

      A.    Defendants' Argument Simply Ignores Dr. Olanow's Expert Report................5

      B.    Exclusion Of Dr. Olanow's Testimony Is Inappropriate ....................................9

III.  The Terminal Disclaimer Is Admissible Evidence Mooting Defendants' Double Patenting Defense..........................................................................11

      A.    Boehringer's Argument That A Terminal Disclaimer Would Moot Any Double Patenting Issue Was Timely Disclosed ...........................................11

            1.    The Defendants Had Ample Notice of the Terminal Disclaimer Issue.......................................................................11

            2.    An Amendment to the Pretrial Order Would be Warranted in Any Event .........................................................................13

      B.    The Terminal Disclaimer Was Introduced Prior to the Close of Evidence .........17

      C.    The Record May Be Reopened To Admit The Terminal Disclaimer.................17

CONCLUSION...........................................................................................19

<u>**TABLE OF AUTHORITIES**</u>

CASES

*American Cyanamid Co. v. U.S. Surgical Corp.,*
    30 U.S.P.Q.2d 1561 (D. Conn. 1992) ................................................................3, 4

*Bayer AG v. Barr Labs, Inc.,*
    798 F. Supp. 196 (S.D.N.Y. 1992) ....................................................................16

*Bayer AG v. Dr. Reddy's Labs.,*
    518 F. Supp. 2d 617 (D. Del. 2007) ....................................................................1

*Bissell Inc. v. Oreck Corp.,*
    No. 1:98-cv-319, 2000 U.S. Dist. LEXIS 3595 (W.D. Mich. Mar. 10, 2000)..................18, 19

*Blinzler v. Marriott Int'l, Inc.,*
    81 F.3d 1148 (1st Cir. 1996) ............................................................................18

*Eli Lilly and Co. v. Barr Laboratories, Inc.,*
    251 F.3d 955 (Fed. Cir. 2001)..........................................................................12

*Ely v. Reading Co.,*
    424 F.2d 758 (3d Cir. 1970)............................................................................12

*Ferrell v. Trailmobile, Inc.,*
    223 F.2d 697 (5th Cir. 1995) ..........................................................................18

*First Nat'l Bank & Trust, Co. v. Jones,*
    61 F. Supp. 364 (W.D. Ok. 1945) ....................................................................14

*Forest Labs., Inc. v. Ivax Pharms., Inc.,*
    237 F.R.D. 106 (D. Del. 2006) ........................................................................7, 8

*Garcia v. Woman's Hosp. of Tex.,*
    97 F.3d 810 (5th Cir. 1996) ............................................................................18

*Geneva Pharm. Inc. v. GlaxoSmithKline PLC,*
    349 F.3d 1373 (Fed. Cir. 2003)......................................................................1, 12

*Glaxo '845 Patent Litig.,*
    450 F. Supp. 2d 435, 438 (S.D.N.Y. 2006)..........................................................2

*Huddleson v. United States.,*
    485 U.S. 681 (1988)........................................................................................3

*In re Byck,*
    48 F.2d 665 (C.C.P.A. 1931) ............................................................................3

<u>**TABLE OF AUTHORITIES, cont'd**</u>

CASES

*In re Christmann*,
    128 F.2d 596 (C.C.P.A. 1942) ................................................................3

*In re Deters*,
    515 F.2d 1152 (C.C.P.A. 1975) .............................................................16

*In re Emert*,
    124 F.3d 1458 (Fed. Cir. 1997)............................................................3, 4

*In re Heyl*,
    379 F.2d 1018 (C.C.P.A. 1967) .............................................................17

*In re Jursich*,
    410 F.2d 803 (C.C.P.A. 1969) ...............................................................17

*In re Lonardo*,
    199 F.3d 960 (Fed. Cir. 1997)...............................................................12

*In re Longi*,
    759 F.2d 887 (Fed. Cir. 1985)................................................................3

*In re Metoprolol Succinate Patent Litig.*,
    494 F.3d 1011 (Fed. Cir. 2007).............................................................16

*In re Purdy*,
    393 F.2d 1010 (C.C.P.A. 1968) .............................................................17

*In re Rogers*,
    394 F.2d 566 (C.C.P.A. 1968) ...............................................................17

*In re Thorington*,
    418 F.2d 528 (C.C.P.A. 1969) ........................................................ 16-17

*Janopoulos v. Harvey L. Warner & Assocs.*,
    1995 U.S. Dist. LEXIS 2751 (N.D. Ill. Mar. 2, 1995)............................14

*John v. Sotheby's, Inc.*,
    858 F. Supp. 1283 (S.D.N.Y. 1994)......................................................18

*King Pharma. Inc. v. Teva Pharma. USA*,
    78 U.S.P.Q.2d 1237 (D. N.J. 2006) ......................................................12

*MercExchange, LLC v. eBay, Inc.*,
    467 F. Supp. 2d 608 (E.D. Va. 2006) ............................................... 18-19

## TABLE OF AUTHORITIES, cont'd

CASES

*Mirafi, Inc. v. Murphy*,
    14 U.S.P.Q.2d 1337 (W.D.N.C. 1989) ................................................................. 3

*Munters Corp. v. Burgess Indus. Inc.*,
    450 F. Supp. 1195 (D.C.N.Y. 1977) .................................................................. 19

*Perricone v. Medicis Pharma. Corp.*,
    432 F.3d 1368 (Fed. Cir. 2005) ....................................................................... 16

*Pfizer Inc. v. Ranbaxy Labs. Ltd.*,
    405 F. Supp. 2d 495 (D. Del. 2005) ................................................................... 2

*Pfizer Inc. v. Ranbaxy Labs. Ltd.*,
    No. Civ.A. 03-209-JJF, 2005 WL 3525681 (D. Del. Dec. 22, 2005) ....................... 13

*Procter & Gamble Co. v. Teva Pharm. USA, Inc.*,
    536 F. Supp. 2d 476 (D. Del. 2008) ................................................................... 2

*Rivera-Flores v. Puerto Rico Tel. Co.*,
    64 F.3d 742 (1st Cir. 1995) ........................................................................... 18

*Romeo v. Sherry, et al.*,
    308 F. Supp. 2d 128 (E.D.N.Y. 2004) ............................................................... 18

*Sam Galloway Ford, Inc. v. Universal Underwriters Ins. Co.*,
    793 F. Supp. 1079 (M.D. Fla. 1992) ................................................................. 14

*Semper v. Santos*,
    845 F.2d 1233 (3d Cir. 1988) .......................................................................... 9

*Smith & Nephew, Inc. v. Biomet, Inc.*,
    2005 WL 3132313 (D. Or. 2005) .................................................................... 15

*Studiengesellschaft Kohle mbH v. Northern Petrochemical Co.*,
    784 F.2d 351 (Fed. Cir. 1986) .......................................................................... 4

*Symbol Techs., Inc. v. Opticon, Inc.*,
    935 F.2d 1569 (Fed. Cir. 1991) ...................................................................... 15

*Technicon Instruments Corp. v. Coleman Instruments, Inc.*,
    255 F. Supp. 630 (N.D. Ill. 1966) ............................................................... 15-16

*Tracinda Corp. v. DaimlerChrysler AG*,
    362 F. Supp. 2d 487 (D. Del. 2005) ................................................................... 8

## TABLE OF AUTHORITIES, cont'd

**RULES**

FEDERAL RULE OF CIVIL PROCEDURE 16 ................................................................13

FEDERAL RULE OF CIVIL PROCEDURE 26 .............................................................7, 8

FEDERAL RULE OF EVIDENCE 402.........................................................................3

## INTRODUCTION

Defendants' Opening Brief Regarding Evidentiary Objections argues that this Court should "strike and refuse to consider" certain evidence Boehringer proffered at trial. *See* Def. Evid. Br. at 1. That evidence includes (1) evidence of secondary indicia of the nonobviousness of the '812 patent claims over the '086 patent claims; (2) testimony from Boehringer's expert Dr. Olanow comparing the '086 patent claims to new, unexpected uses of pramipexole; and (3) the terminal disclaimer (TX 548) ("the Terminal Disclaimer") Boehringer filed on March 13, 2008. *See id.* As explained in detail below, Defendants' arguments in support of excluding these categories of evidence are unfounded.

## I.    EVIDENCE OF OBJECTIVE INDICIA OF NON-OBVIOUSNESS IS ADMISSIBLE

The Defendants overstate the state of the case law regarding the evaluation of secondary indicia of nonobviousness in the context of a double patenting analysis. The most that can be said about the matter is that the Federal Circuit, in *dicta*, has indicated that an examination of secondary indicia is not *required* in a double patenting analysis. *See Geneva Pharm. Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1378 n.1 (Fed. Cir. 2003) ("Obviousness requires inquiry into objective criteria suggesting non-obviousness; non-statutory double patenting does not"). That is a far cry from holding that it is *prohibited*, as Defendants contend. *See* Def. Evid. Br. at 2 ("*Geneva* left no doubt that evidence of objective indicia is wholly irrelevant"). Indeed, as Chief Judge Robinson recently noted, there "appears to be a conflict between the Federal Circuit's statement in a footnote in *Geneva* . . . [and] the Court's precedent in which it looked to unexpected properties in the double patenting context." *Bayer AG v. Dr. Reddy's Labs.*, 518 F. Supp. 2d 617, 641 n.49 (D. Del. 2007). Resolving this apparent conflict, the District Court for the Southern District of New York held that "[t]he plain language of the

footnote [in *Geneva*] makes it clear that it does not preclude the proffer of evidence of objective criteria ... where relevant." *Glaxo '845 Patent Litig.*, 450 F. Supp. 2d 435, 438 (S.D.N.Y. 2006) ("[t]he Court finds that GSK has demonstrated its relevance here and that the evidence of secondary considerations is admissible is admissible in connection with [double patenting].").

Defendants' characterization of the Court's decision in *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 536 F. Supp. 2d 476 (D. Del. 2008), also is mistaken. In that case, this Court did not "deem such evidence irrelevant and decline to consider it," as Defendants suggest. *See* Def. Evid. Br. at 2. Rather, this Court held that "[f]or all of the reasons discussed above in the broader statutory obviousness inquiry, the Court concludes that the asserted claims of the '122 patent are patentably distinct from claim 15 of the '406 patent." 536 F. Supp. 2d at 498. One of those "reasons" was that "objective indicia relevant to nonobviousness support the Court's determination" that the '122 patent was not obvious over the '406 patent. *See id.* at 496-97.

The Court's approach in the *Teva* case was consistent with its prior decisions on the subject. Thus, in its opinion in *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, 405 F. Supp. 2d 495 (D. Del. 2005), the Court quoted the footnote from *Geneva* but noted:

> Pfizer contends that, notwithstanding Judge Rader's footnote in Geneva, it is appropriate to consider objective indicia of nonobviousness in the case of nonstatutory, obviousness-type double patenting. To the extent such an analysis of these secondary considerations is required, the Court incorporates by reference its discussion of these factors in the obviousness analysis contained in Section IV.B.2 infra.

405 F. Supp. 2d at 513 n. 9.

Notably, the Defendants cite no case in which a court ***excluded*** evidence relating to the secondary considerations of nonobviousness – the relief they seek here. Indeed, the remaining cases they cite are inapposite to the consideration of secondary indicia in this case.

2

*See In re Christmann*, 128 F.2d 596, at *passim* (C.C.P.A. 1942) (secondary indicia neither raised nor addressed, finding "[t]he situation here presented is not one in which a substance which is known to be useful for some purposes is found to be unexpectedly useful for another, unrelated purpose.") (internal citation omitted); *In re Byck*, 48 F.2d 665, 666-67 (C.C.P.A. 1931) (secondary indicia neither raised nor addressed).

Moreover, courts repeatedly have acknowledged that secondary indicia of non-obviousness may be relevant to an obviousness-type double patenting analysis. *See, e.g., In re Emert*, 124 F.3d 1458, 1462 (Fed. Cir. 1997) ("Absent some indication of unexpected properties, the combination [A and B] rendered B1 obvious"); *In re Longi,* 759 F.2d 887, 896-97 (Fed. Cir. 1985) ("the Albazatti declaration fails to provide the unexpected results necessary to rebut the prima facie case of obviousness"); *American Cyanamid Co. v. U.S. Surgical Corp.*, 30 U.S.P.Q.2d 1561, 1569, n.22 (D. Conn. 1992); *Mirafi, Inc. v. Murphy*, 14 U.S.P.Q.2d 1337, 1340 (W.D.N.C. 1989).

Accordingly, the evidence showing secondary indicia of nonobviousness Boehringer proffered at trial is admissible under FEDERAL RULE OF EVIDENCE 402, whether or not the Court ultimately decides to rely upon it. *See* FED. R. EVID. 402 ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, or by other rules prescribed by the Supreme Court pursuant to statutory authority."); *Huddleson v. United States.*, 485 U.S. 681, 687 (1988) ("Rules 401 and 402 establish the broad principle that relevant evidence – evidence that makes the existence of any fact at issue more or less probable – is admissible unless the Rules provide otherwise.").

Defendants' argument that such evidence is inadmissible because the '812 patent claims allegedly are "anticipated" by the '086 patent claims also is flawed. Initially, Defendants'

theory is misguided because a method claim cannot anticipate a compound claim – they comprise statutorily different subject matter. *See Studiengesellschaft Kohle mbH v. Northern Petrochemical Co.,* 784 F.2d 351, 354 (Fed. Cir. 1986) ("because the two patents claim different statutory classes of subject matter, composition and process, they are not the same invention"). Moreover, evidence of objective indicia of nonobviousness may be considered in the obviousness-type double patenting analysis regardless of whether that analysis is couched in terms of anticipation or obviousness. *See, e.g., In re Emert,* 124 F.3d at 1462; *American Cyanamid,* 30 U.S.P.Q.2d at 1569, n.22. Last, Defendants espouse both obviousness and anticipation theories of double patenting, and because the secondary indicia are relevant to the former, the evidence at issue is admissible in any event.

Finally, the Defendants' requested relief goes too far. As explained previously, Dr. Olanow's testimony has two purposes. First, his testimony indisputably establishes that pramipexole is used in materially different methods of treatment than those claimed in the '086 patent. *See* PFF at ¶¶ 110, 118; COL at ¶¶ 32. That evidence is directly relevant to whether there are patentably distinct differences between the asserted claims of the '812 patent and those of the '086 patent. *See* MPEP § 806.05(h); COL at ¶¶ 30-34. Defendants do not even contend that Dr. Olanow's testimony is inadmissible for this purpose. Dr. Olanow also opined that those uses were unexpected and that pramipexole has satisfied various unmet needs. *See* PFF at ¶¶ 122-129. Thus, even assuming the Court were to decide that evidence of secondary considerations is irrelevant to double patenting, it should only exclude the latter testimony.

For these reasons, the Court should deny the Defendants' motion to exclude all of the testimony from Drs. Olanow and Rao, any exhibits offered by Boehringer through the cross-

4

examination of Richard Mailman, any additional designated deposition testimony,[1] and any Findings of Fact or Conclusions of Law on this issue.

## II.    DR. OLANOW'S TESTIMONY SHOULD NOT BE EXCLUDED

### A.    Defendants' Argument Simply Ignores Dr. Olanow's Expert Report

The Defendants next contend that the Court should exclude Dr. Olanow's testimony "which compares the methods of using compounds in the '086 patent to alleged new uses of pramipexole" because they purportedly were "ambushed" by that testimony. *See* Def. Evid. Br. at 4. That contention is demonstrably incorrect.

First, Dr. Olanow's expert report repeatedly disclosed opinions regarding the very subject about which the Defendants feign surprise – a comparison of the claimed methods of use in the '086 patent and the use of pramipexole to treat RLS, depression, fibromyalgia, and as a neuroprotective agent. *See* Olanow Report, Ex. A hereto, at ¶¶ 15, 16, 28-30, 39, 45, 48. As noted, that is one of the two primary topics of Dr. Olanow's testimony, and his report is replete with statements disclosing why he concluded that the "other" medical uses for pramipexole are both different from those claimed in the '086 patent and would not have been expected by those in the field in light of those method of use claims. Thus, Dr. Olanow's Report begins by noting that he had "been asked to apply my experience, education and expertise to the question of whether certain uses for which Mirapex is currently prescribed by physicians would have been expected or predictable from the claims of the '086 patent." *Id.* at ¶ 16. Given that was the question addressed, the entire report goes to the issue about which the Defendants erroneously claim they had "absolutely no advance notice." Def. Evid. Br. at 4.

---

[1]    Defendants identify the subject exhibits and trial testimony in footnote 4 of their Opening Brief Regarding Evidentiary Objections.

Indeed, even a cursory review of Dr. Olanow's report reveals that it discloses a number of opinions on the topic identified by Defendants – a comparison of "the methods of using compounds in the '086 patent to alleged new uses of pramipexole":

- Dr. Olanow describes and compares the symptoms characterizing Parkinson's disease, the pathology of the disease, and the mechanism by which dopamine agonists like pramipexole work in treating symptoms of the disease. *See* Olanow Report, Ex. A hereto at ¶ 17-20 & 23.

- Dr. Olanow then describes neuroprotection, the manner in which it differs from treating the symptoms of Parkinson's disease (a "therapy that slows or stops disease progression"), summarizes the scientific evidence for pramipexole as a neuroprotective agent, and incorporates by reference a number of scientific papers discussing the subject. *See id.* at ¶¶ 28-30 & nn.20-31.

- Dr. Olanow opines that "[t]he notion that pramipexole would be neuroprotective in the treatment of PD was not known to persons of ordinary skill in the art (physicians and scientists) at the time of the original invention." *Id.* at ¶ 30.

- Dr. Olanow then describes the symptoms characterizing RLS, comments on its prevalence and potential causes, describes the manner in which pramipexole works in treating the disease ("with very low doses"), and summarizes the evidence showing that pramipexole is "a safe and effective therapy for RLS." *See id.* at ¶¶ 32-38 & nn.32-42.

- Dr. Olanow then specifically compares RLS to the claims of the '086 patent: "the effectiveness of MIRAPEX® to treat RLS was not predictable to one of ordinary skill in the art from the claims of the '086 patent which claimed methods of use for lowering blood pressure, lowering heart rate, treating the symptoms of Parkinson's disease or treating schizophrenia." *Id.* at ¶ 39.

- Dr. Olanow's Report follows the same general outline in expressing his opinions about the use of pramipexole to treat fibromyalgia in comparison to the uses claimed in the '086 patent, *see id.* at ¶¶ 41-45 & nn.47-50, and directly compares it to the '086 patent claims in concluding that "the effectiveness of MIRAPEX® to treat fibromyalgia was not predictable to one [of] ordinary skill in the art from the claimed methods of use in the '086 patent."

- Dr. Olanow's Report then comments on those same issues in expressing his opinions about the use of pramipexole to treat depression in comparison to the uses claimed in the '086 patent, *see id.* at ¶¶ 46-48 & nn.51-54, and directly compares it to the '086 patent claims in concluding that "the effectiveness of MIRAPEX® to treat depression was not predictable to one of ordinary skill in the art from the claimed methods of use in the '086 patent."

<u>Second</u>, the Defendants have made no showing to the contrary. Instead, the Defendants baldly assert that Dr. Olanow's Report did not disclose such opinions and provide a "*see generally*" citation to his report. *See* Def. Evid. Br. at 5. Defendants' "head in the sand" approach to Dr. Olanow's Expert Report does not establish a violation of Rule 26. And even if Dr. Olanow did not recite exactly the same words at trial as were expressed in his expert report, that is hardly a basis for exclusion given that his trial testimony is, at worst, "a permissible elaboration on the opinions set out in the expert report." *Forest Labs., Inc. v. Ivax Pharms., Inc.*, 237 F.R.D. 106, 113 (D. Del. 2006).

<u>Third</u>, the Defendants' argument is belied by their conduct. Thus, counsel for Barr questioned Dr. Olanow at length during his deposition about the differences between the use of pramipexole to treat the medical conditions listed in the '086 patent and the use of pramipexole to treat RLS, depression, fibromyalgia, and as a neuroprotective agent. For example, Barr questioned Dr. Olanow about the differences in the doses used to treat Parkinson's disease and depression. *See* Olanow Tr., Ex. B hereto at 175-76. Barr's counsel also questioned Dr. Olanow about the mechanisms of action for pramipexole with regard to treating conditions mentioned in the '086 patent. *See id.* at 67, 68. Further, Barr questioned Dr. Olanow about the differences between the claims in the '086 patent and the indications for which MIRAPEX® is currently prescribed. *See id.* at 72-74. Finally, Dr. Olanow testified about the different patient populations implicated by RLS, fibromyalgia, and depression. *See id.* at 111, 112, 142 & 174. Those subjects were addressed at Dr. Olanow's deposition because they had been disclosed in his expert report.

Not only did Barr question Dr. Olanow about the very topics about which it now complains, it even submitted an expert report from Dr. Mailman in an effort to rebut them. In

fact, Barr spent most of its time on Dr. Mailman's direct examination asking him about the differences between the medical conditions in the '086 patent and the usefulness of pramipexole to treat RLS, depression, fibromyalgia, and as a neuroprotective agent. *See* Trial Tr. (Vol. 3), D.I. 208, at 629:15-653:11. There clearly was no surprise.

In *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 506 (D. Del. 2005), this Court noted that the "purpose of the initial disclosure provided for in Rule 26 is to prevent a party from being unfairly surprised by the presentation of new evidence." In *Tracinda*, one party claimed surprise in connection with certain testimony offered by an expert at trial. *See id.* After examining the expert's testimony and comparing it to his expert report, this Court determined that, even though not identical to what was included in his expert report, the expert's trial testimony would not be excluded where the testimony was "consistent with and not materially different from the opinions contained in his expert report." *See id.* And as this Court has noted on another occasion, exclusion is not appropriate where an expert's trial testimony is "a synthesis of" or "a permissible elaboration on" opinions set forth in an expert report. *See Forest Labs.*, 237 F.R.D. at 113.

Dr. Olanow's trial testimony was both timely disclosed and "consistent with and not materially different from" the opinions expressed in his expert report (as well as in response to Barr's questions during his deposition). *See* Olanow Report, Ex. A hereto; Olanow Tr., Ex. B hereto at 67, 68, 72-74, 112, 142, 174-176. That testimony synthesized and legitimately elaborated on the opinions set forth in his report. Accordingly, the Defendants' request to exclude Dr. Olanow's testimony "which compares the methods of using compounds in the '086 patent to alleged new uses of pramipexole" should be denied.

**B.     Exclusion Of Dr. Olanow's Testimony Is Inappropriate**

Because Dr. Olanow's opinions plainly were disclosed in his expert report, the Court need not reach the so-called *Pennypack* factors courts consider when deciding whether to exclude evidence. Regardless, even if the Court were to determine that any of Dr. Olanow's opinions were not timely disclosed, exclusion is inappropriate under settled Third Circuit law.

First, as noted above, Defendants were not surprised (much less prejudiced) by Dr. Olanow's trial testimony. Indeed, the opinions Defendants claim went undisclosed were, in fact, disclosed in Dr. Olanow's report. *See supra* at 7-9. Barr's counsel in fact explored those very subjects at Dr. Olanow's deposition and could have further explored them, but made a deliberate choice not to do so. *See disc. supra* at 9.[2]

Second, Defendants had ample opportunity to discover and respond to Dr. Olanow's opinions – and thereby cure any alleged "prejudice" (though there was none) – through the testimony of Dr. Mailman. Thus, the Defendants procured a "rebuttal" report from Dr. Mailman supposedly addressing the issues raised by Dr. Olanow. To the extent that it did not actually rebut Dr. Olanow's opinions comparing "the methods of using compounds in the '086 patent to the alleged new uses of pramipexole," that is not attributable to Boehringer. The fact that Defendants were not at all surprised by Dr. Olanow's trial testimony regarding differences between the various medical uses also is demonstrated by the fact that their Trial Exhibit List includes a number of medical articles relating to RLS, fibromyalgia, depression, and neuroprotection. *See* TX 726; TX 728; TX 729-738. And Barr's counsel then devoted most of

---

[2]     As Defendants had nearly ten months to take discovery on the opinions expressed in Dr. Olanow's expert report (and in fact took over 200 pages of testimony during his deposition), they were not precluded from obtaining discovery on Dr. Olanow's prospective opinions. For these reasons, their citation to *Semper v. Santos*, 845 F.2d 1233 (3d Cir. 1988), is inapposite.

Dr. Mailman's direct examination asking about the differences between the medical conditions in the '086 patent and the usefulness of pramipexole to treat RLS, depression, fibromyalgia, and as a neuroprotective agent. *See* Trial Tr. (Vol. 3), D.I. 208, at 629:15-653:11. The Defendants' conduct speaks louder than their words, and itself makes clear that the Defendants had ample notice that Dr. Olanow would testify regarding the differences between the use of pramipexole to treat the medical conditions listed in the '086 patent and the use of pramipexole to treat RLS, depression, fibromyalgia, and its use as a neuroprotective agent.

Third, aside from paraphrasing the third factor, the Defendants do not even contend that trial was conducted in a disorderly or inefficient fashion due to the opinions that they contend Dr. Olanow failed to timely disclose. Nor could they. Dr. Olanow testified on topics about which Defendants had notice and in the order to which the parties agreed. *See supra* at 7-9.

Fourth, Defendants assert that Boehringer willfully disregarded its disclosure obligations, but the record is to the contrary. Boehringer timely served Dr. Olanow's report, disclosed the opinions on which Dr. Olanow would testify at trial, and made him available for deposition. *See supra* at 7-9. At trial, Dr. Olanow testified in a manner that was "consistent with and not materially different from" the opinions he offered in his expert report and at his deposition. *See id.* Accordingly, Defendants cannot credibly argue that Boehringer disregarded its disclosure obligations.

Finally, the importance of Dr. Olanow's testimony weighs in favor of its admission. Here, the evidence Defendants seek to exclude is directly related to Boehringer's argument that the '812 patent claims are patentably distinct from the '086 patent claims, as well as the secondary indicia of non-obviousness. Barr's argument that Dr. Olanow's testimony is not

important is without merit, especially considering that Defendants used virtually all of their time during Dr. Mailman's direct examination attempting to rebut Dr. Olanow's opinions. *See, e.g.,* Trial Tr. (Vol. 3), D.I. 208, at 629:15-653:11. Accordingly, the Court should deny Defendants' request that the Court exclude Dr. Olanow's testimony and each of Boehringer's findings of fact and conclusions of law based thereon.

## III.     THE TERMINAL DISCLAIMER IS ADMISSIBLE EVIDENCE MOOTING DEFENDANTS' DOUBLE PATENTING DEFENSE

Defendants maintain that Boehringer's argument that a terminal disclaimer would moot their double patenting defense was "newly fabricated," not timely disclosed, and allegedly waived by Boehringer. *See* Def. Evid. Br. at 8-14. Defendants accordingly seek to exclude: (1) the Terminal Disclaimer filed on March 13, 2008; (2) "any argument that the [] terminal disclaimer cures" any finding of double patenting; and (3) any of Boehringer's proposed findings of fact or conclusions of law relating to the Terminal Disclaimer. *See* Def. Evid. Br. at 8.

As explained below, the Defendants' arguments are meritless.

### A.     Boehringer's Argument That A Terminal Disclaimer Would Moot Any Double Patenting Issue Was Timely Disclosed

Defendants contend that they did not have advance notice of the possibility of a terminal disclaimer being filed and that consideration of the argument supposedly would necessitate an "amendment" to the Pretrial Order. Both contentions are incorrect.

#### 1.     The Defendants Had Ample Notice of the Terminal Disclaimer Issue

Defendants' argument is premised on the notion that "the Pre-Trial Order did not provide notice of the terminal disclaimer." Def. Evid. Br. at 9. That contention is wrong. In paragraph 10 of Boehringer's Statement of Issues of Law That Remain To Be Litigated, Exhibit 5 to the Pretrial Order, Boehringer specifically noted that:

[a]ny obviousness-type double patenting issue can be cured by the filing of a terminal disclaimer pursuant to 35 U.S.C. § 253. *See, e.g.*, 37 C.F.R. § 1.321(C)(3); *Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc.*, 82 U.S.P.Q.2d 1203 (Fed. Cir. 2007); *Ortho Pharma. Crop.* [sic] *v. Smith*, 959 F.2d 936 (Fed. Cir. 1992); *In re Longi*, 759 F.2d 887 (Fed. Cir. 1985); *In re Robeson*, 331 F.2d 610 (C.C.P.A. 1964); *Syngenta Seeds, Inc. v. Monsanto Co.*, 2004 WL 2790499 (D. Del. 2004); *King Pharma. Inc. v. Teva Pharma. USA*, 78 U.S.P.Q.2d 1237 (D. N.J. 2006); *Bott v. Four StarCorp.*, 675 F. Supp. 1069 (E.D. Mich. 1987); *Technicon Instr., Corp.*, 385 F.2d 391 (N.D. Ill. 1966).

TX 190, Ex. 4, ¶ 10. Thus, Boehringer has not attempted to "change the positions taken at pretrial," as Defendants wrongly contend. *See* Def. Evid. Br. at 9 (*citing Ely v. Reading Co.*, 424 F.2d 758 (3d Cir. 1970)).

Against that backdrop, the Defendants' claim that the Pretrial Order "was insufficient to put Defendants on notice that Boehringer intended to file a terminal disclaimer," (Def. Evid. Br. at 10), simply strains credulity. Not only did Boehringer describe the issue in the Pretrial Order, but the Defendants presented their counterargument, asserting that "[a] patentee may be able to fix a non-statutory double patenting problem by filing a terminal disclaimer that restricts the term of the later patent to the term of the original. However, one cannot terminally disclaim to an expired patent." TX 190, Exhibit 5, § D at 10 (*citing to Geneva*, 349 F.3d at 1378; *In re Lonardo*, 199 F.3d 960, 965 (Fed. Cir. 1997); *Eli Lilly and Co. v. Barr Laboratories, Inc.*, 251 F.3d 955, 967 at n.5 (Fed. Cir. 2001)). Moreover, though the Defendants objected to the inclusion of certain evidence in the Pretrial Order as being belatedly disclosed, ***they raised no such claim with regard to the terminal disclaimer issue***. *See id.* at Ex. 15, ¶ 1. That is because Barr itself raised the issue of a terminal disclaimer nearly two years ago. Thus, in the course of fact discovery, fully cognizant that Boehringer might terminally disclaim and cure any potential double patenting issue, Barr asked Boehringer to admit that, "[p]rior to the expiration of the '086 patent, no terminal disclaimer was filed for any claim of the '812 patent." TX 709 at 3. Both

sides again addressed the issue in their opening statements during trial. *See* Trial Tr. (Vol. 2), D.I. 207, at 275:12-276:23 (opening statement of Boehringer's counsel); *id.* at 347:1-348:23 (opening statement of Barr's counsel). Against that backdrop, the Defendants' claim that they had no notice of the potential for Boehringer to file a terminal disclaimer is unfounded. *See Pfizer Inc. v. Ranbaxy Labs. Ltd.*, No. Civ.A. 03-209-JJF, 2005 WL 3525681, *2 (D. Del. Dec. 22, 2005) (admitting evidence where the defendants were on notice during discovery of the use of potential evidence at trial and where exhibits were listed in the pretrial order).

Further, although Boehringer marked the Terminal Disclaimer as a separate exhibit, TX 548 (*see* Trial Tr. (Vol. 3), D.I. 208, at 718:22-719:9), upon filing it with the U.S. Patent and Trademark Office, the disclaimer became a part of the prosecution history of the '812 patent. *See id.* at 719:24-720:7. Both parties listed the prosecution history of the '812 patent as an exhibit in the Pretrial Order. *See* D.I. 190, Ex. 6 at 2; *id.* Ex. 7, at 2. Thus admission of the Terminal Disclaimer does not require any "amendment" of the Pretrial Order, as the Defendants pretend.

### 2. An Amendment to the Pretrial Order Would be Warranted in Any Event

The unambiguous language from both sides in the Pretrial Order discloses the terminal disclaimer as a mechanism to moot the Defendants' double patenting defense. Even had the argument not been adequately raised by the Pretrial Order, admission of the Terminal Disclaimer nevertheless meets the standard for amendment of the Pretrial Order. Under FEDERAL RULE OF CIVIL PROCEDURE 16, the Court may amend the Pretrial Order and admit previously undisclosed evidence if exclusion of the evidence would create a "manifest injustice." FED. R. CIV. P. 16.

It would be a manifest injustice to exclude the Terminal Disclaimer from evidence on the basis that it was not marked as an exhibit in the Pretrial Order because *it did not exist* at the time when the Pretrial Order was entered.  *See Janopoulos v. Harvey L. Warner & Assocs.*, 1995 U.S. Dist. LEXIS 2751 (N.D. Ill. Mar. 2, 1995) (allowing a party to ask questions regarding material evidence not included in the pretrial order); *First Nat'l Bank & Trust, Co. v. Jones*, 61 F. Supp. 364 (W.D. Ok. 1945) (admitting letter from I.R.S. that was not in existence prior to parties' stipulations regarding amount of net loss).  Furthermore, given that the Terminal Disclaimer itself is determinative with regard to the Defendants' double patenting defense, it would be manifest injustice to exclude it.  *See Sam Galloway Ford, Inc. v. Universal Underwriters Ins. Co.*, 793 F. Supp. 1079, 1082-83(M.D. Fla. 1992) (holding that it would be manifestly unjust for the court not to amend erroneous stipulations that could be outcome determinative, as "[j]ustice cannot be done unless the actual facts of the case go to trial").

Defendants' objection that Boehringer did not terminally disclaim earlier in the term of the '812 patent is miscast.  *See* Def. Evid. Br. at 11.  That argument goes to the effectiveness of the Terminal Disclaimer, not its *admissibility*.  It is not a basis for excluding the Terminal Disclaimer from the record.  Moreover, Defendants ignore the fact that while certain claims of the '812 patent application initially were rejected for double patenting, the applicants reached agreement with the examiner that, in light of the restriction requirement issued in the grandparent application, "the obviousness-type double patenting rejection will be withdrawn and that no terminal disclaimer need be filed."  TX 99 at BARR786; PFF at ¶¶ 63-64.  Boehringer had every right to rely upon the PTO's assent that no terminal disclaimer had to be filed.

The Defendants' invocation of the *Pennypack* factors likewise is unavailing.  *See* Def. Evid. Br. at 12.  Defendants' assertion of prejudice centers on the notion that they were

"deprived of the right to depose Plaintiffs' expert and fact witnesses on [the terminal disclaimer] topic, as well as the opportunity to prepare affirmative opinions from Defendants' expert witnesses in response." *Id.* at 13, n.7. But that assertion is illogical, as the effect of a terminal disclaimer on a double patenting defense is a purely legal issue. *See* Pl. Post-Trial Br. at 18-23. None of Boehringer's expert or fact witnesses would have been qualified to provide testimony on the issue of whether a terminal disclaimer moots any potential double patenting issue. Nor could Defendants have permissibly provided an expert witness on the topic. *See* Pretrial Hrg. Tr., D.I. 197, at 21 (Court's ruling to exclude Defendants' proposed patent law expert). Defendants also allege that they would have "introduced additional evidence into the record if they had been on notice of the terminal disclaimer." Def. Evid. Br. at 12. The only such evidence they identify, however, is "testimony concerning the scope of nonasserted claims." *Id.* But Defendants have never alleged that the scope of unasserted claims is relevant to their double patenting defense. It is not relevant because double patenting is evaluated on a claim-by-claim basis. *Smith & Nephew, Inc. v. Biomet, Inc.*, 2005 WL 3132313, 14 (D. Or. 2005) ("Biomet is required at trial to prove double patenting by clear and convincing evidence, proceeding on a claim-by-claim basis, which is a 'heavy and unshifting burden.'") (citing *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1580 (Fed. Cir. 1991). In the end, Defendants' claim of prejudice is that the Terminal Disclaimer disposes of their lone defense – but that is not the type of "prejudice" cognizable under *Pennypack* and its progeny. *See* Def. Evid. Br. at *passim*.

Defendants' next claim – that the terminal disclaimer was filed too late – is substantively wrong. The general rule that a terminal disclaimer obviates any double patenting issue is well-established. *See* COL at ¶ 17. Courts have held that a terminal disclaimer is effective even when filed after the close of trial. Thus, in *Technicon Instruments Corp. v.*

*Coleman Instruments, Inc.*, 255 F. Supp. 630 (N.D. Ill. 1966), the patentee filed a terminal

disclaimer after a bench trial but prior to the issuance of the Court's decision:

> At the beginning of trial, Technicon offered to file a terminal disclaimer under Title 35 U.S.C. § 253, disclaiming so much of the term of the Skeggs '141 patent as would extend beyond the expiration of the term of the Skeggs '149 patent.    Technicon has since filed such a terminal disclaimer.

*Technicon*, 255 F. Supp. at 636.    The district court concluded that the post-trial terminal

disclaimer "eliminates any extension of monopoly," and that "the second issued patent is not

invalid." *See* 255 F. Supp. at 641; *see also Bayer AG v. Barr Labs, Inc.*, 798 F. Supp. 196, 197-

98 (S.D.N.Y. 1992) (rejecting claim of double patenting where terminal disclaimer was filed

after initiation of litigation).

        The only open question from the perspective of the Federal Circuit is whether a

patentee may effectively disclaim ***after the entry of judgment*** that the patent is invalid for

double patenting.    *See Perricone v. Medicis Pharma. Corp.*, 432 F.3d 1368, 1375 (Fed. Cir.

2005) ("This record, however, does not include any evidence of a disclaimer even though the

district court invalidated the claims over two years ago. Thus, while Dr. Perricone might still file

a terminal disclaimer to overcome prospectively the double patenting basis for invalidity, this

court makes no determination about the retrospective effect of such a terminal disclaimer."); *see

also In re Metoprolol Succinate Patent Litig.*, 494 F.3d 1011, 1020 n.4 (Fed. Cir. 2007)

(affirming district court's determination of double patenting invalidity, reversing inequitable

conduct determination, and remanding because "the parties dispute whether a patentee may

reinstate the validity of a patent by filing a terminal disclaimer").[3]

---

[3]    The case law cited by the Defendants falls into that very category, as each involved a
terminal disclaimer filed after final rejection by the PTO and on appeal with the Board.
*See In re Deters*, 515 F.2d 1152, 1156 (C.C.P.A. 1975); *In re Thorington*, 418 F.2d 528,

In sum, the Court plainly may consider the terminal disclaimer issue given that it was fully acknowledged to be an issue by both sides in the Pretrial Order, the Defendants made no claim of untimeliness at the time of the Pretrial Order, the case law amply supports the effectiveness of the Terminal Disclaimer (which could not have been marked separately as an exhibit before it was filed with the PTO), and where it is likely determinative of the double patenting defense. Indeed, to exclude the Terminal Disclaimer would be to adjudicate this case not based on the facts as they exist. Given the circumstances, it would be manifestly unjust to exclude the issue from consideration.

### B.    The Terminal Disclaimer Was Introduced Prior to the Close of Evidence

Defendants' remaining contention – that "[t]he terminal disclaimer also should be excluded because it was submitted after both sides had rested at trial" (Def. Evid. Br. at 14) – is simply wrong. During a trial, the plaintiff has the opportunity to present a rebuttal case after the defendants have rested their case. That is precisely the point at which Boehringer introduced the Terminal Disclaimer. *See* Trial Tr. (Vol. 3), D.I. 208, at 718:19-22. The trial record was not yet closed. Once again, the predicate for the Defendants' argument – the supposed need to reopen the record in order to admit the Terminal Disclaimer – is incorrect.

### C.    The Record May Be Reopened To Admit The Terminal Disclaimer

Even if the Court determines that it would need to reopen the record in order to admit the Terminal Disclaimer, it should do so. Courts consider several factors in deciding whether to reopen the record: (i) the probative value or materiality of the evidence sought to be

---

533-34 (C.C.P.A. 1969); *In re Jursich*, 410 F.2d 803, 807 (C.C.P.A. 1969); *In re Rogers*, 394 F.2d 566, 571 (C.C.P.A. 1968); *In re Purdy*, 393 F.2d 1010, 1011 (C.C.P.A. 1968); *In re Heyl*, 379 F.2d 1018, 1021 (C.C.P.A. 1967).

introduced, (ii) the proponent's explanation for failing to offer the evidence earlier or diligence in obtaining the evidence, (iii) the likelihood of undue prejudice to the opposing party, and (iv) interests of justice or "fairness." *See, e.g., Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1160 (1st Cir. 1996); *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996); *Rivera-Flores v. Puerto Rico Tel. Co.*, 64 F.3d 742, 746 (1st Cir. 1995); *Romeo v. Sherry, et al.*, 308 F. Supp. 2d 128, 138-42 (E.D.N.Y. 2004); *Bissell Inc. v. Oreck Corp.*, No. 1:98-cv-319, 2000 U.S. Dist. LEXIS 3595, *36 (W.D. Mich. Mar. 10, 2000); *John v. Sotheby's, Inc.*, 858 F. Supp. 1283, 1288, 1289 (S.D.N.Y. 1994). According to at least one court, "fairness" is the key criterion. *Blinzler*, 81 F.3d at 1160.

The Terminal Disclaimer is highly material to Defendants' double patenting claim – probably dispositive – and should be made part of the record for that reason alone. *See Ferrell v. Trailmobile, Inc.*, 223 F.2d 697, 698 (5th Cir. 1995) (holding that "conclusive evidence" submitted post-trial "must be considered despite the defendants' lack of diligence in finding dispositive evidence, once the evidence was found."); *Garcia*, 97 F.3d at 814 (holding that the trial court abused its discretion by not reopening the record where the evidence that the movant sought to introduce was "essential" to an element of the movant's claim); *Rivera-Flores*, 64 F.3d at 746 ("there can be no question that the proffered 'new' evidence was critical to the Rehabilitation Act claim once it became clear that subject matter jurisdiction was contested; it was the only evidence on an essential element of the claim").

Boehringer has a legitimate reason for not offering the March 13, 2008 Terminal Disclaimer into evidence prior to March 13, 2008 – it did not exist until then. In *MercExchange, LLC v. eBay, Inc.*, 467 F. Supp. 2d 608, 611, 612 (E.D. Va. 2006), addressing a motion to strike evidence submitted long after a hearing on a motion for a permanent injunction, the court

allowed additional evidence to address recent factual developments.  The court indicated that such a decision was appropriate because it could not make an accurate ruling without considering "a significant factual development" that arose after the parties submitted their original papers. *See id.*; *see also Munters Corp. v. Burgess Indus. Inc.*, 450 F. Supp. 1195, 1200 (D.C.N.Y. 1977) (allowing record to be supplemented with evidence that arose after date or original ruling).

Though Boehringer could not have offered the Terminal Disclaimer itself into evidence any more promptly, it did what it could – repeatedly disclosing to Defendants that it was Boehringer's position that it could file a terminal disclaimer at any point and it would cure any potential double patenting claim.  *See disc. supra* at 13, 14; Trial Tr. (Vol. 2), D.I. 207, at 275:12-276:23 (opening statement of Boehringer's counsel).  The Defendants were well aware of Boehringer's position, and put their rebuttal position in the Pretrial Order and raised it again during opening statement.  *See id.* at 347:1-348:23. Defendants would not be prejudiced by admission of the Terminal Disclaimer.  *See Bissell*, 2000 U.S. Dist. LEXIS 3595 at *36 (allowing supplementation where the non-moving party "failed to identify any prejudice based on the admission of the invoices").  Accordingly, if the Court deems it necessary to reopen the record in order to admit the Terminal Disclaimer, there is good cause to do so.

## CONCLUSION

The Court should deny Defendants' motion to exclude Boehringer's evidence of secondary indications of the nonobviousness of the '812 patent claims over the '086 patent claims, the testimony from Boehringer's expert Dr. Olanow comparing the '086 patent claims to new, unexpected uses of pramipexole, or any evidence in support of Boehringer's terminal disclaimer defense.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs*
*Boehringer Ingelheim International GmbH and*
*Boehringer Ingelheim Pharmaceuticals, Inc.*

*Of Counsel*:

Steven C. Cherny
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, NY  10022-4834
(212) 906-1200

Kenneth G. Schuler
Amanda J. Hollis
Joel Neckers
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
Chicago, IL  60606
(312) 876-7700

May 14, 2008

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on May 14, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

> Mary B. Matterer
> MORRIS JAMES LLP
>
> Adam Wyatt Poff
> YOUNG, CONAWAY, STARGATT & TAYLOR LLP

I further certify that copies of the foregoing document were also served upon the following in the manner indicated:

**BY ELECTRONIC MAIL and HAND DELIVERY**

Mary B. Matterer, Esquire
MORRIS JAMES LLP
500 Delaware Avenue
Wilmington, DE 19801

Adam Wyatt Poff, Esquire
YOUNG, CONAWAY, STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

**BY ELECTRONIC MAIL and FEDERAL EXPRESS**

Glenn J. Pfadenhauer, Esquire
Jessamyn S. Berniker, Esquire
Dov P. Grossman, Esquire
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005-5901

Shannon M. Bloodworth, Esquire
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, DC 20036

Kevin J. Culligan, Esquire
HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY 10036-6524

Jack B. Blumenfeld (#1014)