REDACTED VERSION – PUBLICLY FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BARR LABORATORIES, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> C.A. No. 05-700 (JJF) <br> CONSOLIDATED <br><br> **CONFIDENTIAL** <br> **FILED UNDER SEAL** |
| BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MYLAN PHARMACEUTICALS, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> C.A. No. 05-854 (JJF) |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' EVIDENTIARY OBJECTIONS

OF COUNSEL:
Glenn J. Pfadenhauer
Jessamyn S. Berniker
Dov P. Grossman
Brett R. Tobin
Kendra P. Robins
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
(202) 434-5000

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Adam W. Poff (#3990)
apoff@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

*Attorneys for Defendant Barr
Laboratories, Inc.*

REDACTED VERSION – PUBLICLY FILED

OF COUNSEL:
Kevin J. Culligan
Joy Arnold
HELLER EHRMAN LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 832-8300

Shannon M. Bloodworth
HELLER EHRMAN LLP
171 Rhode Island Avenue, NW
Washington, DC 20036
(202) 912-2000

Dated: May 14, 2008

MORRIS JAMES LLP
Mary B. Matterer (#2696)
mmatterer@morrisjames.com
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
(302) 888-6960

*Attorneys for Mylan
Pharmaceuticals Inc.*

REDACTED VERSION – PUBLICLY FILED

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... iv

SUMMARY OF THE ARGUMENT ................................................................................... 1

I.    DEFENDANTS TIMELY DISCLOSED THE FACTS OF THEIR DOUBLE PATENTING DEFENSE.................................................................................................. 1

    A.    There Can Be No Violation of Rule 26 Where Notice Has Been Provided ................................................................................................................. 2

    B.    Defendants Notified Boehringer of Their Double Patenting Defense Through Four Different Avenues.................................................................... 3

        1.    Barr's Notice Letter Is Not Limited to a "Sub-Genera Theory"................. 3

        2.    Barr's Interrogatory Reponses Pointed to More than Just Barr's Notice Letter and Incorporated Barr's Expert Reports by Reference ....................................................................................................... 4

        3.    Barr's Expert Reports Contain an Extensive Recitation of the Details of the Double Patenting Defense ..................................................... 6

            a.    Dr. Eric Anslyn ............................................................................ 6

            b.    Mr. Dale Hoscheit ....................................................................... 8

            c.    Barr's Other Expert Reports ....................................................... 10

        4.    Various Pleadings Filed With the Court Notified Boehringer that the Expert Reports Contained Details Related to Double Patenting ..................................................................................................... 11

    C.    Boehringer Cannot Meet the *Pennypack* Standard for Exclusion of Evidence........................................................................................................... 13

II.    NOTHING RELIEVED BOEHRINGER FROM THE BURDEN OF SHOWING INFRINGEMENT........................................................................................ 15

CONCLUSION.................................................................................................................... 15

REDACTED VERSION – PUBLICLY FILED

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,*
   776 F.2d 281 (Fed. Cir. 1985)...................................................................................10

*Centricut, LLC v. Esab Group, Inc.,*
   390 F.3d 1361 (Fed. Cir. 2004)...................................................................................15

*Gutierrez v. AT&T Broadband, LLC,*
   382 F.3d 725 (7th Cir. 2004) .......................................................................................2

*Imhaeuser v. Buerk,*
   101 U.S. 647 (1880)....................................................................................................15

*In re Paoli R.R. Yard PCB Litig.,*
   35 F.3d 717 (3d Cir. 1994)..........................................................................................13

*Konstantopoulos v. Westvaco Corp.,*
   112 F.3d 710 (3d Cir. 1997).........................................................................................13

*Meyers v. Pennypack Woods Home Ownership Ass'n,*
   559 F.2d 894 (3d Cir. 1977) ("*Pennypack*")...............................................................13

*PIC Inc. v. The Prescon Corp.,*
   495 F. Supp. 1299 (D. Del. 1980) .................................................................................2

*Under Sea Indus., Inc. v. Dacor Corp.,*
   833 F.2d 1551 (Fed. Cir. 1987)...................................................................................15

*Westefer, et al. v. Snyder, et al.,*
   422 F.3d 570 (7th Cir. 2005) .......................................................................................2

*Williams v. Morton,*
   343 F.3d 212 (3d Cir. 2003).........................................................................................2

### OTHER AUTHORITIES

35 U.S.C. § 121.......................................................................................3, 4, 5, 6, 9

Fed. R. Civ. P. 26.............................................................................2, 3, 6, 12, 13

Fed. R. Civ. P. 37.............................................................................................13

REDACTED VERSION – PUBLICLY FILED

## SUMMARY OF THE ARGUMENT

Despite having been put on notice of every fact in support of Defendants' double patenting defense months before the close of discovery, Boehringer now feigns surprise at the content of those allegations. The reason for Boehringer's "acting," however, is quite clear. Having no substantive defense to double patenting, and lacking an effective terminal disclaimer, Boehringer's only remaining hope is to preclude consideration of double patenting in the first instance through a baseless procedural attack. Boehringer's argument concerning infringement fares no better, as Boehringer cannot legitimately claim surprise at having to meet its burden of proof. There is no cause to exclude any evidence proffered by Defendants, and Boehringer's request that the Court do so should be denied.

## ARGUMENT

### I.   DEFENDANTS TIMELY DISCLOSED THE FACTS OF THEIR DOUBLE PATENTING DEFENSE

Boehringer's argument with respect to double patenting can be summed up as follows: (1) Boehringer propounded an interrogatory (No. 4) requesting the facts underlying Barr's double patenting defense; (2) Barr's sole response was to point to its Notice Letter; (3) the only statement in the Notice Letter concerning double patenting was that the compounds used in the method claims of the '086 patent are sub-genera of the compounds claimed in the '812 patent; and (4) Defendants never advanced any other arguments in support of double patenting until the Pre-Trial Order. The only thing correct about Boehringer's argument is (1)—Boehringer did in fact propound such an interrogatory. Not only does Boehringer's argument mischaracterize the contents of both the Notice Letter and Barr's interrogatory response, but it blatantly ignores the myriad instances in which Defendants provided more than ample notice of the facts underlying

their double patenting arguments.  The law does not allow Boehringer to turn a blind eye and ignore disclosures of the opposing party.

### A.    There Can Be No Violation of Rule 26 Where Notice Has Been Provided

Boehringer's brief suggests that the law requires Defendants to have provided every detail of their double patenting defense in response to an interrogatory served early in discovery. That is wrong.  The relevant question is whether Boehringer received fair notice of the facts upon which Defendants rely for their double patenting defense, which clearly it did.

This principle is embodied in Federal Rule of Civil Procedure 26(e)(1)—the rule governing supplementation of discovery responses—which states in relevant part:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and <u>if the additional</u> or corrective <u>information has not otherwise been made known</u> to the other parties <u>during the discovery process or in writing</u> . . . .

Fed. R. Civ. P. 26(e)(1) (emphasis added).  The rule thus makes plain that a party complies with its discovery obligations <u>either</u> by supplementing a prior discovery response, <u>or</u> by making the information known during the discovery process, or in writing.  In other words, the key inquiry is whether notice was provided to the opposing party—regardless of whether it comes in a formal interrogatory response.  *See Williams v. Morton*, 343 F.3d 212, 222 (3d Cir. 2003) ("[A] party is required to supplement its discovery responses if it learns that its initial response is incomplete in a material way and the opposing party <u>does not have the new information</u>.") (emphasis added); *see also Westefer v. Snyder*, 422 F.3d 570, 583-84 (7th Cir. 2005) (holding that information provided in summary judgment filings was sufficient notice); *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 733 (7th Cir. 2004) (holding that information gained through deposition was

REDACTED VERSION – PUBLICLY FILED

sufficient notice). In light of these requirements, Defendants complied with Rule 26, as Boehringer was placed on notice of all of the facts that Defendants rely upon to prove their double patenting defense both "during the discovery process" and "in writing."

**B.      Defendants Notified Boehringer of Their Double Patenting Defense Through Four Different Avenues**

Boehringer's protestations of ignorance aside, Defendants put Boehringer on notice of their double patenting defense on numerous occasions in advance of the Pre-Trial Order through at least four different avenues: (1) Barr's Notice Letter, (2) Barr's interrogatory responses, (3) Barr's expert reports, and (4) various pleadings submitted to this Court. These written disclosures, made both before and during discovery, unambiguously satisfy the notice requirements of the Federal Rules.

**1.      Barr's Notice Letter Is Not Limited to a "Sub-Genera Theory"**

Barr's Notice Letter is not limited to, as Boehringer suggests, a "sub-genera theory," but in fact discloses several key allegations that Defendants rely on to support their nonstatutory double patenting defense. It states:

> All claims of the '812 Patent are directed to subject matter which is not patentably distinct from that claimed in the '086 Patent, and is therefore not properly the subject of an additional patent. Moreover, the compounds of the '086 Patent method claims are sub-genera of the compounds of the '812 Patent claims. As a result, the claims of the '812 Patent are invalid over the claims of the '086 Patent under the doctrine of obviousness-type double patenting.
>
> No restriction requirement was issued by the Examiner during the prosecution of the applications that matured into the '086 Patent. Accordingly, the application which matured into the '812 Patent was not a divisional; it was a continuation. Indeed, composition claims 6 and 7 were allowed during the prosecution of the '086 Patent, but the patentee chose to cancel those allowed claims and instead reintroduce them in the application that matured into the '812 Patent. The mere designation by an application of an application as being a "divisional" does not invoke the protection of 35 U.S.C. § 121.

3

Ex. A (Notice Letter) at BARR20. It is clear from the face of the document that Boehringer was on notice even before this litigation began that Barr was asserting a double patenting defense based on the fact that the claims of the '812 patent are not patentably distinct from the claims of the '086 patent. The Notice Letter also set forth a critical aspect of the interrelationship between the claims of the patents: the compounds used in the earlier '086 method claims are in fact sub-genera of (*i.e.*, narrower than) the compounds claimed in the later '812 patent. The letter further explained that Section 121 does not apply because, *inter alia*, no restriction requirement was applicable to the '086 patent that necessitated the filing of a subsequent divisional application, as the examiner did not impose a restriction requirement during prosecution but rather allowed claims in the same patent. Boehringer then voluntarily cancelled the allowed claims, and divided them between the '086 and '812 patents as it saw fit. These allegations are among the very facts disclosed in the Pre-Trial Order. *See, e.g.*, Ex. B (Pre-Trial Order Double Patenting Facts) at ¶ 1 (invalid for double patenting), ¶ 2 (not patentably distinct), ¶¶ 5-6 ('086 method claims use same or subset of the '812 compound claims), ¶¶ 8-10, 14, 15(g), 15(j), 15(l), 15(t) (no restriction requirement during prosecution of '086 and '812 patents; Section 121 does not apply). While Boehringer claims it was unaware of these facts, the truth is that it has long been aware of them, and long been aware that it has no response to them.[1]

**2.     Barr's Interrogatory Reponses Pointed to More than Just Barr's Notice Letter and Incorporated Barr's Expert Reports by Reference**

At the very beginning of discovery in this case, Boehringer served an interrogatory on Barr regarding Barr's invalidity positions. *See* TX 407 (Barr's Response to Interrogatory No. 4) at 9-11. In response, Barr did refer to its Notice Letter, a document which, as discussed above,

---

[1]  Barr's Answer also specifically asserted both defenses and counterclaims that "The claims of the '812 patent are invalid . . . under the doctrine of double patenting." D.I. 8 (Barr's Answer) at ¶¶ 30, 49; D.I. 107 (Barr's Amended Answer) at ¶¶ 30, 61.

contains more than just a reference to sub-genera. But Boehringer is wrong to assert that Barr's

response only referenced its Notice Letter. D.I. 215 at 4. The response also contained the

following statement:

> Defendant Barr Laboratories further objects to this interrogatory to the extent that
> it calls for an expert opinion. Defendant Barr Laboratories expressly reserves the
> right to address matters responsive to this interrogatory in its expert reports.

TX 407 (Barr's Response to Interrogatory No. 4) at 10 (emphasis added). Boehringer therefore

was explicitly put on notice that additional responsive information to the interrogatory could be

found in Barr's expert reports, and that if it wanted to know more details about Barr's invalidity

defenses—including double patenting—it should look to those reports. As discussed below, the

expert reports do in fact comprehensively cover the facts underlying Defendants' double

patenting defense.

  In addition, while Boehringer's evidentiary objection to double patenting is premised on

Barr's allegedly insufficient response to one interrogatory, it conveniently ignores Barr's

responses to other interrogatories. For example, Boehringer served an interrogatory on Barr

regarding whether Section 121 precluded the use of the '086 patent as a reference against the

'812 patent. See Ex. C (Barr's Response to Interrogatory No. 29) at 17-18. Given that Section

121 is only relevant to a defense of double patenting, there can be no question that Boehringer

was on notice that Barr's defense included arguments relating to Section 121, and was not

merely limited to a "sub-genera theory." In response to that interrogatory, Barr again

specifically reserved the right to address the issue in its expert reports, and also referred

Boehringer to the file histories of the three patents—documents which have been in Boehringer's

possession for nearly 20 years. Id. Barr then explained that Section 121 did not apply for the

very reasons Defendants asserted in the Pre-Trial Order and at trial, i.e., that "the '671

application that led to the '812 patent" (1) "was not filed as a result of a restriction requirement;"

(2) was not "consonant with any restriction requirement contained in any related file history,

including the restriction requirement imposed in the application that led to the '374 patent;" and

(3) "was filed after the issuance of the application that matured into the '374 patent." *Compare*

Ex. C (Barr's Response to Interrogatory No. 29) at 18; D.I. 211 (Defendants' Opening Post-Trial

Brief) at 26-32 *with* Ex. B at ¶ 8 ('086 can be used as a reference against the '812), ¶ 11 (not

filed as a result of a restriction requirement); ¶ 12 (not consonant with restriction requirement);

¶ 13 ('671 application filed after '374 patent issued); ¶ 14 (Boehringer did not meet its burden of

showing Section 121 applied).  In the face of this interrogatory response, Boehringer's assertion

that these facts "were articulated for the first time in connection with the preparation of the

pretrial order" defies comprehension. *See* D.I. 215 at 1.

### 3.    Barr's Expert Reports Contain an Extensive Recitation of the Details of the Double Patenting Defense

Between March 28 and July 18, 2007, Barr served expert reports from Dr. Eric Anslyn,

Mr. Dale Hoscheit, Dr. Richard Mailman, and Mr. Roy Weinstein.  These reports explicitly

articulated the very facts that Boehringer now claims it was unaware of until the January 2008

Pre-Trial Order, including a host of facts related to double patenting.  The reports were

specifically incorporated by reference in Barr's interrogatory responses.  But even if they had not

been, they still satisfy the notice requirements of the Federal Rules and specifically Rule 26(e),

as they were disclosures made <u>both</u> during the discovery process <u>and</u> in writing.

### a.    Dr. Eric Anslyn

Dr. Anslyn's reports discussed at length the very issues identified in the Pre-Trial Order

and which he testified about at trial:  the claims of the '086 and '812 patents and their

interrelationship.  *See* Ex. D (Expert Report of Eric Anslyn); Ex. E (Supplemental Report of Eric

Anslyn). In particular, Dr. Anslyn opined in his report—in a section entitled "Relationship Between Claims of the '086 and '812 Patents"—that "[t]he skilled artisan would understand that the compounds in claims of the '812 patent are identical to or completely encompass the compounds used in method claims in the '086 patent." Ex. D at ¶ 37. He also provided a chart—the substance of which was reproduced in the Pre-Trial Order—which showed that seventeen of the '086 patent method claims use compounds that are identical to or completely encompassed by at least one claims of the '812 patent. *Compare* Ex. D at ¶ 37 *with* Ex. B at ¶ 6. The chart also showed that four of the '086 method claims (claims 9, 19, 29, and 39) use a group of compounds that is always identical to, or narrower than, the compounds claimed in claims 3, 4, 5, 7, 9, and 10 of the '812 patent. Ex. D at ¶ 37.

Dr. Anslyn also disclosed another key aspect of Defendants' double patenting allegations, namely, that "[t]he skilled artisan would appreciate that, in order to perform the method of treatment in these ['086 method] claims, one would be required to have the specified compound or compounds," *see* Ex. D at ¶ 36, an unremarkable proposition confirmed by Boehringer's own witnesses.[2] In addition, Dr. Anslyn opined that "[t]he skilled artisan would understand that a natural result flowing from practicing the methods of" several claims of the '086 patent "would be the formation of the claimed compounds in," *inter alia*, free base form, Ex. E at ¶ 16, a proposition that Boehringer's own expert Dr. Alexander Klibanov agreed with, Tr. 231:14-233:3, 246:10-247:13 (Klibanov). Dr. Anslyn further disclosed that "[t]he skilled artisan would understand that each of claims 3-5 and 9-10 of the '812 patent encompass multiple different compounds—from dozens to thousands of compounds." Ex. E at ¶ 14. These are among the

---

[2] *See, e.g.*, Tr. 570:1-571:6 (Kobinger Dep.); TX 789 (Mierau Dep.) at 66:24-67:4, 67:7-67:14, 67:17-18; TX 790 (Schingnitz Dep.) at 159:10-24.

very facts related to double patenting that Boehringer now speciously contends "were articulated for the first time in connection with the preparation of the pretrial order." D.I. 215 at 1.

Boehringer's evidentiary brief never mentions either of Dr. Anslyn's two expert reports, nor any of the double-patenting-related questions posed to him at his deposition. That is due to the fact that there is no way to reconcile Boehringer's claim that it had no notice of the details of Defendants' double patenting defense with the disclosures in Dr. Anslyn's reports and at his deposition. *Compare* Ex. D at ¶¶ 35-39 *with* Ex. B at ¶¶ 4-6, 7(a)-(c); *compare* Ex. E at ¶¶ 14, 16 *with* Ex. B at ¶¶ 7(g), 18; *compare* Ex. F (Anslyn Dep.) at 93:13-23 *with* Ex. B at ¶ 4.

Indeed, Boehringer's own expert reports confirm that it understood the import of Dr. Anslyn's opinions during the course of discovery, and long before submission of the Pre-Trial Order. The expert report of Dr. Warren Olanow—who did not respond to the substance of Dr. Anslyn's opinions but instead opined on irrelevant objective indicia of nonobviousness—contained the following statement: "Boehringer's counsel has informed me that Barr and Mylan have asserted as a defense that the claims of the '812 Patent are invalid due to double patenting over certain claims of the '086 patent. I understand that the double patenting defense centers on claims 9, 19, 29 and 39 of the '086 patent . . . ." Ex. G (Expert Report of Warren Olanow) at ¶ 15. The reference to claims 9, 19, 29, and 39 is not accidental. As noted above, those four claims are limited to using compounds that are claimed in the '812 patent. Ex. D at ¶ 37.

### b.    Mr. Dale Hoscheit

Boehringer's brief also never mentions the report of Mr. Hoscheit. That report, like Dr. Anslyn's, provides a detailed discussion of issues relating to the double patenting defense, including an extensive review of the three patents and their file histories, as well as key events from their prosecutions. The report also disclosed, among other things, the following facts and opinions:

- "The prosecution history of the '197 application indicates that the restriction requirement imposed during prosecution of the '947 application did not carry over during examination of the '197 application." Ex. H (Expert Report of Dale Hoscheit) at ¶ 18;

- "[T]he examiner for the '197 application, by his actions, withdrew the restriction requirement." Ex. H at ¶ 18;

- "The applicants appeared to acknowledge that the '947 restriction requirement no longer applied when, for example, they voluntarily withdrew the allowed claims in the '197 application . . . ." Ex. H at ¶ 19;

- "These claims—which issued in the '086 patent—were not consistent with the restriction requirement imposed during prosecution of the '947 application, which required the applicants to 'elect either (A) one of the compound groups I-V and one of the utility groups VIII-X (composition and utility to be limited to elected compound type for examination), or (B) one of the process groups VI and VII.'" Ex. H at ¶ 19;

- "The prosecution histories indicate that the '671 application was filed voluntarily by the applicants, not as a result of a restriction requirement or any administrative action by the Patent and Trademark Office . . . . The applicants stated that they took these actions in order to address issues presented by the Eli Lilly '748 application." Ex. H at ¶ 22;

- The claims of the '812 patent are "inconsistent with the election framework set forth in the '947 restriction requirement. That further indicates that the restriction requirement imposed during prosecution of the '947 application did not carry over during examination of the '197 and '671 applications." Ex. H at ¶ 26;

- The '671 application "was filed October 12, 1988, approximately seven months after the '374 patent issued." Ex. H at ¶ 21;

- "The '086 patent expired 17 years after issuance on June 27, 2006." Ex. H at ¶ 20; and

- "No terminal disclaimer has been filed for the '812 patent." Ex. H at ¶ 27.

Mr. Hoscheit's report thus disclosed with great specificity Defendants' contentions in response to, *inter alia*, Boehringer's assertion that Section 121 applies.[3] And, once again, this

---

[3] Although Mr. Hoscheit's proposed testimony was excluded by the Court at the Pre-Trial Conference, his report still put Boehringer on written notice during discovery of the issues

written document served during the course of discovery plainly put Boehringer on notice of many of the facts in the Pre-Trial Order of which Boehringer now feigns surprise. *Compare* Ex. H at ¶¶ 8-14, 16-20, 22-23, 26-27 & n.1 *with* Ex. B ¶¶ 7(a), 7(b), 15(a)-(m), 15(q), 15(s)-(w).[4]

It also bears mentioning that, after Barr's unambiguous notice through Mr. Hoscheit's report that he would be opining on a host of double-patenting-related issues, Boehringer chose <u>not</u> to depose him. *See* Ex. I (6/7/07 Letter from K. Schuler to J. Berniker); Ex. J (7/11/07 Letter from K. Schuler to J. Berniker); Ex. K (8/13/07 Letter from D. Grossman to A. Hollis). Boehringer can hardly claim that it lacked a fair opportunity to explore the double patenting issues he addressed.

### c.    Barr's Other Expert Reports

So too the Expert Reports of Dr. Mailman and Mr. Weinstein put Boehringer on notice of, among other things, Defendants' challenges to their assertions of unexpected properties, long-felt need, and commercial success—issues on which Boehringer bears the burden of production. *Compare* Ex. L (Mailman Report) at ¶¶ 19-21 *with* Ex. B at ¶¶ 7(g), 17, 19-20, 24; *compare* Ex. M (Weinstein Report) at ¶¶ 16-18 *with* Ex. B at ¶¶ 21-22; *see also Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 291-92 (Fed. Cir. 1985). These reports also put Boehringer on notice that Defendants would contend that the alleged evidence of

---

discussed therein, particularly given the statement in Barr's interrogatory responses directing Boehringer to Barr's expert reports.

[4] Several of the facts which Boehringer now claims it was unaware of are mere descriptions of those very file histories, which Boehringer prosecuted and held in its possession for nearly twenty years, and which were described in detail in Mr. Hoscheit's report. *See, e.g.*, Ex. B at ¶ 13 ('671 application filed after '374 patent issued); ¶ 15(d) (description of original claims), ¶ 15(b) (direct quote of restriction requirement), ¶ 15(c) (direct quote of restriction requirement), ¶ 15(e) (description of Boehringer election), ¶ 15(f) (filing date of '197 application), ¶ 15(h) (substance of '197 application filing), ¶¶ 15(i)-(l), 15(n), 15(p)-(q) (description of '197 prosecution), ¶ 15(s) (expiration of '086 patent), ¶¶ 15(u)-(w) (description of '671 prosecution).

nonobviousness was limited to pramipexole, and therefore was not commensurate with the scope of the claims. *Compare* Ex. L at ¶ 21 (Boehringer's expert only discusses pramipexole) *and* Ex. M at ¶ 17 (same) *with* Ex. B at ¶ 17. Boehringer deposed each of these experts, and thus had ample opportunity to explore the details of their opinions.

4. **Various Pleadings Filed With the Court Notified Boehringer that the Expert Reports Contained Details Related to Double Patenting**

In case Boehringer never got the message in reviewing the expert reports that they contained information relating to double patenting, Barr consistently reminded Boehringer about the import of those opinions in a number of pleadings filed with the Court. For example, in Barr's opposition to Boehringer's motion to strike Mr. Hoscheit's report, D.I. 158—a pleading filed well before the close of discovery—Barr stated in no uncertain terms: "Barr asserts that the claims of the '812 patent are invalid for non-statutory double patenting over the claims of the '086 patent." D.I. 158 at 2. Barr also explicitly reminded Boehringer that the expert disclosures provide support for that defense, stating: "Mr. Hoscheit's report was served by Barr on March 28, 2007 (the date opening expert reports were due), along with two other expert reports that relate to factual bases for Barr's double patenting" defense. D.I. 158 at 2.

Similarly, in response to a subsequent motion filed by Boehringer (D.I. 168), Barr stated that Dr. Anslyn's report "provides extensive factual analyses that directly relate to [Barr's double patenting and 102(g)] defenses." D.I. 173 at 3 n.3. Barr went on to reiterate several key assertions of its double patenting case:

> Dr. Anslyn laid the foundation for why the asserted claims of the '812 patent are invalid for double patenting in light of the claims of the earlier-issued '086 patent . . . . For example, Dr. Anslyn opined that "[t]he skilled artisan would understand that the compounds in claims of the '812 patent are identical to or completely encompass the compounds used in method claims in the '086 patent." He then provided a chart detailing that inter-relationship. In addition, Dr. Anslyn stated that "[t]he skilled artisan would appreciate that, in order to perform the method of treatment in these claims [of the earlier-issued '086 patent], one would

REDACTED VERSION – PUBLICLY FILED

be required to have the specified compound or compounds" in the claims. Those facts demonstrate that the claims of the '812 patent are not patentably distinct from the '086 patent claims.

*Id.* at 3-4 (internal citations to Dr. Anslyn's Report omitted); *see also* Ex. B at ¶¶ 4-7. That brief was filed months before the close of discovery and prior to Dr. Anslyn's deposition. Boehringer therefore had every opportunity to explore these issues with Dr. Anslyn. In fact, counsel for Boehringer specifically questioned Dr. Anslyn at his deposition about his assertion that the person of ordinary skill would understand that, in order to practice the methods of the '086 patent claims, one would need the specified compounds. *See* Ex. F at 93:13-23.

*    *    *

The record amply demonstrates that every single aspect of Defendants' double patenting case was timely disclosed in Barr's Notice Letter, interrogatory responses, expert reports, and other pleadings. Boehringer's view is that in order for Defendants to have properly put them on notice of its double patenting allegations, it all had to be expressly stated in response to Interrogatory No. 4, served early in the case.[5] That is not the law and, even if it were, Boehringer cannot ignore that the interrogatory response directed Boehringer to its timely-served expert reports. As such, no violation of Rule 26 occurred. The only "surprise" is Boehringer's assertion to the contrary.

---

[5] Boehringer curiously argues that when it previously raised the issue of Barr's response to Interrogatory No. 4, Barr allegedly "did not contest the fact that none of those assertions had been disclosed in Barr's discovery responses." D.I. 215 at 4-5 (emphasis omitted). But, as discussed above, Barr's discovery responses refer to its expert reports. And if what Boehringer is trying to say is that the expert reports are not "discovery responses," then its position is irrelevant as a matter of law, as Rule 26 merely requires notice to the opposing party, not notice solely in the form of discovery responses.

### C.    Boehringer Cannot Meet the *Pennypack* Standard for Exclusion of Evidence

Boehringer devotes a substantial portion of its brief to discussing sanctions pursuant to Rule 37. But that provision only comes into play "**[i]f** a party fails to provide information . . . as required by 26(a) or (e)." Fed. R. Civ. P. 37(c)(1) (emphasis added). As demonstrated at length above, no violation of Rule 26(e) can be found on these facts.

Even if Rule 26 were somehow not satisfied—a conclusion that is belied by the unambiguous record—Boehringer cannot meet the Third Circuit's standard for excluding evidence pursuant to Rule 37(c). In *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977) ("*Pennypack*"), the Third Circuit identified the following factors that must be considered in evaluating whether to exclude late-disclosed evidence:

> (1) the prejudice or surprise in fact of the party against whom the [evidence was offered], (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule . . . would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791 (3d Cir. 1994) (quoting *Pennypack*, 559 F.2d at 904-05). The Third Circuit also has stated that "'the importance of the excluded testimony' should be considered" as well. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (*quoting Pennypack*, 559 F.2d at 904). As the Third Circuit has repeatedly held, "[t]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Paoli*, 35 F.3d at 791-92 (*quoting Pennypack*, 559 F.2d at 905). No such showing can be made here.

Boehringer cannot satisfy the Third Circuit's test. Boehringer does not even point to any specific evidence that it wants barred, as it failed to cite to a single exhibit or line of trial testimony that it seeks to exclude. And the only alleged "prejudice" Boehringer points to is that

it was not able to "explore these topics with Barr and Mylan deponents and did not have an adequate opportunity to develop expert opinion testimony regarding those theories." D.I. 215 at 8.[6] This is demonstrably false. Boehringer plainly had the opportunity to submit expert reports to respond to the substance of Dr. Anslyn's and Mr. Hoscheit's opinions. It chose not to, preferring instead to submit expert reports from Dr. Olanow and Dr. Mohan Rao on objective indicia of nonobviousness—reports which, although irrelevant, reflect a conscious judgment on Boehringer's part as to what responsive evidence it wanted to present to rebut the double patenting allegations. Dr. Anslyn's testimony remains undisputed as a result. Moreover, Boehringer had ample opportunity to explore the opinions of Drs. Anslyn and Mailman and Mr. Weinstein when it took their depositions and questioned them about the very opinions they presented at trial. As for Mr. Hoscheit, Boehringer's complaints concerning the ability to seek discovery on the opinions disclosed in his report is difficult to take seriously, as Boehringer specifically elected not to depose him. *See supra* at 10.

Boehringer does not bother to address the second and third *Pennypack* factors, presumably because it has nothing to say about them. Nor does Boehringer dispute that the evidence of double patenting is important to Defendants, as it establishes that the claims of the '812 patent are invalid. And as for Boehringer's half-hearted allegation of bad faith, tautological name-calling does not suffice. There is no evidence of bad faith or willfulness here—rather, Defendants disclosed the bases for their defense in numerous ways well in advance of trial, giving Boehringer every opportunity to prepare a response if it could.

---

[6] Boehringer cannot credibly suggest that it was unable to explore this defense with Barr and Mylan fact witnesses, as those individuals do not have any factual knowledge concerning double patenting. The only witnesses proffered by Defendants who have relevant knowledge are Defendants' experts, and Boehringer had every opportunity to explore their opinions before the close of expert discovery.

REDACTED VERSION – PUBLICLY FILED

## II.    NOTHING RELIEVED BOEHRINGER FROM THE BURDEN OF SHOWING INFRINGEMENT

Defendants continue to be perplexed by Boehringer's contention that it was unaware of its own legal obligations regarding the issue of infringement and that it was Defendants' responsibility to somehow put Boehringer on notice of those obligations—as if "notice" of such a bedrock requirement were needed.  It is black-letter law that "[t]he patentee has the burden of proving infringement by a preponderance of the evidence." *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004).  Despite Boehringer's statements to the contrary regarding Defendants' obligation to "contest" infringement, Defendants were not required to prove—or even raise evidence of—non-infringement.  *See Under Sea Indus., Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed. Cir. 1987) (finding that the district court erred to the extent it placed the burden on the defendant to show non-infringement); *see also Imhaeuser v. Buerk*, 101 U.S. 647, 662 (1880) (stating that "the burden to prove infringement never shifts if the charge is denied in the plea or answer").  And Boehringer's contention that it "did not have an adequate opportunity to develop expert opinion testimony" rings hollow in light of the fact that it submitted an expert report from Dr. Klibanov regarding infringement.  *See* D.I. 215 at 8.  It is thus most difficult to see what prejudice Boehringer suffered, much less prejudice that went uncured.  After all, it is Boehringer who commenced this action for infringement in the first place, and Boehringer should be held to its burden.

### CONCLUSION

For the foregoing reasons, Boehringer's request for the preclusion of evidence and argument should be denied.

REDACTED VERSION – PUBLICLY FILED

Date: May 14, 2008                                    Respectfully submitted,


YOUNG CONAWAY STARGATT &              MORRIS JAMES LLP
        TAYLOR, LLP.


*/s/ Adam W. Poff*                                      */s/ Mary B. Matterer*
Adam W. Poff (#3990)                          Mary B. Matterer (#2696)
apoff@ycst.com                                    MMatterer@morrisjames.com
The Brandywine Building                       500 Delaware Avenue, Suite 1500
1000 West Street, 17th Floor                  P.O. Box 2306
Wilmington, DE 19801                          Wilmington, DE 19899-2306
(302) 571-6600                                      (302) 888-6960
*Attorney for Barr Laboratories, Inc.*         *Attorney for Mylan Pharmaceuticals Inc.*

16

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on May 22, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Jack B. Blumenfeld, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
PO Box 1347
Wilmington, DE 19899-1347

Mary B. Matterer, Esquire
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801

I further certify that on May 22, 2008, I caused a copy of the foregoing document to be served on the above-listed counsel by e-mail and on the following non-registered participants in the manner indicated:

### BY E-MAIL

Steven C. Cherny, Esquire
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10022-4834

Kenneth G. Schuler, Esquire
Latham & Watkins LLP
Sears Tower, Suite 5800
Chicago, IL 60606

Shannon M. Bloodworth, Esquire
Heller Ehrman LLP
1717 Rhode Island Ave., N.W.
Washington, DC 20036

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Adam W. Poff*
Adam W. Poff (No. 3990)
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
Email:  apoff@ycst.com

*Attorneys for Barr Laboratories, Inc.*